**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

JOYCE HENDERSON;           )
                               )
        Plaintiff,         )     05-10339
                               )
      v.                  )     Judge Joseph L. Tauro
                               )     Magistrate Judith G. Dein
SHERMAN FINANCIAL GROUP LLC;  )
SHERMAN ACQUISITION II, LP;     )
SHERMAN ACQUISITION II          )
    GENERAL PARTNER LLC;     )
ALEGIS GROUP L.P.; and        )
ALEGIS GROUP LLC;             )
                               )
        Defendants.       )

## PLAINTIFF'S RESPONSE TO SHERMAN DEFENDANTS' MOTION TO DISMISS

Plaintiff submits this response to the Rule 12(b)(6) motion to dismiss her Fair

Debt Collection Practices Act ("FDCPA") class action complaint filed by defendants Sherman

Financial Group ("SFG"), Sherman Acquisition II, LP ("SA2"), Sherman Acquisition II, General

Partner ("SA2GP"), Alegis Group, LP ("AGLP") and Alegis Group, LLC ("AGLLC")

(collectively, "Sherman defendants") on March 15, 2005. As further demonstrated below, the

motion to dismiss lacks merit and should be denied. Plaintiff's claim is similar to those that have

recently been sustained in <u>Blair v. Sherman Acquisition</u>, 04 C 4718, 2004 U.S. Dist. LEXIS

25106 (N.D.Ill. Dec. 13, 2004)(<u>Exhibit A</u>), and <u>Stewart v. Asset Acceptance LLC</u>, No. 04-cv-

1213-LJM-VSS at 8 (S.D. Ind. Nov. 19, 2004)(<u>Exhibit B</u>).

## I.    FACTS

Defendant SFG operates a single economic enterprise of debt collectors as defined

in the FDCPA, which includes, amongst others, Defendants SA2, SA2GP, AGLP, and AGLLC.

(Cmplt. ¶¶ 9, 14, 18). SFG directly or indirectly owns all or a majority of the equity of SA2,

SA2GP, AGLP, and AGLLC. (Cmplt. ¶16). Defendant SFG states on its Web site that it "is the

country's largest purchaser of distressed debt." (Cmplt. ¶5). During 2002, SFG purchased $7

billion in bad debts. (Cmplt. ¶5). The managers and officers of SFG and its affiliates overlap. For example, Frank Filipps is manager of both SFG and SA2GP. (Cmplt. ¶ 19). For example, Benjamin W. Navarro is manager of SFG and also president of AGLLC, the collection agency owned by SFG. (Cmplt. ¶ 19).

Defendant SA2 is engaged in the business of buying bad debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers. (Cmplt. ¶ 8). Defendant SA2GP is the general partner of SA2 and is liable for SA2's liabilities. (Cmplt. ¶10). SA2 is a "debt collector" subject to the FDCPA. (Cmplt. ¶16).[1]

Defendant AGLP operates a collection agency. (Cmplt. ¶13). AGLP is a "debt collector" as defined in the FDCPA. (Cmplt. ¶14). Defendant AGLLC is the general partner of AGLP and the acts and liabilities of AGLP are chargeable to it. (Cmplt. ¶15). It does business in Massachusetts. (Cmplt. ¶15).

On or about February 24, 2004, defendant AGLP sent a collection letter addressed to the Plaintiff's mother, care of the Plaintiff, attached as Exhibit C. (Cmplt. ¶ 21). Plaintiff

---

[1]   A company that regularly purchases delinquent debts is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts. Schlosser v. Fairbanks Capital Corp., 323 F.3d 534 (7th Cir. 2003); Pollice v. Nat'l Tax Funding, 225 F.3d 379 (3rd Cir. 2000); Ballard v. Equifax Check Services, 27 F.Supp.2d 1201 (E.D. Cal. 1998); Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987); Cirkot v. Diversified Systems, 839 F.Supp. 941 (D.Conn. 1993); Ruble v. Madison Capital, Inc., C-1-96-1693, 1998 U.S.Dist. LEXIS 4926 (N.D.Ohio 1998); Holmes v. Telecredit Service Corp., 736 F.Supp. 1289, 1292 (D.Del. 1990); Farber v. NP Funding II, LP, 96 CV 4322, 1997 WL 913335, *3, 1997 U.S.Dist. LEXIS 21245 (E.D.N.Y. Dec. 9, 1997) ("those who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection"); Stepney v. Outsourcing Solutions, Inc., 1997 U.S.Dist. LEXIS 18264 (N.D.Ill. 1997); Commercial Service of Perry v. Fitzgerald, 856 P.2d 58, 62 (Colo.App. 1993) ("[A] company which takes an assignment of a debt in default, and is a business the principal purpose of which is to collect debts, may be subject to the Act, even if the assignment is permanent and without any further rights in the assignor").

handles her mother's affairs. (Cmplt. ¶ 22). As a result, Plaintiff received the collection letter at issue herein and read the collection letter. (Cmplt. ¶ 22). Exhibit C sought to collect a debt incurred for personal, family or household purposes. (Cmplt. ¶ 23). Exhibit C is a form letter. (Cmplt. ¶ 24). Exhibit C states that it is sent on behalf of SFG. (Cmplt. ¶ 25). The form of Exhibit C was prescribed by SFG and AGLP. (Exhibit D) (Cmplt. ¶ 26). Exhibit C consisted of a collection demand on the front and a notice of the privacy and information disclosure practices of SFG ("privacy notice") on the reverse. (Cmplt. ¶ 27). The material on the reverse is referred to on the front. (Cmplt. ¶ 27).

The notice, drafted by SFG on behalf of all of the Sherman defendants ("privacy notice"), stated that the Sherman defendants may disclose the debtors' personal information to third parties in manners prohibited by the FDCPA. (Cmplt. ¶¶35, 37-40, 43).

## A.    PRIVACY PROTECTIONS IN FDCPA

One of the stated purposes of the FDCPA is to protect debtors against "invasions of individual privacy" by debt collectors. 15 U.S.C. §1692(a). The FDCPA contains a number of provisions that prevent debt collectors from informing third parties that a given individual owes a debt. "[T]he FDCPA generally protects the consumer's privacy by limiting debt collector communications about personal affairs to third parties . . . ." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50103.

First, 15 U.S.C. §1692c(b) contains a general prohibition against debt collectors communicating with third parties without the prior consent of the consumer:

> **(b) Communication with third parties--Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.**

3

Section 1692b deals with locating debtors who cannot be found, is very limited in scope, and is relevant only insofar as it demonstrates how stringent the FDCPA is in prohibiting debt collectors from telling third parties about the debt.

Second, 15 U.S.C. §1692d(3) and (4) defines as "harassment" and a violation of the FDCPA "**[t]he publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title**" and the "**advertisement for sale of any debt to coerce payment of the debt.**" Section 1681a(f) is the Fair Credit Reporting Act definition of consumer reporting agency. Section 1681b(3) is a Fair Credit Reporting Act provision dealing with use of consumer reports.

The Federal Trade Commission has interpreted these provisions as: "Debt collectors may not exchange lists of consumers who allegedly refuse to pay their debts . . . A debt collector may not distribute a list of alleged debtors to its creditor subscribers." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50105.

Finally, 15 U.S.C. §1692f prohibits a debt collector from communicating with consumers in a manner that allows third parties to discern the consumers owe money:

> . . . **(7) Communicating with a consumer regarding a debt by post card.**
>
> **(8)      Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business . . .**

These provisions comprehensively prohibit debt collectors from disclosing that specific consumers have defaulted on debts, without the express prior consent of the consumer to the disclosure.

In addition to regulating the actual communication of information concerning the

debt, the FDCPA prohibits a debt collector's statement that it may engage in such communication or has the right to do so. Section 1692e provides:

> **§ 1692e.    False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

A debt collector's misrepresentation of its legal rights violates the FDCPA. <u>Juras v. Aman Collection Service, Inc.</u>, 829 F.2d 739, 743-44 (9th Cir. 1987). Indeed, the FDCPA was enacted to combat practices including "misrepresentation of a consumer's legal rights." S. Rep. No. 95-382, 95th Cong., 1st Sess., at 2-3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696; <u>Blakemore v. Pekay</u>, 895 F.Supp. 972, 978 (N.D.Ill. 1995); <u>Limpert v. Cambridge Credit Counseling Corp.</u>, 328 F. Supp. 2d 360, 362-63 (E.D.N.Y. 2004).

## B.    FDCPA VIOLATIONS IN DEFENDANTS' PRIVACY NOTICE

The privacy notice states that SFG and its affiliates, including defendants SA2 and AGLP, collect "Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you. All of the information that we collect is sometimes referred to in this notice as 'collected information.'" (Cmplt. ¶ 35).

All of this information is integrally related to debt collection. (Cmplt. ¶ 36).

5

The privacy notices then state that the Sherman defendants may disclose this information to persons and entities not on the list authorized by §1692c(b):

> **Joint Agreements.** The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services. We may share collected information with these institutions, subject to the confidentiality and security requirements imposed by law. (Cmplt. ¶ 37).

The notice states that the consumer may ask SFG and its affiliates not to share collected information, but that "Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you." (Cmplt. ¶ 38).

The uses listed are prohibited by the FDCPA (absent express prior consent by the debtor), in that they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §1692c(b). Actual disclosures of that nature violate §1692c(b), and the statement that SFG or its affiliates would make such disclosures, or have the right to do so, violates 15 U.S.C. §1692e. (Cmplt. ¶ 39).

In addition, several of the listed uses amount to the publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. The actual publication of such lists would violate 15 U.S.C. §1692d, and the statement that SFG or its affiliates will do so or have the right to do so violates 15 U.S.C. §1692e. (Cmplt. ¶40).

Debt collectors are commonly known to sell lists of persons who have not paid their debts to issuers of subprime credit cards, who offer to issue a credit card if the consumer will put some or all of the unpaid debt on the credit card. Prospective lenders are not among the parties to whom a debt may be disclosed under 15 U.S.C. §1692c(b), absent the express consent

6

of the debtor.  (Cmplt. ¶ 41).

The evidence will show that the Sherman defendants do in fact sell their debtor information to subprime credit card issuers, who offer the debtors new credit cards if they use them to pay the old debt, and that this is done without the express prior consent of the debtors.

