**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
| GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO FILE REPLY BRIEF**

On April 1, 2005, Defendants moved for leave to file a reply brief in support of their Motion to Dismiss Plaintiff's Complaint. Plaintiff opposes Defendants' proposed reply brief because the brief raises the exact same arguments previously discussed, raises numerous issues of fact which are inappropriate for purposes of a motion brought pursuant to Fed. R. Civ. Proc 12(b)(6), and raises new arguments related to whether or not the Plaintiff has standing to bring this claim, to which Plaintiff will not have the opportunity to respond.

Defendants continue to claim that they do not disclose consumer information to third parties and "invite" the Plaintiff to submit evidence of such sharing. Plaintiff is not required to submit evidence of sharing for purposes of a 12(b)(6) motion and is entitled to rest on her pleadings. The Michigan District Court's decision in Ezell v. Sherman Acquisition II, LP, 04-72119 (E.D. Mich. 2005) was decided on summary judgment, not on a 12(b)(6) motion to dismiss and did not involve the same cause of action. In her Complaint, Plaintiff has alleged that actual disclosures of the prohibited information would violate 15 U.S.C. 1692c and Defendants' assertion that they have the right to make such disclosures, which is false, violates 15 U.S.C.

1692e. Compl. ¶ 39. Nothing more is required.

> An 'intricately detailed description of the asserted basis for relief' is not required. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149-50, 80 L. Ed. 2d 196 , 104 S. Ct. 1723 n.3 (1984). 'The complaint must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Cajigas v. Banco de Ponce, 741 F.2d 464, 468 n.12 (1st Cir. 1984)(quoting Welcome Center, 466 U.S. at 149-50 n.3, and Conley, 355 U.S. at 47). This fashion of stating a claim is referred to as "notice pleading." Id.

Boston & Me. Corp. v. Hampton, 987 F.2d 855, 865 (1st Cir. 1993).

As the Second Circuit has stated, if Defendants want to rely on material outside of the complaint, they must file a motion for summary judgment after plaintiff has had an adequate opportunity for discovery. Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000); Kopec v. Coughlin, 922 F.2d 152 (2d Cir. 1991). Nonetheless, Plaintiff has attached hereto, examples of Defendants' disclosures. (Exhibit A).

Defendants again claim that their privacy notice is in compliance with the Gramm Leach Bliley Act, which Plaintiff has previously pointed out is an affirmative defense and inappropriate at this juncture. There is yet another decision which further supports Plaintiff's position that the GLB is totally irrelevant to this case. In Chapman v. Worldwide Asset Mgmt., LLC et al., 04 C 7625 at 9-10 (N.D. Ill. Apr. 6, 2005), Judge Hart stated "[j]ust because conduct does not violate one statute does not automatically mean that the conduct does not violate other statutes. Defendants point to no reason why the GLB should be considered to have amended the FDCPA so as to delete some of its provisions. The FDCPA pertains specifically to communications related to debt collecting; the GLB does not." (Attached as Exhibit B).

With respect to Plaintiff's standing, Defendants concede that a family member who receives a false and misleading letter has standing to bring a claim for a violation of 15 U.S.C. § 1692e. Henderson is a family member. (Compl. ¶ 21).

> 15 U.S.C. § 1692k states that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." See also Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 649, n.1 (6 Cir.

> 1994)("Only a consumer has standing to sue for violations under 15 U.S.C. § 1692c. . . . Section 1692c, however, appears to be the most restrictive of the FDCPA's provisions. The other provisions are not limited to 'consumers' and thus are broader than 1692c.") "Many courts have held that 'person' includes non-debtors who have nonetheless been harmed by an improper debt collection practice." Flowers v. Accelerated Bureau of Collections, Inc., 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313, *7 (N.D. Ill. 1997). At a minimum, this protection extends to people with the authority to open and read the debtor's letters. See Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 650 (6 Cir. 1994); see also Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 175 (W.D.N.Y., 1988)( any person who comes in contact with proscribed debt collection practices may bring a claim under the FDCPA).

Dolan v. Schreiber & Assocs., P.C., 2002 U.S. Dist. LEXIS 6005, *7-8 (D. Mass. 2002)(Exhibit C).

Defendants also raise a new argument which Plaintiff has never had an opportunity to respond. Defendants claim that Plaintiff has not suffered an "injury in fact" and Plaintiff's harm is "conjectural or hypothetical." This argument was not raised in Defendants' motion to dismiss. It is without merit. The right to recover statutory damages creates standing to sue and gives Plaintiff the right to sue. White v. Arlen Realty & Dev. Corp., 540 F.2d 645, 649-50 (4th Cir. 1975); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003); Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998).

Finally, Defendants' citation to Conboy v. AT&T Corp., 241 F.3d 242 (2nd Cir. 2001) does not provide support for their motion. The Conboy decision was based upon the Court's reading of 15 U.S.C. § 1692(e)(11) and the claim that the Plaintiff was not a "consumer" under the FDCPA. Notably, this section states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section
>
> (11) The failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . . .

However, Defendants' fail to point out that the enumerated sections of 15 U.S.C. § 1692e, which Plaintiff has sued under, sections (5) and (10)[1] (Compl. ¶34) are not dependant upon a collector's communication with "consumers."

## II. CONCLUSION

For the reasons stated, the Court should deny the Sherman defendants' motion to file a reply and the Sherman defendants' motion to dismiss.

Respectfully submitted,

s/Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons

---

[1] 15 U.S.C. § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

P.O. Box 479
Pawtucket, RI 02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

J:\Case\sherman-henderson12.848\pleading\ECF.Resp.Opp.4.12.05.wpd

**CERTIFICATE OF SERVICE**

I, Jeremy P. Monteiro, hereby certify that on April 12, 2005, a copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO FILE REPLY BRIEF, was filed electronically. Parties were served a copy of the filed document via the below listed method.

Notified via the Court's electronic filing system:

Steven S. Broadley
Jennifer L. Finger
**Posternak Blankstein & Lund, LLP**
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199-8004
(617) 367-2315 (Fax)

Served via US Mail and Facsimile:

Michael S. Poncin, Esq.
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

s/Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI 02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

# EXHIBIT A



# Notice

Important information on reverse side regarding your legal rights and rate, fee and other cost information.

