## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DISTRICT

JOYCE HENDERSON,

     Plaintiff,

COURT FILE NO.:  05-10339 JLT

v.

SHERMAN FINANCIAL GROUP, LLC;
SHERMAN ACQUISITION II, LP;
SHERMAN ACQUISITION II GENERAL
PARTNER LLC; ALEGIS GROUP, LP AND
ALEGIS GROUP, LLC,

     Defendants.

### AFFIDAVIT OF STEPHEN MCCONNELL

STATE OF ILLINOIS

COUNTY OF COOK

     Personally appeared before the undersigned officer, duly authorized to administer oaths, Stephen McConnell, who states under oath as follows:

1.  My name is Stephen McConnell and I am a Marketing Manager for Sears, Roebuck and Co. ("Sears"). The statements in this Affidavit are based on my personal knowledge. I am over 21 years of age, have never been convicted of a felony, and am competent to testify to the statements set forth in this Affidavit. The matters set forth herein are true and correct to the best of my knowledge. The documents attached as exhibits, as well as the other documents on which this affidavit is based, are business records, made at or near the time by, or from information transmitted by, a person with knowledge and kept in the ordinary course of Sears' regularly conducted business activity.

2.  In my capacity as Marketing Manager I had personal knowledge of the business operations of Sears and of Sears National Bank ("SNB") and I have reviewed their business records, maintained in the regular course of business, relevant to the matters set forth in this Affidavit. SNB was a national bank located in Arizona, without branches in any other state. SNB was a wholly owned subsidiary of Sears Financial Holding Company, which in turn was a wholly owned subsidiary of Sears.

3.  On or about October 1, 1982, Mary L. Burt ("Burt"), opened a Sears card Account No. 0357205772233 with Sears which permitted her to purchase goods on credit at Sears stores.

4.  The credit card agreement governing Burt's Sears account ("the Agreement") permitted Sears to amend the terms of the Agreement after providing written notice of proposed amendments. From time to time, Sears modified the terms of the Agreement by sending Burt such written notice of amendments. For example, in March 1995, Sears notified Burt of its intent to amend certain terms of her Agreement, including transferring her account to SNB. Burt's account was subsequently transferred to SNB.

5.  Pursuant to the terms of the Agreement, there were additional modifications made after Burt's account was transferred to SNB. A true and correct specimen copy of the Agreement as it existed in 1999, reflecting the amendments to the Agreement up to that time, is attached as Exhibit 1. The Agreement included the addition of an arbitration provision and also contained an assignment provision. The Agreement further permitted SNB to amend the terms of the Agreement, providing that:

> Section 23.  **CHANGE OF TERMS.**  We may, at any time and subject to applicable law:
>
> - Change any Credit Limit applicable to the Account
>
> - Change any term or condition of this Agreement relating to your Account, including the Annual Percentage Rate applicable to outstanding and future balances, and the fees or other charges applicable to the Account; and
>
> - Add any new term or condition to this Agreement relating to your Account.
>
> Our right to change or add terms or conditions to this Agreement applies both to financial terms, such as Finance Charges and Fees, and to non-financial terms, such as our enforcement rights and other contractual provisions. We may apply any changed or new terms or conditions to any current and/or future balances created after that date. We will send you a written notice of any such change(s) or addition(s) as required by law.

6.  The 1999 version of the Agreement received subsequent changes. A review of business records shows that the February 2002 Agreement was the Agreement included in the last change of terms notice sent to Burt in March 2002 and represent the current terms of the account. A true and correct copy of the February 2002 terms sent to Burt is attached as Exhibit 2. The September 2002 notice that was sent with the terms provided that Burt could reject the amendments by providing notice in writing to SNB at an address provided. Burt did not provide written notice to SNB of her rejection of the amendments.

7.  The arbitration provision now included in Burt's 2002 Agreement provides that:

> **Section 21.  ARBITRATION.**  Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, arising out of statute, or otherwise) arising out of, relating to, or in connection with: (a) this Agreement;

(b) any prior credit card agreement you may have had with us, Sears, or with any of their predecessors, successors and assigns; (c) the application for and statements, disclosures, or other documents or communications relating to the Account; (d) the relationships which result from this Agreement or any prior credit card agreement, including any relationship with us or Sears; (e) the establishment, operating, handling or termination of the Account; (f) any transaction or attempted transaction relating to the Account; or (g) the validity, scope or enforceability of this arbitration section or this Agreement or any prior credit card agreement (the immediately preceding subsections [a] through [g] shall be referred to in this section, collectively, as "claims"), shall be resolved, upon your election or our election, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court, on an individual basis without resort to any form of class action, for claims within the scope of the jurisdiction of the small claims court.

Arbitration may be elected at any time, regardless of whether a lawsuit has been filed or not, unless such a lawsuit has resulted in a judgment or the other party would suffer substantial prejudice as a result of the delay in demanding arbitration. The arbitrator shall be a lawyer or retired judge with not less than 10 years experience in the practice of law. This arbitration section will not apply to any individual claims you filed in a lawsuit prior to the effective date of this Agreement, including individual claims that are later asserted in such a lawsuit, nor to the claims of a class certified prior to the effective date of this Agreement. The arbitration section will apply to all other claims, including class claims where a class has not yet been certified, even if the facts and circumstances upon which the claims are based existed before the effective date of this Agreement. This arbitration provision does not prevent either party from seeking interim injunctive relief from a court in order to preserve the status quo or to protect assets until the arbitration has been commenced and the arbitrator has an opportunity to consider the matter of interim relief.

Arbitrations shall be administered by one of the following three arbitration firms: American Arbitration Association, JAMS, and National Arbitration Forum in accordance with their respective rules and procedures in effect at the time the claim is filed. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association (web site: www.adr.org)
335 Madison Avenue, Floor 10
New York NY 10017-4605

JAMS (web site: www.jamsadr.com)
1920 Main Street, Suite 300
Irvine, CA 92601

National Arbitration Forum (web site: www.arbitration-forum.com)
P.O. Box 50191
Minneapolis, MN 55405

Any arbitration that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then-current billing address, or at some other place to which you and we agree in writing.

Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for us to do so, or if you ask us in writing and we determine that there is a good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law so determines.

The arbitrator shall apply relevant substantive law and applicable statutes of limitation, honor claims of privilege recognized at law, and shall provide written, reasoned findings of fact and conclusions of law.

The arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et. seq. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration section shall survive repayment of your loan or extension of credit and termination of your Account. If any portion of this arbitration section is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration section. This arbitration section shall inure to the benefit of and be binding on each of the persons and entities mentioned in this section.

**YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT (EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM. IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.**

8. The agreement further provides as follows:

> **Section 25. ASSIGNMENT.** You understand that the Account or any interest, balance or amount owed under the Account including any security interest securing such balance or amount may be sold, assigned or transferred by us without notice to you. Any purchaser, assignee or transferee is entitled to the benefits of the Agreement (including any security interest arising under it). You may not sell, transfer or assign any of your rights or obligations under this Agreement.

9. Burt continued to carry a balance on her account and make payments following the changes to the arbitration provision. On or about November 7, 2003, the balance on Burt's account was $10,262.56. Burt's last charge on the account was on or about December 24, 1999. Burt's last payment on the account was March 7, 2003.

10. On November 21, 2003, SNB sold Burt's account which is now owned by Sherman Acquisition II, LP.

Further the affiant sayeth not.

_Stephen McConnell_
STEPHEN McCONNELL

Sworn to a subscribed before me this

27 day of _May_, 2005

_Marsha Y. Dinwiddie_
Notary Public

My Commission Expires: _2009_

```
OFFICIAL SEAL
MARSHA Y. DINWIDDIE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-20-2009
```

776754v1

## CERTIFICATE OF SERVICE

I, Steven S. Broadley, Esquire of Posternak, Blankstein & Lund, LLP, hereby certify that on this 13th day of June, 2005, I caused a copy of the **Affidavit of Stephen McConnell** to be mailed to:

Daniel A. Edelman, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603-3403

Michael S. Poncin, Esquire
Moss & Barnett, P.A.
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI  02860

_____
Steven S. Broadley

SEARS NATIONAL BANK
SEARS CARD® ACCOUNT
SEARS PREMIER CARD® ACCOUNT
CARDHOLDER ACCOUNT AND SECURITY AGREEMENT

This Sears Card Account and Sears Premier Card Account Cardholder Account and Security Agreement ("Agreement") governs the use of your Sears Card Account and Sears Premier Card Account ("Account"). You agree to use your Account and Sears Premier Card Account in accordance with this Agreement.

**Section 1. DEFINITIONS; ACCEPTANCE.** In this Agreement, the words "you", "your", "yours" and "accountholder" mean any person named on the credit application or acceptance certificate as an accountholder, applicant or co-applicant for whose use the Account has been opened. "Sears", "we", "us", and "our" mean Sears, Roebuck and Co., its participating affiliates and licensees, and participating entities that accept the Sears Card. "External" means any participating entities that accept the Sears Card. "External" means any participating entities that accept the Sears Card. By signing this Agreement, or by using the Card, you agree that this terms and conditions of this Agreement apply to you when you use the Account or any subsequent holder of this Agreement apply to you when you use the Account or any subsequent holder of the Account or any subsequent holder of this Agreement apply to you. You also agree that the terms and conditions apply to you when you use any other person to use your Account.

**Section 2. LOANS AND LIABILITY.**

(a) **Loans.** You authorize us to make loans and extend credit to you for the purchase and lease of goods and services made using the Card or the Account: (i) cash access ("Cash Access") transactions, including cash obtained from financial institutions, automated teller machines, or others who honor the Card or Account, (ii) balance transfer transactions, and (iii) quasi-cash transactions with a merchant or financial institution. By accepting or using the Card or the Account, you agree to pay us for the amounts owed to us. All transactions made through the use of your Account are "Convenience Checks"). To access your Account and use your Card and any Authorized User transactions with a merchant or financial institution. By accepting or using the Card or the Account, you agree to pay us for the amounts owed to us. Some Authorized User transactions you could make, either on behalf of yourself or through balance transfer forms or otherwise, require that you sign a sales slip or other written authorization for transactions. You may be required to sign a sales slip or other written authorization for transactions. You agree that your authorization, whether effective as your signature.

(b) **Liability.** You agree to pay all amounts owed on the Account, whether incurred by you, any other accountholder, anyone you allow to use the Card or Account, or a person in whose name you allow using the Card or by using the Card or Account, every person who uses the Card or Account is liable for that person's own use of the Card or Account. By accepting or using the Card, you agree to the terms and conditions of this Agreement and to his or her use of the Account and any Authorized User Authorized User agrees that the terms and conditions of this Agreement apply to his or her use of the Account. Account use, you promise to pay your Account only if you have the intent and financial capacity to repay the amount in full pursuant to this Agreement.

(c) **Joint Accounts.** If the Account is a joint account each accountholder is jointly and individually liable for all amounts owed under this Agreement. The delivery of notices or Account Statements, see Section 3 of this Agreement, to any accountholder. By accepting or using the Card, we may rely on any instructions given to us or any accountholder for honoring any such instructions. If any accountholder gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account.

(d) Failure to honor Card or Authorize Transaction. We are not responsible for the failure of any person or entity to honor a Card or the Account.

1

---

be liable for, for any reason and at any time, we do not authorize a transaction on the Account, even if you have sufficient available credit.

**Section 5. ACCOUNT STATEMENTS.** In each billing cycle, your account statement ("Account Statement") in each billing cycle when there is an account activity or a debit or credit balance of $1.00 or more, or a Finance Charge is imposed. The Account Statement shows, among other things, new purchases and Cash Access, unless we deem your Account unclosing. The Account Statement contains important information and should be carefully read and reviewed each time it is received.

**Section 4. AUTHORIZED AND UNAUTHORIZED USE.**

(a) **Authorized Users.** You may ask that an individual be added, deleted or changed as an Authorized User ("Authorized User") by calling us at the telephone number or writing to us at the address, indicated on your Account Statement. You understand that we will issue a Card to each Authorized User you designate on the Card. Any Authorized User may use the Account, and may take any action on the Account that you could take, either on behalf of yourself or in any merchandise purchased on the Account from Sears in accordance with Section 6 of this Agreement. You understand that: (i) this Agreement controls all charges made by the Authorized User on your Account; (ii) you will pay all charges made by the Authorized User; (iii) we may disclose information about the Account to the Authorized User; (iv) the Authorized User is your agent for all purposes under this Agreement; and (v) you may manage the Account, subject to such limitations as we may impose.

You understand that we do not encourage the use of the Account by someone who is not an Authorized User. If you allow another person to use the Account but do not want that person to make charges beyond that authority, you must notify us. You agree that your responsibility to control or terminate use of your Account is your responsibility to control or terminate use of your Account. By such persons, and you agree to abide by such persons.

(b) **Unauthorized Use.** If you discover or believe that any charge on the Account or the Card is unauthorized, or that the Card or the Account is lost or stolen, indicated on your Account Statement and to cooperate with us in making a reasonable investigation of your claim. You will not be liable for unauthorized use that occurs after you notify us. You may ask you to provide a written statement.

(c) **Liability for Unauthorized Use.** You will not be liable for unauthorized use of your Account if: (1) you have exercised reasonable care in safeguarding your Card; (2) you have notified us of this Agreement, indicated on the Account, and (3) you have notified us of the loss, theft or unauthorized use of your Account in a reasonable period. If you comply with any of these conditions and in good standing; if you have not complied with any of these conditions your liability shall not exceed $50.

**Section 5. CREDIT LINE.** If a credit line, including a Cash Access line ("Credit Line"), is not currently assigned to your Account we may assign one at any time. Credit Line assigned is available to you and without advance or any Account Statement. From time to time, we may increase, decrease, suspend or terminate a Credit Line at any time without notice to you and without affecting your obligations (including those for amounts previously owed). A portion of your Credit Line may be set aside for Cash Access. A portion of your Credit Line is available for Cash Access. If a Credit Line is assigned to the Account and transactions authorized but not posted may be disclosed in your Account Statement. A portion of your Credit Line is assigned to the Account and the transactions authorized but not posted are disclosed in your Account Statement. If a Credit Line is assigned to the Account and transactions authorized but not posted may be disclosed in your Account Statement. You understand that the amounts repaid are available for re-borrowing. You agree not to exceed your Credit Line. You understand that if credit balances will not increase the Credit Line. We may authorize purchases or transactions that exceed a Credit Line. You agree to be responsible for all charges made on the Account whether or not they exceed your Credit Line.

