IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
|     GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

Plaintiff, Joyce Henderson, filed this class action lawsuit seeking redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and Mass. G.L., ch. 93A, § 9. ("93A") by Sherman Financial Group ("SFG"), Sherman Acquisition II, LP ("SA2"), Sherman Acquisition II, General Partner ("SA2GP"), Alegis Group, LP ("AGLP") and Alegis Group, LLC ("AGLLC") (collectively, "Defendants"). These violations are based upon the sending of a Privacy Notice policy which Plaintiff alleges misrepresented Defendants' legal authority and intentions to disclose information about consumers to third parties.

Confronted with these violations which could result in potential liability for many thousands of identical violations and this Court's denial of Defendants' Motion to Dismiss, Defendants now attempt to enforce an alleged arbitration agreement that the Plaintiff's mother, Mary Burt, who is not a Plaintiff in this cause of action, allegedly entered into with the original creditor, Sears. On June 13, 2005, Defendants moved to compel arbitration in this matter. Plaintiff submits this Memorandum in response to Defendants' Motion to Compel Arbitration.

**I.     INTRODUCTION**

While federal courts are allowed to enforce the Federal Arbitration Act's policy of favoring arbitration, ultimately, "arbitration is a matter of contract . . . and a party cannot be required to submit to arbitration any dispute which she has not agreed so to submit."  AT&T Techs., Inc. Communications Workers of America, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)(citing United Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347 (1960)).  "Before compelling a party to arbitrate, the court must first determine whether there exists a valid agreement to arbitrate and whether the claims asserted fall within the scope of the arbitration agreement."  Acher v. Fujitsu Network Communs., Inc., 354 F. Supp. 2d 26, 35-37 (D.C. Mass. 2004).

The issue of whether the parties had a valid agreement to arbitrate is governed by general principles of state contract law.  Campbell v. General Dynamics Gov't System Corp., 321 F.Supp.2d 142, 146 (D. Mass. 2004).  The party seeking to compel arbitration, in this case the Sherman Defendants, have the burden of proving, by a preponderance of the evidence, the existence of a valid and binding agreement to arbitrate Joyce Henderson's individual claims under the FDCPA and 93A.  Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); see also Johnson v. Long John Silver's Restaurants, Inc., 320 F.Supp.2d 656, 664 (M.D. Tenn. 2004).

Under Massachusetts law, a valid contract requires offer, acceptance, and consideration.  Campbell v. General Dynamics Gov't Sys. Corp., 321 F.Supp.2d 142, 147 n.3 (D. Mass. 2004)(citing City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 716 N.E.2d 138 (1999)); See also Secretary of Admin. v. Mass. Org. of State Engineers and Scientists, 408 Mass. 837, 839, 563 N.E.2d 1361 (1990)("the question of arbitrability . . . depends on whether the parties expressed an intention to arbitrate.").

Defendants' Motion to Compel Arbitration should be denied because (1) there is no evidence that the actual Plaintiff in this case, Joyce Henderson, entered into any agreement which would allow Defendants to submit this matter to arbitration, (2) Defendants have waived their right to bring this matter to arbitration, (3) the terms of the agreement do not give the Defendants in this lawsuit any right to compel arbitration nor do they apply to the Plaintiff, Joyce Henderson, and (4) there is no competent evidence that Mary Burt, who is not a plaintiff in this case.

## II. JOYCE HENDERSON DID NOT ENTER INTO ANY AGREEMENT WHICH ALLOWS DEFENDANTS TO COMPEL ARBITRATION IN THIS MATTER.

Defendants' proposition that Henderson's individual claim under the FDCPA could be barred because her mother allegedly agreed to arbitrate with Sears is without merit. The Amended Complaint in this case simply alleges that SA2 sent a collection letter addressed to the Plaintiff's mother Mary L. Burt, care of the Plaintiff, Joyce Henderson. (Compl. ¶ 21). Further the Complaint alleges that the Plaintiff, Joyce Henderson, handles her mother's affairs and as a result, Henderson received the collection letter at issue herein and read the collection letter. (Compl. ¶ 22).[1]

This Court has already rejected Defendants' assertion that Henderson did not have standing to sue Defendants on an individual basis for violations of the Fair Debt Collection Practices Act ("FDCPA") based upon her review of Defendants' unlawful collection letter. See Defendants' Motion to Dismiss, Court Docket No. 5 and this Court's Order denying Defendants'

---

[1] Numerous courts have held that a cause of action under the FDCPA can be brought by any "person," and is not just limited to the consumer. See Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir. 1993); Mantell v. Feingold & Levy, 1997 U.S. Dist. LEXIS 1013 (N.D. Ill. 1997); Riviera v. MAB Collections, Inc., 682 F. Supp. 174 (W.D.N.Y. 1988); Whatley v. Universal Collection Bureau, Inc., 525 F. Supp. 1204 (N.D. Ga.1981).