The statement that the consumer must affirmatively request that collected information *not* be disclosed is a misstatement of the consumer's rights under 15 U.S.C. §1692c(b), which requires that the consumer grant express permission directly to the debt collector before the debt may be disclosed to anyone other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.  (Cmplt. ¶42).

Finally, the inclusion of  statements in a debt collection letter that information about the debtor can or will be disclosed to third parties amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid.  (Cmplt. ¶43).

The Sherman defendants advance several arguments in support of their motion to dismiss.  The first argument is that the privacy notice only states that the information "may be shared as permitted by law."  However, the "as permitted by law" disclaimer is of no effect.

Second, defendants claim that there are no allegations in this case that the defendants actually communicated with anyone in connection with the collection of any debt. Plaintiff is entitled to discovery on this issue.

Third, defendants argue that the threatened disclosures are "expressly permitted" by the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802 ("GLB").  This argument is based upon a misreading of the GLB Act and is premature for purposes of this motion.

Finally, defendants challenge plaintiff's ability to bring this cause of action. However, numerous courts have held that individuals in a similar situation have standing to bring such a claim under the FDCPA.

7

## II.    MOTION TO DISMISS STANDARD

A complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal Rules of Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest circumstances:

> Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a Complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' [citing Hishon v. King & Spalding 467 U.S. 69, 73 (1984)]. If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.

See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Contrary to the Sherman defendants' suggestion, Federal complaints need only give notice, not allege facts:

> When a federal court reviews the sufficiency of a complaint before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Scheuer, 416 U.S. at 236. In Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004), First Circuit stated reiterated the broad notice pleading standard of the federal rules:

> From this plaintiff-friendly coign of vantage, we may affirm an order for dismissal only if no well-pleaded set of facts supports recovery. Conley v. Gibson, 355 U.S.

41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); LaChapelle, 142 F.3d at 508.
Federal civil practice is based on notice pleading. Thus, 'great specificity is
ordinarily not required to survive a Rule 12(b)(6) motion.' Garita Hotel Ltd.
P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); accord Educadores
Puertorriquenos en Accion v. Rey Hernandez, 367 F.3d 61, 66 (1st Cir. 2004)
(disclaiming heightened pleading standards except where a statute or Civil Rule
specifically imposes one).

Further, in Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002), Judge

Posner reiterated the broad notice pleading standard of the federal rules:

> As the Supreme Court has recently reaffirmed [citing Swierkiewicz], and
> we have held time and again [citations omitted], there is no requirement in
> federal suits of pleading the facts or the elements of a claim, with the
> exceptions [ ] listed in Rule 9.

Furthermore, any ambiguities or doubts concerning sufficiency of the claim

must be resolved in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73

(1984).   The plaintiff, but not the defendant, is entitled to set forth what set of facts

consistent with the allegations of the complaint would sustain a claim. Pegram v. Herdrich,

530 U.S. 211, 230 (U.S., 2000); Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir.

1992). See also Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992). "This

rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule

12(b)(6) motion . . . ." Cushing v. City of Chicago, 3 F.3d 1156, 1160 (7th Cir. 1993).   On

the other hand, if defendant wants to rely on material outside the complaint, it must file a

motion for summary judgment after plaintiff has had adequate opportunity for discovery.

Friedl v. City of New York,  210 F.3d 79, 83-84 (2d. Cir. 2000); Kopec v. Coughlin, 922

F.2d 152 (2d Cir. 1991).

## I.    THE "PRIVACY NOTICE" ASSERTS THAT THE SHERMAN DEFENDANTS HAVE THE RIGHT TO DISCLOSE PERSONAL INFORMATION IN A MANNER PROHIBITED BY THE FDCPA.

Defendants' "privacy notice" contains language that would lead

unsophisticated debtors to believe that the Sherman defendants have the right to divulge

personal, nonpublic information when in fact, such distribution of information violates the FDCPA.

In a recent case evaluating the exact same "privacy notice," Judge Plunkett of the Northern District of Illinois ruled that "it is reasonable to conclude that an average person could construe the Privacy Notice language to mean that at third party, other than those permitted under § 1692c(b), is going to receive information about our debts." Blair v. Sherman Acquisition, 04 C 4718, 2004 U.S. Dist. LEXIS 25106 (N.D.Ill. 2004)(Exhibit A). See also, Stewart v. Asset Acceptance LLC, No. 04-cv-1213-LJM-VSS at 8 (S.D. Ind. Nov. 19, 2004)(Exhibit B).

Just as in Blair, these statements are misleading and false because Sherman does not have the right to disclose this nonpublic personal information under the FDCPA. An unsophisticated debtor is likely to read the notice and think that if Sherman can legally provide nonpublic personal information under the GLB, then no other legal authority exists to regulate such disclosures to others. Accordingly, the Sherman defendants' privacy notice is misleading and their motion to dismiss should be denied.

## II.  APPENDING THE WORDS "AS PERMITTED BY LAW" TO A STATEMENT OF ACTION THAT MAY NEVER BE TAKEN DOES NOT AVOID A VIOLATION.

Defendants claim that by appending the statement "as permitted by law" they eliminate the violation. However, if a party is not legally entitled to take an action, stating that it may take such action as permitted by law is false and misleading. In Werts v. Federal Nat'l Mortgage Ass'n, 48 B.R. 980, 985 (E.D.Pa. 1985), the foreclosure notice stated, "WE MAY TAKE POSSESSION OF ALL OR ANY PART OF YOUR PROPERTY AS AND WHEN **PERMITTED BY LAW.**" Under no circumstances was

10

the lender entitled to take possession of all of plaintiff's property. Id. at 985. The court

found the statement "as and when **permitted** by law" was misleading because the

defendant could **never** take possession of all of plaintiff's property. Id. Similarly here, if

the FDCPA prohibits disclosure of the plaintiff's mother's information, the Sherman

defendants' claim that they have a right to do so is false and misleading under 15 U.S.C.

§ 1692e.

**III.    ACTUAL DISCLOSURE IS NOT REQUIRED**

Defendants next argue that the complaint does not definitively allege that

personal information was disclosed. However, a debt collector's misrepresentation of its

legal rights  – here, to disclose information about the debtor – violates the FDCPA.

Juras v. Aman Collection Service, Inc., 829 F.2d 739, 743-44 (9th Cir. 1987). Whether

actual disclosures occurred can be determined in discovery. Defendants' claim that

plaintiff can point to no evidence that information was shared and reference to the statute

of limitations is highly improper for purposes of this motion.

**IV.    THE THREATENED DISCLOSURES ARE FOR DEBT COLLECTION
         PURPOSES**

Defendants suggest that the disclosures referred to in the privacy notice

would not be "in connection with the collection of any debt." (Def. Mem. at 4).

However, the "privacy notice" was part of a collection letter. Furthermore, providing the

debtor's name to a lender so that the old debt is transferred to a new credit card is an

attempt to collect the defaulted debt. A prospective subprime lender is not one of the

persons to whom a debt collector may disclose a debt under 15 U.S.C. §1692c(b).

Communicating information about a debt  to a subprime lender (generally a credit card

11

issuer or mortgage company) for the purpose of financing the repayment of a bad debt is both a "communicat[ion], in connection with the collection of any debt" (15 U.S.C. §1692c(b)) and a communication "for marketing or sales of financial services and products." Thus, defendants sent a collection letter which on its face threatened, and claimed the right to make, illegal disclosures of personal information about the debt in connection with an attempt to collect that debt.

Collaboration between debt collectors and subprime lenders who offer financing to debtors that must be used, at least in part, to pay the bad debt has become so common that unsophisticated consumers are likely to derive precisely that meaning from defendants' privacy notice. Not only the Sherman defendants, but many other debt collectors and bad debt buyers, arrange for refinancing of old consumer debts with subprime credit card issuers or mortgage companies. Reported decisions involving such activities include Carbajal v. Capital One Bank, 03 C 1123, 2003 U.S. Dist. LEXIS 20065 (N.D. Ill. Nov. 13, 2003), later opinion, 219 F.R.D. 437 (N.D. Ill. 2004); Kim v. Fayazi, 96 C 6966, 1998 U.S. Dist. LEXIS 16544 (N.D. Ill. Oct. 8, 1998); and Ruble v. Madison Capital, 1:96 CV 1693, 1998 U.S. Dist. LEXIS 4926 (N.D. Ohio Mar. 19, 1998).

The practice of purchasing and refinancing old debts is frequently referred to in the general press and is likely to be known to consumers, even if they have not had such an offer made to them. E.g., "How old can bills be and still haunt you?," Philadelphia Inquirer, Aug. 25, 2004, at C01. (Exhibit E). The practice is legal if the debtor is first asked for permission to disclose his or her information may be disclosed, but illegal if disclosure is made without express consent, as is defendants' practice.

Plaintiff need not prove that a disclosure to a subprime lender is the *only*

12

meaning that defendants' "privacy notice" would convey to a consumer. A statement by a debt collector which can plausibly be read in two or more ways violates the FDCPA if at least one of the meanings conveyed is prohibited by the statute. Russell v. Equifax A.R.S., 74 F.3d 30, 34-35 (2d Cir. 1996).

Here, the Sherman defendants' statement can be reasonably interpreted as meaning that the debtor's private information will be disclosed to a lender for the purpose of financing the repayment of the debt. That is in fact what the Sherman defendants do, and their debtors will in some or all cases have their information turned over to subprime lenders so that the lenders can make offers. Such a disclosure (absent consent) violates 15 U.S.C. §1692c(b), and the statement that Sherman can or will make such a disclosure violates 15 U.S.C. §1692e.

In the present case, there is no question but that defendants were attempting to collect defaulted debts. The "privacy notice" was part of a collection letter. Furthermore, providing the debtor's name to a lender so that the "old debt is transferred to your own [new] Visa credit card" is an attempt to collect the defaulted debt. A prospective subprime lender is not one of the persons to whom a debt collector may disclose a debt under 15 U.S.C. §1692c(b). Thus, defendants sent a collection letter which on its face threatened, and claimed the right to make, illegal disclosures of personal information about the debt in connection with an attempt to collect that debt.