**Call 1-866-206-9770**

You are Pre-approved*

ROBERT E MCLEOD
PO BOX 236
KOKOMO IN 46903-0236

A001
CV100

Alegis Group Reference Number: 02277412

Robert,

Alegis Group, L.P. wants you to receive a PRE-APPROVED* Visa credit card issued by Plains Commerce Bank. This credit card is being offered to you through the Ascent Card program. This unique opportunity allows Sherman Acquisition II LP customers, like you, to address their old debt and at the same time receive a Visa credit card.

Sherman Acquisition II LP purchased and now owns an old debt you originally had with AMERITECH (account number 3174377334001). Your current total balance due is 144.97.

You can transfer this old debt balance to a Visa credit card with the Ascent Card program. When you make at least your minimum monthly payments on a timely and consistent basis, you build purchasing power on your Visa. You can use your ... that Visa credit cards are accepted.



## Ascent Card Program Highlights

- Old debt is transferred to your own VISA® credit card
- Make at least your required minimum monthly payments and you may build purchasing power on your credit card
- You may become eligible for credit line increases
- Your credit card is PRE-APPROVED *
- There is no cash deposit required
- First year's Annual Fee is waived
- No processing fee or application fee

***PRE-APPROVED TERMS**
To obtain this credit card, you agree to transfer the balance of your old debt to the credit card. You will need to make at least your required minimum payments before you can use your credit card, since it will have no available credit when you receive it. This offer is subject to the following conditions: (1) the information you provide in the phone application with regard to your legal name, home address, telephone number and social security number must be complete and accurate; (2) you must be at least 18 years of age; (3) you must be a United States resident; and (4) your old debt must not have been previously discharged through bankruptcy and you must not currently be in bankruptcy proceedings.

**This offer expires on 04/17/2004. Offer may not be valid after this date.**

Send in this request for more information, or call us today at **1-866-206-9770**. See reverse side for important information regarding your legal rights and rate, fee and other cost information.

| (PLEASE PRINT) FIRST NAME | MIDDLE INITIAL | LAST NAME | HOME PHONE NUMBER ( ) | (BEST TIME TO CALL) AM PM |
|---|---|---|---|---|
| STREET ADDRESS | | APT/FL | ALTERNATE PHONE NUMBER ( ) | |
| [C]ITY | | | STATE | ZIP |

**This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.**

02277412-ONIN-MY01

# Climb with Ascent

**Ascent Card provides you with a creative and positive solution for addressing your old debt.** Our program is based on respect and understanding for you and your situation.

You can transfer your old debt to a new Visa credit card. **When you receive your Visa credit card, you will have no available credit.** Your payments will create available credit. Making at least the required minimum monthly payment on time, each month, will ensure that you have available credit on your credit card.

When you accept this offer and your cred[illegible] collection efforts will be [illegible] your old debt [illegible] new will be reported to the credit bureaus. However, if you make no payments or charges on your credit card account during the first three billing cycles, your credit card will be cancelled, the reporting of your new credit card to the credit bureaus will be deleted, and your old debt will be returned to Sherman Acquisition II LP, or a related entity. Once returned, your old debt may be subject to further collection activity.

You can do something about your old debt, and build purchasing power on a Visa credit card. **Call Ascent Card today to take advantage of this exciting offer.**

## IMPORTANT RATE AND FEE DISCLOSURES

| | |
|---|---|
| **Annual Percentage Rate for Purchases** | **19.9%** |
| **Other APRs** | Cash Advance APR: 19.9%, Balance Transfer APR: 19.9% |
| **Grace Period for Repayment of Balances for Purchases** | At least 20 days (provided you paid your previous Balance in full by the due date) |
| **Method of Computing the Balance for Purchases** | Average Daily Balance (including new purchases) |
| **Annual Fee** | $35.00 per year (waived first year) * |
| **Minimum Finance Charge** | $.50 |
| **Cash Advance Fee** | Greater of 3% of the amount advanced, or $10.00 |
| **Balance Transfer Fee** | NONE |
| **Late Charge/ Overlimit Charge** | $19.00 / $19.00 |

.dditional Card Fee of $20.00 per year per additional card.

**OTHER FEES/CHARGES:** Returned Check Charge $19.00, Replacement Card Fee $20.00, Copying Charge $3.00/page

**AUTHORIZATION:** By responding to this offer you are authorizing us to obtain credit reports about you, both now and in the future, for any legitimate business purposes associated with the account or the request for an account, including, but not limited to, reviewing, modifying, renewing or collection on your account.

**BANKRUPTCY:** To the extent your old debt has been previously discharged in bankruptcy or you are currently in a bankruptcy proceeding, this offer does not constitute a demand for payment or an attempt to collect such obligation and should be disregarded.

**IMPORTANT TIME SENSITIVE INFORMATION REGARDING YOUR LEGAL RIGHTS** [illegible]

# Ascent Card Program

For Express Processing, Call Toll Free

# 1-866-206-9770

Business Hours: Mon.-Fri. 8 am to 8 pm CST




**Cards issued through Plains Commerce Bank, Hoven, South Dakota. Member FDIC**

MY01

*Ascent Card Program*

**Alegis Group, L.P.**
P.O. Box 5025
Sioux Falls, SD 57117-5025

May 14, 2004



ROBERT E MCLEOD
PO BOX 236
KOKOMO IN 46903-0236

A292
KX63

Robert,

This letter is a reminder that the old debt you had with AMERITECH having an original account number of 3174377334001 and currently owned by Sherman Acquisition II LP remains UNPAID. Alegis Group, L.P. is currently servicing this old debt. The current total balance due on your account is $450.03.

Alegis Group, L.P. is offering you a positive solution to this situation through the ***Ascent Card Program.***

Don't miss out on the exciting opportunities available to you regarding this situation. Simply call us **TOLL FREE** at **1-866-206-9770** and identify your account with your Alegis reference number which is 03641927.

The solution you are looking for is one call away.