**Section 6. SECURITY INTEREST.** Each accountholder (and each Authorized User) grants us a purchase money security interest under the Uniform Commercial Code in each item of merchandise purchased on the Account from

2

---

Sears, to the extent permitted by law, to secure only the purchase price of the merchandise (including installation costs and sales tax) until that amount is paid in full. We may, at our sole discretion, elect not to take a security interest in a particular item of merchandise or waive that accepts the Sears Card; however, no such election as any affect our right to take and enforce a security interest in any other election as any affect our right to take and enforce a security interest in any other merchandise, constitutes a waiver of any of our rights, or has any effect on other merchandise, or any other merchandise. If you do not make minimum payments as agreed, this security interest allows us to repossess, to the extent permitted by law, only the merchandise which has not been paid in full. The security interest gives us certain rights, such as the right to repossess, to the extent permitted by law, only the merchandise which has not been paid in full. If you do not make minimum payments as agreed, this security interest allows us to repossess, to the extent permitted by law, only the merchandise which has not been paid in full. To secure the Account that may arise by operation of law. However, we do not assert a security interest in your household goods, except to the extent such security interest is created, obtained or granted in a collection proceeding or by judgment of or other court order. You understand and agree that we will only retain a security interest in the purchase price until paid.

**PAYMENTS**

**Section 7. PAYMENT OPTIONS.** To determine the Total Account Balance at the end of each billing cycle, we take the previous balance at the beginning of your billing cycle, subtract any payments or credits and add any purchases, balance transfers, Cash Access transactions, debits, other charges, and Finance Charges. You will have a Finance Charge and/or No Finance Charge Balance (defined in Deferred Payment Balances and/or No Finance Charge Balances (defined in Section 10 of this Agreement). The Minimum Payment Due each billing cycle is the sum of: (i) any past due amounts; plus (ii) the greater of $10.00 or 2.25% of the Total Account Balance (excluding any Deferred Payment Balances) charges or Sears Account/Since fees assessed that billing cycle; and (iii) any Deferred Payment Balances as well as any applicable insurance charges or Sears Account/Since fees assessed that billing cycle; and (iii) any past due amounts. You may pay at least the Minimum Payment due amounts. You agree to pay at least the Minimum Payment Due each billing cycle. The Minimum Payment Due shown on (approximately 1/48th) then rounded to the next higher whole dollar (approximately 1/48th) then rounded to the next higher whole dollar amount, plus $1.00. However, if your Total Account Balance is less than $10.00, your Minimum Payment Due will be your Total Account Balance. Balances and/or No Finance Charge Balances, less any Deferred Payment Balances and/or No Finance Charge Balances, less any Deferred Payment Balances and/or No Finance Charge Balances.

**Section 8. CREDITS AND PAYMENTS.**

(a) **Refunds.** Cash refunds will not be made for goods or services purchased with the Account. Refunds will be made by a credit to the Account.

(b) **Method of Payment.** You agree to repay all amounts owed on the Account in U.S. dollars and by a check or other instrument drawn in a Proper Form. If and to make all payments in Proper Form. If a payment is not in a Proper Form, then crediting of that payment may be delayed, and no Finance Charge institution located in the U.S. or Puerto Rico, (b) sent to the processing address specified on your Account Statement and (c) accompanied by the payment coupon or bottom portion of your Account Statement. Payments received in Proper Form as of the day of receipt. Payments in Proper Form received after that time as of the following business day, will be credited as of the next business day. Payments not in a Proper Form may be delayed and could result in a late fee. Your payment will be credited as of the day of receipt, by 1:00 p.m. local time, on a business day, will be credited as of the day of receipt. Payments in Proper Form received after that time or on a non-business day will be credited as of the day of receipt but may not be posted excluding federal holidays. Crediting to your Account may be delayed up to five days if payment is not in a Proper Form or if it is received at any location other than the processing address specified in your Account Statement (including requiring payments made at Sears stores).

In addition to any applicable Finance Charges, we may charge a late payment fee when payment is not received or credited by the required time and date. Although we may not credit your payments as described in this

3

section, your available Credit Line, if one is assigned to the Account, may not be restored for several days after we receive your payment.

(c) **Conditional Payments.** Any conditional check, money order or any other instrument tendered as full satisfaction of a disputed debt must be sent to our address for billing error inquiries shown on each Account Statement, and must conspicuously state on the face of that instrument or in an accompanying letter that it is tendered for this purpose. If you make payment in any other way and we accept it, we will not have waived our right to collect any amount from you owing under this Agreement.

(d) **Application of Payments.** The order in which payments are applied to individual transactions on your Account is determined by the timing and type of charge. Generally, payments received will be applied in the following order: Sears Credit Protection Plan transactions or Sears AccountCare fees, billed Finance Charges, returned payment fees, previous balances, current balances, Deferred Payment Balances in the order in which Deferred Payment Balances expire and then to Finance Charge balances in the order in which No Finance Charge Balances expire. Payments will be applied within previous and current balances in the following order: Sears promotional balances, Old Balances, Sears regular balances, insurance charges, External regular balances, Cash Access promotional balances, External regular balances, fees excluding Cash Access fees and returned payment fees, Cash Access fees, and then Cash Access fees and returned payment fees. Within each balance type category, payments will be applied in the order that they were made. If more than one charge in any purchase type category is made to your account on the same date, payments that are allocated to that category will be applied first to the lowest priced item(s) in that category. However, certain promotions that we may offer from time to time may provide a special method of allocating payments. Any such special allocation method will be explained in the materials relating to a particular promotion, and you take advantage of any such promotion, then we will apply payments in the manner described in that promotion.

(e) **Skip a Payment.** Under the Skip a Payment promotion, when offered by us, you may elect not to make the Minimum Payment. Due for the designated billing cycle. However, Finance Charges will continue to accrue during the period of payment deferral and you still must pay any insurance charges due.

## SPECIAL PROGRAMS

**Section 10. SPECIAL PROMOTIONS.** From time to time, we may offer special promotions, under which purchases of goods or services, balance transfers, or Cash Access transactions, may be billed to your Account with special promotional terms. The Finance Charges, minimum payment, application of promotional payments and other terms for special promotions may differ from the standard terms described in this Agreement and as may be shown on your Account Statement. The standard terms of this Agreement apply to any special promotion, except where changed by the special promotion. Except to the extent modified by the terms of the special promotion, standard terms will continue to apply to any and all transactions that we do not subject to a special promotion. If you elect a special promotion, you agree to the terms of the promotion and understand that any unpaid balance subject to that promotion will be subject to the standard terms for Sears regular purchases, External regular purchases or Cash Access transactions (see Section 12) when the promotional period ends. We are not required to give you advance notice before returning or starting to bill you according to the standard terms described in this Agreement. You understand that the terms of any special promotion may be cancelled if at any time you are in default under this Agreement (see Section 18). If you are in default under this Agreement, you may not be eligible for any special promotions. Special promotion balances on which payments are deferred are referred to as "Deferred Payment Balances" in this Agreement. Special promotion balances not included in the calculation of the Minimum Payment Due and on which there are no Finance Charges assessed or payment required during the promotional period are referred to as "No Finance Charge Balances" in this Agreement.

**Section 11. REWARDS PROGRAMS.** From time to time, a bonus point, rebate, merchandise certificate or other incentive programs may be offered by us or others in conjunction with the Account ("Rewards Program"). These programs may include a participation fee. You agree that a Rewards Program only applies

during the period specified by us for the particular program, and only for the transaction(s) specified. Rewards Programs participation may be cancelled if at any time you are in default under this Agreement. You also agree that the Rewards Program points or credits may have no monetary value and may be used as specified under the Rewards Program. We may, at any time and subject to applicable law, change any term or condition, or add any term or condition, to any Rewards Program without notice to you. You understand and agree that any Rewards Program points or credits will be forfeited immediately upon closure of the Account by you or us.

## FINANCE CHARGES AND OTHER CHARGES

**Section 12. FINANCE CHARGES.** See the enclosed explanation of periodic date "Finance Charges" that will apply to your account.

**Section 13. LATE PAYMENT FEE.** If you fail to pay any Minimum Payment Due by the time and in the manner specified in this Agreement, to be credited as of its Minimum Payment Due Date, we may charge, and you agree to pay, a late payment fee of $20.00 if your balance is $1,000.00 or greater, $25.00 if your balance is $50.00 to $999.99, $10.00 if your balance is less than $50.00.

**Section 14. RETURNED PAYMENT FEE.** If you make a payment, including an electronic payment, that is not honored or is returned unpaid for any reason, even if it is paid upon resubmission, we may charge, and you agree to pay, a **FINANCE CHARGE** of $25.00 of this Cash Access or Balance Transfer transaction, but not less than $6.00.

**Section 15. OTHER FEES.**

(a) **Cash Access Transaction Fee.** If you utilize Cash Access or Balance Transfers, we may charge, and you agree to pay, a **FINANCE CHARGE** of 3% of the Cash Access or Balance Transfer transaction, but not less than $6.00.

(b) **Convenience Check Stop Payment Fee.** If a Convenience Check is stopped at your request, we may charge, and you agree to pay, a stop payment fee of $25.00.

(c) **Return Convenience Check Fee.** If we decline to honor a Convenience Check because the amount of the check would cause the balance to exceed your Cash Access line, you are in default (see Section 18), you did not comply with our instructions regarding the check, your Account has been closed, or your Account has a stop payment, we may charge, and you agree to pay, a return Convenience Check fee of $25.00.

(d) **Collection Fees.** If you are in default and fail to pay what you owe us, we may charge you reasonable attorney's fees, collection costs (including court costs) and other costs permitted by applicable law. Reasonable attorney's fees will be considered to be 35% of this outstanding balance on your Account where it is referred to an attorney for collection. State law may limit what collection costs and fees we may charge.

(e) **Service Fee.** We reserve the right to charge a service fee of $3.00 per item, to the extent permitted by law, for requests that you make to us, such as requests for copies of sales slips or providing other documentation regarding your Account (other than in connection with billing errors).

## PHONE CALLS, CREDIT INVESTIGATION REPORTING

**Section 16. PHONE CALLS.** We and our servicers or agents may contact you by telephone or electronic means regarding the Account, including your use of automatic dialing/announcing device. We and our servicers or agents may listen to and record any phone conversations with you for training purposes or to evaluate the quality of service, or as otherwise permitted by law. You agree that we may contact you about your Account without advance notice from us.

**Section 17. CREDIT INVESTIGATION AND DISCLOSURE OF INFORMATION.** We have the right to investigate your credit, employment and income records, and to verify your credit references for

5

4

**SECURITY INTEREST**

You grant us a security interest in the Account and the Agreement and its terms to secure all amounts you owe us.

## DEFAULT, TERMINATION AND OTHER

**Section 18. EVENTS OF DEFAULT.** You will be in default of this Agreement if one of the following events occurs:

- We do not receive payment of any Minimum Payment Due on the Account by the time and manner specified in the Agreement for the Minimum Payment Due Date as shown on each Account Statement.

- You provide us with any false or misleading information or signatures in connection with the Account or the Agreement, or fail to provide material information on the credit application, sales tickets or other documents and instruments.

- You become the subject of attachment, foreclosure, repossession, lien, judgment or other legal action.

- You are in default under any other agreement you may have with us, Sears or any Sears Affiliate.

- We receive information from third parties which indicates a serious delinquency or charge-off against you with other creditors or other indications that your ability to meet the obligations of this Agreement, or continue to apply until full payment, or to suspend your credit privileges under this Agreement.

If any of you are in default under any of the terms of this Agreement, then all of you will be in default.

**Section 19. OUR REMEDIES AND ENFORCEMENT.** If you are in default or in the event of your death, in addition to any Finance Charge increase under Section 12(g) of this Agreement, we may: (subject to applicable laws, including any required notice and right to cure) (a) terminate the Account, in which case the terms of this Agreement will continue to apply until full payment; (b) suspend your credit privileges; (c) require immediate payment of your entire Total Account Balance, including special promotion balances...

**Section 20. FAILURE TO ENFORCE IS NOT A WAIVER.** We may choose to delay or not to enforce any of our rights under this Agreement without losing them. Any failure or delay by us in enforcing strict performance of the Agreement does not waive any of our rights.

**Section 21. ARBITRATION** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, arising out of statute, or otherwise) arising out of, relating to, or in connection with (a) this Agreement; (b) any prior agreement; (c) the Account; (d) your application for credit; (e) the relationship resulting from any of the foregoing; and/or (f) the validity, enforceability or scope of this arbitration section or of this Agreement, shall be resolved, upon the election of you or us, by binding arbitration...

**YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, YOU OR WE WILL NOT HAVE THE RIGHT TO GO TO COURT EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM OR TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND THE ARBITRATOR'S DECISION ON THAT CLAIM WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.**

**Section 22. CHANGE OF TERMS.** We may, at any time and subject to applicable law:

- Change any Credit Line applicable to the Account;

- Change any term or condition of this Agreement relating to your Account, including the Annual Percentage Rate applicable to outstanding and future balances, and the fees or other charges applicable to the Account; and

- Add any new term or condition to this Agreement relating to your Account.

When applicable, we will give you notice of such changes, and an opportunity to reject such changes, as required by law.

**Section 23. TERMINATION.** You may terminate this Account at any time by paying all sums due under this Agreement and destroying all Cards issued on the Account. We may, at any time without prior notice to you and with or without cause, terminate this Account.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
(web site: www.adr.org)

JAMS (web site: www.jamsadr.com)
1920 Main Street, Suite 300
Irvine, CA 92610

National Arbitration Forum (web site: www.arbitration-forum.com)
P.O. Box 50191
Minneapolis, MN 55405

cause, terminate this Agreement or terminate your right to make future purchases or other transactions on the Account. If we terminate your Account, you will immediately owe us the Total Account Balance. We may terminate your Account, at our option, or any time after we receive notice of the death of the Account holder. Our termination of this Account does not affect: (a) the rights of the other party to the Account, (b) any outstanding balances, including charges or amendments by us at any time before or after termination, which remain in effect until the entire Total Account Balance is paid in full; or (c) your liability for amounts owed on the Account according to the terms of this Agreement including as it may be amended.