Motion to Dismiss, Court Docket No. 20.  Plaintiff Henderson has an individual claim under the FDCPA and 93A based upon her review of Defendants' collection letter alone.  Plaintiff is not attempting to enforce any alleged account agreement between Mary L. Burt and Sears, nor is she claiming rights under the alleged agreement.

The transparency of Defendants' claim that they have a right to compel Henderson to arbitrate this matter, is readily evident throughout Defendants' Motion.  Defendants attempt to assert an agreement between Sears and Mary L. Burt for the purpose of compelling Burt's daughter, Joyce Henderson, to arbitrate her claims under the FDPCA and 93A.  On page 3 of the Motion to Compel Arbitration, Defendants claim the arbitration provision arises from "the agreement between Sears and the user of the account as pled by the plaintiff Mary L. Burt."  Of course, Mary L. Burt is not the plaintiff in this case.  Joyce Henderson is the Plaintiff.  She brings her claims based upon her individual review of the collection letter.  She is not suing on behalf of Mary L. Burt and is not attempting to enforce any contract or agreement with Sears.  This much is clear from a review of the Amended Complaint.  Defendants' attempt to mislead this Court by claiming Mary L. Burt is the plaintiff is improper.  Joyce Henderson has never entered into any credit card agreement with Sears.  Defendants wholly fail to provide any argument or authority suggesting that Henderson is bound by anything her mother allegedly agreed to with Sears.

The plain language in the alleged agreement, makes it clear that this agreement could never apply to Joyce Henderson.  Section 1 of the alleged agreement contains Definitions and states: "(a) the words 'you,' 'your,' 'yours,' and 'accountholder' mean any person named on the credit application or acceptance certification as an accountholder, applicant or co-applicant and any person in whose name an account has been opened."  There is nothing in the record

which establishes that Joyce Henderson fits that definition, nor could Defendants ever prove that Henderson fits the definition because Henderson was never "named on the credit application or acceptance certification as an accountholder, applicant or co-applicant" nor has a Sears account ever been opened in Henderson's name.

### III.    DEFENDANTS HAVE WAIVED THEIR ARBITRATION RIGHTS.

Defendants have waived any arbitration rights based upon their failure to move to compel arbitration until this late date and only after this Court has denied their Motion to Dismiss.  Moving this matter to arbitration would result to prejudice to Plaintiff, who has already successfully defended against one attempt to dismiss her claim.  Mandating arbitration at this juncture, now over four months into this case, and after this Court has just disposed of Defendants' Motion to Dismiss, would effectively allow Defendants a second opportunity in another forum.

> On the issue of waiver of arbitration rights, the First Circuit has stated:
>
> Federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand...  Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration ...) had taken place, ... and whether the other party was affected, misled, or prejudiced by the delay...

Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633, 671 F.2d 38, 44 (1st Cir. 1982)(citing Reid Burton Construction, Inc. v. Carpenters District Council, 614 F.2d 698 (10th Cir. 1980).

In this case, Defendants have certainly invoked the "litigation machinery," prior to Defendants' present attempt to invoke the alleged arbitration agreement. This lawsuit was filed on February 22, 2005. On March 15, 2005, Defendants moved to dismiss Plaintiff's Complaint. On April 4, 2005, Defendants filed an Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. On April 20, 2005, Defendants filed a Reply in support of the Motion to Dismiss.

Defendants' attempt to compel arbitration after this Court denied their Motion to Dismiss, is precisely the type of practice which the First Circuit has criticized in ruling that the failure to timely raise arbitration rights results in an implicit waiver of such rights. Menorah Insurance Co. Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221 (1st Cir. 1995); Caribbean Insurance Services, Inc. v. American Bankers Life Assurance Co., 715 F.2d 17,19 (1st Cir. 1983); Gutor Int'l AG v. Raymond Packer Co., 493 F.2d 938, 945 (1st Cir. 1974).