While the Sherman defendants represent in their brief that "Defendants did not improperly contact anyone in order to obtain the debtors' assets or ability or intention to pay the outstanding debt" (Def. Mem. at 5), that assertion is (a) inconsistent with the complaint and (b) false. As demonstrated above, the Sherman defendants do exactly that

13

when they provide debtor information to subprime lenders to facilitate the financing of

the repayment of the debt.  Thus, there is a set of facts that could be proved consistent

with the allegations of the complaint that warrants relief, and the Sherman defendants'

motion to dismiss must be denied.

## V.    THE GRAMM-LEACH-BLILEY ACT DOES NOT AUTHORIZE DISCLOSURES BY A DEBT COLLECTOR IN VIOLATION OF THE FDCPA

The Sherman defendants also claim that 15 U.S.C. §6802, a section of the

GLB Act, expressly authorizes the threatened disclosures and thus works an implied

repeal of FDCPA §1692c(b).

First, several District Courts within the Seventh Circuit have recently ruled

that the GLB is irrelevant for purposes of a Motion to Dismiss because it constitutes an

affirmative defense.

> An affirmative defense is properly asserted "only when the plaintiff pleads itself out of court -- that is, admits all of the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." Stewart v. Asset Acceptance LLC, No. 04-cv-1213-LJM-VSS (S.D. Ind. Nov. 19, 2004) (quoting Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004)).  The affirmative defense available under the FDCPA is that the debt collector must show "by a preponderance of the evidence" that the alleged violation was not purposeful, and there was a genuine error despite the fact that Defendants employed reasonable means to avoid violations.  15 U.S.C. 1692k©).  Defendants have not made the requisite showing of this affirmative defense that would dispose of this claim.

Blair v. Sherman Acquisition, 2004 U.S. Dist. LEXIS 25106, 12-13 (N.D. Ill.

2004)(Exhibit A).  The First Circuit follows a similar rule as to affirmative defenses.  An

affirmative defense may only be considered in the context of a Motion to Dismiss where

two conditions are met. "First, 'the facts that establish the defense must be definitively

14

ascertainable from the allegations of the complaint . . . matters of public record, and other matters of which the court may take judicial notice.'" Greene v. Rhode Island, 398 F.3d 45 (1st Cir. 2005)(citing In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Blackstone Realty L.L.C. v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001). As demonstrated below, the Defendants have not made the requisite showing.

Defendants' claim that Judge McKinney's ruling in Stewart v. Asset Acceptance LLC, No. 04-cv-1213-LJM-VSS at 8 (S.D. Ind. Nov. 19, 2004)(Exhibit B) lends any credence to their claim regarding the relevance of the GLB is a misrepresentation. In fact, Judge McKinney in responding to a similar claim, stated "Asset's contention that the privacy notice comports with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 ('GLB') is irrelevant to its Motion to Dismiss." Second, even if this Court were to consider Defendants' claim regarding the applicability of the GLB, the claim that the GLB affects the FDCPA is incorrect.

The GLB Act section relied upon states:

**. . . This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information. . . .**

Defendants read the statement that "This subsection . . . shall not prevent a financial institution from providing nonpublic personal financial information" as if it said, "Notwithstanding any other provision of law prohibiting such disclosure, a financial

15

institution may provide nonpublic personal financial information." Of course, it says

nothing of the sort. The plain language of §6802 provides that it controls only the

operation of "This subsection," not other federal statutes that may impose more stringent

limitations on certain types of entities, such as debt collectors.

Repeal by implication is not favored. <u>Randolph v. IMBS, Inc.</u>, 368 F.3d

726 (7th Cir. 2004). "When two federal statutes address the same subject in different

ways, the right question is whether one implicitly repeals the other--and repeal by

implication is a rare bird indeed. <u>See, e.g., Branch v. Smith</u>, 538 U.S. 254, 273 (2003);

<u>J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc.</u>, 534 U.S. 124, 141-44

(2001)(collecting authority). It takes either irreconcilable conflict between the statutes or

a clearly expressed legislative decision that one replace the other. " <u>Randolph.</u> 368 F.3d at

730 .

The Sherman defendants make no effort to show either irreconcilable

conflict between the FDCPA and GLB Act or any legislative expression that §1692c(b)

be replaced. They instead postulate that by enacting a second statute (the GLB Act)

intended to increase protection for individual privacy, Congress actually repealed the

existing protection for individual privacy afforded by the FDCPA. Defendants' GLB Act

argument must accordingly be rejected.

## VI.    PLAINTIFF HAS STANDING TO ASSERT THIS CLAIM.

Defendants' final challenge is to Plaintiff's ability to bring this lawsuit.

Defendants first claim that the Complaint fails to allege that Plaintiff has power of

attorney or is authorized to act for her mother. Second, Defendants claim that Plaintiff

has not incurred damages. However, the FDCPA requires neither of the above and

Plaintiff has standing to bring this claim.

First, Plaintiff Joyce Henderson has standing to sue on an individual basis. A family member who receives a false and misleading collection letter has standing to assert violations of the FDCPA on an individual basis. Defendants point to no case law or statutory authority which supports their position.

In Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir. 1993), the Sixth Circuit ruled that an executrix, stood in the shoes of her debtor daughter and had the authority to open and read letters addressed to the debtor. The Sixth Circuit ruled that the executrix had standing to bring an action for a false and misleading representation under § 1692e of the FDCPA because under that section "a debt collection practice need not offend the alleged debtor before there is a violation of the provision." Id.

In Mantell v. Feingold & Levy, 1997 U.S. Dist. LEXIS 1013 (N.D. Ill. 1997) the District Court sustained a claim brought by a family member of the debtor under §1692e, based upon the Defendant's representation over the telephone that he was an attorney. See also Riviera v. MAB Collections, Inc., 682 F. Supp. 174 (W.D.N.Y. 1988)(holding that an administrix who had received a dunning letter regarding a consumer debt had standing to sue under the FDCPA); West v. Costen, 558 F.Supp. 564 (W.D. Va. 1983)(holding that communications about debts with consumers' grandparents, uncle, sister, daughter, and mother have causes under the FDCPA); Whatley v. Universal Collection Bureau, Inc., 525 F. Supp. 1204 (N.D. Ga.1981).

Second, under the FDCPA, proof of actual damages is unnecessary to recover statutory damages. Again, defendants fail to point to any case law or statutory

authority which supports their position. Rather, the decisions support plaintiff's position.

In <u>Bartlett v. Heibl</u>, 128 F.3d 497, 499 (7th Cir. 1997), the Seventh Circuit (Posner, J.) ruled that statutory damages are recoverable under the FDCPA, absent a claim of actual damages. The Court held that a claim for statutory damages is not dependant upon proof that the recipient of the letter was misled but only that the statute was violated. <u>Id.</u>

In <u>Keele v. Wexler</u>, 149 F.3d 589, 593 (1998) the Seventh Circuit stated the FDCPA was "blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." This reasoning was based upon the policy of the statute to "protect consumers from unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists. <u>Id.</u> at 594. <u>See also</u> <u>Baker v. G.C. Servs. Corp.</u>, 677 F.2d 775, 781 (9th Cir. 1982).

The decision in <u>Keele</u> has been adopted by at least one District Court in this Circuit. In <u>Silva v. Nat'l Telewire Corp.</u>, 2000 U.S. Dist. Lexis 13986, *8 (D.C.N.H. Sept. 22, 2000), the District Court for the District of New Hampshire held that the FDCPA did not require proof of actual damages for an award of statutory damages.

The claims before this Court are substantially similar to those sustained in the above cited cases. In the Complaint, Plaintiff alleges that on or about February 24, 2004, defendant AGLP sent a collection letter addressed to the Plaintiff's mother, <u>care of the Plaintiff</u>. (Cmplt. ¶ 21). Additionally, Plaintiff handles her mother's affairs. (Cmplt. ¶ 22). As a result, Plaintiff received the collection letter at issue herein and read the collection letter. (Cmplt. ¶ 22). This is all that is needed for Plaintiff to establish standing. If the Defendants did not want the Plaintiff to review the letter, they should not

18

have addressed it "care of Joyce Henderson." (Cmplt., Ex. A).

## VII.    CONCLUSION

For the reasons stated, the Court should deny the Sherman defendants'

motion to dismiss.

Respectfully submitted,

Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

J:\Case\sherman-henderson12.848\pleading\respmtd.3.25.05.wpd

19

## CERTIFICATE OF SERVICE

I, Jeremy P. Monteiro, hereby certify that on March 24, 2005, a copy of the foregoing **PLAINTIFF'S RESPONSE TO SHERMAN DEFENDANTS' MOTION TO DISMISS** was served via U.S. Mail and Facsimile upon the below listed parties.

Steven S. Broadley
Jennifer L. Finger
**Posternak Blankstein & Lund, LLP**
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199-8004
(617) 367-2315 (Fax)

Michael S. Poncin, Esq.
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

Christopher M. Lefebvre
**Law Offices of Claude Lefebvre & Sons**
P.O. Box 479
Pawtucket, RI 02862
401-728-6534 (Fax)

Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106    Page 1 of 11

Case 1:05-cv-10339-JLT  Document 8-2  Filed 03/25/2005  Page 1 of 11

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 25106**

*2004 U.S. Dist. LEXIS 25106, \**

BLAIR, et al., PLAINTIFFS, v. SHERMAN ACQUISITION, et al., DEFENDANTS.

NO.04 C 4718

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

2004 U.S. Dist. LEXIS 25106

December 9, 2004, Decided
December 13, 2004, Docketed

**DISPOSITION:** Defendants' Motion to dismiss granted in part and denied in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant debt collectors filed a motion to dismiss plaintiff
debtors' action alleging that the debt collectors, a group of companies and three
independent companies, violated the Fair Debt Collection Practices Act by communicating
with unauthorized third parties concerning the debtors' debt without their consent,
harassing the debtors, acting in an abusive manner during the collection process, and
making misleading representations.