**1-866-206-9770**

TO THE EXTENT YOUR OLD DEBT HAS BEEN PREVIOUSLY DISCHARGED IN BANKRUPTCY OR YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING, THIS OFFER DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT SUCH OBLIGATION AND SHOULD BE DISREGARDED.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**
**This communication is from a debt collector.**

**Business Hours:** Mon.-Fri. 8 am to 8 pm CST

3rd Notice

PVE1

# Ascent Card Program

Alegis Group, L.P.
P.O. Box 5025
Sioux Falls, SD 57117-5025

**NOTICE:**
**Important information on reverse side regarding your legal rights and rate, fee, and other cost information.**

GERRI SMITH
315 BARRICKS RD LOT 13
LOUISVILLE KY 40229-3017

A691
HV42

YOUR ACCOUNT INFORMATION

| | |
|---|---|
| Current Account Owner: | Sherman Acquisition II LP |
| Current Total Balance Due: | $6860.16 |
| Original Creditor: | Metris |
| Original Account #: | 5458004502945536 |
| Account Servicer: | Alegis Group, L.P. |
| Alegis Group Reference #: | 03739570 |

Gerri,
The Ascent Card Program makes addressing your old debt as Easy as 1-2-3. Our special credit card offer is your Easy to Understand solution to this situation. In 3 Easy Steps, you can address your old debt and at the same time gain the benefits and privileges that come with a Visa credit card. We've made the first step really Easy, as you are already PRE-APPROVED* for the credit card.




Cards are issued through Plains Commerce Bank, Hoven, South Dakota. Member FDIC







1. **TRANSFER YOUR OLD DEBT** to a new VISA credit card. Transferred amount becomes the new balance and credit limit on your Visa credit card. You have no available credit on your Visa credit card until you complete Step 2.
2. **MAKE AT LEAST YOUR MINIMUM PAYMENTS ON TIME** and you create available credit on your Visa credit card. The amount of available credit created depends on the timeliness and size of payments, as well as your card usage.
3. **REALIZE THE BENEFITS** of your Visa credit card. A portion of your payments create PURCHASING POWER on your Visa credit card. You can use this available credit any way you'd like, IT'S YOUR CREDIT.

**Complete these 3 steps and you have unlocked the power of your Visa by addressing your old debt.**

As you continue to make payments on your Visa credit card, you are reducing the balance. By paying down the balance, you are increasing the amount of available credit on your new Visa credit card. Increase your available credit more quickly by limiting your use of your Visa credit card, or by making a larger payment. Your Easy 3-Step process begins when you call us toll free at 1-866-206-9770. One of our friendly representatives will process your application in just a few minutes.
This offer expires on 07/09/2004. Offer may not be valid after this date.

## PRE-APPROVED TERMS

To obtain this credit card, you agree to transfer the balance of your old debt to the credit card. You will need to make at least your required minimum payments before you can use your credit card, since it will have no available credit when you receive it. This offer is subject to the following conditions: (1) the information you provide in the phone application with regard to your legal name, home address, telephone number and social security number must be complete and accurate; (2) you must be at least 18 years of age; (3) you must be a United States resident; and (4) your old debt must not have been previously discharged through bankruptcy and you must not currently be in bankruptcy proceedings.

**This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.**

# Ascent Card Program

In today's world, a Visa credit card can provide you with privileges and conveniences. If you currently do not have a credit card, the Ascent Card Program, offered by Alegis Group, L.P., is a great opportunity to earn those privileges. The Ascent Card Easy 3-Step program gives you a realistic opportunity to address your old debt, while at the same time providing you with the benefits of a Visa credit card.

If you are simply interested in addressing your old debt, but have not found the right solution, you can do this, and more, with Ascent Card's Easy 3-Step program. You can accomplish this, and at the same time you can build available credit on your Visa credit card, that you can use in the case of an emergency or an unexpected expense. Whether or not you use your available credit is not as important as knowing you have it if you need it.

Address your old debt with the Ascent Card program. Follow the 3 Easy Steps, and you can have the opportunity to use your card everywhere that Visa credit cards are accepted.

Call us today to discuss the options regarding your old debt. **1-866-206-9770**

## IMPORTANT RATE AND FEE DISCLOSURES

| | |
|---|---|
| **Annual Percentage Rate for Purchases** | **19.9%** |
| **Other APRs** | Cash Advance APR: 19.9%, Balance Transfer APR: 19.9% |
| **Grace Period for Repayment of Balances for Purchases.** | At least 20 days (provided you paid your previous Balance in full by the due date) |
| **Method of Computing the Balance for Purchases** | Average Daily Balance (including new purchases) |
| **Annual Fee** | $35.00 per year (waived first year) * |
| **Minimum Finance Charge** | $.50 |
| **Cash Advance Fee** | Greater of 3% of the amount advanced, or $10.00 |
| **Balance Transfer Fee** | NONE |
| **Late Charge/ Overlimit Charge** | $19.00 / $19.00 |

* [illegible]itional Card Fee of $20.00 per year per additional card.

**O[illegible]ER FEES/CHARGES:** Returned Payment Charge $19.00, Replacement Card Charge $20.00, Copying Charge $3.00/page

**AUTHORIZATION:** By responding to this offer you are authorizing us to obtain credit reports about you, both now and in the future, for any legitimate business purposes associated with the account or the request for an account, including, but not limited to, reviewing, modifying, renewing or collection on your account.

**BANKRUPTCY:** To the extent your old debt has been previously discharged in bankruptcy or you are currently in a bankruptcy proceeding, this offer does not constitute a demand for payment or an attempt to collect such obligation and should be disregarded.