**Section 24. YOUR NOTICE OF CHANGES.** You will promptly inform us if you change your name, residence or place of employment. We may send an adverse change notice to the last address shown on the Account. Any purchaser, assignee or transferee of this Account or Statement is a Statement is a security agreement and we will send notices to you. Any notice, disclosure or amendment stating under this Agreement will not be maintained or as against you of any interest or security interest will be sent or as assign any of your rights or obligations under this Agreement.

**Section 25. ASSIGNMENT.** You understand that the Account or balances on your Account, including any security interest securing such balances or amount may be sold, assigned or otherwise transferred or granted without notice to you. Any purchaser, assignee or transferee of the Account will be entitled to all of our rights under this Agreement. You may not sell, assign or transfer your Account.

**Section 26. FOREIGN TRANSACTIONS.** If you use the Account in a currency other than U.S. dollars, or if our affiliates use the Account will be as the exchange rate in effect the amount will be converted to U.S. dollars. We are not liable for these, and they are the sole responsibility of those third parties. You agree to hold us harmless from any claims, actions or damages resulting from the use of insurance for Sears transactions, using current Sears currency conversion rate procedures. Currently, the currency conversion rate used may be based on the market rate or a government-mandated rate in effect on the date either a wholesale, increased by one percent. The currency conversion rate applied on the conversion date may differ from the rate in effect on the date you used your Card or Account.

**Section 27. OTHER SERVICES.** From time to time, third parties may offer enhancements related to the Account. We are not liable for these, and they are the sole responsibility of those third parties offering such enhancements.

**Section 28. GOVERNING LAW.** This Agreement and your Account will be governed by and subject to the laws of the State of Arizona, regardless of where you live or where you use the Account. This Agreement is entered into in Arizona and all credit under this Agreement will be extended from Arizona.

**Section 29. ENFORCEABILITY.** If any term or provision of this Agreement is found to be unenforceable, it will not make any other term or provision of this Agreement unenforceable. If there is any conflict between any term of this Agreement and applicable law, this Agreement will be considered changed to the extent necessary to comply with the law.

**Section 30. SPANISH LANGUAGE TRANSLATION.** As a customer service, we will provide you with a copy of this Agreement in Spanish upon request. To obtain such a copy, visit any store or call us at P.O. Box 816002, Cleveland, OH 44181-6002, or call us at 1-800-669-8488, and request a Spanish language copy of this Agreement.

Como un servicio a nuestros clientes, le proveeremos una copia de este Acuerdo en español si usted así lo solicita. Para obtener dicha copia, puede escribirnos al P.O. Box 816002, Cleveland, OH, 44181-6002, o llamarnos al 1-800-669-8488, y solicitar una versión en español de este Acuerdo.

9

---

**Section 31. AGREEMENT.** This Agreement consists of this document, any other pages or materials that may be provided to you in the same envelope as this Agreement, and the terms on the back, all of which together with any written notices (including charges or additions to the terms or conditions of this Agreement which may be provided to you from time to time.

**STATEMENT OF BILLING RIGHTS**
**(KEEP THIS NOTICE FOR FUTURE USE)**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE**
**RECEIVE YOUR WRITTEN NOTICE**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

10

## IMPORTANT NOTICE REGARDING CHANGES IN YOUR SEARS NATIONAL BANK SEARS CARD ACCOUNT

Dear Sears Cardholder:

Sears National Bank is changing the terms on your Sears Card Account or Sears Premier Card Account ("Account"). The Sears Card and Sears Premier Card Cardholder Account and Security Agreement ("Agreement") enclosed contains the new terms applicable to your Account. Please read this notice and the enclosed Agreement carefully and retain them for your records.

This notice highlights some of the changes in the terms of your Account, as shown in the Agreement.

- **Annual Percentage Rate:** If at any time you fail to make the Minimum Payment Due by the minimum payment due date for two consecutive Billing Cycles, the Annual Percentage Rate for Regular Purchases may be increased to 26%.

- **Grace Period:** You must pay your entire New Balance in full each month by the payment due date shown on your Account Statement to avoid paying a Finance Charge on new purchases. At present, you have about 30 days to repay your balance before a Finance Charge is imposed.

- **Late Payment Fee:** If you do not pay the Minimum Payment Due by the payment due date shown on your Account Statement, a late payment fee may be imposed. At present, the late payment fee is $29 if your balance is $50 or greater, or $10 if your balance is less than $50. At present, the late payment fee is $20 on balances of $50 or more, or $10 on balances of $50 or less.

- **Returned Payment Fee:** If you make a payment, including an electronic payment, that is not honored or is returned unpaid, a returned payment fee of $25 will be imposed. At present, the fee is $15.

- **Service Fee:** If you request a service, such as asking for copies of sales slips or providing other documentation regarding your Account (other than in connection with an error), we will impose a service charge. At present, we charge a fee of $3 for requests you make to us.

- **Arbitration:** Any claim, dispute or controversy with us, Sears, Roebuck and Co. or its affiliates, or certain other persons will be resolved by arbitration, as set forth in the Agreement. At present, there is no such arbitration provision for your Account.

In your written notice, please include your Account number and please state that you wish to reject the arbitration provision. If you initiate a new purchase after notifying us as described above and outstanding balance under your Account, then any notice you may give will be ineffective. If you initiate a new purchase after the time of the effective date of 30 days from your receipt of this notice or the time of the new purchases.

The changes to the terms governing your Account will become effective 30 days from your receipt of this notice, unless you notify us in writing before that date at Sears NAAC, P.O. Box 306328, Middleburg Heights, OH 44130-6328.

A-SCOT14/99

---

SEARS NATIONAL BANK
SEARS CARD ACCOUNT
SEARS PREMIER CARD ACCOUNT
CARDHOLDER ACCOUNT AND SECURITY AGREEMENT

This Sears Card Account and Sears Premier Card Account Cardholder Account and Security Agreement ("Agreement") governs the use of your Sears Card and Sears Premier Card Account ("Account"). You should read this notice and keep this Agreement for your records. You agree to use your Account only for personal, family or household purposes, and you intend to keep all merchandise purchased on the Account in your principal residence.

**Section 1. DEFINITIONS; ACCEPTANCE.** In this Agreement: (a) the words "you," "your" and "yours" mean any person named on the credit application or acceptance certificate as an accountholder, applicant, or co-applicant; (b) "Sears" means Sears, Roebuck and Co.; (c) the words "we," "us" and "our" mean Sears National Bank (an issuer of the Card and Account and who keeps this Agreement for your records); and (d) "Card" means a credit card issued by Sears National Bank for use with the Account.

You agree that the terms and conditions of this Agreement apply to your use of your Account and to any person to whom you allow any other person to use your account.

**Section 2. LOANS AND LIABILITY.**

(a) We may extend credit to you to pay for purchases of goods and services made using the Card or Account. You may be required to sign a sales slip or other written authorization for purchases. You agree that your authorization by mail, telephone or electronic means is as effective as your signature.

(b) **Liability.** You agree to pay all amounts owed on the Account whether incurred by you, any other accountholder, any person you allow to use the Account or any person who uses the Card or Account according to the terms of this Agreement. Court decrees for divorce or separation do not affect liability for any use of the Card or Account. You promise to use your Account only if you have the intent and financial capacity when the transaction occurs to repay the amount in full pursuant to this Agreement.

(c) **Joint Accounts.** If the Account is a joint Account, each accountholder is bound by the terms of this Agreement and is jointly and individually liable for all amounts owed under the Account. Any joint accountholder who uses the Account themselves, or allows another to use the Account, is liable for all amounts owed under the Account. We may provide all accountholders. We may pay on instructions given by any one accountholder. We may honor any such instructions. If any accountholder gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account.

(d) **Failure to Honor Card or Authorize Transaction.** We are not responsible for the failure of anyone to honor a Card or the Account. We will not be liable if, for any reason, we do not authorize a transaction on the Account, even if you have sufficient available credit.

---

**Section 3. ACCOUNT STATEMENT.** We will send you an account statement ("Account Statement") for each Billing Cycle in which the Account has a balance of $1.00 or more, or a finance charge is imposed. The Account Statement (including the reverse side) contains important information and should be carefully read and reviewed each time it is received.

**Section 4. AUTHORIZED AND UNAUTHORIZED USE.**

(a) **Authorized Users.** You may ask that an individual be added, deleted or changed as an "authorized user" ("Authorized User") by calling us at the telephone number or writing to us at the address indicated on your Account Statement. You understand that we will issue a Card to each Authorized User. If you terminate this authorization, you must ask us to close the Account and take any action on the Card. Any Authorized User is your agent for all purposes under this Agreement. You understand that each Authorized User grants us a security interest in any Card issued to that Authorized User. Each Authorized User can make purchases on the Account that you could later, either on behalf of yourself or the Authorized User. You are responsible for all charges made on the Account by the Authorized User(s) (i) we may disclose information about charges made by the Authorized User in writing at any time; and (ii) any Authorized User is your agent for purposes of managing the Account. We can manage the Account subject to such limitations as we may impose, and (v) we may deny any liability, accept and act upon any instructions from any Authorized User. You understand that these are the same extent you are Authorized Users of this Agreement applicable to the Account.

You understand that we do not encourage the use of the Account by persons who are not accountholders or Authorized Users. If you allow another person to use your Account but do not tell us and later liability that person as an Authorized User, you may still be responsible for control or terminate the use of your Account by such persons, and you will remain liable for all uses of the Account.

(b) **Unauthorized Use.** If you discover or reasonably believe that an unauthorized use of your Account is occurring or has occurred, you agree to (i) call us immediately at the telephone number, or write to us at the address, indicated on your Account Statement and to cooperate with us in making a reasonable investigation of your claim. If you give us notice concerning loss or theft of a Card, you will not be liable for any unauthorized use that occurs after you notify us. To be sure that a Credit Limit is not currently applicable to your Account, we may assign one at any time. We may increase, decrease, suspend or revoke your Credit Limit at any time without notice to you at any time without notice to you and without affecting your obligations under this Agreement. If your Account balance exceeds the Credit Limit at any time it does not permanently increase your Credit Limit unless it is reduced by unpaid balances, special promotions and transactions authorized before the amounts.

(c) **Unauthorized Use.** You will not be liable for unauthorized use of the Account. Your liability for unauthorized use of the Card that occurs after you notify us of the loss or theft, or possible unauthorized use of the Card, will not exceed $50.

**Section 5. CREDIT LIMIT.** We may assign a credit limit ("Credit Limit") when the Account is opened. If a Credit Limit is not currently assigned to your Account, we may assign one at any time. We may increase, decrease, suspend or revoke your Credit Limit at any time without notice to you at any time without notice to you and without affecting your obligations under this Agreement. If your Account balance exceeds the Credit Limit at any time it does not permanently increase your Credit Limit unless it is reduced by unpaid balances, special promotions and transactions authorized before the amounts. You understand there may be a delay after you make a payment before the amounts.

repaid are available for re-borrowing. You agree not to exceed any available Credit Limit established by us. An overpayment or credit balance will not increase your Credit Limit. We may decline purchases that exceed a Credit Limit. You agree to be responsible for all charges made on the Account whether or not they exceed your Credit Limit.

**Section 6. SECURITY INTEREST.** Each Accountholder and each Authorized User grants us a purchase money security interest under the Uniform Commercial Code law, in each item of merchandise purchased on the Account. By signing the sales slip or otherwise indicating your intent to make the purchase under this law, to secure any interest or lien on your dwelling to secure this Account. You agreed, that this security interest does not apply to that amount is paid in full. If the merchandise is returned to us we will cancel the security interest which allows us to repossess the merchandise. We only the merchandise which has not been paid in full. If you do not make payments as required we may, to the extent permitted by law, repossess the merchandise that may arise by operation of law or that gives rise to a right or lien created, obtained or granted in a collection proceeding or by judgment or other court order. You understand and agree that you are responsible for any loss or damage to the merchandise until the purchase price is fully paid.

**PAYMENTS**

**Section 7. PAYMENT OPTIONS.** You may pay the "Total Account Balance" shown on your Account Statement in full each month, or you agree to pay the "Total Account Balance" (defined in Section 1 of this Agreement) shown on your Account Statement by the "Minimum Payment Due" shown on your Account Statement by the payment due date. "Payment Due Date" shown on that Account Statement. You may always pay more than the Minimum Payment Due and may pay your Total Account Balance in full at any time.

**Section 8. MINIMUM PAYMENTS.** The Minimum Payment Due is based on the current Account Balance, as shown on your Account Statements, less any Deferred Payment Balances (defined in Section 10 of this Agreement). The Minimum Payment Due shown will equal the scheduled monthly minimum payment ("Scheduled Payment") shown on each Account Statement by the Minimum Payment Due assessed that Billing Cycle; and (b) any applicable insurance charges but not less than $10.00. If, however, the Total Account Balance less any Deferred Payment Balances, rounded to the next higher whole dollar amount, is less than $10.00, you must pay the Total Account Balance less any Deferred Payment Balances.

**Section 9. CREDITS AND PAYMENTS.**

(a) Refunds. Cash refunds will not be made for merchandise or services purchased with the Account.

(b) Method of Payment. All payments are owed on the Account in U.S. dollars. All payments should be made by negotiable instrument in the U.S. dollars, and drawn on funds on deposit in the U.S. or Puerto Rico. Federally-insured depository institutions located in the U.S. or Puerto Rico. Account Statement by 1:00 p.m. local time, on a business day, will be credited as of the day of receipt. Payments received after 1:00 p.m. local time or on a business day, or received after 1:00 p.m. local time days are Monday through Friday, excluding federal holidays.

Crediting to your Account may be delayed up to five days if payment is not made in U.S. dollars. Standard terms will apply.

(a) received at the Account Statement (including payments made at Sears specified); (b) if not made in U.S. dollars drawn on funds on deposit in a (federally-insured depository) financial institution located in the U.S. or Puerto Rico; or (c) not accompanied by the remittance portion of your Account Statement.

We may accept a payment of less than the required time and date. Although we will credit your payments as described in this section, your available Credit Limit if one is assigned to this Account, may not be restored for several days after we receive your payment.

(c) Payments. Any conditional check, money order or any other instrument tendered with a restrictive endorsement or as full satisfaction of a disputed debt must be sent to our address for billing error notices shown on your Account Statement. You waive your rights to any amounts of such payments within this Agreement by any other means, will not have waived our right to collect any amount from you owing under this Agreement.