The theory behind arbitration is that it expedites the proceeding in a cost effective manner. This rationale mandates that the election of arbitration be exercised at the first opportunity. The clause does not give Defendants the right to litigate until they lose a major motion and then switch to arbitration. Litigation is neither quick nor cheap. This is the theory behind the First Circuit's holding in Jones.

The party seeking arbitration has the burden to show that it is a proper forum. Waiver defeats arbitration. Defendants have made no effort to show an absence of waiver by their past aggressive litigation in this Court. Defendants' failure to raise this issue will result in prejudice to the Plaintiff. Plaintiff has expended considerable time and resources in responding to Defendants' Motion to Dismiss and Amending her Complaint, only now, after clearing those two hurdles, to be presented with an alleged arbitration agreement which governs her mother's

6

account.

## IV. EVEN IF THE AGREEMENT DOES APPLY TO JOYCE HENDERSON, DEFENDANTS HAVE NO RIGHTS UNDER THE ALLEGED AGREEMENT.

The plain terms of the arbitration agreement do not allow Defendants to enforce the alleged agreement, even if the Court were to apply the agreement to Joyce Henderson. The alleged arbitration provision in Section 21 of the alleged agreement states that "[a]ny and all claims, disputes, or controversies . . . shall be resolved, upon your election or <u>our</u> election by final and binding arbitration . . . .(emphasis added). Further, Section 1 of the alleged agreement defines "we," "us," and "our" to mean "Sears National Bank (an affiliate of Sears) or any subsequent <u>holder</u> of the Account or any balances arising under the Account or any servicer of your account, authorized by us." However, the term "holder" is undefined in the agreement and there is no evidence that SA2, is a "holder" under the terms of the agreement.

The Uniform Commercial Code defines the term "holder" as:

> (A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; or (B) the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession.

U.C.C. § 1-201(21). There is nothing in the record which establishes that SA2 is a "holder" of anything. With respect to the status of SA2's acquisition of Mary L. Burt's alleged Sears account, the only evidence in the record is a statement from Stephen McConnell which merely states that "[o]n November 21, 2003, SNB sold Burt's account which is now owned by Sherman Acquisition II, LP." (Affidavit of Stephen McConnell ¶10). The statement that SA2 owns Burt's account hardly establishes that Defendant SA2 is a "holder" of the account, as defined by the U.C.C. There is no showing that SA2 qualifies for status as a "holder" of the account. In <u>Adams v. Madison Realty & Development, Inc.</u>, 853 F. 2d 163 (3d Cir. 1988) the Third Circuit

explained "holder" to mean:

> The Code defines a holder as one "who is in possession of . . . an instrument . . . drawn, issued or indorsed to him or to his order." U.C.C. § 1-201(20). Mere ownership or possession of a note is insufficient to qualify an individual as a "holder." The instrument must be obtained through a process the Code terms "negotiation," defined as "the transfer of an instrument in such form that the transferee becomes a holder." U.C.C. § 3-202(1). If the instrument is payable to order -- as is the case with the notes here -- negotiation is accomplished "by delivery with any necessary indorsement." Id.

853 F.2d 163, 166 (3d Cir. 1988). As that court stated, "mere ownership or possession of a note is insufficient to qualify as individual as a "holder." Likewise, Defendants have failed to establish that they have the right to seek arbitration under the terms of the alleged arbitration agreement.

## V.  THERE IS NO EVIDENCE THAT MARY L. BURT ENTERED INTO ANY AGREEMENT WITH SEARS.

Defendants' attempt to prove that Mary L. Burt entered into any agreement with Sears fails as well. Defendants allege that an arbitration agreement was added by amendment to a credit card agreement which Burt had entered into with Sears. Defendants do not claim that the original agreement with Sears contained an arbitration agreement or that Burt ever signed any document providing for arbitration. Rather, Defendants claim that (a) on or about October 1, 1982, Burt entered into a credit card agreement with Sears, (b) under the terms of the original agreement, Sears was permitted to amend the terms of the agreement after providing written notice to Burt, (c) effective March 1995, the existing credit card agreement was amended, in part to transfer Burt's account to Sears National Bank, (d) effective September 1999, the existing credit card agreement was amended to add an arbitration provision and another change of terms notice, and (e) the February 2002 agreement was the agreement included in the last change of

8

terms notice and currently represents the current terms of the agreement.