**OVERVIEW:** The group's privacy notice, which was printed on collection letters sent to
the debtors by the debt collectors, stated that the group could collect certain information
about the debtors and might share that information with other entities. Because it was
unclear whether the letters were for the purpose of debt collection and an average
person could reasonably have construed the language to mean that a third party other
than those permitted under 15 U.S.C.S. § 1692c(b) was going to receive information
about their debts, the claim that the debt collectors had unauthorized communication
with third parties could not be dismissed. The claim that the debt collectors violated 15
U.S.C.S. § 1692e(5) and (10) by falsely or misleadingly representing to an
unsophisticated consumer that their personal information could and would be shared
regardless of their rights and wishes had to remain because it was undetermined
whether the actions the debt collectors claimed to make were authorized or unauthorized
and an actual disclosure would have been a violation of the debtors' rights. However, the
debt collectors had not harassed or threatened the debtors under 15 U.S.C.S. § 1692d
(3) and (4).

**OUTCOME:** The court denied the debt collectors' motion to dismiss the claim that they
had unauthorized communication with third parties, denied the debt collectors' motion to
dismiss the claim that they made misleading misrepresentations, and granted the debt
collectors' motion to dismiss the claim that they harassed the consumers or acted in an
abusive manner.

**CORE TERMS:** consumer, collection, collector, unsophisticated, third parties, unauthorized,
third party, notice, collected, misleading, providers, customer, affirmatively, deceptive,
communicate, Bliley Act, affirmative defense, full compliance, communicating, disclosure,
abusive, sharing, personal information, false representation, natural consequence, refuse to
pay, legal action, correspondence, advertisement, well-pleaded

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action 🖳

**HN1**⬦On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. The plaintiff need not include a detailed outline of a claim's basis. He must, however, include either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. No claim will be dismissed unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices 🖳
Governments > Legislation > Interpretation 🖳

**HN2**⬦The purpose of the Fair Debt Collection Practices Act (FDCPA) is to eliminate abusive debt collection practices by debt collectors. 15 U.S.C.S. § 1692(e). Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose. Whether a communication or other conduct violates the FDCPA is determined by analyzing it from the prospective of an unsophisticated consumer. This standard protects the consumer who is uninformed, naive, or trusting, while at the same time requiring that the unsophisticated consumer possess objective element of reasonableness. Including the objective element in the standard insulates debt collectors from liability for unrealistic or peculiar interpretations of collection letters. More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices 🖳

**HN3**⬦15 U.S.C.S. § 1692c(b) generally prohibits debt collectors from communicating with third parties. More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices 🖳

**HN4**⬦See 15 U.S.C.S. § 1692c(b).

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices 🖳

**HN5**⬦Under 15 U.S.C.S. § 1692c(b), without prior consent, a debt collector may not communicate with a third party regarding the collection of a debt, except to secure location information permitted under strict limitations of 15 U.S.C.S. § 1692b. 15 U.S.C.S. § 1692c(b). Under the Fair Debt Collection Practices Act, a "communication" is defined as conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C.S. § 1692a (2). More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices 🖳
Governments > Legislation > Interpretation 🖳

**HN6**⬦A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. All provisions of the statute must be considered and each term must be interpreted equally, so as not to deflect from the meaning of the statute. Specifically, as to 15 U.S.C.S. § 1692, every clause and word must be given force and 15 U.S.C.S. § 1692c(b) should be broadly interpreted to prohibit a debt collector from conveying any information to a third party that concerns a debt (except for the purpose of obtaining location information as permitted under 15 U.S.C.S. § 1692b). More Like This Headnote

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106

Case 1:05-cv-10339-JLT    Document 8-2    Filed 03/25/2005    Page 3 of 11

Page 3 of 11

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
**HN7** How consumers or audiences are affected by a Privacy Notice is a question of fact, which may be explored by testimony and devices such as consumer surveys. A complaint alleging that a particular notice is not clear may not be dismissed under Fed. R. Civ. P. 12(b)(6) because district judges are not the proper models for the "unsophisticated consumers" that were contemplated under the Fair Debt Collection Practices Act. Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade. Further, to learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
**HN8** An affirmative defense is properly asserted only when the plaintiff pleads itself out of court--that is, admits all of the ingredients of an impenetrable defense--may a complaint that otherwise states a claim be dismissed under Fed. R. Civ. P. 12(b)(6). More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses
**HN9** The affirmative defense available under the Fair Debt Collection Practices Act is that the debt collector must show by a preponderance of the evidence that the alleged violation was not purposeful, and there was a genuine error despite the fact that defendants employed reasonable means to avoid violations. 15 U.S.C.S. § 1692k(c). More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
**HN10** The Fair Debt Collection Practices Act attempts to eliminate abusive debt collection practices by debt collectors by enacting certain provisions, such as a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C.S. § 1692d. Violations of this statute include publishing a list of consumers who allegedly refuse to pay debts and the advertisement for sale of any debt to coerce payment of the debt. 15 U.S.C.S. § 1692d(3) and (4). Furthermore, 15 U.S.C.S. § 1692 also requires that debt collectors refrain from making false or misleading representations, including threatening to take any action that cannot legally be taken or that is not intended to be taken, and using any false representation or deceptive means to collect or attempt to collect any debt; 15 U.S.C.S. § 1692e(5) and (10). More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
**HN11** Statements that clearly indicate that the debt collector will be contacting an employer or third parties who are prohibited from being contacted under the Fair Debt Collection Practices Act (FDCPA) is a threat to a consumer. Also, threatening statements are seen where a debt collector indicates that the consumer may expect horrible life changes as a result of an unpaid debt. You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation is a violation of the FDCPA. Further, a creditor's persistence in continuing to demand payment with increasingly harsh threats of loss of credit and business reputation is harassment and an example of a FDCPA violation. The

standard here for evaluating a violation is also that of the "unsophisticated consumer." More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
HN12 15 U.S.C.S. § 1692e(5) is violated when a debt collector threatens to take action that cannot legally be taken, and § 1692e(10) prohibits debt collectors to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted. More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
HN13 15 U.S.C.S. § 1692e(10) prohibits the use of any false representation or deceptive means to collect any debt. As to § 1692e(10), courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. Phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate § 1692e(10) because they give the consumer the impression that he would undoubtedly require a lawyer. A court interprets the alleged misleading content again through the eyes of the unsophisticated consumer. More Like This Headnote

Banking Law > Bank Activities > Consumer Protection > Fair Debt Collection Practices
HN14 Minimal participation by a debt collector in the collection process may impute liability under the Fair Debt Collection Practices Act (FDCPA) upon that debt collector. The preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation. Furthermore, to assess liability, courts have examined whether the collection agency's function was more of a mailing service or if its duties were more typical to a collection services company. Even in the legislative commentary describing the intent of the FDCPA, it is clear that a debt collector may not imply that a third party may take action unless such action is legal. More Like This Headnote

**COUNSEL: [*1]** For PAUL E BLAIR, ERIKA WEPNER FKA ERIKA T KUNIK, Plaintiffs: Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, John D Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For SHERMAN ACQUISITION L.P., SHERMAN FINANCIAL GROUP LLC, SHERMAN ACQUISITION II, LP, SHERMAN ACQUISITION II GENERAL PARTNER LLC, ALEGIS GROUP LP, ALEGIS GROUP, LLC, Defendants: Claudia Ann Halloran, Richard M. Jacobson, James Leo McKnight, Scott Gordon Thomas, Law Offices of Scott G. Thomas, Chicago, IL; Steven Huntley Mora, Lynn Urkov Thorpe, Mora Baugh Waitzman & Unger LLC, Chicago, IL.

For ACCOUNT SOLUTIONS GROUP, L.L.C., CAPITAL MANAGEMENT SERVICES, INC., Defendants: David Matthew Schultz, Todd Philip Stelter, Hinshaw & Culbertson, Chicago, IL.

For VITAL RECOVERY SVC, Defendant: Michael P. Tone, Peter D. Lindau, Kimberly Elizabeth Blair, Ross, Dixon & Bell, L.L.P., Chicago, IL.

**JUDGES:** Paul E. Plunkett, Senior Judge.

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106    Page 5 of 11

Case 1:05-cv-10339-JLT   Document 8-25   Filed 03/25/2005   Page 5 of 11

**OPINIONBY:** Paul E. Plunkett

**OPINION: MEMORANDUM OPINION AND ORDER**

Paul E. Blair and Erika T. Wepner ("Plaintiffs") have filed a Complaint against Sherman Acquisition LP ("SA"), Sherman Acquisition II LP ("SA2"), Sherman Financial Group ("SFG"), Sherman General Partners **[*2]** SPE, LLC ("SGP"), Sherman Acquisition II General Partner ("SA2GP"), Alegis Group LP ("AGLP"), Alegis Group LLC ("AGLLC") ("Sherman Defendants"), Account Solutions Group LLC ("ASG"), Vital Recovery Services, Inc. ("VRS"), Capital Management Services, Inc ("CMS"), or (all defendants as ("Defendants") seeking to recover statutory damages and attorneys' fees and costs that Plaintiffs incurred in connection with this suit. Defendants have filed a Federal Rule of Civil Procedure (Rule)12(b)(6) Motion to Dismiss all of the claims asserted against them. Defendants assert that Plaintiffs have not presented a claim under which relief can be granted. In addition to adopting the arguments of Sherman Defendants, VRS, ASG, and CMS have added that the claim against them should also be dismissed because they are not the members of the group against which the Complaint is directed. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

**Facts**

Plaintiffs are two consumers who had outstanding debts. Plaintiffs allege that between July 19, 2003 and August 8, 2004, they received standard collection form letters from **[*3]** Defendants. Plaintiffs claim that Defendants are debt collectors. Defendants agree to that label only for purposes of this Motion. According to Plaintiffs, SA, SA2, and SFG are in the business of buying bad debts. (Complaint P 6, 10, 16.) SGP and SA2GP are alleged general partners of SA and SA2, respectively. (Complaint P 8, 18.) AGLP allegedly operates a collection agency and its general partner is AGLLC. (Complaint P 27,29.) In August, AGLP sent a collection letter to Blair, which contained a Sherman Companies Privacy Notice on the reverse side ("Privacy Notice"). (Complaint P 48-51.) In October 2003, ASG sent a collection letter to Blair, allegedly on behalf of SA and SFG, which also had a Privacy Notice on the reverse side. (Complaint P39-44.) In September 2003, CMS sent a letter to Blair, allegedly on behalf of SA and SFG which also included a Privacy Notice. (Complaint P53-58.) In June 2004 VRS sent a collection letter to Wepner that was allegedly on behalf of SA, SA2, and SFG that included a Privacy Notice. (Complaint P60-64.)