**Residents of Kentucky.** You may pay the unpaid balance of your account in whole or in part at any time.

# Ascent Card Program

For Express Processing, Call Toll Free

**1-866-206-9770**

Business Hours: Mon.-Fri. 8 am to 8 pm CST




Cards are issued through Plains Commerce Bank, Hoven, South Dakota. Member FDIC

PVE2

# Ascent Card Program

Alegis Group, L.P.
P.O. Box 5025
Sioux Falls, SD 57117-5025

**NOTICE:**
**Important information on reverse side regarding your legal rights and rate, fee, and other cost information.**

GORDON TOLLE
912 KUMLER ST
TRENTON MO 64683-2525

A075
HJB6

YOUR ACCOUNT INFORMATION

| | |
|---|---|
| Current Account Owner: | Sherman Acquisition II LP |
| Current Total Balance Due: | $1033.78 |
| Original Creditor: | SOUTHWESTERN BELL |
| Original Account # | Redacted |
| Account Servicer: | Alegis Group, L.P. |
| Alegis Group Reference #: | Redacted |

**Gordon,**
The Ascent Card Program makes addressing your old debt as Easy as 1-2-3. Our special credit card offer is your Easy to Understand solution to this situation. In 3 Easy Steps, you can address your old debt and at the same time gain the benefits and privileges that come with a Visa credit card. We've made the first step really Easy, as you are already PRE-APPROVED* for the credit card.




Cards are issued through Plains Commerce Bank, Hoven, South Dakota. Member FDIC







1. **TRANSFER YOUR OLD DEBT** to a new VISA credit card. Transferred amount becomes the new balance and credit limit on your Visa credit card. You have no available credit on your Visa credit card until you complete Step 2.
2. **MAKE AT LEAST YOUR MINIMUM PAYMENTS ON TIME** and you create available credit on your Visa credit card. The amount of available credit created depends on the timeliness and size of payments, as well as your card usage.
3. **REALIZE THE BENEFITS** of your Visa credit card. A portion of your payments create PURCHASING POWER on your Visa credit card. You can use this available credit any way you'd like, IT'S YOUR CREDIT.

## Complete these 3 steps and you have unlocked the power of your Visa by addressing your old debt.

As you continue to make payments on your Visa credit card, you are reducing the balance. By paying down the balance, you are increasing the amount of available credit on your new Visa credit card. Increase your available credit more quickly by limiting your use of your Visa credit card, or by making a larger payment. Your Easy 3-Step process begins when you call us toll free at 1-866-206-9770. One of our friendly representatives will process your application in just a few minutes.
This offer expires on 04/19/2004. Offer may not be valid after this date.

## PRE-APPROVED TERMS

To obtain this credit card, you agree to transfer the balance of your old debt to the credit card. You will need to make at least your required minimum payments before you can use your credit card, since it will have no available credit when you receive it. This offer is subject to the following conditions: (1) the information you provide in the phone application with regard to your legal name, home address, telephone number and social security number must be complete and accurate; (2) you must be at least 18 years of age; (3) you must be a United States resident; and (4) your old debt must not have been previously discharged through bankruptcy and you must not currently be in bankruptcy proceedings.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRENE CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>WORLDWIDE ASSET MANAGEMENT, L.L.C. and WORLDWIDE ASSET PURCHASING, L.L.C.<br><br>Defendants. | ) | No. 04 C 7625 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Irene Chapman alleges that a notice she received regarding defendants' privacy policy--that is defendants' policy regarding sharing information about plaintiff--was part of an attempt to collect a debt. Plaintiff contends that statements in the privacy policy violate provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiff brings this action as a putative class action. Defendants Worldwide Asset Management, L.L.C. ("WAM") and Worldwide Asset Purchasing, L.L.C. ("WAP") move to dismiss the complaint.

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor.

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert. denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendants have at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to plead specific facts, a plaintiff can plead himself or herself out of court by alleging facts showing there is no viable claim. See Slaney v. The International Amateur Athletic Federation, 244 F.3d 580, 597 (7th Cir.), cert. denied, 534 U.S. 828 (2001); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998), cert. denied, 525 U.S. 1114 (1999); Jackson, 66 F.3d at 153-54. Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional

facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). Where the document may properly be considered, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir.1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 WL 1720030 *8 (N.D. Ill. March 31, 2003). A plaintiff is not bound by legal

characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Plaintiff alleges that "WAM purchases for collection defaulted consumer receivable accounts" and that "[t]he principal business purpose of WAM is the purchase and collection of consumer debts by the use of the mail and telephone." It is also alleged that WAM "directs, controls and is actively involved in the business affairs of WAP." It is claimed that WAM is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6). It is alleged that WAP's "principal purpose . . . is the collection of defaulted consumer debts by the use of the mail and telephone." WAP is also claimed to be a debt collector as defined by the FDCPA.

Plaintiff alleges that, during 2003 and 2004, she received a series of collection letters sent by or on behalf of WAM and WAP. The letters pertained to an alleged credit card debt. Along with one or more of the collection letters,

plaintiff received a document entitled "Worldwide Asset Management, L.L.C. Privacy Policy and Notice."[1] The notice states that "[w]e collect nonpublic personal information about you including . . . Information we receive from you on applications or other . . . documents; Information about your transactions with us . . . or others; and Information we receive from a consumer reporting agency." It is further stated that "we" may disclose this information to third parties, including financial service providers, retailers, and direct marketers. "We may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law." It is also stated that, in order to prevent such disclosure, the addressee must complete and mail in a form requesting to opt out.

The title of the privacy notice includes WAM, but not WAP. The opt out form is to be sent to WAM. The first two sentences of the privacy notice state: "Worldwide Asset Management, L.L.C., as master servicing agent for Worldwide Asset Purchasing, L.L.C. and in conformity with the Gramm-Leach-Bliley Act, has adopted a Privacy Policy to protect information that we have about our customers. This notice is to provide you with a description of our privacy policy."

WAP argues that it cannot be held responsible for the privacy policy notice because the title and mailing address for

---

[1]A copy of the privacy notice is attached to the Complaint.

opt outs show that the notice is a document from WAM, not WAP. WAP ignores that the beginning sentences of the notice describe a policy of both WAM and WAP. The notice also states that WAM is acting as an agent for WAP.[2] The privacy notice itself does not conclusively establish that the notice was sent by WAM and that it was solely on behalf of WAM. The language of the notice is such that it could have been sent by or on behalf of either or both defendants. Therefore, on defendants' motion to dismiss, the allegations of the complaint that both defendants are responsible for the notice must presently be taken as true.

Plaintiff's allegation that the privacy policy notice was sent along with a collection letter or other communication attempting to collect a debt must also be taken as true. That allegation is fully consistent with the notice itself which states in capitalized boldface letters: "Federal law requires us to advise you that this is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector."