(d) Application of Payments. Payments received will be applied in the following order: Sears Account charges, Regular Purchases (see Section 1), Finance Charges, returned payment charges, Deferred Payment Balances (see Section 10) in the order in which they were made. If more than one item is charged to your Account in which they were made, and with the lowest priced items first, however, we will apply payments received on the Account to the lowest APR balances first, to the highest APR. If you make a late payment, we will apply payments received on the Account first to the lowest priced purchases, then to Regular Purchases, regardless of the order in which purchases were made.

(e) Skip a Payment. Under the Skip a Payment promotion, when offered by us, you may elect not to make the Scheduled Minimum Payment for the designated billing period. Finance Charges and insurance charges (see Section 10) in the order in which they may be billed to you. Finance Charges, and insurance charges also payment deferral and you still must pay any insurance charges due.

**Section 10. SPECIAL PROMOTIONS.** From time to time, we may offer special promotions, under which purchases of merchandise or services may earn bonus promotional items. The Finance Charges may be billed to you under special promotional terms. The Finance Charges described in this Agreement and as may be shown on your Account Statement. The standard terms of this Agreement apply to any special promotion unless otherwise noted, and subject to a special promotion, you agree to the terms of the promotion will be treated as a Regular Purchase and all transactions that are subject to a special promotion. If you elect a special promotion, you agree to the terms of this Agreement and understand that any unpaid balance starting to bill you according to the standard terms described in this Agreement and as may be shown on your Account Statement. You understand that if the terms of any special promotion you agree to the terms of this Agreement, you may not be eligible for any special promotions.

**SPECIAL PROGRAMS**

balances on which payments are deferred are referred to as "Deferred Payment Balances" in this Agreement. Special promotion balances on which there is no Finance Charge assessed during the promotional period are referred to as "No Finance Charge assessed" in this Agreement.

**REWARDS PROGRAMS.** From time to time, bonus point, rebate, merchandise certificate or other incentive programs may be offered by us or others in conjunction with your Account ("Rewards Programs"). Rewards Programs participation may be cancelled if at any time you are in default under this Agreement. You also agree that the Rewards Programs points or credits will be forfeited immediately upon closure of the Account by you or us.

**FINANCE CHARGES AND OTHER CHARGES**

**Section 11. FINANCE CHARGES.** See the enclosed explanation of "Finance Charges" that will apply to your Account.

**Section 12. LATE PAYMENT FEE.** If you fail to pay any Minimum Payment Due by its Minimum Payment Due Date, we may charge, and you agree to pay, a late payment fee of $25.00 if your balance is $500.00 or greater, $10.00 if your balance is less than $500.00.

**Section 13. RETURNED PAYMENT FEE.** If you make a payment, including an electronic payment, that is not honored or is returned unpaid for any reason, we may charge you, and you agree to pay, a returned payment fee of $35.00. Your option to pay electronically is not honored or returned, even if the charge is the first time your payment is not honored or returned.

**Section 14. OTHER FEES.**

(a) Collection Fees. If we default (generally a failure to pay what you owe us; see Section 19 of this Agreement), we may charge you reasonable attorney's fees, collection costs (including expenses incurred in relation to attorney's fees (not to exceed 15% of the unpaid balance) where permitted by applicable law. Reasonable attorney's fees will be considered to be 35% of the outstanding balance on your Account when it is referred to an attorney for collection. State law may limit what collection costs and fees we may charge.

(b) Other Fees. We reserve the right to charge a service fee of $3.00 to the extent permitted by applicable law for each copy of any past statement or copies of sales slips or providing other documentation regarding your Account (other than in connection with actual billing error).

**PHONE CALLS, CREDIT INVESTIGATION, REPORTING AND INFORMATION SHARING**

**Section 15. PHONE CALLS.** We and our servicers or agents may contact you by telephone or electronic means regarding the Account, including the use of an automatic dialing/announcing device. We and our servicers or agents may also record any phone conversations with you for training purposes. You agree that we may contact you about your Account without advance notice from us.

4

5

6

**Section 17. CREDIT INVESTIGATION AND DISCLOSURE OF INFORMATION.** We have the right to investigate your credit, employment and income to verify your credit references and, subsequently, in connection with any updates, renewals or extensions of credit or reviewing or collecting the Account. We also may report your Account and subsequently, in connection with any updates, renewals or extensions of credit or reviewing or collecting the Account. We also may report your Account to credit reporting agencies and others. In connection with your application, for charge-off and subsequently, you authorize us to share information (including, but not limited to, transactions or experiences with you) to credit reporting agencies and others, information may be reported to us or to the credit reporting agency. Applicable law permits us to share additional information about you or your Account relationship with companies affiliated with us ("Sears Affiliates"). Applicable law also permits us to share information about you and your experiences with certain third parties and also permits us to share other information about your Account. If you believe that we have reported inaccurate information regarding the Account, contact us at P.O. Box 81614, Cleveland, OH, 44181-8014. Your letter must tell us why you believe that this inaccurate information is incorrect. If you have a copy of that report, please also send us a copy of the report (including, but not limited to, the credit report that includes the inaccurate information, you should also send us a copy of the Account that relates to the Account. You agree that we may obtain a consumer report prepared by a credit reporting agency you apply for the release of information to anyone who has acting in good faith. We will not be liable for any such furnishing of information. You agree that we may obtain a consumer report in connection with the review or collection of your Account or for any other legitimate purpose. You understand we may obtain a consumer report, including but not limited to your name and address, social security number, Account number or social security number. If you violate any of the terms of this Agreement, you understand and agree that a negative report reflecting on your credit may be submitted to a credit reporting agency if you breach your obligations under this Agreement.

**Section 18. INFORMATION SHARING WITH AFFILIATES.** From time to time, we may share information we have about you and your Account with Sears Affiliates, as permitted by law. We may make information about your transactions or experiences with us available to Sears Affiliates or to other companies. Specifically, you authorize us to share information about you or your Account with our affiliated Sears Affiliates (as applicable). Applicable law permits us to share other information about your transactions with third parties and also permits us to share other information about you and your Account. If you do not want us to share certain information with our affiliates, you may notify us in writing. You may tell us not to share such non-experience information with them by mail or by telephone. **You can write to us at P.O. Box 81614, Cleveland, OH, 44181-8014, and instructing us not to share such non-experience information with Sears Affiliates.**

**DEFAULT TERMINATION AND OTHER**

**Section 16. EVENTS OF DEFAULT.** You will be in default of this Agreement if any of the following events occur:

- You do not pay any Minimum Payment Due on the Account by the Minimum Payment Due Date as shown on each Account Statement;

- You violate any term or condition of this Agreement;

- You provide us with any false or misleading information or signatures in connection with the Account, or other documents and instruments;

- You file a petition of or seeks relief under any state insolvency statute, or our ability to enforce the federal bankruptcy code or any state insolvency statute.

---

**Section 19. CREDIT INVESTIGATION** rights against you or your interest in any property, including any community property, adversely affected by a petition filed by or against someone else.

- We receive information or have a reasonable belief that you are unwilling or unable to perform the terms or conditions of this Agreement;

- We receive information from third parties which indicates a serious delinquency or negative information about you which, in our determination, adversely affects your ability to meet the obligations of this Agreement.

- You become the subject of attachment, foreclosure, repossession, lien, judgment or garnishment proceedings or if

- You are in default under any other agreement you may have with us, Sears or any Sears Affiliate.

**Section 20. OUR REMEDIES AND ENFORCEMENT.** If you are in default or this Agreement, then all of you will be in default. In addition to any Finance Charge increase under Section 12(d) (subject to applicable laws, including notice and right to cure), (a) terminate the Account, in which event all the amount owing on the Account will continue to apply until paid in full. If we terminate the Account, we have the right to (b) suspend your credit privileges under the terms of the Account and the Credit Limit applicable to the Account, or any special promotion; (c) reduce immediate payment; (b) suspend your credit privileges under the terms of the Account and the Credit Limit applicable to the Account, or any special promotion; (c) reduce immediate payment of your entire Total Account Balance, including Finance Charges and any special Finance Charges. Any failure to enforce the terms of this Agreement, or our right to enforce the terms of this Agreement at any time, shall not constitute a waiver of any of our rights under this Agreement. We may exercise all lawful remedies, including the right to repossess the merchandise purchased on the Account, and the proceeds from any sale shall apply to those persons. It the unpaid balance of each item's purchase price is the difference to you. As an alternative to sale of the merchandise, we may retain the goods in satisfaction of the unpaid balance of that item's purchase price, as allowed by law. In the event of default, we may discuss collection of the Account with Authorized Users, who may be involved in the collection of the Account.

**Section 21. FAILURE TO ENFORCE IS NOT A WAIVER.** We may delay enforcing or not enforce any of our rights under this Agreement (including Fees and accounts) without losing them. Any failure or delay in enforcing strict performance of this Agreement, including the payment of Fees, or in exercising any right or partial payments or other remedies, shall be a waiver of any of our rights or of any other right. Any waiver by us of any right under this Agreement will not be a waiver of any right or remedy on any future occasion.

**Section 22. ARBITRATION.** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise, including statutory, common law, fraud or other intentional tort, or equitable claims) arising out of, relating to or in connection with (a) this Agreement and any prior agreement you may have had with us, or the

---

Sears, the Sears Affiliates, or with any of their predecessors, successors, and assigns, directors and representatives of any of the foregoing entities; (ii) the application to the Sears Affiliates; or if applicable, any relationship with us, Sears or any Account; (b) the establishment of any prior agreement or any relationship which results in or from this Agreement; (c) the validity, scope or enforceability of this arbitration section or this Agreement, or (e) the validity, scope or enforceability of this arbitration section of this Agreement; and (iii) any prior agreement (including all subsections (i) through (iii) shall be resolved, upon the election by you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules of the arbitration administrator. At your election, you may before a claim is filed, or at your final and binding arbitration section, except that each party retains the right to seek relief in a small claims court for disputes or claims within that court's jurisdiction; on an individual basis without resort to any form of class action, and without limiting your right to appeal such decision, to the extent that such right is available. This arbitration section governs when you elect to arbitrate. Sears or any Sears Affiliate, any provision of this Agreement shall survive the termination of this Agreement. You or we may elect to arbitrate under this section at any time, regardless of whether a lawsuit has been filed or the arbitrator has an opportunity to protect assets or preserve the status quo until the matter of the claim is filed.

All arbitrations shall be administered by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. As of July, 1999, the Code of Procedure, rules and forms, may be obtained by calling 1-800-474-2371 or at www.arb-forum.com. Any arbitration hearing at which you appear will take place at a location within the federal judicial district that includes your billing address at the time the claim is filed. We will advance either at your election before an award is rendered on the claim, or at NAF's request. The arbitrator will decide whether you, us or the intervening party shall ultimately be responsible for paying any fees. If we prevail, we will not seek reimbursement of our Account. If any arbitration filing fees are assessed against us in connection with any claim under $10,000, we agree to reimburse you for the payment of such fees. The arbitrator shall apply relevant substantive law and applicable statutes of limitation and shall provide for any other appropriate remedies, including the entry of findings of fact and conclusions of law.

This arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et seq. Judgment upon the arbitration award may be entered in any court having jurisdiction. This arbitration section shall survive repayment of your Account, as well as termination, amendment or expiration of the Account, if any, unless you and we otherwise agree in writing. If any portion of this arbitration section is deemed invalid or unenforceable under any principle or provision of law or equity, consistent with the Federal Arbitration Act, it shall not invalidate the remaining portions of this arbitration section or the Agreement. In the event of a conflict or inconsistency between this arbitration section and the other provisions of this Agreement or any prior agreement, this arbitration section shall govern.

**YOU UNDERSTAND AND AGREE, AND WE UNDERSTAND AND AGREE, THAT BECAUSE OF THIS ARBITRATION CLAUSE NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM.**

**Section 23. CHANGE OF CREDIT LIMITS.** We may, at any time and subject to applicable law:

- Change any Credit Limit applicable to the Account;
- Change any term or condition of this Agreement relating to your Account, including any Finance Charges applicable to outstanding and future balances; and the fees or other charges applicable to this Account; and
- Add any new term or condition to this Agreement relating to your Account.

Our right to change or add terms or conditions to this Agreement applies both to paying all sums due under this Agreement (such as Finance Charges and fees, and to non-financial terms, such as our enforcement rights and provisions regarding any Account charges) and may be exercised after that date. We will send you a written notice of any such change or addition as is required by law.

**Section 24. TERMINATION.** You may terminate this Account at any time by notifying us in writing. We may also terminate this Account at any time by notifying you, with or without prior notice to you, terminate this Agreement or cancel or suspend your right to make future purchases or other transactions on the Account. If we terminate your right to make future transactions on the Account, we will terminate the entire Account. Our stop using the Account and agree to payment (including any security interest) will remain in effect until the entire Agreement as to all transactions, including charges or amendments to your Account as to any outstanding balances, including charges or amendments from time to time after termination, which remain in effect until all amounts owed to the Account according to in full of this Agreement including as it may be amended.

**Section 25. YOUR NOTICE OF CHANGES.** You will promptly inform us if you change your name, residence or place of employment. If there is a material adverse change to your financial condition. We may also provide that we will continue to send Account Statements and other notices to the last address we maintained on the Account until you notify us of any change. If the Account is a joint Account, each accountholder appoints the others as agent(s) to designate the address to which we send the Account Statement (and any other agreements).

**Section 26. ASSIGNMENT.** You understand that the Account, or any interest, balance or amount owed under the Account may be sold, assigned, or transferred by us without notice to you. Any purchaser, assignee or transferee is entitled to all of our rights under this Agreement, including any interest arising, and to the benefits of this Agreement to the same extent as if your rights to transfer or assign any of your rights or obligations under this Agreement.

**Section 27. FOREIGN TRANSACTIONS.** If you use the Account in a currency other than U.S. dollars, we or our affiliates will convert the charge into a U.S. currency amount. The currency conversion rate used to determine the transaction amount. This currency conversion rate may differ from the rate in effect on the date the transaction is processed for the conversion of such foreign transactions and may differ from the transaction date of transaction posting date.