Defendants must therefore prove, by competent evidence, (1) the terms of the original credit card agreement between Sears and Burt, (2) that the original agreement allowed Sears to change the terms of that agreement with upon written notice to Burt, as opposed to actual agreement between the parties, (3) that the March 1995 amendment was agreed to by Burt in some manner after notice (4) that notice of the September 1999 amendment was provided as required by the March 1995 amendment, and (5) that notice of the February 2002 amendment was provided as required by the September 1999 amendment.  The Federal Arbitration Act merely places agreements to arbitrate on an equal footing with other contracts.  <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 219 (1985) ("We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act ... does not mandate the arbitration of all claims but merely the enforcement ... of privately negotiated arbitration agreements.").  If a party has, in fact, agreed to arbitrate, the agreement will be enforced.  <u>Id.</u>  The Arbitration Act does not dispense with the need to prove a legally effective assent to an agreement to arbitrate, or relieve the party claiming an arbitration agreement of the need to supply proof that one exists.  <u>Phox v. Atriums Mgmt. Co.</u>, 230 F.Supp.2d 1279, 1282-83 (D. Kan. 2002).  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>Steelworkers v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960).  "Nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement."  <u>Ervin v. Nokia, Inc.</u>, 349 Ill.App.3d 508, 812 N.E.2d 534, 537 (5th Dist. 2004), citing <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279 (2002).

Defendants must establish the four propositions listed above by evidence

satisfying summary judgment standards.  A motion to compel arbitration must meet the requirements of Fed.R.Civ.P. 56 because such a motion seeks a summary determination of the existence of an agreement to arbitrate.  Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002); Matterhorn, Inc. v. NCR Corp., 727 F.2d 629, 631 (7th Cir. 1984); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3rd Cir. 1980); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Institut Pasteur v. Chiron Corp., 315 F.Supp.2d 33, 37 (D.D.C. 2004); Phox v. Atriums Mgmt. Co., 230 F.Supp.2d 1279, 1282 (D.Kan. 2002); Owen v. MBPXL Corp., 173 F.Supp.2d 905, 922 (N.D.Iowa 2001).  "Motions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in Fed. R. Civ P. 56(c)."  Bellevue Drug Co. v. Advance PCS, No. 03-4731, 2004 U.S. Dist. LEXIS 17172 (E.D. Pa., Aug.  20, 2004), at *3.  Thus, "although styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)."  Bellevue, supra.  This test has been followed in the First Circuit.  Boulet v. Bangor Securities Inc., 324 F. Supp. 120, 123-24 (D.C. Mass. 2004); Snow v. BE&K Constr. Co., 126 F.Supp.2d 5, 7 (D.C. Me. 2001).

  The alleged agreements bear no signatures.  Nor do they have account numbers or any other indicia that they have anything to do with Mary Burt, let alone Joyce Henderson.  Defendants fail to establish a proper foundation for the agreements.

  A motion for summary judgment on the issue of whether an agreement exists that simply asserts that an agreement exists and offers no proof is manifestly insufficient.  The only document or information supplied that could be described as evidence of any of the five propositions that Defendants have to prove is an Affidavit by a Stephen McConnell.

Fed.R.Civ.P. 56(e) governs the proper form of affidavits in summary judgment proceedings. The rule states:

> Supporting and opposing affidavits shall be made <u>on personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and <u>shall show affirmatively that the affiant is competent to testify</u> to the matters stated therein. <u>Sworn or certified copies of all papers or parts thereof referred to in an affidavit</u> shall be attached thereto or served therewith. (Emphasis added)

Testimony, whether live or in the form of an affidavit, to the effect that a witness has reviewed a business record and that business record supports a party's position is hearsay and incompetent; rather, the records must be introduced after a proper foundation is provided. <u>New England Savings Bank v. Bedford Realty Corp.</u>, 238 Conn. 745, 680 A.2d 301, 308-309 (1996), later opinion, 246 Conn. 594, 717 A.2d 713 (1998). It is the business records that constitute the evidence, not the testimony of the witness referring to them. <u>In re A.B.</u>, 308 Ill.App.3d 227, 719 N.E.2d 348 (2nd Dist. 1999); <u>accord</u>, <u>Manufacturers & Traders Trust Co. v. Medina</u>, No. 01 C 768, 2001 U.S.Dist. LEXIS 20409 (N.D.Ill. Dec. 5, 2001).