These Privacy Notices apprise consumers of the specific information that the Sherman Companies may collect about the consumer. (Complaint Ex. A.) The **[*4]** Sherman Companies are defined as Sherman Financial Group, Sherman Capital Markets, Sherman General Partner, Resurgent Capital Services, Sherman Investments, Sherman Originator, Sherman Holdings, Bailey Holdings, Sherman Acquisition, Alegis Group LLC, Alegis Group LP, Nassau Mortgage, and Ascent Card Services. *Id.* The Privacy Notices specifically articulate that the Sherman Defendant may use "collected information," defined as information they receive from the account file at the time of purchase; information on applications, questionnaires, or through discussions; information about transactions with the Sherman Companies; information they receive from their consumer reporting agencies and other third party providers; and other public information. *Id.* The Privacy Notice also informs the consumer that the Sherman Companies "may enter into agreements with other providers of financial products and services, where those providers may perform services for Sherman Companies, or may join with Sherman Companies to provide products and services to current and former customers." *Id.*

This Complaint is premised on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692. **[*5]** Specifically, Plaintiff alleges that through the Privacy Notice, Defendants violated the FDCPA §1692c(b) for communicating with unauthorized third parties concerning Plaintiffs' debt without the consumers' consent; §1692d(3) for harassing the consumers;

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106    Page 6 of 11

Case 1:05-cv-10339-JLT    Document 8-2    Filed 03/25/2005    Page 6 of 11

§1692d(4) for acting in an abusive manner during the collection process; and §1692e for making misleading representations. Defendants contend that they are not in violation of FDCPA; rather, they are in full compliance of the FDCPA, and affirmatively defend that the Gramm-Leach-Bliley Act ("GLB"), which also regulates sharing personal debt information with third parties, expressly permits their conduct.

## Legal Standard

HN1 On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. _Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000)_. The plaintiff need not include a detailed outline of a claim's basis. He must, however, include "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." _Carr Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984),_ **[*6]** _cert. denied, 470 U.S. 1054, 84 L. Ed. 2d 821, 105 S. Ct. 1758 (1985)_. No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." _Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)_. Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. _Id._

## Discussion

Defendants have moved to dismiss Plaintiffs' Complaint stating that they were in full compliance of the FDCPA, while Plaintiffs allege that Defendants are in violation of 15 U.S.C. §1692. HN2 The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. §1692(e). Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose. _Ross v. Commercial Fin. Servs., Inc., 31 F. Supp. 2d 1077, 1079 (N.D. Ill. Jan. 7, 1999)_ (citing _Cirkot v. Diversified Fin. Servs., Inc., 839 F. Supp. 941 (D. Conn. 1993)_). Whether a communication or other conduct violates the FDCPA is determined by **[*7]** analyzing it from the prospective of an "unsophisticated consumer." _Id._ (citing _Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)_. This standard protects the consumer who is "uninformed, naive, or trusting," while at the same time requiring that the unsophisticated consumer possess objective element of reasonableness. _Id._ Including the objective element in the standard insulates debt collectors from liability for "unrealistic or peculiar interpretations of collection letters." _Id._

## Communication with Third Party

HN3 Section 1692c(b) of 15 U.S.C. generally prohibits debt collectors from communicating with third parties:

> HN4 Communication with third parties. Except as provided in section 804 without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney **[*8]** of the creditor, or the attorney of the debt collector.

HN5 Under Section § 1692c(b), without prior consent, a debt collector may not communicate with a third party regarding the collection of a debt, except to secure "location information"

permitted under strict limitations of §1692b. 15 U.S.C. §1692c(b). Under the Act, a "communication" is defined as "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C.§1692a(2).

Like all cases involving statutory interpretation, it must first be determined if the language of the statute resolves the issue. _Bailey v. Sec. Nat'l Serv. Corp.,_ 154 F.3d 384, 387 (7th Cir. 1998). The Supreme Court has stated that HN6 "[a] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." _U.S. v. Campos-Serrano,_ 404 U.S. 293, 30 L. Ed. 2d 457, 92 S. Ct. 471 (1971) (quoting _Washington Mkt. Co. v. Hoffman,_ 101 U.S. 112, 115-16, 25 L. Ed. 782 (1879)). All provisions of the statute must be considered and each term must be interpreted equally, so as not to deflect [*9] from the meaning of the statute. _West v. Nationwide Credit,_ 998 F. Supp. 642, 644 (W.D.N.C. 1998). Specifically, as to 15 U.S.C. § 1692, every clause and word must be given force and §1692c(b) should be broadly interpreted to prohibit a debt collector from conveying any information to a third party that concerns a debt (except for the purpose of obtaining location information as permitted under §1692b). _Id._ at 645.

HN7 How consumers or audiences are affected by a Privacy Notice is a question of fact, which may be explored by testimony and devices such as consumer surveys. _Walker v. Nat'l Recovery, Inc.,_ 200 F.3d 500, 501 (7th Cir. 1999). A complaint alleging that a particular notice is not clear may not be dismissed under Federal Rule of Civil Procedure 12(b)(6) because district judges are not the proper models for the "unsophisticated consumers" that were contemplated under the statute. _Id._ (noting "unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose [*10] formal education ended after sixth grade"). Further, to learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence. _Id._ at 501. (citing _Johnson v. Revenue Mgmt. Corp.,_ 169 F.3d 1057, 1060 (7th Cir. 1999)).

Plaintiffs claim that Defendants' communication with third parties is a direct violation of §1692c(b). Defendants move to dismiss this claim, arguing that the letters in question were not a "communication" within the meaning of the Act because they did not indicate that the purpose of the letters was debt collection. Rather, they contend the purpose was for offering services and products to Plaintiffs. Here, the statute clearly reads that in connection with the collection of a debt there may not be communication with unauthorized third parties. Plaintiffs assert that Defendants' job inherently is in connection with debt collection and that Defendants should be considered as communicating in connection of the collection of a debt. This point is apparently unclear to the consumer as evidenced by Plaintiffs' and Defendants' varied perceptions of Defendants' conduct.

Additionally, peering through the eyes of the [*11] unsophisticated consumer and leaving our judicial and educational expertise aside, it is reasonable to conclude that an average person could construe the Privacy Notice language to mean that a third party, other than those permitted under §1692c(b), is going to receive information about our debts. Furthermore, Plaintiffs proclaim that they will proffer evidence that may lead us to reach a conclusive determination. Applying the relevant standard in a Rule 12(b)(6) motion, we must construe all facts in favor of Plaintiffs. Plaintiffs allege that, in violation of 15 U.S.C. 1692c (d), Defendants shared their information in connection with the collection of a debt without the third party's consent. Plaintiffs have inferred that they will be able to show through the evidence that Defendants were acting in connection with a debt collection. Accepting as true all well-pleaded factual allegations of the complaint and drawing all reasonable inferences in Plaintiffs' favor, if it is determined that the communication was in fact in connection of a debt, then Plaintiff's claim is viable. Construing this statute so as to not preclude any clause, sentence or word meaning and [*12] broadly interpreting the FDCPA through the eyes of the unsophisticated consumer, we are required to consider Plaintiffs' claim.

## Gramm-Leach-Bliley Act

Alternatively, Defendants affirmatively defend that aside from being in full compliance with the FDCPA, Defendants are in compliance with the Gramm-Leach-Bliley Act ("GLB"), 15 U.S.C. §6801, as well. GLB provides that sharing non-public personal information with third parties is permitted if the required notice is given. However, as in a recent ruling in *Stewart v. Asset Acceptance,* the GLB is irrelevant to this Motion to Dismiss because the Complaint asserts a violation of the FDCPA, not the GLB. *HN8*An affirmative defense is properly asserted "only when the plaintiff pleads itself out of court -- that is, admits all of the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Stewart v. Asset Acceptance LLC,* No. 04-cv-1213-LJM-VSS (S.D. Ind. Nov. 19, 2004) (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004)).* *HN9*The affirmative defense available under the FDCPA is that the **[\*13]** debt collector must show "by a preponderance of the evidence" that the alleged violation was not purposeful, and there was a genuine error despite the fact that Defendants employed reasonable means to avoid violations. 15 U.S.C. 1692k(c). Defendants have not made the requisite showing of this affirmative defense that would dispose of this claim.

## Harassment or Abuse and False Leading or Misleading Representations

Plaintiffs allege that the below-quoted language violates § 1692d(3) and 1692d(4) because it is abusive and harassing Additionally, Plaintiffs allege that the language below violates § 1692e(5) and (10) of the FDCPA because it falsely or misleadingly represents to an unsophisticated consumer that their personal information can and will be shared regardless of their rights and wishes.

Defendants' Privacy Notice reads:

> JOINT AGREEMENTS. The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us or they may join with us to offer customers and former customer new or different products and services. We may share collected **[\*14]** information with these institutions, subject to the confidentiality and security requirements imposed by law.
>
> BETWEEN SHERMAN COMPANIES. From time to time the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

(Compl. Exs. A-D.)

*HN10*FDCPA attempts to eliminate abusive debt collection practices by debt collectors by enacting certain provisions, such as "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Violations of this statute include publishing a "list of consumers who allegedly refuse to pay debts and the "advertisement for sale of any debt to coerce payment of the debt. *Id.* at 1692d(3)§ and 1692d(4). **[\*15]** Furthermore, 15 U.S.C. §1692 also requires that debt collectors refrain from making "false or misleading representations," including threatening "to take any action that cannot legally be taken or

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106

Case 1:05-cv-10339-JLT   Document 8-2   Filed 03/25/2005   Page 9 of 11   Page 9 of 11

that is not intended to be taken," and using "any false representation or deceptive means to collect or attempt to collect any debt"; *id.* at §1692e(5) and (10).

We first address the §1692 d(3) and §1692d(4)claims, which state:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (3) The publication of a list of consumers who allegedly refuse to pay debts
> (4) The advertisement for sale of any debt to coerce payment of the debt.