Defendants also argue that neither defendant is adequately alleged to be a debt collector, particularly WAP, which purchases debts. Plaintiff, however, alleges that both

---

[2]In the body of the Complaint, it is alleged that WAM controls and directs WAP, thereby indicating that WAP is an agent of WAM. In her answer brief, plaintiff argues, based on the language of the privacy notice, that WAM is an agent of WAP. In ruling on the motion to dismiss, it is unnecessary to resolve issues regarding principal-agent liability under the FDCPA.

defendants are in the business of collecting debts. WAM is alleged to both purchase and collect debts. There is no allegation that WAP purchases debts. Moreover, since plaintiff pleads no specific facts to the contrary, it is sufficient that plaintiff alleges that they are in the business of collecting debts. Molloy v. Primus Automotive Financial Services, 247 B.R. 804, 821 (C.D. Cal. 2000). Compare Montgomery v. Huntington Bank, 346 F.3d 693, 701 (6th Cir. 2003). Even the conclusorily allegations that both defendants are debt collectors as defined by the FDCPA would have been sufficient absent specific allegations to the contrary. See McCormick v. City of Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000); Jackson, 66 F.3d at 153. But see Montgomery, 346 F.3d at 701 (6th Cir.). Furthermore, an entity that purchases the debts of others when the debts are already in default may qualify as a debt collector. See Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536-37 (7th Cir. 2003). It has been sufficiently alleged that defendants are debt collectors.

Defendants contend the privacy policy notice cannot constitute a violation of the FDCPA because it is in conformity with the Gramm-Leach-Bliley Act ("GLB"), 15 U.S.C. § 6801 et seq., which generally applies to disclosure of customer information by financial institutions. They also argue that there can be no violation of the FDCPA because it is not alleged that any actual disclosure of plaintiff's information occurred.

It is true that the Complaint does not expressly allege any actual disclosure, though such an allegation would not be inconsistent with the allegations of the complaint. In response to the motion to dismiss, however, plaintiff still does not contend there was any actual disclosure. Instead, plaintiff argues that the threat of a possible disclosure was sufficient to constitute a violation of the FDCPA. Plaintiff relies on 15 U.S.C. §§ 1692e(5) & (10). Those subsections provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Since the privacy policy notice was part of an attempt to collect a debt from plaintiff, representations therein that defendants would take actions prohibited by the FDCPA would themselves constitute a violation of the FDCPA regardless of whether defendants thereafter actually engaged in such conduct. Blair v. Sherman Acquisition, 2004 WL 2870080 *6-7 (N.D. Ill. Dec. 13, 2004); Stewart v. Asset Acceptance LLC, No. 04 CV 1213, 6-8 (S.D. Ind. Nov. 19, 2004).

Except as permitted by sections 1692c(b) and 1692b, a debt collector may not communicate with a third party regarding a consumer's debt. The privacy policy notice states that defendants will engage in communications other than the type permitted by the aforementioned sections of the FDCPA.[3] Also, inconsistent with the FDCPA provisions which require that the debt collector obtain actual permission from the customer before disseminating certain information, the privacy policy provides that the customer must affirmatively act to prevent dissemination. Defendants' privacy policy contains provisions that would violate the FDCPA. Blair, 2004 WL 2870080 at *3-4; Stewart, supra, at 6-8. As previously discussed, by seeking to collect on a debt while notifying plaintiff that they may take such actions, defendants violated § 1692e. Blair, 2004 WL 2870080 at *6-7; Stewart, supra, at 6-8.

Defendants contend there can be no violation of the FDCPA because the dissemination of such information and the opt-out requirement are consistent with the GLB. Just because conduct does not violate one statute does not automatically mean that the

---

[3]Defendants contend there is no violation because they added the qualification that they would only disclose "as permitted by law." That qualification, however, is only stated to apply to disclosures to "nonaffiliated third parties." Moreover, an unsophisticated consumer is not expected to know there is a law that prevents defendants from performing the disclosures they otherwise indicate they will perform. This qualification does not prevent a violation of § 1692e. See Blair, 2004 WL 2870080 *6-7.

conduct does not violate other statutes. Defendants point to no reason why the GLB should be considered to have amended the FDCPA so as to delete some of its provisions. The FDCPA pertains specifically to communications related to debt collecting; the GLB does not. There is no basis for holding that the previously discussed provisions of the FDCPA are inapplicable to the privacy policy notice sent by defendants.

Plaintiff has adequately alleged a violation of the FDCPA.

IT IS THEREFORE ORDERED that defendants' motion to dismiss [7] is denied. Within 14 days, defendants shall answer the complaint. Within 30 days, plaintiff shall move for class certification.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: APRIL 6, 2005

PO BOX 671927
Marietta, GA 30006-0033
FORWARDING SERVICE REQUESTED

# WORLDWIDE ASSET MANAGEMENT, L.L.C. PRIVACY POLICY AND NOTICE

02/09/04

Redacted

ACCOUNT NUMBER: Redacted

IRENE CHAPMAN
9751 S INGLESIDE AVE
CHICAGO IL 60628-1517

Worldwide Asset Management, L.L.C., as master servicing agent for Worldwide Asset Purchasing, L.L.C. and in conformity with the Gramm-Leach-Bliley Act, has adopted a Privacy Policy to protect information that we have about our customers. This Notice is to provide you with a description of our privacy policy. This Notice describes the nonpublic personal information we collect about you, how we use that information, how we safeguard the information that we maintain about you, and how and in what circumstances you may instruct us not to release that information to certain nonaffiliated third parties.

**Information We Collect**

We collect nonpublic personal information about you including the following:

* Information we receive from you on applications or other forms or documents;
* Information about your transactions with us, our affliates, or others; and
* Information we receive from a consumer reporting agency.

**Information We Disclose**

We may disclose all of the information that we collect about you, for the categories described above (such as name, address, assets and income, payment history).

We may disclose nonpublic personal information about you to the following types of third parties:

* Financial service providers, such as mortgage companies and banks;
* Non-financial companies, such as retailers and direct marketers.
* We may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law.

This information may be disclosed to these parties concerning both current and former customers.