**Section 28. OTHER SERVICES.** From time to time, third parties other than the issuer and you understand that the cost of such insurance may be based additional features that they are the sole responsibility of insurance and other claims, actions or damages resulting from the agree to hold us harmless from any claims, actions or damages resulting from the types of these features, enhancements or other services. If you purchase any of liable for any loss or damage incurred as a result of those third parties. You types of these features, enhancements or other services and conditions from the insurer and you understand that the cost of such insurance may be based

---

upon the state where you resided or listed on your credit application when you originally applied for the insurance and insurance charges until you receive the move. You will be notified for any insurance coverage at any time. Insurance may be cancelled if you are no longer current or is in default, and may be reinstated when your Account becomes current or is no longer in default.

**Section 29. GOVERNING LAW.** This Agreement and your Account will be governed by, and interpreted in accordance with, the laws of the United States and, to the extent governed by state law, the laws of the State of Arizona, regardless of where you live or where you use this Account. This Agreement is found to you, the entire Agreement applies.

**Section 30. ENFORCEABILITY.** If any term or provision of this Agreement is found to be unenforceable, all other terms of this Agreement shall apply, and the will be considered changed to the extent necessary to comply with the law.

**Section 31. SPANISH LANGUAGE TRANSLATION.** As a customer service, we will provide you with a copy of this Agreement in Spanish upon your request. To obtain such a copy, please write to us at P.O. Box 81674, Cleveland, OH, 44181-8074, or call 1-800-917-7700, and request a Spanish language copy of this Agreement. Como un servicio a nuestros clientes, le proveeremos una copia de este Acuerdo en español si usted así lo solicita. Para obtener dicha copia, por favor escríbanos a P.O. Box 81674, Cleveland, OH, 44181-8074, o llámenos al 1-800-917-7700, y solicite una versión en español de este Acuerdo.

**Section 32. AGREEMENT.** This Agreement consists of this document, any other pages or materials that may be provided to you in the same envelope as this document that are clearly labeled to show they refer to this Agreement, and any written notices (including charges or additions) to the terms or conditions of this Agreement which may be provided to you from time to time.

**STATEMENT OF CREDIT BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us (on a separate sheet) at the address listed on your bill when it says "Mail Billing Error Notices," as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

---

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any amount in question, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If you did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF THE GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DISTRICT**

JOYCE HENDERSON,

        Plaintiff,

                                        COURT FILE NO.:  05-10339 JLT

v.

SHERMAN FINANCIAL GROUP, LLC;
SHERMAN ACQUISITION II, LP;
SHERMAN ACQUISITION II GENERAL
PARTNER LLC; ALEGIS GROUP, LP AND
ALEGIS GROUP, LLC,

        Defendants.

**AFFIDAVIT OF STEPHEN MCCONNELL**

STATE OF ILLINOIS

COUNTY OF COOK

      Personally appeared before the undersigned officer, duly authorized to administer oaths, Stephen McConnell, who states under oath as follows:

1. My name is Stephen McConnell and I am a Marketing Manager for Sears, Roebuck and Co. ("Sears"). The statements in this Affidavit are based on my personal knowledge. I am over 21 years of age, have never been convicted of a felony, and am competent to testify to the statements set forth in this Affidavit. The matters set forth herein are true and correct to the best of my knowledge. The documents attached as exhibits, as well as the other documents on which this affidavit is based, are business records, made at or near the time by, or from information transmitted by, a person with knowledge and kept in the ordinary course of Sears' regularly conducted business activity.

2. In my capacity as Marketing Manager I had personal knowledge of the business operations of Sears and of Sears National Bank ("SNB") and I have reviewed their business records, maintained in the regular course of business, relevant to the matters set forth in this Affidavit. SNB was a national bank located in Arizona, without branches in any other state. SNB was a wholly owned subsidiary of Sears Financial Holding Company, which in turn was a wholly owned subsidiary of Sears.

3. On or about October 1, 1982, Mary L. Burt ("Burt"), opened a Sears card Account No. 0357205772233 with Sears which permitted her to purchase goods on credit at Sears stores.

4.  The credit card agreement governing Burt's Sears account ("the Agreement") permitted Sears to amend the terms of the Agreement after providing written notice of proposed amendments. From time to time, Sears modified the terms of the Agreement by sending Burt such written notice of amendments. For example, in March 1995, Sears notified Burt of its intent to amend certain terms of her Agreement, including transferring her account to SNB. Burt's account was subsequently transferred to SNB.

5.  Pursuant to the terms of the Agreement, there were additional modifications made after Burt's account was transferred to SNB. A true and correct specimen copy of the Agreement as it existed in 1999, reflecting the amendments to the Agreement up to that time, is attached as Exhibit 1. The Agreement included the addition of an arbitration provision and also contained an assignment provision. The Agreement further permitted SNB to amend the terms of the Agreement, providing that:

> Section 23. **CHANGE OF TERMS.** We may, at any time and subject to applicable law:
>
> - Change any Credit Limit applicable to the Account
>
> - Change any term or condition of this Agreement relating to your Account, including the Annual Percentage Rate applicable to outstanding and future balances, and the fees or other charges applicable to the Account; and
>
> - Add any new term or condition to this Agreement relating to your Account.
>
> Our right to change or add terms or conditions to this Agreement applies both to financial terms, such as Finance Charges and Fees, and to non-financial terms, such as our enforcement rights and other contractual provisions. We may apply any changed or new terms or conditions to any current and/or future balances created after that date. We will send you a written notice of any such change(s) or addition(s) as required by law.

6.  The 1999 version of the Agreement received subsequent changes. A review of business records shows that the February 2002 Agreement was the Agreement included in the last change of terms notice sent to Burt in March 2002 and represent the current terms of the account. A true and correct copy of the February 2002 terms sent to Burt is attached as Exhibit 2. The September 2002 notice that was sent with the terms provided that Burt could reject the amendments by providing notice in writing to SNB at an address provided. Burt did not provide written notice to SNB of her rejection of the amendments.

7.  The arbitration provision now included in Burt's 2002 Agreement provides that:

> **Section 21. ARBITRATION.** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, arising out of statute, or otherwise) arising out of, relating to, or in connection with: (a) this Agreement;

(b) any prior credit card agreement you may have had with us, Sears, or with any of their predecessors, successors and assigns; (c) the application for and statements, disclosures, or other documents or communications relating to the Account; (d) the relationships which result from this Agreement or any prior credit card agreement, including any relationship with us or Sears; (e) the establishment, operating, handling or termination of the Account; (f) any transaction or attempted transaction relating to the Account; or (g) the validity, scope or enforceability of this arbitration section or this Agreement or any prior credit card agreement (the immediately preceding subsections [a] through [g] shall be referred to in this section, collectively, as "claims"), shall be resolved, upon your election or our election, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court, on an individual basis without resort to any form of class action, for claims within the scope of the jurisdiction of the small claims court.

Arbitration may be elected at any time, regardless of whether a lawsuit has been filed or not, unless such a lawsuit has resulted in a judgment or the other party would suffer substantial prejudice as a result of the delay in demanding arbitration. The arbitrator shall be a lawyer or retired judge with not less than 10 years experience in the practice of law. This arbitration section will not apply to any individual claims you filed in a lawsuit prior to the effective date of this Agreement, including individual claims that are later asserted in such a lawsuit, nor to the claims of a class certified prior to the effective date of this Agreement. The arbitration section will apply to all other claims, including class claims where a class has not yet been certified, even if the facts and circumstances upon which the claims are based existed before the effective date of this Agreement. This arbitration provision does not prevent either party from seeking interim injunctive relief from a court in order to preserve the status quo or to protect assets until the arbitration has been commenced and the arbitrator has an opportunity to consider the matter of interim relief.

Arbitrations shall be administered by one of the following three arbitration firms: American Arbitration Association, JAMS, and National Arbitration Forum in accordance with their respective rules and procedures in effect at the time the claim is filed. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association (web site: www.adr.org)
335 Madison Avenue, Floor 10
New York NY 10017-4605

JAMS (web site: www.jamsadr.com)
1920 Main Street, Suite 300
Irvine, CA 92601

National Arbitration Forum (web site: www.arbitration-forum.com)
P.O. Box 50191
Minneapolis, MN  55405

Any arbitration that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then-current billing address, or at some other place to which you and we agree in writing.

Whoever files the arbitration pays the initial filing fee.  If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm.  If you have paid the initial filing fee and you prevail, we will reimburse you for that fee.  If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing.  All other fees will be allocated as provided by the rules of the arbitration firm and applicable law.  However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for us to do so, or if you ask us in writing and we determine that there is a good reason for doing so.  Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law so determines.

The arbitrator shall apply relevant substantive law and applicable statutes of limitation, honor claims of privilege recognized at law, and shall provide written, reasoned findings of fact and conclusions of law.

The arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et. seq.  Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction.  This arbitration section shall survive repayment of your loan or extension of credit and termination of your Account.  If any portion of this arbitration section is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration section.  This arbitration section shall inure to the benefit of and be binding on each of the persons and entities mentioned in this section.

**YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT (EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM.  IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION.  THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.**

8.  The agreement further provides as follows:

> **Section 25.  ASSIGNMENT.**  You understand that the Account or any interest, balance or amount owed under the Account including any security interest securing such balance or amount may be sold, assigned or transferred by us without notice to you.  Any purchaser, assignee or transferee is entitled to the benefits of the Agreement (including any security interest arising under it).  You may not sell, transfer or assign any of your rights or obligations under this Agreement.

9.  Burt continued to carry a balance on her account and make payments following the changes to the arbitration provision.  On or about November 7, 2003, the balance on Burt's account was $10,262.56.  Burt's last charge on the account was on or about December 24, 1999.  Burt's last payment on the account was March 7, 2003.

10. On November 21, 2003, SNB sold Burt's account which is now owned by Sherman Acquisition II, LP.

Further the affiant sayeth not.

_Stephen S M Connell_
STEPHEN McCONNELL

Sworn to a subscribed before me this

_27_ day of _May_____, 2005

_Marsha Y. Dinwiddie_
Notary Public

My Commission Expires: _____2009____

```
............................................
:           OFFICIAL SEAL                 :
:      MARSHA Y. DINWIDDIE                 :
:  NOTARY PUBLIC, STATE OF ILLINOIS        :
:  MY COMMISSION EXPIRES 4-20-2009         :
............................................
```

776754v1

## CERTIFICATE OF SERVICE

I, Steven S. Broadley, Esquire of Posternak, Blankstein & Lund, LLP, hereby certify that on this 13th day of June, 2005, I caused a copy of the **Affidavit of Stephen McConnell** to be mailed to:

Daniel A. Edelman, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603-3403

Michael S. Poncin, Esquire
Moss & Barnett, P.A.
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI  02860

Steven S. Broadley

# SEARS NATIONAL BANK
## SEARS CARD® ACCOUNT
## SEARS PREMIER CARD® ACCOUNT
## CARDHOLDER ACCOUNT AGREEMENT

The Sears Card Account and Sears Premier Card Account Agreement and Security Agreement ("Agreement") governs the use of your Sears Card Account and Sears Premier Card Account ("Account"). You agree to when you deliver any Account.

**Section 1. DEFINITIONS; ACCEPTANCE.** In this Agreement (a) the words "you", "your" and "accountholder" mean any person named on the credit application or acceptance certificate as an accountholder, applicant or co-applicant by a person in whose name the Account has been opened; (b) "Sears" means Sears, Roebuck and Co., its participating affiliates and licensees, and participating entities that accept the Sears Card®; (c) "External Card" means any credit card issued to you by a non-Sears party; (d) the words "we", "us" and "our" mean Sears National Bank (an affiliated party) or any subsequent holder of the Account, and "Account" means the credit account opened by Sears National Bank in your name. By signing this Card, or by using the Card, you agree that this terms and conditions of this Agreement apply to you when you use any other person for personal, family or household purposes. You also agree that the terms and conditions apply to you when you use any other person to use your Account.

**Section 2. LOANS AND LIABILITY.**

(a) **Loans.** You authorize us to make loans and extend credit for the purchase of goods and services made using the Card or the Account ("Credit Access") transactions, including cash obtained from financial institutions, automatic teller machines, or other outlets in whatever form, including transactions made through the use of convenience checks ("Convenience Checks") to access your Account and quasi-cash transactions with a transaction, and (b) balance transfer transactions whether made using special balance transfer forms or otherwise as may be authorized, but excluding cash advances with us. All transactions are subject to approval. You may be required to sign a sales slip or other written authorization for transactions by us, which your authorization by mail, telephone or electronic means is effective as your signature.

(b) **Liability.** You agree to pay all amounts owed on the Account, whether incurred by you, any other accountholder anyone you allow to use the Card or by using the Card or Account, every person who uses the Card or Account is liable for that person's own use of the Card or by using the Card or Account and agrees that the terms and conditions of this Agreement apply to his or her use of the Card. If you have more than one accountholder, each accountholder on this Account is jointly and individually liable for all amounts owed under this Agreement. The delivery of any notices or Account Statements. See Section 5 of this Agreement, to any one accountholder. By keeping or using the Card, any accountholder agrees to the terms and conditions, provided all notices and instructions given by any such accountholder will be binding on any other person for honoring any such instructions. If any accountholder gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account.

(c) **Failure to honor Card or Authorize Transaction.** We are not responsible for the failure of any person or entity to honor a Card or the Account.

be liable for, for any reason and at any time, we do not authorize a transaction on the Account, even if you have sufficient available credit.

**Section 4. AUTHORIZED AND UNAUTHORIZED USE.**

*Authorized Users.* You may ask that an individual be added, deleted or changed as an authorized user ("Authorized User") by calling or writing us at the address indicated on your Account Statement. You understand we will issue a Card to each Authorized User. You understand we may take any action on the Account that you could take, either on behalf of yourself or that person. You are each responsible for all charges on the Account, in any merchandise purchased on the Account from Sears in accordance with Section 6 of this Agreement. You understand that (i) this Agreement controls all charges made by the Authorized User and (ii) the Authorized User may use the Account, and may pay all charges made by or for the Authorized User and we may disclose information about the Account to the Authorized User. We manage the Account, subject to such limitations as we may impose.

You understand that we do not encourage the use of the Account by who are not accountholders or Authorized Users. If you allow another person to use the Account but do not want that person to be an Authorized User, it is your responsibility to contact or terminate the use of your Account by such persons, and you will be liable for all charges made by such persons.

*Unauthorized Use.* If you discover or believe that any charge on your Account, or that the use of your Card or Account, is unauthorized, you must write or call us at the address indicated on your Account Statement and to cooperate with us in making a reasonable investigation of your claim. If you give us prompt notice concerning your claim, we may ask you to conditions for unauthorized use.