In <u>Bedford Realty</u>, an affiant testified that, based on her review of a file and computer records, Bedford had defaulted on a loan. 238 Conn. at 749-50. However, the records themselves were not entered into evidence. 238 Conn. at 758. The Supreme Court reversed the lower court's decision admitting this affidavit, stating that the affidavit was used as actual evidence of a debt, that the affiant did not have personal knowledge, and thus, the affidavit was inadmissible hearsay.

Defendants have utterly failed to provide competent evidence of the five things which they must prove. There is <u>no</u> evidence of the original 1982 agreement between Burt and Sears or that the 1982 agreement allowed Sears to change the terms upon proper notice. There is <u>no</u> evidence (1) that the amendment, effective March 1995, allowing further amendments to be

made by notice, was sent out, (2) that notice of the September 1999 amendment was provided as required by the March 1995 amendment, or (3) that the notice of the February 2002 amendment was provided as required by the September 1999 amendment. Without such evidence, there is no basis for making any further changes in the agreement by mere notice. Furthermore, there is no non-hearsay evidence that the amendment that took effect September 1999, adding the arbitration clause, was mailed by Sears, much less that it was specifically mailed to Ms. Burt.

Finally, the Affiant fails to explain why an agreement with Sears allegedly entered into or tacitly accepted by Mary L. Burt would apply to a lawsuit filed by her daughter, Joyce Henderson against five members of the Sherman Family of Companies.

Defendants cite a recent ruling by Magistrate Neiman in the case of Hoefs v. CACV of Colorado et al., 04-30015-MAP, 2005 U.S. Dist. LEXIS (D.C. Mass. Feb. 25, 2005)(adopted by District Court) which allowed a debt collector to enforce an arbitration agreement. However, there are several crucial differences between the case at bar and Hoefs. Most importantly, the plaintiff in Hoefs was actually a party to the arbitration agreement. With respect to receipt of the notification, in Hoefs, the Court found the mailbox presumption had not been rebutted because Defendants had produced competent evidence as to the following: (1) that it was MBNA's "normal course of business" to send the arbitration amendment to all account holders whose accounts were in good standing; (2) Plaintiff's account was in good standing; (3) the arbitration amendment was mailed to Plaintiff's specific address; (4) that MBNA never received any returned mail on Plaintiff's account; and (5) a copy of Plaintiff's December 1999 billing statement indicated that the amendment had been mailed to Plaintiff. Id at 7. The Defendants have provided no such evidence in this instance, and even if they had, they still could not prove that the alleged agreements apply to Joyce Henderson's claim.

## VI. CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration should be denied.

Respectfully submitted,

s/Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre &
Sons
P.O. Box 479
Pawtucket, RI  02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

## CERTIFICATE OF SERVICE

I, Jeremy P. Monteiro, hereby certify that on June 24, 2005, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**, was filed electronically.  Parties were served a copy of the filed document via the below listed methods.

Notified via the Court's electronic filing system:

Steven S. Broadley
Jennifer L. Finger
**Posternak Blankstein & Lund, LLP**
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199-8004
(617) 367-2315 (Fax)

Served via US Mail and Facsimile:

Michael S. Poncin, Esq.
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

    s/Jeremy P. Monteiro
    Jeremy P. Monteiro (pro hac vice)

    Daniel A. Edelman (pro hac vice)
    Cathleen M. Combs (pro hac vice)
    Jeremy P. Monteiro (pro hac vice)
    EDELMAN, COMBS, LATTURNER
       & GOODWIN LLC
    120 S. LaSalle Street, 18th Floor
    Chicago, Illinois  60603
    (312) 739-4200
    (312) 419-0379 (FAX)

    Christopher M. Lefebvre
    Law Offices of Claude Lefebvre & Sons
    P.O. Box 479
    Pawtucket, RI  02862
    401-728-6060
    401-728-6534 (Facsimile)
    R.I. Bar No. 4019