*HN11*Statements that clearly indicate that the debt collector will be contacting an employer or third parties who are prohibited from being contacted under the FDCPA is a threat to a consumer. *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N.D. Ill. 1979). Also, threatening **[*16]** statements are seen where a debt collector indicates that the consumer may expect horrible life changes as a result of an unpaid debt. *Herbert v. Wexler*, 1995 U.S. Dist. LEXIS 12888, *7 (N.D. Ill. Aug. 31, 1995) (noting that "You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation" is a violation of FDCPA). Further, a creditor's persistence in continuing to demand payment with increasingly harsh threats of loss of credit and business reputation is harassment and an example of a FDCPA violation. *Florence v. Natl. Sys.*, 1983 U.S. Dist LEXIS 20344, *8 (D. Ga., 1983).

The standard here for evaluating a violation is also that of the "unsophisticated consumer." Plaintiffs assert that informing the consumer that his information might be shared with unauthorized third parties is an implicit threat of invasion of privacy. The inclusion of such a statement is not a threat. In fact, Defendants state that all disclosures and sharing will be in a manner "otherwise permitted by law." Here, Defendants have not harassed or clearly threatened **[*17]** Plaintiffs that they would publish a list of consumers, nor have Defendants threatened any horrible life change or indicated that they will resort to clear illegal actions. Also, Defendants did not repeatedly call Plaintiffs with increased intimidation to pay a debt or threaten to advertise the sale of Plaintiffs' debt. Rather, Defendants have informed Plaintiffs of their rights and have indicated that they will only make disclosures that they believe are permitted by law. Therefore, through the eyes of an unsophisticated consumer, Defendants have not harassed or threatened Plaintiffs as contemplated under 15 U.S.C. §1692d(3) and d (4).

Next, we address *HN12*§ 1692e(5), which is violated when a debt collector threatens to take action that cannot legally be taken, and §1692e(10), which prohibits debt collectors to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has **[*18]** already been made." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted. *Gammon*, 27 F.3d at 1257-58.

Plaintiffs say that §1692e(5) was violated because stating that they would disclose to unauthorized third parties, whether they actually did, is a violation of its own. Even though this does not infer that legal action is imminent, an unsophisticated consumer could

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106    Page 10 of 11

Case 1:05-cv-10339-JLT  U.S. Document 8-25106  Filed 03/25/2005    Page 10 of 11

reasonably interpret the statement to imply that Defendants could execute the actions noted in the Privacy Notice. Therefore, because it is undetermined whether the actions the Defendants' claim to make are actually authorized or unauthorized, the §1692e(5) claim must remain.

Similarly, *HN13* §1692e(10) prohibits the use of any false representation or deceptive means to collect any debt. As to § 1692e(10), courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. U.S. v. Nat'l Fin. Servs., 98 F.3d 131, 136, 138 (4th Cir. 1996) [*19] (stating that phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate § 1692e(10) because it gives the consumer the impression that he would undoubtedly require a lawyer). We interpret the alleged misleading content again through the eyes of the unsophisticated consumer. Gammon, 27 F.3d at 1257.

In this case, Plaintiffs indicate that Defendants have violated §1692e(10) because they misstated the consumer's rights with regard to having to affirmatively notify Sherman Defendants not to share their information. Requiring the consumer to affirmatively state that they do not want their information shared is not accurate, if the communication were in connection with the collection of the debt. Defendants do imply that they will share this information with potentially unauthorized third parties without the consumer's consent. Because whether the communication was made in connection with the collection of a debt has yet to be determined and an actual disclosure *would* be a violation of the consumer's rights, this statement would violate 15 U.S.C. §1692e(10). [*20] Therefore, as to §1692e (5) and §1692e(10), Plaintiffs present tenable claims and they may not yet be disposed.

VRS, ASG, and CMS, have offered added support for their Motion to Dismiss under Rule 12(b) (6). VRS, ASG, and CMS assert that the crux of the Complaint is based on the communication that is offered in the Privacy Notice which is given on behalf of the Sherman Financial Group LLC and its family of companies. (Compl. Exs. A-D). In the Privacy Notice, the companies that are part of the Sherman Companies are individually listed, and VRS, ASG, and CMS state that because their companies are excluded from this list, they are not proper Defendants. Plaintiffs argue that even though VRS, ASG, and CMS may not have authored the notices, they are "using" the notices, and according to the 15 U.S.C. §1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with collection of a debt." 15 U.S.C. §1692e. Plaintiffs allege that by simply allowing the Privacy Notice to be included with their correspondence, ASG, VRS, and CMS have used the Privacy Notice. Further, because the Privacy [*21] Notice has alleged violations of the FDCPA, VRS, ASG, and CMS should be liable for the information contained in the notices. ASG and CMS further contend that they did not communicate to any third parties in connection with the collection of a debt, so according to them, if there were any violations, they could only be sustained as to §1692e.

The Seventh Circuit has found that *HN14* minimal participation by a debt collector in the collection process may impute liability under the FDCPA upon that debt collector. Peters v. AT&T, 43 F. Supp. 2d 926 (N.D, Ill. March 30, 1999) (quoting "the preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation"). White v Goodman, 41 F. Supp. 2d 794 (N.D. Ill. 1998). Furthermore, to assess liability, courts have examined whether the collection agency's function was more of a mailing service or if its duties were more typical to a collection services company. Id. Even in the legislative commentary describing the intent of the FDCPA, it is clear that a debt collector may not imply that a third party may take action unless such action is legal. 53 Fed. Reg. 50097, 20106 (Dec. 13, 1988). [*22]

Here, VRS, ASG, and CMS did have at least minimal participation in Plaintiffs' debt collection process. VRS, ASG, and CMS included the Privacy Notices in their correspondence and they, therefore, should be responsible for the violation that may be contained therein. Sherman

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 25106

Case 1:05-cv-10339-JLT Document 8-25106 Filed 03/25/2005 Page 1 Page 11 of 11

Defendants imply that they may share information and because Sherman Defendants' liability has not yet been determined, we cannot conclusively state at this time whether VRS, ASG and CMS have adopted such illegal implications. Once this step is completed, then the liability surrounding VRS, ASG, anc CMS can be properly assessed and determined whether these companies are jointly responsible for the Privacy Notice's effect. Therefore, the above discussion regarding all claims will apply also to VRS, ASG, and CMS.

## Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. As to 15 U.S.C. §1692d(3) and d(4) Defendants' 12(b)(6) Motion to Dismiss is granted. As to 15 U.S.C. §1692c(b), §1692e(5) and §1692e(10) Sherman Defendants 12(b)(6) Motion to Dismiss is denied.

## ENTER:

## SENIOR [*23] UNITED STATES DISTRICT JUDGE

Paul Plunkett

## DATED: DEC 9 2004

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 25106**
View: Full
Date/Time: Thursday, March 24, 2005 - 2:52 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELVIN T. STEWART, individually | ) | |
| and as next friend of THELMA R. STEWART, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04-cv-1213-LJM-VSS |
| | ) | |
| ASSET ACCEPTANCE LLC, | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is now before the Court on the Defendant's Motion to Dismiss. Defendant, Asset Acceptance LLC ("Asset"), contends that plaintiff, Melvin T. Stewart, individually and as next friend of Thelma R. Stewart ("Stewart"), failed to state a claim upon which relief can be granted in his complaint. Stewart asserts that Asset violated the Fair Debt Collection Practices Act ("FDCPA") in the privacy notice attached to a collection letter he received. Asset states that the privacy notice is in compliance with the Gramm-Leach-Bliley Act, and that there has been no actual violation of the FDCPA.

For the reasons discussed herein, the Court finds that Plaintiff's complaint is sufficient to state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED** with respect to claims under § 1692c or § 1692d.

## I. FACTS ALLEGED IN COMPLAINT

Stewart alleges that Asset is a debt collector under the FDCPA. (Compl. at ¶ 7). Asset is in the business of buying bad debts allegedly owed by consumers, including credit card debts, for

a fraction of face value and then enforcing the debts against the consumers. (Compl. at ¶ 6).

On or about December 8, 2003, Asset sent Thelma Stewart a letter that sought to collect an alleged debt incurred for personal, family, or household use. (Compl. at ¶¶ 13, 15). Melvin Stewart, Ms. Stewart's son, received the letter because he handles his mother's affairs under a power of attorney. (Compl. at ¶¶ 4, 14). The letter contained a collection demand with a notice of the privacy and information disclosure practices of Asset on the back. (Compl. at ¶ 17).

The privacy notice states "We collect nonpublic personal information about you" from "applications or other forms," "your transactions with us, prior owners of your account, our affiliates, or others," and "a consumer reporting agency." (Compl. at ¶ 18, Ex. A). The plaintiff alleges that this information is integrally related to debt collection. (Compl. at ¶19). The privacy notice then states that the information may be disclosed to third parties including "financial service providers such as credit grantors, collection agencies and debt buyers" and that Asset "may disclose nonpublic personal information about you to affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl. at ¶ 20, Ex A).

Stewart alleges that many of these disclosures would be prohibited by the FDCPA because they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶ 21). Stewart contends that several of the listed uses of the nonpublic personal information would amount to publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. (Compl. at ¶ 22). Stewart argues that both activities would be a violation of the FDCPA if they were actually to occur, and Stewart alleges that Asset violates 15 U.S.C. §1692e merely in stating that it would engage in these

2

activities or has the right to do so. (Compl. at ¶ 21, 22). Stewart claims that inclusion of such statements in a debt collection letter amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid. (Compl. at ¶ 25).

The privacy notice contains an invitation to "opt-out" of disclosures of personal information and directs Stewart to call or mail a form to Asset "if [the consumer] prefer that we not disclose nonpublic personal information . . . to nonaffiliated third parties . . . ." (Compl. at ¶ 24, Ex. A). Plaintiff concludes that this procedure is a misstatement of consumer's rights and, therefore, a violation of 15 U.S.C. 1692e. The misstatement occurs because under 15 U.S.C. 1692c, the consumer must grant express permission directly to the debt collector before the debt may be disclosed to anyone other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." *Id.*

Stewart brings this suit as a class action on behalf of a class of people with addresses in Indiana, Illinois, or Wisconsin who received the same privacy notice. (Compl. at ¶¶ 26-27).