If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties, other than for situations where we are permitted by law to disclose this information, you may opt out of these disclosures, that is, you may direct us not to make those disclosures. If you wish to opt out of these disclosures to nonaffiliated third parties, you may complete and return the form found at the end of this document. You may also elect simply to write us at the address found on the form and state your intention to opt out.

You also may instruct us not to disclose your credit bureau report and/or account application information with any of our affiliates.

**Your Information Is safeguarded against Unauthorized Access:**

We restrict access to nonpublic personal information about you to those persons (including our employees and service providers) who need to know that information in order to handle your account or provide services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information. For example we protect our offices through identification cards, electronic passkey systems, and password clearance for computer systems and databases. We also restrict access to your information to only those employees with a legitimate business purpose to have such access.

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

---

Complete and detach this form by cutting along the double line. Mail your completed form to:

**Worldwide Asset Management, L.L.C.**
**Attn: GLB Compliance Dept.**
**P.O. Box 672107**
**Marietta, GA 30006-0033**
**1-866-252-9271**

Account Number: Redacted

[ ] Please do not share nonpublic personal information about me with nonaffiliated third parties. I understand that by law, this does not include companies that are performing services on your behalf or your financial marketing partners, or other disclosures permitted by law.

[ ] Please do not share my credit bureau report and/or account application information with any of your affiliates.

____________________ ____________________
Signature Print Name

(____) ____ - ________
Telephone Number

______________________________
Street Address

______________________________
City, State, Zip

# EXHIBIT C

LEXSEE 2002 US DIST LEXIS 6005

**VIRGINIA DOLAN, THOMAS DOLAN, Plaintiffs, v. SCHREIBER & ASSOCIATES, P.C., JEFFREY A. SCHREIBER, MICHAEL A. LOVELL, CHRISTINA ADAMS, Defendants.**

**CIVIL ACTION NO. 01-10177-MLW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

***2002 U.S. Dist. LEXIS 6005***

**March 19, 2002, Decided**

**SUBSEQUENT HISTORY:** [*1] Adopted, motion denied, *Dolan v. Schreiber & Assocs., P.C., 2002 U.S. Dist. LEXIS 5998* (D. Mass. Mar. 29, 2002).

**DISPOSITION:** Magistrate recommends that this Motion to Dismiss or, Alternatively, for a More Definite Statement and Request for Oral Argument be DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For VIRGINIA DOLAN, THOMAS DOLAN, Plaintiffs: Jason David Fregeau, Longmeadow, MA.

For SCHREIBER & ASSOCIATES PC, JEFFREY A. SCHREIBER, MICHAEL A LOVELL, CHRISTINA ADAMS, Defendants: Jeffrey A. Schreiber, Edward C. Dial, Jr., Schreiber & Associates, Danvers, MA.

**JUDGES:** ROBERT B. COLLINGS, United States Magistrate Judge.

**OPINIONBY:** ROBERT B. COLLINGS

**OPINION:**

***REPORT AND RECOMMENDATION ON MOTION TO DISMISS OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT (FED. R. CIV. P. 12(b)(6), 12(e)), ETC. (# 5)***

COLLINGS, U.S.M.J.

***I. Introduction***

On January 30, 2001, plaintiffs Virginia Dolan ("Mrs. Dolan") and Thomas Dolan ("Mr. Dolan") (collectively, the "Dolans") instituted this action against Defendants Schreiber & Associates, P.C., Jeffrey A. Schreiber, Michael A. Lovell, and Christina Adams (collectively, the "Defendants") (Complaint). In the two-count complaint, the Dolans allege Defendants violated the Fair Debt Collections Practices Act ("FDCPA"), *15 U.S.C. 1692* (Count [*2] I), and the Massachusetts Consumer Protection Act ("MCPA"), *Mass. Gen. L. c. 93A § 2* (Count II), in their efforts to collect a debt allegedly owed from the Dolans.

In lieu of answering the Complaint, Defendants filed a motion to dismiss pursuant to *Rule 12(b)(6), Fed. R. Civ. P.*, for failure to state a claim upon which relief can be granted (# 5-1) or, alternatively, for a more definite statement pursuant to *Rule 12(e), Fed. R. Civ. P.* (# 5-2), together with a memorandum in support (# 6). In turn, the Dolans have filed a memorandum in opposition to Defendants' motion (# 10). Defendants have filed a reply memorandum (# 13). At this juncture, the motion to dismiss or, alternatively, for a more definite statement, is in a posture for resolution.

***II. The Standard***

The standard to be applied when deciding a motion to dismiss under *Rule 12(b)(6), Fed. R. Civ. P.*, has often been repeated. It is incumbent upon the court to "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]." *Kiely v. Raytheon Co., 105 F.3d 734, 735* (1 Cir., 1997); *Hogan v. Eastern Enterprise/Boston Gas, 165 F. Supp.2d 55, 57* (D. Mass., 2001) [*3] . Indeed, more than forty years ago the Supreme Court declared that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d*

*80, 78 S. Ct 99 (1957)* (footnote omitted). That general proposition notwithstanding, "bald assertions, . . subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. *United States v. AVX Corp., 962 F.2d 108, 115* (1 Cir., 1992) (internal quotations omitted).

Pursuant to *Fed. R. Civ. P. 10(c)*, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Fed. R. Civ. P. 10(c)*. "This rule permits courts to consider exhibits attached to complaints in addition to the allegations of the complaint itself when ruling on motions." *Dean v. Compass Receivables Management Corp., 148 F. Supp 2d 116, 118* (D. Mass., 2001). A motion pursuant to *Fed. R. Civ. P. 12(b)(6)* is no exception. *See Blackstone Realty LLC v. Federal Deposit Insurance Corporation, 244 F.3d 193, 195 n.1* [*4] (1 Cir., 2001).