*Liability for Unauthorized Use.* You will not be liable for unauthorized use of your Account. If you have exercised reasonable care in safeguarding the Card. (2) you have notified us of the loss, theft, or unauthorized use of the Card, and (3) you have not complied with any of these conditions and you are in good standing. If you have not complied with any of these conditions and the immediately preceding the notice, your liability for the unauthorized use may not exceed $50.

**Section 6. SECURITY INTEREST.** Each accountholder (and each Authorized User) grants us a purchase money security interest under the Uniform Commercial Code in each item of merchandise purchased on the Account from

be liable to it, for any reason and at any time, we do not authorize a transaction on the Account, even if you have sufficient available credit.

**Section 5. ACCOUNT STATEMENTS.** In each billing cycle in which there is a debit or credit balance of $1.00 or more, or a Finance Charge is imposed unless we deem your Account unclosing. The Account Statement may contain important information and should be carefully read and reviewed each time it is received.

**Section 7. PAYMENT OPTIONS.** To determine the Total Account Balance at the beginning of your billing cycle, subtract any payments or credits and add any purchases, balance transfers, Cash Access transactions, debits, other charges, Finance Charges, fees, Deferred Payment Balances and/or No Finance Charge Balances (defined in Section 10 of this Agreement), the Minimum Payment Due and any Deferred Payment Balances and/or No Finance Charge Balances. Section 10 of this Agreement, plus all applicable insurance charges or Sears Account/Grace fees assessed that billing cycle; and (2) any past due amounts. Your Total Account Balance is the total amount due to us at the time of billing, and consists of your Minimum Payment Due plus any Deferred Payment Balances and/or No Finance Charge Balances. The result multiplied by .0222 (approximately 1/45) then rounded to the next highest whole amount, plus $1.00. However, if your Total Account Balance is $10.00 or less than that amount shall be your Minimum Payment Due will be your Total Account Balance, and any Deferred Payment Balances and/or No Finance Charge Balances.

**Section 8. CREDITS AND PAYMENTS.**

*Refunds.* Cash refunds will not be made to you in connection with your Account. Refunds will be credited to your Account.

*Method of Payment.* You agree to repay all amounts owed on the Account and to make all payments in Proper Form. A Payment is in Proper Form if it is received at the address specified in your Account Statement, and (i) accompanied by the payment stub from your Account Statement and (ii) made out to a financial institution located in the U.S. or Puerto Rico, (iii) sent to the processing address specified in your Account Statement and (iv) accompanied by the payment stub. Payments in Proper Form received after that time as of the day of receipt. Payments in Proper Form received at that time will be credited as of the day of receipt. Payments in Proper Form that do not meet all of the above requirements. If we receive a Payment not in Proper Form, up to five (5) days may elapse before the Payment is received and will be credited as of the day we receive it. Our business days are Monday through Friday, excluding federal holidays. Crediting to your account of a Payment not in Proper Form could be delayed up to five (5) days including if it is received at an address other than the processing address specified in your Account Statement (including payments made at Sears stores).

In addition to any applicable Finance Charges, we may charge a late payment fee if any Payment in Proper Form is not received by the required time and date. Although we will credit your payments as described in this Statement.

**Section 9. CREDIT LINE.** A Credit Line, including a Cash Access line ("Credit Line") is not a commitment assigned to your Account we may assign to your Account. By accepting your Account, you understand we may increase or decrease the Credit Line assigned to your Account at any time without notice. We may increase, decrease, suspend or terminate your obligations (including your right to make charges) immediately and without advance notice, even if you are not in default. A portion of your Credit Line may be disclosed in your Account Statement as available for Cash Access. If a Credit Line is assigned to your Account and transactions authorized but not posted. You understand that there may be a delay after you make a payment before the amounts repaid are available for re-borrowing. You agree not to exceed any credit balance will exceed a Credit Line. You agree to be responsible for all charges made on the Account whether or not they exceed your Credit Line.

section, your available Credit Line, if one is assigned to the Account, may not be restored for several days after we receive your payment.

(c) Conditional Payments. Any conditional check, money order or any other instrument bearing a restrictive endorsement or as full satisfaction of a disputed debt must be sent to our address for billing error notices, shown on each Account Statement, and must conspicuously state on its face that that payment or on an accompanying letter that it is tendered for this purpose. If you make payment in any other way and we accept it, we will not have waived our right to collect any amount from you owing under this Agreement.

(d) Application of Payments. The order in which payments are applied to the individual transactions on your Account is determined by the timing and type of charge. Generally, payments received will be applied in the following order: Sears Credit Protection Plan transactions, current billing cycle Account/care fees, billed Finance Charges, returned payment fees, previous balances, current balances, Deferred Payment Balances in the order in which Deferred Payment Balances expire and then No Finance Charge Balances in the order in which No Finance Charge Balances expire. Payments will be applied within previous and current balances in the following order: Sears promotional balances, Old Balances, Sears regular balances, insurance charges, External promotional balances, Cash Access promotional balances, External regular balances, fees excluding Cash Access fees and returned payment fees, Cash Access fees, and then Cash Access fees and returned payment fees. Within each category, payments will be applied in the order that they were made. If more than one charge on your purchase type category is made to your account on the same date, payments will be applied first to the lowest priced item. However, certain promotions that we may offer from time to time may provide a special method of allocating payments. Any such special allocation method will be explained in the materials relating to a special promotion, if you take advantage of any such promotion, then we will apply payments in the manner described in that promotion.

(e) Skip a Payment. Under the Skip a Payment promotion, when offered by us, you may elect not to make the Minimum Payment Due for the designated billing cycle. However, Finance Charges will continue to accrue during the period of payment deferral and you still must pay any insurance charges due.

## SPECIAL PROGRAMS

**Section 10. SPECIAL PROMOTIONS.** From time to time, we may offer special promotions, under which purchases of goods or services, balance transfers, or Cash Access transactions, may be billed to your Account with special promotional terms. The Finance Charges, minimum payment, application of purchases and other terms for special promotions may differ from the standard terms described in this Agreement. The standard terms of this Agreement apply to any special promotion, except where changed by the special promotion. Except to the extent modified by the terms of the special promotion, standard terms will continue to apply to any and all transactions that we elect not to include in a special promotion. If you elect a special promotion, you agree to the terms of the promotion and understand that any unpaid balance at the end of the promotion will be subject to the standard terms for Sears regular purchases, External regular purchases or Cash Access transactions (see Section 12) when the promotional period ends. We are not required to give you advance notice before returning or starting to bill you according to the standard terms described in this Agreement. You understand that the terms of any special promotion may be cancelled if at any time you are in default under this Agreement (see Section 18). If you are in default under this Agreement, you may not be eligible for any special promotions. Special promotion balances on which payments are deferred are referred to as "Deferred Payment Balances" in this Agreement. Special promotion balances not included in the calculation of the Minimum Payment Due and on which there are no Finance Charges assessed or payment required during the promotional period are referred to as "No Finance Charge Balances" in this Agreement.

**Section 11. REWARDS PROGRAMS.** From time to time, bonus point, rebate, merchandise certificate or other incentive programs may be offered by us or others in conjunction with the Account ("Rewards Programs"). These programs may include a participation fee. You agree that a Rewards Program only applies

during the period specified by us for the particular program, and only for the transaction(s) specified. Rewards Programs' participation may be cancelled if at any time you are in default under this Agreement. You also agree that the Rewards Program points or credits may have no monetary value and may only be used as specified under this Agreement. We may, at any time and subject to applicable law, change any term or condition, or add any term or condition, to any Rewards Program without notice to you. You understand and agree that any Rewards Program points or credits will be forfeited immediately upon closure of the Account by you or us.

## FINANCE CHARGES AND OTHER CHARGES

**Section 12. FINANCE CHARGES.** See the enclosed explanation of periodic date "Finance Charges" that will apply to your Account.

**Section 13. LATE PAYMENT FEE.** If you fail to pay any Minimum Payment Due by the time and in the manner specified in action 9(b) to be credited as of a the Minimum Payment Due Date, we may charge, and you agree to pay, a late payment fee of $29.00 if your balance is $1,000.00 or greater, $25.00 if your balance is $50.00 to $999.99, $10.00 if your balance is less than $50.00.

**Section 14. RETURNED PAYMENT FEE.** When you make a payment, including an electronic payment, that is not honored or is returned unpaid for any reason, we may charge, and you agree to pay, a **FINANCE CHARGE** of $35.00. At our option, we may assess this charge the first time your payment is not honored or returned, even if it is paid upon resubmission.

**Section 15. OTHER FEES.**

(a) Cash Access Transaction Fee. If you utilize Cash Access or Balance Transfers, we may charge, and you agree to pay, a **FINANCE CHARGE** of 3% of the Cash Access or Balance Transfer transaction, but not less than $5.00.

(b) Convenience Check Stop Payment Fee. If a Convenience Check is stopped at your request, we may charge, and you agree to pay, a stop payment fee of $25.00.

(c) Return Convenience Check Fee. If we decline to honor a Convenience Check because the amount of the check would cause the balance to exceed your Cash Access line, you are in default (see Section 18), you did not comply with our instructions regarding the check, your Account has been closed, or your Convenience Check fee may charge, and you agree to pay, a return Convenience Check fee of $25.00.

(d) Collection Fees. If you are in default and fail to pay what you owe us, we may charge you reasonable attorney's fees, collection costs (including expenses incurred in realizing on any collateral) and court costs if permitted by applicable law. Reasonable attorney's fees will be considered to be 33% of the outstanding balance on your Account when it is referred to an attorney for collection. State law may limit what collection costs and fees we may charge.

(e) Service Fee. We reserve the right to charge a service fee of $3.00 per item, to the extent permitted by law, for requests that you make to us, such as asking for copies of sales slips or providing other documentation regarding your Account (other than in connection with billing errors).

## PHONE CALLS; CREDIT INVESTIGATION; REPORTING

**Section 16. PHONE CALLS.** We and our servicers or agents may contact you by telephone or electronic means regarding the Account, including your use of automatic dialing/announcing device. We and our servicers or agents may listen to and record any phone conversations with you for training purposes or to evaluate the quality of service, or as otherwise permitted by law. You agree that we may contact you about your Account without advance notice from us.

**Section 17. CREDIT INVESTIGATION AND DISCLOSURE OF INFORMATION.** We have the right to investigate your credit, employment and income records, and to verify your credit references for

4

5

## SECURITY INTEREST

[text regarding security number and account]

## DEFAULT, TERMINATION AND OTHER

**Section 18   EVENTS OF DEFAULT.** You will be in default of this Agreement if any of the following events occurs:

- We do not receive payment of any Minimum Payment Due on the Account by the time and manner specified in the Account and the current Minimum Payment Due Date as shown on each Account Statement.

- You provide us with any false or misleading information or signatures in connection with the credit application on the Account or fail to provide material information on the credit application, sales tickets or other documents and instruments.

- You file or there is filed against you a petition in bankruptcy, insolvency or a petition for or your interest in any property, including any community property, is adversely affected by a petition filed by or against you.

- You become the subject of attachment, foreclosure, repossession, lien, judgment or similar proceedings; or

- You are in default under any other agreement you may have with us, Sears or any Sears Affiliate.

- We receive information from third parties which indicates is serious delinquency or charge-off against you with other creditors or the continued ability to apply until the amounts owing on the Account is in serious doubt, or otherwise adversely affects your ability to meet the obligations of this Agreement.

- We in good faith believe that you are unwilling or unable to perform the terms or conditions of this Agreement.

**Section 19   OUR REMEDIES AND ENFORCEMENT.** If you are in default or in the event of your death, in addition to any Finance Charge increase under Section 12(d) of this Agreement, we may (subject to applicable law, including any required notice and right to cure) (a) terminate the Account, in which case the terms of this Agreement will continue to apply until full payment; (b) suspend your credit privileges under this Agreement; (c) require you to pay the entire amount owing under the terms of the Account and this Agreement.

**Section 20   FAILURE TO ENFORCE IS NOT A WAIVER.** We may choose to delay or not to enforce any of our rights without losing them. Any failure or delay by us in enforcing strict performance of the terms of this Agreement, consistent with applicable law, shall not be a waiver of any of our rights or remedies. Acceptance by us of late or partial payments or money orders marked "payment in full" or tendered with other conditions or limitations shall not be considered a waiver of any of the rights herein granted by one of us to spouses and with others as required.

**Section 21   ARBITRATION.** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise) arising out of, relating to, or in connection with (a) this Agreement; (b) any prior agreement; (c) the relationships resulting from any of these agreements, including to the extent permitted by applicable law the validity or enforceability of this arbitration clause or section of this Agreement (the "arbitration section"); the scope of this arbitration section; and any claim or attempt to set aside this arbitration section; (d) the advertisement, solicitation, application, processing, closing or servicing of the Account; (e) any products or services sold in connection with the Account; (f) any documents or communications relating to the Account; and (g) any statements made to you about the Account or Sears, all including the establishment, handling or termination of the Account. [remainder of arbitration text]

THE ARBITRATION SECTION OF THIS AGREEMENT PROVIDES THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT EXCEPT FOR SMALL CLAIMS COURT, ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM OR TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ARBITRATION ADMINISTRATOR. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU ALSO WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.

**Section 22   CHANGE OF TERMS.** We may, at any time and subject to applicable law:

- Change any Credit Line applicable to the Account.

- Change any term or condition of this Agreement relating to your Account, including the Annual Percentage Rate applicable to outstanding and future balances, and the fees or other charges applicable to the Account.

- Add any new term or condition to this Agreement relating to your Account.

We will send you a written notice of any such change(s) or addition(s) as required by law.

**Section 23   TERMINATION.** You may terminate this Account at any time by paying all sums due under this Agreement and destroying all Cards issued on the Account. We may, at any time without prior notice, and with or without cause, terminate your Account.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605

American Arbitration Association (web site: www.adr.org)

National Arbitration Forum (web site: www.arbitration-forum.com)
P.O. Box 50191
Minneapolis, MN 55405

JAMS (web site: www.jamsadr.com)
1920 Main Street, Suite 300
Irvine, CA 92610

clause, cancel this Agreement or terminate your right to make future purchases or other transactions on the Account. If we terminate your Account, you will continue to be responsible for paying the Account and agree to destroy all Cards issued on the Account. Our termination of this Account does not affect (a) the terms and conditions of this Agreement which continue to apply; (b) the rights of any adverse action we take; or (c) any amounts owed to us. Upon termination by us or you, either at maturity or upon termination, the entire Total Account Balance is paid in full; or (b) your liability for payment of the entire Total Account Balance is paid in full; or (b) you fail to maintain the address to which the Account according to the terms of this Agreement including as it may be amended.