## II. RULE 12(B)(6) STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal for "failure to state a claim upon which relief may be granted." *United States v. Clark County, Indiana*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000). When considering a motion under this rule, the Court must examine the sufficiency of plaintiff's complaint, not the merits of the lawsuit. *Id.* The Court shall accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Id.* Dismissal under Rule 12(b)(6) is proper only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Chavez v. Ill. State Police*, 251 F.3d 612,

648 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Id.* (quoting *Veazey*, 194 F.3d at 854).

Stewart attached six exhibits to his Response to Defendant's Motion to Dismiss that were not attached to the complaint. (Pl.'s Resp., Ex. A, B, C, D, E, F). Where the parties submit material outside of the pleadings, the Court is obligated to either not consider the extraneous submissions in ruling on the motion or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

The Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment, and accordingly, the exhibits attached to Plaintiff's Response and references to the exhibits in the Response are excluded from the Court's consideration.

## III. <u>DISCUSSION</u>

Stewart's complaint is sufficient to invoke the FDCPA, which requires that the challenged action be taken by a "debt collector" in connection with the collection of a "debt." 15 U.S.C. § 1692a. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[1] 15 U.S.C. § 1692a(6). Stewart states that Asset is a "debt

---

[1] The statutory definition of debt collector does enumerate six exceptions to the definition, however Stewart's complaint does not allege that Asset falls within any of these exceptions.

4

collector" as defined above, and that it is engaged in the business of buying bad debts allegedly owed by consumers and enforcing the debts. (Compl. at ¶ 6-7).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Stewart states that the alleged debt was incurred by an individual for personal, family or household use. (Compl. at ¶ 15).

Finally, Stewart states that the letter which contained the privacy notice sought to collect a debt. (Compl. ¶ 15). The letter, attached to the complaint, and therefore part of the pleadings, states in bold print before the signature, "This is an attempt to collect a debt and any information obtained will be used for that purpose." (Compl., Ex. A). Stewart's complaint is sufficient to allege that the challenged action was performed in connection with the collection of a debt; the next question is whether the complaint is sufficient to state a violation of the FDCPA upon which relief could be granted.

Stewart does not allege any actual violation of 15 U.S.C. §1692c or §1692d. Asset's privacy notice states that it collects and may disclose certain nonpublic personal information to third parties including "[f]inancial service providers such as credit grantors, collection agencies and debt buyers" as well as "affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl., Ex. A.). Stewart alleges that some of these disclosures would amount to publication of a list of debtors, which is defined as "harassment" and a violation of 15 U.S.C. § 1692d. (Compl. at ¶¶ 10, 20, 22). Similarly, Stewart alleges that disclosure of personal information to some of the third parties listed in Asset's privacy notice would be a violation of 1692c, which prohibits

5

communication "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶¶ 9, 20-21).   Although Stewart alleges that "actual publication of such lists would violate 15 U.S.C. §1692d . . . " and "[a]ctual disclosures of this nature would violate 15.U.S.C. §1692c . . . ," Stewart claims no actual disclosures in violation of the FDCPA.  To the extent that Stewart's complaint attempted to claim relief under 15 U.S.C. § 1692c or § 1692d, those claims are dismissed.[2]

However, Stewart says that Asset's mere assertion that it has the right to make such disclosures or publish such lists violates 15 U.S.C. §1692e.

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ***
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Stewart highlights two of the specifically enumerated violations of this section, subsections (5) and (10). Stewart alleges two potential violations of the section: the privacy notice's assertion of the right to make third party disclosures of the consumer's nonpublic personal

---

[2] This includes Stewart's assertions in the complaint that Asset engages in the practice of selling lists of consumers who have not paid their debts to subprime credit card companies who then offer to issue a card to the consumer if they will put some or all of the unpaid debt on the card.  While this may constitute a violation of §1692d, Stewart does not allege that his or his mother's names have been sold on any such list, and therefore does not state any violation of the act. Any additional claim regarding violation of §1692d is dismissed.

information and the privacy notice's opt-out procedure.

As mentioned above, Stewart alleges that by saying that it collects and may disclose information to certain affiliated and nonaffiliated third parties, Asset is implicitly threatening to take such action, or publish lists of consumers with debts if the consumer does not pay. Because these actions "would be" violations of the FDCPA, Stewart states that these are threats to take an action that cannot legally be taken under § 1692e(5).

Stewart also points to the "opt-out" procedure described in Asset's privacy notice as a false representation. Asset's notice states that in order to decline information sharing with nonaffiliated third parties, the debtor must call a toll free number or fill out a form at the bottom of the letter and mail it to Asset. The form has a box to check that says "I wish to exercise my rights to opt out of certain third-party information sharing, as described in this privacy notice." The form then asks for the debtor's name, phone number, and address "to change our records to accurately reflect your desire to opt out."

Stewart contends that this procedure is a misrepresentation because it is an inaccurate statement of a consumer's rights under 15 U.S.C. § 1692c:

> (b) Communication with third parties. Except as provided by § 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[3]

Asset's notice asks a consumer to opt-out of disclosure, rather than give prior consent directly

---

[3] The exception in § 1692b refers to communication with a person other than the consumer for the purpose of acquiring information to locate the consumer, and limits the scope of such communications.

to the debt collector before any such disclosure could occur. In light of the clear statement on the front of the letter that it "is an attempt to collect a debt and any information obtained will be used for that purpose," and the fact that the opt-out provision asks for information from the consumer under an alleged misstatement of the consumer's rights, Stewart's complaint is sufficient to state a claim upon which relief could be granted under § 1692e(10), prohibiting the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Asset's contention that the privacy notice comports with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 ("GLB"), is irrelevant to its Motion to Dismiss. Stewart's complaint does not allege a violation of 15 U.S.C. § 6801, but alleges that Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Asset's assertions about the GLB are in the nature of an affirmative defense to Stewart's claim. "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Britsol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). When a valid, unmistakable defense is obvious from the face of the complaint so as to render the suit frivolous, the suit can be dismissed before defendant raises the defense in its answer. *See Walker v. Thompson*, 288 F.3d 1005, 1009-1010 (7th Cir. 2002). The FDCPA provides for an affirmative defense. A debt collector is not liable if it shows "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Stewart's complaint does not admit the elements of this defense for Asset. Moreover, it is not "unmistakable" that alleged compliance with the GLB would establish that any FDCPA violation was unintentional error

8

or that Asset had any procedures in place to avoid such error.

Without getting into the merits of the case, the Court finds that the pleadings are sufficient to state a claim upon which relief could be granted under the FDCPA.

## IV. CONCLUSION

For the reasons discussed herein, the Court finds that plaintiff's, Melvin T. Stewart, individually and as next friend of Thelma R. Stewart, complaint is sufficient to state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED** with respect to claims under § 1692c or §1692d.

IT IS SO ORDERED this 19th day of November, 2004.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Cathleen Maria Combs
EDELMAN, COMBS, LATTURNER LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER LLC
courtecl@aol.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

# EXHIBIT C

15 S. MAIN ST SUITE 600
GREENVILLE, SC 29601

ADDRESS SERVICE REQUESTED

**ALEGIS GROUP LP**
1-800-580-4060
(713)784-9966
Hours of Operation
8AM-9PM EST Monday - Thursday
8AM-12PM EST Friday - Saturday

IIIIIIIIIIII
Redacted

PREVIOUS CREDITOR: Sears
CURRENT CREDITOR: Sherman Acquisition II LP
ACCOUNT NUMBER: Redacted
CURRENT BALANCE: $10,532.47

02-24-2004

Redacted

IIIuuIIIIIuuIIuIIuIIuIIuIIuuIIuIIuIIuuuIIuIIuuIIII
MARY L BURT
C/O JOYCE HENDERSON
2 OLD COACH RD
CANTON MA 02021-1623

A161
IX2
SHFW-HS

ALEGIS GROUP LP
PO BOX 741148
HOUSTON TX 77274-1148

IIuuIIuuIuIIIuuIIuIuuIIuuIIuIIuIuIuIuIuIuIIuuIIuuII

- - - - - - - - - - - - - - - - - - - - - - - - - - *IMPORTANT: To receive proper credit, be sure to enclose this portion with your payment in full.*

Dear MARY L BURT:

Sherman Acquisition II LP has authorized Alegis Group LP to offer a settlement in lieu of the balance owed on your account number Redacted

This offer is being made for a limited time only. Alegis Group LP can only accept settlement of the above debt if payment is received in our office no later than fifteen (15) days from the date of this letter.

In the event that all terms of this letter are met, Sherman Acquisition II LP agrees that all collection efforts against MARY L BURT for the above named account will cease and said account will be considered satisfied.

*This communication is sent to you by Alegis Group LP, a professional debt collector.*

### Please read the following important notices as they may affect your rights.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency. If you wish to discuss this matter, please call us direct between the hours of 8 AM and 5 PM EST at the toll free number listed on this letter.

## PRIVACY NOTICE

This privacy notice is being given on behalf of Sherman Financial Group LLC and its family of companies (the "Sherman Companies").

At the Sherman Companies, we are committed to protecting personal information we obtain about you. Please take a moment and read this privacy notice for some important information about your rights. This notice is being provided by the Sherman Companies as required by the Federal Financial Privacy Law, 15 USC 6801-6810. The following financial and non-financial entities are the "Sherman Companies":

Sherman Financial Group LLC
Sherman Capital Markets, LLC
Sherman General Partner SPE LLC
Resurgent Capital Services, LLC
Alegis Group Loan Servicing, LLC
Sherman Investments SPE, LLC

Sherman Originator LLC
Sherman Holdings LLC
Bailey Holdings, Inc.
Sherman Acquisition LLC
Sherman Acquisition TA, LP

Sherman Acquisition LP
Alegis Group LLC
Alegis Group LP
Nassau Mortgage, LLC
Ascent Card Services, LLC

**What the Policy Covers.** This policy covers the collection and disclosure of personal information that we receive through your relationship with any of the Sherman Companies.

**Information We May Collect.** Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you. All of the information that we collect is sometimes referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** We restrict access to collected information about you to those employees who need to know such collected information and certain third party service providers who provide support services to us. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Joint Agreements.** The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services. We may share collected information with these institutions, subject to the confidentiality and security requirements imposed by law.