*III. The Facts*

The Dolans are individuals who reside in Chesterfield in Hampden County, Massachusetts. (Complaint P2) On January 31, 1997, Mrs. Dolan entered into a Retail Installment Contract (the "Contract") for the purchase of a vehicle with Cahillane Motors, Inc. acting as the original creditor. (Complaint, Exh. B at 1) The total amount owed by Mrs. Dolan pursuant to the Contract was $ 14,524.66. (Complaint, Exh. B at 1) Cahillane Motors, Inc.'s rights, title, and interests in the Contract were assigned to Chrysler Financial Corporation. (Complaint, Exh. B at 2) Chrysler Financial Corporation was subsequently listed as the lien holder on Mrs. Dolan's Certificate of Title for the vehicle. (Complaint, Exh. E at 1)

At some point, possession of the vehicle was transferred from Mrs. Dolan to Chrysler Financial Company, L.L.C. (Complaint, Exh. C at 1) On December 13, 1999, Chrysler Financial Company, L.L.C. sent a Notification of Voluntary Surrender to Mrs. Dolan acknowledging that it was then in possession of the vehicle. (Complaint, Exh. C at 1) Mr. Michael Lovell, one of Defendants, informed Mrs. Dolan by a letter dated February 26, 2000 that Schreiber [*5] & Associates, P.C. "have been retained by Chrysler Financial Company, L.L.C. to collect from you the sum of $ 3,940.41." (Complaint, Exh. A at 1) In that letter, Mr. Lovell also asserted that Chrysler Financial Company, L.L.C. was the original creditor involved in Mrs. Dolan's purchase of the vehicle. (Complaint P38)

On February 29, 2000, another one of Defendants, Ms. Christina Adams, contacted Mrs. Dolan by telephone. (Complaint P43) Ms. Adams allegedly stated that, unless the account was settled "in a couple of days", Defendants would place a lien on the Dolans' property, obtain copies of their credit history, and attach their assets. (Complaint PP44-45)

The Dolans further allege that Mrs. Dolan's vehicle was sold at public auction, of which she and Mr. Dolan never received proper notice. (Complaint P54) On July 19, 2000, Chrysler Financial Corporation, with defendant Jeffrey A. Schreiber and defendant Michael Lovell acting as attorneys, brought suit in state court in Massachusetts to collect the debt allegedly owed by Mrs. Dolan. (Complaint P47) Finally, the Dolans allege that Schreiber & Associates, Jeffrey A. Schreiber, and Michael Lovell, acting as attorneys for Chrysler [*6] Financial Corporation, failed to "give the matter the full, in-depth review expected of attorneys" before filing suit against Mrs. Dolan. (Complaint P56)

The Dolans allege that Defendants' efforts to collect the debt allegedly owed by Mrs. Dolan constitute false, misleading, deceptive and unconscionable acts in violation of the FDCPA and MPCA. (Complaint P36)

*IV. Analysis*

**A. Thomas Dolan's Claim**

Defendants maintain that Mr. Dolan's claims should be dismissed because he fails to state any claim upon which relief can be granted. (Defendants' Memorandum at 7) Specifically, Defendants argue that "Thomas Dolan never signed the retail installment contract . . . Thomas Dolan was never listed as and was not the owner of the motor vehicle subject to the retail installment contract . . . Thomas Dolan was never contacted by any of the defendants regarding the debt owed to Chrysler . . . All correspondence and all communications were directed to Virginia Dolan. . . Suit was filed against Virginia Dolan . . . Thomas Dolan is not a named defendant in the state court deficiency complaint." (Defendants' Memorandum at 7)

The FDCPA protects individuals who do not owe money but who are [*7] nonetheless harassed by a debt collector. *See Dutton v. Walhar, 809 F. Supp. 1130, 1134-35* (D. Del., 1992). Section 1692k states that "any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person." Title *15 U.S.C. 1692k* (emphasis added); *see also Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 649, n.1* (6 Cir., 1994) ("Only a consumer has standing to sue for violations under *15 U.S.C. § 1692c* . . . Section 1692c, however, appears to be the most restrictive of the FDCPA's provisions. The other provisions are not limited to 'consumers' and thus are broader than 1692c.") "Many courts have held that 'person' includes non-debtors who have nonetheless been harmed by an improper debt collection practice." *Flowers v. Accelerated Bureau of Collections, Inc., 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313, *7* (N.D. Ill. 1997). At a minimum, this protection extends to people with the authority to open and read the debtor's letters. *See Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d*

*647, 650* (6 Cir., 1994); *see also Riveria v MAB Collections, Inc., 682 F. Supp. 174, 175* [*8] (W.D.N.Y., 1988) ( any person who comes in contact with proscribed debt collection practices may bring a claim under the FDCPA).

The Dolans allege Ms. Adams, in her February 29, 2000 conversation with Mrs. Dolan, stated that Defendants would seek to place a lien on Mrs. *and* Mr. Dolan's property and attach their assets. (Complaint PP44-45) Thus, Defendants' alleged debt collection practices could have consequences for Mr. Dolan and he could be harmed by those practices. Therefore, Mr. Dolan may be a non-debtor under the FDCPA, but the Dolans' allegations are sufficient to bring him within the FDCPA's protection. As a result, Defendants' motion to dismiss Mr. Dolan's claims for failure to state claims upon which relief can be granted is denied.

**B. The FDCPA claims**

The Dolans have alleged five different acts or omissions by Defendants which they contend violate the FDCPA. Specifically, the Dolans contend that Defendants falsely represented the identity of the original creditor, improperly threatened to place liens on their property, filed a Massachusetts state court action against Mrs. Dolan under a false name, sold Mrs. Dolan's vehicle at public auction without giving her [*9] proper notice, and failed to review Mrs. Dolan's case sufficiently before filing an action against her in Massachusetts state court.

Defendants assert that the Dolans' complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to *Fed. R. Civ. P. 12(b)(6).* In the alternative, Defendants contend that they need a more definite statement of the Dolans' claims before they can answer. The Court will address the 12(b)(6) motion first.