**Section 24. YOUR NOTICE OF CHANGES.** You will promptly inform us if you change your name, residence or place of employment. We may send any adverse change in your financial condition. We may send any statement or notices to the last address we have for you on the Account. Any purchase, assessment or transfer of the benefits of this Account is a Statement. You must pay interest arising under it. You may not sell, transfer or assign any of your rights or obligations under this Agreement.

**Section 25. ASSIGNMENT.** You understand that the Account or any interest in or amount owed under the Account, including any security interest securing such balance or amount may be sold, assigned or transferred.

**Section 26. FOREIGN TRANSACTIONS.** If you use the Account in a currency other than U.S. dollars, or if your affiliates use the Account and the charge into a dollar amount, the amount will be at the exchange rate under procedures. Currently, the currency conversion rate is the currency conversion rate procedures. Currently, the currency conversion rate is in effect on the date the conversion rate may differ from the rate in effect on the date you used your Card or Account.

**Section 27. OTHER SERVICES.** From time to time, third parties may offer enhancements related to the Account. We are not liable for these, and they are the sole responsibility of those third parties providing them. You agree to hold us harmless from any claims or damage resulting from any of the types of insurance that you will receive concerning the terms and conditions from the insurer and you understand that the cost of such insurance may be based on your Account balance and that these costs may be increased by one payment. The currency conversion rate used on the conversion date may differ from the rate in effect on the date you used your Card or Account.

**Section 28. GOVERNING LAW.** This Agreement and your Account will be governed by and in accordance with Federal law and, to the extent applicable law, this Agreement and your Account will be construed in accordance with the laws of the State of Arizona, regardless of where you live or where you use the Account. This Agreement is entered into in Arizona and all credit under this Agreement will be extended from Arizona.

**Section 29. ENFORCEABILITY.** If any term or provision of this Agreement is found to be unenforceable, it will not make any other term of this Agreement is unenforceable. If there is any conflict between any term of this Agreement and applicable law, this will be considered changed to the extent necessary to comply with the law.

**Section 30. SPANISH LANGUAGE TRANSLATION.** As a customer service, we will provide you with a copy of this Agreement in Spanish upon request. To obtain such a copy, call us at 1-800-669-8488, or write us at P.O. Box 816002, Cleveland, OH, 44181-6002, or request a Spanish language copy of this Agreement.

Como un servicio a nuestros clientes, le proveeremos una copia de este Acuerdo en español si usted así lo solicita. Para obtener una copia, puede escribirnos al P.O. Box 816002, Cleveland, OH, 44181-6002, o llamarnos al 1-800-669-8488, y solicitar una versión en español de este Acuerdo.

**Section 31. AGREEMENT.** This Agreement consists of this document, any other pages or materials that may be provided to you in the same envelope as this document, and any written notices (including charges or additions to the terms or conditions of this Agreement) which may be provided to you from time to time.

## STATEMENT NOTICE FOR CREDIT BILLING ERRORS
(KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and Account number.

* The dollar amount of the suspected error.

* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## IMPORTANT NOTICE REGARDING CHANGES IN YOUR SEARS NATIONAL BANK SEARS CARD ACCOUNT

**Dear Sears Cardholder:**

Sears National Bank is changing the terms on your Sears Card Account or Sears Premier Card Account ("Account"). The Sears Card and Sears Premier Card Cardholder Account and Security Agreement ("Agreement") enclosed contains the new terms applicable to your Account. Please read this notice and the enclosed Agreement carefully and retain them for your records.

The following highlights some of the changes in the terms of your Account shown in the Agreement:

- **Annual Percentage Rate:** Due by the minimum payment due date for two consecutive Billing Cycles, the annual percentage rate for Regular Purchases will be increased to 26%.

- **Grace Period:** You must pay your balance in full each month by the payment due date shown on your statement or before a Finance Charge is imposed. At present, you have about 30 days to repay your balance for purchases before a Finance Charge is imposed.

- **Late Payment Fee:** If you do not pay the Minimum Payment Due by the Minimum late payment fee of $25 if your balance is $50 or greater, or $10 if your balance is less than $50. At present, the late payment fee is $20 on balances of $50 or more, or $10 on balances of $50 or less.

- **Returned Payment Fee:** If you make a payment, including an electronic payment that is not honored or is returned, a returned payment fee of $25 will be imposed. At present, the returned payment fee is $15.

- **Service Fee:** We may impose a service fee of $3 for requests you make to us, such as asking for copies of sales slips or providing other documentation regarding your Account (other than in connection with your billing rights). At present, we do not impose such a service fee.

- **Arbitration:** Any claim, dispute or controversy with us, Sears, Roebuck and Co. or its affiliates, or certain other persons will be resolved by arbitration, as set forth in the Agreement. At present, there is no such arbitration provision for your Account.

Except for the terms governing your Account, the changes effective 30 days from your receipt of this notice, unless you notify us in writing before that date at Sears NAAC, P.O. Box 206328, Middleburg Heights, OH 44130-6328. In your written notice, please include your Account number and please state that you wish to reject the new terms. If you notify us you may deny any balance currently governing your Account. However, if you initiate a new purchase after notifying us, the changes to the terms governing your Account as explained above and contained in the new Agreement will become effective after 30 days from your receipt of this notice or the time of the new purchases.

A-SCOT14/99

---



## SEARS NATIONAL BANK SEARS PREMIER CARD* ACCOUNT SEARS CARD ACCOUNT

## CARDHOLDER ACCOUNT AND SECURITY AGREEMENT

This Sears Card Account and Sears Premier Card Cardholder Account and Security Agreement ("Agreement") governs the use of your Account and the Sears Premier Card Account ("Account"). You agree to use your Account only for personal, family or household purposes, and you intend to keep all merchandise purchased on the Account in your principal residence.

**Section 1. DEFINITIONS; ACCEPTANCE.** In this Agreement: (a) the words "you," "your," and "yours" mean any person named on the credit application or acceptance certificate as an accountholder, applicant, or co-applicant; (b) "Sears" means Sears, Roebuck and Co.; (c) "we," "us" and "our" mean Sears National Bank; (d) "Card" means the credit card issued by Sears National Bank for use with the Account.

You agree that the terms and conditions of this Agreement apply to your use of your Account after 30 days from your receipt of this notice. You also agree that the terms and conditions apply to you when you allow any other person to use your account.

**Section 2. LOANS AND LIABILITY.**

(a) Loans. We extend credit to you to pay for purchases of goods and services made using the Card or the Account. All transactions are subject to our approval. You may be required to sign a sales slip or other written authorization for purchases. You agree that your authorization by mail, telephone or electronic means is effective as your signature.

(b) Liability. You agree to pay all amounts owed on the Account whether incurred by you, any other accountholder, anyone you allow to use the Account or any person who uses the Card and Account according to the terms of this Agreement. Court decrees for divorce or separation do not affect liability for any use of the Card or Account. You promise to use your Account only if you issue the full amount to repay the amount in full pursuant to this Agreement.

(c) Joint Accounts. If the Account is a joint Account, each accountholder is bound by the terms of this Agreement and is jointly and individually liable for all amounts owed under the Agreement. If any person who uses the Card and Account according to the terms of this Agreement, constitutes delivery to any accountholder or Authorized User (see Section 4) will constitute delivery to all accountholders. We may rely on instructions given by you, and you will individually on any instructions given by any such person. We may close the Account for amounts owed under this Agreement, we may close the Account.

(d) Failure to Honor Card or Authorize Transaction. We are not responsible for any person to honor a Sears Card or the Account. We will not be liable if, for

---

(for) any reason and at any time, we do not authorize a transaction on the Account, even if you have sufficient available credit.

**Section 3. ACCOUNT STATEMENT.** We will send you an account statement ("Account Statement") for each period in which there is a balance of $1.00 or more, or a finance charge is imposed. The Account Statement (including the reverse side) contains important information and should be carefully read and reviewed each time it is received.

**Section 4. AUTHORIZED AND UNAUTHORIZED USE.**

(a) Authorized Users. You may ask that an individual be added, deleted or changed as an authorized user ("Authorized User") by calling us at the telephone number, or writing to us at the address, indicated on your Account Statement. You understand that we will issue a Card to each Authorized User. If you terminate this authority, you may take the Card from the Authorized User and take any action on the Account that you could take, either on behalf of yourself or the Authorized User. Each Authorized User grants us a security interest in any Authorized User. You understand that (i) this Agreement controls all charges made on the Account by the Authorized User, (ii) we may disclose information about charges made by the Authorized User; and (iii) we may disclose information about the Account to the Authorized User. If any Authorized User is your agent for purposes of managing the Account, we can manage the Account, subject to such limitations as we may impose, and (iv) we have the responsibility to control or terminate the Authorized User by such persons, and you will remain responsible for use of your Account by such persons.

You understand that we do not encourage the use of the Account by persons who are not accountholders or Authorized Users. If you allow another person to use the Account but not tell us, we will treat any charges made by an Authorized User as made by you and you will remain liable for any and all uses by such persons.

(b) Unauthorized Use. If you discover or suspect that your Account is being used without your authorization, you must notify us at the telephone number or write to us at the address, indicated on your Account Statement and to cooperate with us in making a reasonable investigation of your claim. If you give us notice concerning loss or theft, you will not be liable for the unauthorized use of the Account. You will not be liable for unauthorized use that occurs after you notify us. To the extent that you fail to report unauthorized use of the Account, your liability for unauthorized use will not exceed $50.

**Section 5. CREDIT LIMIT.** We may establish your credit limit ("Credit Limit") when the Account is opened and a Credit Limit is not currently assigned to your Account, we may assign one at any time. We may increase, decrease, suspend your credit obligations at any time without notice to you at any time. You agree not to make any transaction that will cause the outstanding balance of your Account to exceed your Credit Limit. If your Credit Limit is reduced by a finance charge or other charge and transactions authorized but not posted, you understand we may apply a delay after a payment before the amounts

repaid are available for re-borrowing. You agree not to exceed any available Credit Limit established by us. An overpayment or credit balance will not increase the Credit Limit. We may increase or decrease the Credit Limit at any time. You agree to be responsible for all charges made on the Account whether or not you exceed your Credit Limit.

**Section 6. SECURITY INTEREST.** Each Account holder (and Authorized User) grants us a purchase money security interest under the Uniform Commercial Code in each item of merchandise purchased on the Account (including installation charges), to the extent permitted by law. We do not waive or release this security interest by referring to it as a security interest in any other agreement or by the fact that we may have agreed, to the extent permitted by law, to waive any right to a security interest in your dwelling that may arise by operation of law or that gives rise to a right to secure this Account only the merchandise which has not been paid in full. If you do not make payments as required under this security interest allows us to repossess, to the extent permitted by law, to secure this Account or in any collection proceeding or by judgment or other court order. You understand and agree that you are responsible for any loss or damage to the merchandise until the purchase price is fully paid.

## PAYMENTS

**Section 7. PAYMENT OPTIONS.** You may pay the "Total Account Balance" shown on your Account Statement in full each month, or you agree to pay at least the "Minimum Payment Due" shown on each Account Statement by the "Minimum Payment Due Date" shown on that Account Statement. You may always pay more than the required Minimum Payment Due and may pay the Total Account Balance in full at any time.

**Section 8. MINIMUM PAYMENTS.** The Minimum Payment Due is based on the current Account Balance, as shown on your Account Statements, less any Deferred Payment Balances (defined in Section 10 of this Agreement). This Minimum Payment Due equals (a) any past due amounts, plus (b) any applicable minimum payment ("Scheduled Payment Due"), plus (c) any applicable insurance charges assessed that Billing Cycle; and (d) any part (at least the amount we will apply to the Total Account Balance less any Deferred Payment Balances, rounded to the next higher whole dollar amount, but not less than $10.00. If, however, the Total Account Balance less any Deferred Payment Balances equals $0, you must pay the Total Account Balance less any Deferred Payment Balance.

**Section 9. CREDITS AND PAYMENTS.**

(a) *Credits.* Cash refunds will not be made for merchandise or services purchased with the Account. Refunds will be made only by a credit to the Account.

(b) *Method of Payment.* You agree to repay all amounts owed on the Account in U.S. dollars and: (a) by a check negotiable in the U.S. or drawn on a federally-insured depository institution located in the U.S. or Puerto Rico, or (b) by any applicable payment processing location specified on your Account Statement. You may always pay more than the required Minimum Payment Due. Payments received by 1:00 p.m. local time, on a business day, will be credited as of the day of receipt. Payments received after 1:00 p.m. local time, or on a day we do not receive or accept payments, may not be credited until the next business day. Our business days are Monday through Friday, excluding federal holidays.

---

Crediting to your Account may be delayed up to five days if payment is: (a) received at other than your Account Statement, (including payments made at a Sears store) (b); not made in U.S. dollars drawn on a federally-insured depository financial institution located in the U.S. The remittance portion of your Account Statement.

(c) *Payments.* Any conditional check, money order or any other instrument tendered with a restrictive endorsement or as full satisfaction of a disputed debt must be sent to our address for billing error notices shown on your Account Statement. Your acceptance of any such tender as full payment will not operate as an accord and satisfaction without our prior written approval. If you make payment in any other way and we will not have waived our right to collect any amount from you owing under this Agreement.

(d) *Application of Payments.* Payments received will be applied in the following order: Finance Charges, returned payment charges, late charges, Regular Purchases (see Section 12) in the order in which they were made, Deferred Payment Balances (see Section 10) in the order in which they were made, and if more than one item is charged to your Account on the same date, your payments will apply first to the lowest-priced item. However, on the Account to the extent permitted by applicable law, we will apply payments received on the Account to any Finance Charge Balances (see Section 10) whether or not it bears a Finance Charge before applying them to Regular Purchases.

(e) *Skip a Payment.* Under the Skip a Payment promotion, when offered by us, you may elect not to make the Scheduled Payment for the designated period and must continue to accrue during the period of payment deferral and you will still owe any insurance charges due.