## Sharing Collected Information With Affiliates and Third Parties

**Between Sherman Companies.** From time to time, the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

**Other Sharing.** We share collected information about customers and former customers (A) with other companies in order to effect, administer or enforce any transaction between you and the Sherman Companies, (B) with law enforcement officials, to prevent fraud, and (C) otherwise as permitted by law.

# EXHIBIT D

notice, this office will provide you with the name and address of the original credit grantor, if different from the current credit grantor.

(Add necessary state notice requirement)

*Exhibit A-1*

## PRIVACY NOTICE

This Privacy Notice is being given on behalf of Sherman Financial Group LLC and its family of companies.

At Sherman Financial Group LLC and its family of companies, we are committed to protect personal information we obtain about you. Please take a moment and read this Privacy Notice for some important information about your rights. This notice is being provided by Sherman Financial Group LLC and its family of companies as required by the Federal Financial Privacy Law 15, USC 6801-6810. The Sherman Financial Group LLC family of companies includes the following entities.

| | | |
|---|---|---|
| Sherman Financial Group LLC. | Sherman Originator LLC | Sherman Acquisition LP |
| Sherman Acquisition LLC | Sherman Holdings LLC | Alegis Group LLC |
| Sherman General Partner SPE LLC | Bailey Holdings, Inc. | Alegis Group LP |
| Resurgent Capital Services LLC | Sherman Capital LLC | Nassau Mortgage LLC |
| Alegis Group Loan Servicing LLC | | |

**What the policy covers.** This policy covers Customer Information, which means personally identifiable information about a consumer, or a consumer's current or former relationship with any of the Sherman Financial Group LLC family of companies.

**Information we may collect.** Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the companies within the Sherman Financial Group LLC family of companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases providers containing publicly available data about you.

**No sharing of information**: We do not disclose any non-public personal information about our customers to anyone outside of the Sherman Financial Group LLC family of companies, except as permitted by law.

**Confidentiality and security of information.** We restrict access to nonpublic personal information about you to those employees who need to know such information and certain third party service

41

providers who provide support services to us.  We maintain physical safeguards (like restricted access) electronic safeguards (like encryption and password protection), and procedural safeguards, (such as authentication procedures) to protect personal information about you. Sometimes we use other companies to provide services for us (such as services relating to our efforts to effect, administer or enforce any transaction between you and us). We choose those companies very carefully. They must keep the information we share with them safe and secure and we do not allow them to use or share the information for any purpose other that the job they are hired to do.

**Contacting Sherman Financial Group LLC and its family of companies.** Should you wish to contact us for any reason, you may write to us at P.O. Box 740281, Houston, Texas 77274-0281.

9700 BISSONNET, SUITE 2000                                    ALEGIS GROUP LP
HOUSTON, TX 77036

ADDRESS SERVICE REQUESTED

▌▌▌▌▌▌▌▌▌▌
Redacted

                                        PREVIOUS CREDITOR:
                                        CURRENT CREDITOR: SHERMAN ACQUISITION, LP
                                        ACCOUNT NUMBER:    Redacted
                                        BALANCE: $1,331.26

08-24-2001

Redacted

ll..l.l.l.l.l..l.ll.l.l.l.l.l.l.l.l.l.l.l.l.l.l.ll         ALEGIS GROUP LP
SAMP - LTR# WOCB-HS                          A028         PO BOX 741148
123 MAIN STREET                              SA1          HOUSTON, TX 77274-1148
ANYTOWN MA 01253-0513                        WOCB-HS
                                                          ll..ll..l.l.l.ll..l.l.l..ll..ll.l.l.l.l.l..ll.l..ll

IMPORTANT: To receive proper credit, be sure to enclose this portion with your payment in full.

Dear SAMP - Redacted :

SHERMAN ACQUISITION, LP has purchased the above referenced account from the above
referenced previous creditor. SHERMAN ACQUISITION, LP has placed your account with this
agency for collection. SHERMAN ACQUISITION, LP has advised us that interest will
continue to accrue on your account as provided for in your agreement with the original
credit grantor.

Your account is seriously past due and must be paid in full or we will proceed with
appropriate collection activity. Please remit the entire balance due to our office using
the return envelope provided. If you have any questions or wish to discuss your Account
with one of our representatives please call us at the toll free number listed above.

This is an attempt to collect a debt and any information obtained will be used for that
purpose. This communication is from a debt collector.

Unless you notify this office within 30 days after receiving this notice that you
dispute the validity of the debt or any portion thereof, this office will assume this
debt is valid. If you notify this office in writing within 30 days from receiving this
notice, this office will obtain verification of the debt or obtain a copy of a judgment
and mail you a copy of such judgement or verification. If you request this office in
writing within 30 days after receiving this notice, this office will provide you with
the name and address of the original creditor, if different from the current creditor.

In conformance with the Federal Fair Credit Reporting Act, following is the notification
address which you should write to Alegis Group LP in the event that you dispute the
inaccurate specific information reported by Alegis Group LP to any credit-reporting
agency: Alegis Group LP, Dispute Resolution Department, P.O. Box 740281, Houston, TX
77274-0281.

You have the right to make a written or oral request that telephone calls regarding your
debt not be made to you at your place of employment. Any such oral request will be
valid for only ten (10) days unless you provide written confirmation of the request
postmarked or delivered within seven (7) days of such request. You may terminate this
request by writing to the collection agency.

If you wish to discuss this matter, please call us direct, between the hours of 8 am and
5 pm est, at the toll free number listed on this letter. Local address 5230 West
Washington Street, W. Roxbury, Massachusetts, 02132.

SEE REVERSE SIDE FOR IMPORTANT PRIVACY NOTIFICATION FROM YOUR CREDITOR

ALGSF2

# EXHIBIT E

57 of 109 DOCUMENTS

Copyright 2004 Philadelphia Inquirer
All Rights Reserved
Philadelphia Inquirer

**August** 25, 2004 Wednesday CITY-D EDITION

**SECTION:** BUSINESS; Pg. C01

**LENGTH:** 799 words

**HEADLINE:** Consumer Watch / How old can bills be and still haunt you?;
Most private debts, such as credit cards, can't be enforced after four years. But some old debts can linger much longer.

**BYLINE:** By Jeff Gelles; Inquirer Columnist

**BODY:**

Commit a minor offense, and Pennsylvania law says you're off the hook unless prosecution begins within two years.

Commit a major crime, and the sword of justice dangles over your head somewhat longer. For burglary or robbery, the state's statute of limitations runs out after five years.

So how long do you have to worry that an old bill might come back to haunt you?

There's a finite answer for most private debts - say, money you supposedly owe a credit-card company. Typically, such debts can't be enforced in court after four years.

But if the party dunning you happens to be the State of New Jersey or its subcontractor, the answer may be closer to "forever," as Mark and Maureen Gross recently discovered.

The Grosses' story dates to the late 1980s, long before they were married.

He was living in central New Jersey at the time, working as the finance manager for a car dealership during what his wife jokes were his "wilder, single days."

It's hard to imagine Mark Gross, a Philadelphia police dispatcher for the last 10 years, ever being all that wild. But no one disputes that he did, in fact, get into trouble with his driver's license.

The details don't matter much, except to say that Gross got ticketed for speeding and driving with a suspended license. Thankfully, there were no accidents, and nobody was hurt.

Gross paid a $500 fine, and $100 to restore his driving privileges. And he also paid a surcharge assessed by the state - $250 a year for at least two years.

Here's where the story gets fuzzy.

The N.J. Motor Vehicle Commission now says that Gross, a Levittown native who moved back to Pennsylvania about a year after the incident, never paid $207 he owed toward the last installment of a three-year surcharge.

To Gross, this sounds like dredging up ancient history and charging him for it.

Gross says he first heard about the old bill in the spring - a dozen years after it was supposedly due. He believes he paid whatever he was charged in the early '90s. But he doesn't have all his old records, and it's long past the time when his bank would still have his canceled checks.

Gordon Deal, a spokesman for the Motor Vehicle Commission, says the state's records are clear enough.

"We're reasonable. These are not monsters here," Deal says of the commission's staff and the outside contractors first hired in 1994 to go after delinquent accounts.

In the fall, the state conducted an amnesty for unpaid surcharges. Deal says it collected $17 million by agreeing to drop interest and penalties that had accrued over the years.

After Gross contested the out-of-the-blue bill this spring, the state offered a similar break, volunteering to drop $150 in penalties in return for his paying the $207.

Fair or not, there's apparently little else Gross can do. He can't prove he paid the last surcharge, so he'll just have to take New Jersey's word that he didn't.

The picture is different, though, for consumers dunned for questionable old private bills, according to lawyers who specialize in defending against debt collections.

Michael Donovan, of the Center City firm Donovan Searles, says such actions against Pennsylvania residents would be governed by a four-year statute of limitations on contract disputes. The clock would start when the debt was classified as in default.

That doesn't mean you don't still owe an older debt, at least in a moral sense. But it does mean that a creditor couldn't bring legal action against you to recover the money - or threaten legal action to try to get you to pay.

The logic of such laws isn't to encourage you to become a deadbeat. It's to protect you from being billed years later, when memories and records may be lost, for debts you already paid or never really owed in the first place.

The laws haven't stopped collection companies, which may buy old accounts for pennies on the dollar, from trying hard to turn them into cash.

One recent tactic involves offering a credit card to a person who allegedly owes an old debt, on the condition that the debt be charged to the new card. The effect, Donovan says, is to renew the debt, resetting the clock on the statute of limitations.

For information on your rights under the federal **Fair Debt Collection** Practices Act, go to www.ftc.gov/bcp/conline/pubs/credit/fdc.htm

If you're dogged by accusations that you owe a questionable debt, you may need a lawyer, but the good news is that you may be able to find one without having to pay. If you win a case under the federal act, you'll be entitled to recover attorneys' fees.

One way to find a lawyer experienced in debt-collection cases is to contact the National Association of Consumer Advocates (www.naca.net

Contact columnist Jeff Gelles at consumerwatch@phillynews.com

**LOAD-DATE:** August 25, 2004