The FDCPA is codified in *15 U.S.C. 1692.* "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors.'" *Alger v. Ganick, O'Brien & Sarin, 35 F. Supp.2d 148, 153* (D. Mass., 1999) (*quoting 15 U.S.C. § 1692*(e)). "The statute creates a private cause of action against 'any debt collector.'" *Dean, 148 F. Supp.2d at 119* (*quoting 15 U.S.C. § 1692k).* The FDCPA is a strict liability statute and proof of one violation is enough for a plaintiff to be granted relief. *See Skerry v. Massachusetts Higher Education Assistance Corporation, 73 F. Supp.2d 47, 51* (D. Mass., 1999). [*10]

The relevant section of the FDCPA states as follows:

> e. A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Title *15 U.S.C. § 1692.*

"To trigger the protections of the [FDCPA], the funds at issue must constitute a debt, and the challenged activity must be conducted by a party that falls within the statutory definition of 'debt collector'". *Skerry, 73 F. Supp.2d at 51.* When considering whether a collection practice violates the FDCPA, courts look to whether the objective "least sophisticated consumer" would find the practice improperly threatening or misleading. *See Martin v. Sands, 62 F. Supp.2d 196, 199* (D. Mass., 1999). This "'standard is low'". *Hart v. GMAC, 246 B.R. 709, 730* (D. Mass., 2000) (*quoting Avila v. Rubin, 84 F.3d 222, 226* (7 Cir., 1996)). [*11] The least sophisticated consumer is used "to describe the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." *Id.* "The standard protects consumers who are below average sophistication or intelligence or are uninformed, naive or trusting while at the same time the reasonableness element shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.* (internal quotations omitted).

The Dolans allege that Defendants violated the FDCPA by making false and misleading statements in Mr. Lovell's February 26, 2000 letter to Mrs. Dolan. (Complaint PP37-38) That letter states that "Chrysler Financial Company, L.L.C. is the original creditor." (Complaint P37) The Dolans claim that this statement is false and misleading because the Contract lists Cahillane Motors as the original creditor. (# 1 P 38) The Dolans contend that the rights in the Contract were assigned to Chrysler Financial Corporation, not Chrysler Financial Company, L.L.C. (Complaint P40) Therefore, the Dolans allege that the February 26, 2000 letter contains false and misleading [*12] statements in violation of the FDCPA § 1692e(10). (Complaint P42)

The Dolans contend that Mrs. Dolan borrowed funds from Chrysler Financial Corporation. (Complaint P29) They further allege that Mr. Lovell is a debt collector as defined by the FDCPA. n1 (Complaint P21) Therefore, because the Dolans have sufficiently alleged that the funds at issue constitute a debt and the challenged activity was conducted by a party who falls within the FDCPA's definition of debt collector, the Dolans have stated a claim under the FDCPA.

n1 The Dolans allege that Schreiber &

Associates, Mr. Lovell's employer, is liable under the doctrine of *respondeat superior* for the collection activities of its employees. (Complaint P 10).

As stated, the FDCPA prohibits "the use of any false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Title *15 U.S.C. § 1692e*(10). Because the FDCPA prohibits false representations and the complaint [*13] contends Defendants falsely represented the identity of the original creditor, Count I states a claim upon which relief can be granted. n2 Therefore, Defendants' motion to dismiss Count I is denied.

n2 As previously stated, the Dolans allege five different acts or omissions by Defendants which they allege violate the FDCPA. Because the Court has already found that the Complaint states sufficient allegations such that Count I survives Defendants' motion to dismiss, the remaining factual allegations need not be considered by the Court.

**C. The MCPA claims**

The Dolans also contend that Defendants' conduct violates the Massachusetts Consumer Protection Act, *Mass.Gen.L. c. 93A § 2*. (Complaint PP 42, 46, 52, 55, 56) "Regulations issued by the Massachusetts Attorney General provide that violations of the FDCPA are per se violations of *M.G.L. c. 93A § 2*." n3 *Dean, 148 F. Supp.2d at 119; see also Martin, 62 F. Supp.2d at 201.* As the Court has already found that the complaint states [*14] a claim upon which relief can be granted under the FDCPA, it also states a claim under the MCPA. Therefore, Defendants' motion to dismiss Count II is denied.

n3 *940 C.M.R. 3.*16(4) provides, in relevant part, that "without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of *M.G.L. c. 93A § 2* if: . it violates the Federal Consumer Protections Act."

**D. Motion for More Definite Statement**

In the alternative, Defendants contend that they need a more definite statement of the Dolans' claims before they can answer. (Defendants' Memorandum at 15) Specifically, Defendants seek to have the Dolans set forth what "specific actions or inactions each defendant is accused of committing." (Defendants' Memorandum at 15) Otherwise, Defendants maintain that they will be forced to speculate which allegations in the complaint apply to which defendant. (Defendants' Memorandum at 15)

A more definite statement is needed only if the complaint is "so vague or ambiguous [*15] that a party cannot reasonably be required to frame a responsive pleading." *Fed. R. Civ. P. 12(e).* However, "while defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." *Raytheon Company v. Continental Casualty Company, 123 F. Supp.2d 22, 33* (D. Mass., 2000) (*quoting Langadinos v. American Airlines, Inc., 199 F.3d 68, 72-73* (1 Cir., 2000)).

Although it may have been clearer if the Dolans specifically stated which count is alleged against which defendant(s), the degree of detail Defendants seek goes beyond pleading requirements. Thus, Defendants' motion for a more definite statement is denied.

***V. Recommendation***

For all the reasons detailed herein, I RECOMMEND that the Motion to Dismiss or, Alternatively, for a More Definite Statement (*Fed. R. Civ. P. 12(b)(6)*, *12(e)*) and Request for Oral Argument (# 5) be DENIED.

***VI. Review by the District Judge***

The parties are hereby advised that pursuant to *Rule 72, Fed. R. Civ. P.*, any party who objects to these proposed findings and recommendations must [*16] file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court Appeals for this Circuit has repeatedly indicated that failure to comply with *Rule 72(b), Fed. R. Civ. P.*, shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services, 848 F.2d 271* (1 Cir., 1988); *United States v. Emiliano Valencia-Copete, 792 F.2d 4* (1 Cir., 1986); *Scott v. Schweiker, 702 F.2d 13, 14* (1 Cir., 1983); *United States v. Vega, 678 F.2d 376, 378-379* (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603* (1 Cir., 1980); *see also Thomas v. Arn, 474 U.S. 140, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985).*

ROBERT B. COLLINGS

United States Magistrate Judge

March 19, 2002.