## SPECIAL PROGRAMS

**Section 10. SPECIAL PROMOTIONS.** From time to time, we may offer special promotions, under which purchases of merchandise or services may be billed to you under special terms. No Finance Charges will continue to accrue during this period. Deferred Payment Balances (see Section 10) in this Agreement and as may be shown on your Account Statement. The standard terms of this Agreement apply to any special promotion purchases in addition to the promotions shown in your Account Statement. If you elect a special promotion, you agree to the terms of the promotion and understand that any unique minimum payment, and standard terms for special promotions may be shown on your Account Statement. You understand that should you advance notice before resuming your terms of the promotion, we will treat as a Regular Purchase any Deferred Payment Balances, and you may be in default under this Agreement. If you fail to comply with the special terms described in this section, you understand that the terms of any special promotion may be in default under this Agreement, you may not be eligible for any special promotions.

---

balances on which payments are deferred are referred to as "Deferred Payment Balances" on which there are no Finance Charges assessed during this promotion period are referred to as "No Finance Charge Balances."

## REWARDS PROGRAMS

From time to time, bonus point, rebate, merchandise certificate or other incentive programs may be offered by us ("Rewards Programs") in conjunction with your Account. Rewards Programs participation may be cancelled, if at any time, you are in default under the Agreement. You also agree that if the Rewards Program or any Rewards Program points or credits will be subject to: applicable law, change any term or condition, or add any term or condition of the Account by you or us. We may, at any time, and subject to applicable law, change any term of this Agreement at any time, as specified under the Rewards Program, even if it is paid upon resubmission.

## FINANCE CHARGES AND OTHER CHARGES

**Section 12. FINANCE CHARGES.** See the enclosed explanation of "Finance Charges" that will apply to your Account.

**Section 13. LATE PAYMENT FEE.** If you fail to pay any Minimum Payment Due by its Minimum Payment Due Date, we may charge, and you agree to pay, a late payment fee of $25.00 if your balance is $50.00 or greater, $10.00 if your balance is less than that.

**RETURNED PAYMENT FEE.** If you make a payment, including an electronic payment, that is returned unpaid for any reason, we may charge, and you agree to pay, a returned payment fee of $25.00.

**Section 15. OTHER FEES.**

(a) *Collection Fees.* We reserve the right to charge a service fee of $3.00, to the extent permitted by applicable law. Reasonable attorney's fees and court costs if permitted by applicable law. Reasonable attorney's fees will be considered to be 35% of the outstanding balance on your Account when it is referred to an attorney for collection. State law may than in connection with actual billing errors).

**Section 16. PHONE CALLS, CREDIT INVESTIGATION REPORTING AND INFORMATION SHARING**

## PHONE CALLS

From time to time we or our servicers or agents may contact you by telephone or electronic means regarding the Account, including the use of an automatic dialing/announcing device. We and our servicers or agents may also monitor and/or record any phone conversations with you about your Account without further advance notice from us.

**Section 17. CREDIT INVESTIGATION AND DISCLOSURE OF INFORMATION.**
We have the right to investigate your credit, employment and income information. In connection with your application, for the purposes of considering extensions of credit or reviewing or collecting the Account, we also may report your transactions and experiences with you, including renewals or to verify your credit references and, subsequently, in connection with an update, renewal or extension of credit for which you have applied, or otherwise disclose information about you, and any transactions or experiences with you and Sears Affiliates, to consumer reporting agencies and others who may properly receive that information. You understand we may obtain a consumer report prepared by a credit reporting agency for any use related to your Account and at any time thereafter.

If you violate any of the terms of this Agreement, your violation may be reported as a negative item on your credit report. If you believe we have reported inaccurate information regarding the negative report, contact us at P.O. Box 6189, Cleveland, OH, 44101-8014. You understand that if you have a credit report that includes inaccurate information, you should also send us a copy of that report. You agree that we may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**Section 18. INFORMATION SHARING WITH AFFILIATES.** From time to time, we may share information about you and your experiences with Sears Affiliates. We are permitted to share information about you or your Account. Specifically, we may share information about our transactions or experiences with you and our affiliates and also with companies affiliated with us ("Sears Affiliates"). Applicable law also permits us to share additional information about you or your Account (including, but not limited, to information from applications you submit and information about your credit history) with Sears Affiliates. By entering into this Agreement you agree that we may share such information. **You can prohibit us from sharing information with Sears Affiliates by contacting us by telephone at 1-800-877-7700 or by mail at P.O. Box 818014, Cleveland, OH, 44181-8014, and instructing us not to share such non-experience information with Sears Affiliates.**

**DEFAULT, TERMINATION AND OTHER**

**Section 19. EVENTS OF DEFAULT.** You will be in default of this Agreement if any of the following events occurs:

- You do not pay your Minimum Payment Due on the Account by the Minimum Payment Due Date as shown on each Account Statement;
- You violate any term or condition of this Agreement;
- You provide us with any false or misleading information or signatures in connection with the credit application or the Account, or other documents and instruments;
- You file a petition of or seek relief under any federal or state insolvency statute, or our ability to enforce our bankruptcy code or any state insolvency statute, or our ability to enforce the federal

7

rights against you or your interest in any property, including any community property, would be materially adversely affected by a petition filed by or against someone else.

- We receive information or have a reasonable belief that you are unwilling or unable to perform the terms or conditions of this Agreement.
- We receive information from third parties which indicates a serious deficiency or negative charge-off against you which, in our determination, adversely affects your ability to meet the obligations of this Agreement.
- You become the subject of attachment, foreclosure, repossession, lien, judgment or garnishment proceedings; or
- You are in default under any other agreement you may have with us, Sears or any Sears Affiliate.

If any of you are in default under this Agreement, then all of you will be in default.

**Section 20. OUR REMEDIES AND ENFORCEMENT.** If you are in default (or the event of death in any way) (subject to applicable laws), including notice and right to cure) we may: (a) require immediate payment of the full amount owing on the Account; (b) reduce your Credit Limit; (c) terminate the Account, in which event all of the amount owing on the Account will continue to impose to the date of full payment, (b) suspend your credit privileges under this Agreement, (c) terminate all or any part of the Account and this Agreement, (d) declare the entire Total Account Balance, including any Finance Charges, and all other charges, immediately due and payable. Any failure to enforce any of its terms or conditions of this Agreement, or (b) use other lawful remedies. In addition, we may charge and you will pay all collection costs and fees, including reasonable attorney's fees, court costs and other costs, incurred in the collection of the Account.

In addition to any Finance Charge increase under Section 12(d) we may take any (subject to applicable laws, including notice and right to cure) to enforce our rights and remedies under this Agreement. We have the right to collect from you all amounts owing under the Account and to enforce this Agreement. We may refer the Account to a collection agency, or attorney, who shall be entitled to enforce this Agreement on the Account. If we use a collection agency or attorney to enforce our rights against you, you agree to pay the costs and fees of those persons.

If we repossess property, we have the right to impose to the date of full payment, and if we suspend or terminate your account we will continue to apply the rate specified in this Agreement to the unpaid balance of each item's purchase price, as allowed by law. As an alternative to sale of the merchandise, we may retain the goods in satisfaction of the unpaid balance or sale of item's purchase price, as allowed by law.

**Section 21. FAILURE TO ENFORCE IS NOT A WAIVER.** We may choose not to enforce any term in this Agreement (including fees and accounts) or may delay in enforcing a strict performance of this Agreement. Any delay or failure in enforcing any of our rights under this Agreement in accepting late or partial payments (including payments marked "payment in full" or tendered in full or in settlement of disputes), shall not be a waiver of any of our rights under this Agreement or prevent us from enforcing our rights at any time. If we delay or fail to exercise any of our rights, or accept payment, this shall not be a waiver of our rights.

**Section 22. ARBITRATION.** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise) arising out of, relating to, or in connection with this Agreement) by you or by your agreement you may have had with us,

8

Sears, the Sears Affiliates, or with any of their predecessors, successors, and assigns, directors and representatives of any of the foregoing entities; (ii) the acquisition by you of the Account, this Agreement or any prior agreement or relationship with any of them; (iii) the establishment of the Account or your relationship with us, Sears or any section of this Agreement, or (e) the validity, scope of enforceability of this arbitration section or this Agreement; and (iv) your prior agreement, its immediate subsections (a) through (g) and shall be resolved, upon the election by you or us or any of the Sears Affiliates, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court section, except that each party retains the right to seek relief in a small claims court for an individual dispute within the jurisdictional limits of the small claims court. This arbitration section shall apply no matter by whom or against whom the claim is filed.

All arbitrations shall be conducted before the National Arbitration Forum ("NAF") in accordance with the Code of Procedure in effect at the time the claim is filed. As of July, 1999, the Code of Procedure, rules and forms, NAF's Web site or may be obtained by calling 1-800-474-2371, or by writing to NAF, P.O. Box 50191, Minneapolis, MN, 55405.

Any arbitration hearing that you attend will take place at a location within the federal judicial district that includes your billing address at the time the claim is filed. We will advance either at our option or upon your request. The arbitrator will decide whether you, us or the party who has asserted the claim will ultimately be responsible for those fees. You agree to pay any arbitration fees as finally allocated by the arbitrator. The arbitrator shall apply relevant substantive law and applicable statutes of limitation and shall provide amount of any advanced fees and provide written findings of fact and conclusions of law.

This arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et seq. Judgment on the arbitration section shall survive repayment of your Account, if any, and shall survive termination of your Account. If any portion of this arbitration section is deemed invalid or unenforceable under any circumstances, it shall not invalidate the remaining portions of any such arbitration section shall inure to the benefit of and be binding on each of the persons and entities mentioned in this section.

**YOU UNDERSTAND AND AGREE, AND WE UNDERSTAND AND AGREE, THAT BECAUSE OF THIS ARBITRATION CLAUSE NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM.**

9

**Section 23. CHANGE OF TERMS.** We may, at any time and subject to applicable law:

- Change any term or condition of this Agreement relating to your Account, including any Finance Charges and the fees or other charges applicable to the Account;
- Add any new term or condition to this Agreement relating to your Account; and

Our right to change or add terms or conditions to this Agreement applies both to any Account balances existing at the time of the change or addition and to any balances created afterwards. Such change or addition will apply to any Finance Charges and fees, and to non-financial terms, such as our enforcement rights and any current and/or future balances, charges or conditions to any such change or addition, including charges) as required by law.

**Section 24. TERMINATION.** You may terminate this Account at any time by paying all sums due under this Agreement. We may terminate this Account or this Agreement at any time and for any reason. We will notify you. We may terminate this Agreement as to future transactions on the Account. If we terminate your right to make future purchases or other transactions on the Account, you will continue to be liable for all sums owing on the Account, including Finance Charges and agreed-to fees, until the entire Account balance is paid. Our right to terminate this Account shall not affect: (a) the terms of this Agreement as to outstanding balances, including charges or amendments thereto, which remain in effect until the entire Account balance accountholder appoints the others) to designate the address to which the Account Statement (and any others) is agreed to by the Account according to the terms of this Agreement including as it may be amended.

**Section 25. YOUR NOTICE OF CHANGES.** You will promptly notify us if you change your name, residence or place of employment. If there is a material adverse change in your financial condition, you will continue to send notices to you at the last address we maintained on this Agreement which may include any other term of this Agreement as it may be amended.

**Section 26. ASSIGNMENT.** We may sell, assign, or transfer any interest, account, or amounts owed under this Agreement, assignee, or transferee is the owner of the Account, or any purchaser, assignee or transferee, and we are not responsible for any of the transaction or instrument is we maintain. We may sell, assign, or transfer any interest arising under this Agreement without notice to you. Any purchaser, assignee, assignor, or transferee of any of your rights is entitled to the benefits of this Agreement. You may not sell, transfer or assign any of your rights or obligations under this Agreement.

**Section 27. FOREIGN TRANSACTIONS.** If you use the Account in a currency other than U.S. dollars, we or our affiliates will convert the charge into a U.S. dollar amount. The currency conversion rate used to determine the transaction amount will be the currency conversion rate in use on the date the transaction is processed for the conversion of such foreign transactions and may differ from the transaction date or transaction posting date.

**Section 28. OTHER SERVICES.** From time to time, third parties other than those related to your credit card may offer additional products and services. We are not liable if they are the sole responsibility of those third parties. You agree to hold us harmless from any claims, actions or damages resulting from the types of these features, enhancements or services. If you purchase credit or other types of insurance, you will receive terms and conditions from the insurer and you understand that the cost of such insurance may be based

upon the state where you resided or listed on your credit application when you originally applied for the insurance and the insurance charges until you receive the new terms and conditions and you may cancel your coverage at any time. Insurance may be cancelled or is no longer in effect and may be reinstated when your Account becomes current or is no longer in default.

**Section 29. GOVERNING LAW.** This Agreement and your Account will be governed by and construed in accordance with the laws of the United States and, to the extent not governed by federal law, the laws of the State of Arizona, regardless of where you live or where you use this Account. This Agreement is entered into between you and us in Arizona.

**Section 30. ENFORCEABILITY.** If any term or provision of this Agreement is found to be unenforceable, all other terms and provisions remain in full force and effect and this Agreement shall be interpreted as if the unenforceable term or provision had never been contained in this Agreement. If there be unconstitutional, or in conflict with the applicable law, this Agreement will be considered changed to the extent necessary to comply with the law.

**Section 31. SPANISH LANGUAGE TRANSLATION.** As a customer service, we will provide you with a copy of this Agreement in Spanish upon your request. To obtain such a copy, call us at 1-800-917-7700, or request a Spanish language copy of this Agreement by writing to us at the following address:

Como un servicio a nuestros clientes, le proveeremos una copia de este Acuerdo en español si usted así lo solicita. Para obtener dicha copia, por favor llámenos al 1-800-917-7700, y solicite una versión en español de este Acuerdo.

P.O. Box 81801, Cleveland, OH, 44181-8074, or solicitar una versión en español de este Acuerdo.

**Section 32. AGREEMENT.** This Agreement consists of this document, any other pages or materials that may be provided to you, in the same envelope, and the document that are clearly labeled to show that they relate to this Agreement and any written notices (including changes or additions) to this Agreement or the terms or conditions of this Agreement which may be provided to you from time to time.

**STATEMENT OF CREDIT BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at the address listed on your bill written it says on "Mail Billing Error Notices." Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If you did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF THE GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**