**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DISTRICT**

JOYCE HENDERSON,
 Plaintiff

v.                                    DOCKET NO.: 05-10339 JLT

SHERMAN FINANCIAL GROUP, LLC;
SHERMAN ACQUISITION II, LP;
SHERMAN ACQUISITION II GENERAL
PARTNER LLC; ALEGIS GROUP, LP AND
ALEGIS GROUP, LLC,
 Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

The defendants Sherman Financial Group, LLC ("SFG"), Sherman Acquisition II, LP ("SA2LP"), Sherman Acquisition II General Partner, LLC ("SA2GP"), Alegis Group, LP ("AGLP") and Alegis Group, LLC ("AGLLC") (collectively "Defendants"), by counsel, respectfully submit the following Memorandum in Support of their Motion for Summary Judgment.

## INTRODUCTION

The plaintiff Joyce Henderson ("Plaintiff") alleges that a collection letter and its accompanying Gramm-Leach-Bliley Act ("GLBA") privacy notice (required pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*) sent to Mary L. Burt violates the Fair Debt Collection Practices Act, 15 U.S.C. Sect. 1692 *et seq.* ("FDCPA"). Plaintiff alleges that the privacy notice threatens to share restricted information with persons or entities other than those permitted by law. 15 U.S.C. § 1692c(b). Amended Complaint (*Am. Comp.*) ¶¶ 35-39 (copy of Amended Complaint attached hereto for convenience). Plaintiff also alleges that statements in

the collection letter that Defendants may share information are in violation of § 1692c(b), violate 15 U.S.C. § 1692d, which bars harassment or abuse, and violate 15 U.S.C. § 1692e, which bars the making of false or misleading representations. *Am. Comp.* ¶¶ 39-40. Plaintiff further alleges that the statement in the privacy notice that the account holder may request that the "Sherman Companies" not share information with each other by submitting a written request misstates the consumer's rights under 15 U.S.C. § 1692c (which governs communications in connection with debt collection). *Am. Comp.* ¶ 42. Plaintiff alleges that including statements in a debt collection letter that information about the debt may be disclosed to third parties "amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid," though Plaintiff fails to specify where the collection letter makes such an assertion. *Am. Comp.* ¶ 43. Finally, Plaintiff alleges that each alleged FDCPA violation is a *per se* violation of Mass. Gen. Laws ch. 93A, §9. *Am. Comp.* ¶ 51. Plaintiff seeks to bring all allegations on behalf of a class. *Am. Comp.* ¶¶ 44-49, 52-57.

Defendants respond that Plaintiff lacks standing to assert claims under 15 U.S.C. § 1692c and that neither the collection letter nor the privacy notice misstate the consumer's rights pursuant to the FDCPA or threaten to disclose information in a manner violating the law. No genuine issue of fact exists and, as such, Defendants are entitled to entry of judgment dismissing the action as a matter of law.

## UNDISPUTED STATEMENT OF FACTS

Plaintiff's mother is Mary Burt ("Burt"). *Depo. of Henderson, attached to Affidavit of Steven S. Broadley,* p. 9. Before February 2004, Burt used a Sears credit card account and incurred a past-due balance, and Burt was aware of that account status. *Id.* pp. 25-26. Before February 24, 2004, SA2LP acquired Burt's Sears' account. *Am. Comp., Ex. A.* Defendant AGLP

sent Burt a collection letter dated February 24, 2004 that included a privacy notice, addressed in care of Plaintiff. *Am. Comp.* ¶ 21, *Ex.* A. The privacy notice was printed on the reverse side of the collection letter. *Am. Comp.* ¶ 27. The privacy notice states, in pertinent part, as follows:

> At the Sherman Companies, we are committed to protecting personal information we obtain about you. Please take a moment and read this privacy notice for some important information about your rights. This notice is being provided by The Sherman Companies as required by the Federal Privacy Law 15 USC 6801-6810.
>
> *****
>
> <u>Information we **may** collect</u>. Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you. All of the information that we collect is sometimes referred to in this notice as "collected information."
>
> <u>Confidentiality and security of collected information</u>. We restrict access to collected information about you to those employees who need to know such collected information and certain third party service providers who provide support services to us. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures), to protect collected information about you.
>
> <u>Joint agreements</u>. The Sherman Companies from time to time **may** enter into agreements with other providers of financial products and services. These providers **may** perform services for us, or they **may** join with us to offer customers and former customers new or different products and services. We **may** share collected information with these institutions, **subject to the confidentiality and security requirements imposed by law**.
>
> *****

> From time to time the Sherman Companies **may** share collected information with each other about customers and former customers **in accordance with applicable law**. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are **permitted by law to share**, such as collected information related to our experience and transactions with you.

*Am. Comp., Ex. A* (emphasis added).

Despite the fact that the letter was addressed to Burt (in care of Plaintiff), and the fact that Plaintiff regularly assists her mother with various tasks and financial affairs, Plaintiff does not believe that she ever discussed or even showed the letter to Burt. *Depo. of Henderson* pp. 9, 11-13, 24. Burt is not one of the persons identified by Plaintiff as having discoverable information about this claim, despite the fact that it relates to Burt's debt. *Id.* Ex.5. Burt lives about ten minutes away from Plaintiff. *Id.* p. 10. Rather, Plaintiff sent the letter to an attorney with whom she had an existing attorney-client relationship. *Id.* pp. 28-29. Plaintiff did this despite the fact that she has never been given power of attorney to act on behalf of her mother, nor has there ever been a court action to determine if Burt is in need of a guardian. *Id.* pp. 16-17. In fact, Burt is able to read letters and books and continues to sign off on checks drafted from her account. *Id.* pp. 17-18. Further, there was no question that the letter was part of an attempt to collect a debt from Burt, and that Henderson understood it as such. *Id.* pp. 20, 29-30 (the account was in Burt's name, and Henderson was not receiving any correspondence of the sort except about her mother's obligations). The original creditor, Sears, had not asked for or received any personal identifying information from Plaintiff in connection with the use of Burt's charge account. *Id.* p. 27.

Thus, Plaintiff made the unilateral decision to forward the letter containing personal information regarding her mother to an attorney, which brought about the instant action; that choice and action have, in turn, made Burt's financial situation public knowledge.

## STANDARD OF REVIEW

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Id.* In making its determination, the court must view all evidence in the light most favorable to the nonmovant and is to draw all reasonable inferences in favor of the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Mediacom Corp. v. Rates Tech., Inc.*, 4 F. Supp. 2d 17, 33 (D. Mass. 1998).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is therefore entitled to judgment as matter of law. *Anderson*, 477 U.S. at 250; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). If the movant satisfies this burden, the nonmovant must proffer evidence demonstrating the existence of a genuine issue of material fact. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983). The non-moving party may not rest upon mere allegations or denials; rather it must set forth specific facts showing that a genuine issue exists. *Anderson*, 477 U.S. at 250; *Donovan*, 712 F.2d at 1516; Fed. R. Civ. P. 56(e).

## LEGAL ARGUMENT

### I.    PLAINTIFF LACKS STANDING.

Plaintiff wants the Court to create a new cause of action for individuals who cannot even make a colorable claim of any type of injury. Plaintiff previously argued that she has standing

because "[a] family member who receives a false and misleading letter has standing to assert violations of the FDCPA on an individual basis." *Pl. Mem. in Opp. to Motion to Dismiss* ¶ 17. While this may be true in some limited circumstances, it is far from the rule.

## A.    General standing rules preclude Plaintiff's claims.

"The general rule is that a court should first confirm the existence of rudiments such as jurisdiction and standing before tackling the merits of a controverted case." *Berner v. Delahanty*, 129 F.3d 20, 23 (1st Cir. 1997). This is because "standing is a necessary concomitant to the court's power to adjudicate a case." *R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999).

> In order to achieve standing, a party seeking to invoke federal jurisdiction must demonstrate three things: First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Comfort v. Lynn Sch. Comm.*, 2004 U.S. App. LEXIS 21791 (1st Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).

In the instant matter, Plaintiff has not suffered an "injury in fact." This is an issue distinct from the fact that neither Plaintiff nor Burt have suffered any actual damages; the absence of an "injury in fact" means that no legally protected interest of the Plaintiff has been invaded. As the facts show, Plaintiff opened a collection letter that was sent to her mother, Burt. Plaintiff undeniably understood that the letter was directed to her mother and was not an attempt to collect the debt from her. However, Plaintiff and her counsel ask the Court to believe that

Plaintiff has been injured by language setting forth that information about Plaintiff's mother **may** be shared or **may** have been shared. Plaintiff fails to set forth any indication as to how the sharing of her mother's information would harm Plaintiff. Even assuming that Plaintiff's mother's information was going to be shared in the near future (an assumption which cannot be justified by reference to the collection letter), Plaintiff cannot possibly show that harm is imminent **to her** as the alleged harm does not and cannot affect her in any way. Plaintiff cannot even show that any act of any of Defendants made any reference to sharing her personal information.

At best, Plaintiff's alleged harm is "conjectural or hypothetical," which is insufficient to create federal standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). At worst, Plaintiff's alleged harm is a bad faith attempt to circumvent the principles of standing to create a class action under which Plaintiff would be entitled to statutory damages and her counsel entitled to attorney fees.[1] As Plaintiff has not been injured in any legally cognizable way, and is not in imminent danger of being injured, Plaintiff cannot show a causal connection between any injury and the privacy notice at issue. Thus, Plaintiff does not have standing in this instance and her claims must all fail.

**B.      Plaintiff does not have standing under the FDCPA.**

It is important to note that the under the FDCPA, "the term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).  Plaintiff is not a consumer under the FDCPA. At no point does she contend, nor can she contend, that the Defendants attempted to collect from her. It is undisputed that the account was in Burt's name

---

[1] Of course, it is difficult to imagine a class of individuals in a situation similar to Plaintiff.

and that Plaintiff was not obligated to satisfy any demand arising from the account use.  Thus, it cannot be argued that Plaintiff is "obligated or allegedly obligated to pay" the debt in question.

The letter at issue in this matter was sent to Burt in care of Plaintiff. Plaintiff thus argues (apparently) that simply because she allows her mother to receive mail at her house, she also has a right to sue based upon the contents of such mail (the logical but absurd extension of such a theory would give every reader of a letter a cause of action based on its contents).  In this instance, the letter was sent to Burt, not to Plaintiff. This is further evidenced by the fact that the letter states, "Dear [Plaintiff's mother]." The mere fact that Plaintiff opens and reads all of her mother's mail does not in itself create a claim for her under the FDCPA.

In support of her novel theory, Plaintiff previously submitted case law that is quite easily distinguished. *See Pl. Mem. in Opp. to Motion to Dismiss and supporting documents.* The cases previously cited by Plaintiff point to two instances where a family member may have standing: (1) when acting on behalf of an estate or via power of attorney, or (2) when the contact was with the family member.

First, Plaintiff cited *Wright v. Finance Serv. of Norwalk, Inc.* 22 F.3d 647 (6th Cir. 1993) in support of her argument that she has standing. *Pl. Mem. in Opp. to Motion to Dismiss.* In *Wright*, the Sixth Circuit Court of Appeals held that a executrix could maintain an action under the FDCPA. However, this case is easily distinguished, as Plaintiff is not an executrix. The *Wright* court noted that right to sue under certain sections of the FDCPA "includes those persons, such as Wright, who 'stand in the shoes' of the debtor or have the same authority as the debtor to open and read the letters of the debtor." *Id.* at 650. As set forth above, there is no evidence that would indicate that Plaintiff "stands in the shoes" of her mother. Plaintiff admits that she does not have power of attorney for her mother and admits that no guardianship action has been

commenced. *Depo. of Henderson* pp. 15-17. Rather, Plaintiff simply states that she "handles her mother's affairs." *Id.*; *Pl. Comp.* ¶ 22. For the same reasons, Plaintiff's anticipated reliance upon *Riviera v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1998)[2] must fail, as the plaintiff in that matter was the administrix and therefore "stood in the shoes" of the debtor.

In the other cases previously relied upon by Plaintiff, the plaintiffs allegedly suffered harm. In the instant matter, however, Plaintiff cannot allege any harm to herself, no matter the level of concern she may feel for her mother. *See Depo. of Henderson*, p. 30 ("Of course, if I see her name, I am going to take a personal interest."). In *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204 (N.D. Ga. 1981), the court refused to dismiss a claim for lack of standing when the parents of the debtor had allegedly been threatened by the collector via a message left for them on their answering machine. *Id.* Thus, the allegation that the plaintiffs in *Whatley* had been directly harmed supported the finding of standing. Again, in the instant case, there can be no claim by Plaintiff that she was harmed or even that she would possibly be harmed in the near future. Undeniably, even if Defendants were to share Plaintiff's mother's information, it is inconceivable that Plaintiff would acquire standing or could allege that she was somehow harmed by the letter which gave rise to the instant action. Plaintiff opened a letter addressed to her mother, mailed in care of Plaintiff, and read the letter inside, which stated "Dear MARY L BURT" and addressed only Burt's account. *Am. Comp. Exhib.* A. Under no circumstances can Plaintiff honestly or credibly claim to have been injured as a result of her reading her mother's letter. Indeed, to allow Plaintiff to proceed with her action would lead us down a slippery slope as to whether a neighbor, visitor from across the street, co-worker, friend, or other unintended

---

[2] Plaintiff relied upon the *Rivera* case in her Memorandum in Opposition to Defendant's Motion to Dismiss.

recipient would have standing to assert a violation under the FDCPA. Provision of such an extended umbrella of protection was not the intent behind the FDCPA.[3]  Nor does the language of the statute permit such an expansive reading.

In *Conboy v. AT&T Corp.*, 241 F.3d 242 (2nd Cir. 2001), the Second Circuit held that the plaintiffs did not have standing to assert a 15 U.S.C. § 1692e(11) claim. The *Conboy* court affirmed the dismissal of an action brought asserting a violation of 15 U.S.C. § 1692e(11). The plaintiffs alleged that their long distance carrier had violated the FDCPA by "allegedly transmitting and using certain information contained in plaintiffs' long-distance bill for purposes of collecting [the] credit card debt" of their daughter-in-law. *Id.* at 246-247. As the *Conboy* plaintiffs were not consumers, the court held that they could not bring a claim under § 1692e(11).[4]

Based on the case law cited herein, a non-consumer plaintiff can bring a claim under the FDCPA only if "standing in the shoes" of the debtor, as in instances where a debtor's estate may have a claim and the plaintiff is a fiduciary, or when a non-consumer suffers actual harm or may suffer harm in the future. In the instant action, Plaintiff is neither "standing in the shoes" of her

---

[3] The FDCPA states: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

[4] 15 U.S.C. § 1692e bars the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." Section 1692e(11) specifically prohibits "the failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."

—

mother nor has she been harmed by the letter at issue. Furthermore, any sharing of Plaintiff's mother's information that could hypothetically take place in the future would not result in harm to Plaintiff.[5] As such, Plaintiff lacks standing to bring the instant action.

### C.    Plaintiff Lacks Standing Under 15 U.S.C. § 1692c.

Plaintiff appears to allege that Defendants violated 15 U.S.C. § 1692c. *See Am. Comp.* ¶¶ 39, 42-43. Plaintiff, however, is not the debtor or alleged debtor in this action. Rather, she is the daughter of the debtor. *Am. Comp.* ¶¶ 21-22. Although some sections of the FDCPA permit actions by "any person" concerning activities taken in connection with the collection of a debt, 15 U.S.C. § 1692c is not one of them. *Compare* 15 U.S.C. §§ 1692c and 1692d (addressing "the consumer" and "any person," respectively). The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Section 1692c expands the definition of "consumer" for purposes of that section alone to include "the consumer's spouse, parent (if the consumer is a minor), guardian, exector, or administrator." 15 U.S.C. § 1692c(d). Plaintiff, the consumer's daughter, is none of the above. Plaintiff does not hold a power of attorney allowing her to act for her mother, nor has she been appointed to be the guardian of her mother. *Depo. of Henderson.* pp. 16-17. The collection letter and privacy notice at issue were addressed to Plaintiff's mother in care of Plaintiff. *Am. Comp.* ¶ 21. The Plaintiff's mother is the only "consumer" involved as defined under the FDCPA. Only a consumer has standing to bring suit for violations of 15 U.S.C. § 1692c. *Montgomery v. Huntington Bank*, 346 F.3d 693, 696-97 (6th Cir. 2003) (citing *Wright v. Fin. Serv. of Norwalk, Ink.*, 22 F.3d 647, 649

---

[5] As noted *supra*, it is the Plaintiff who opted to share her mother's information by bringing the instant claim.

n.1 (6th Cir. 1994)(*en banc*)). Therefore, Plaintiff lacks standing to bring suit under § 1692c, and

all allegations asserted under that section are subject to summary judgment.

## II.    DEFENDANTS CANNOT INCUR LIABILITY FOR PLAINTIFF'S HYPOTHETICAL VIOLATIONS.

Plaintiff does not claim that any impermissible third party disclosure has taken place. *See*

*Am. Comp.* ¶¶ 35-43. Instead, Plaintiff asserts that information addressed in the GLBA notice "is

integrally related to debt collection" and that the threat to release such information in a manner

barred under the FDCPA would violate the FDCPA. *Am. Comp.* ¶¶ 35-41, 43. Plaintiff further

alleges that informing the consumer of her right to opt out of certain information sharing among

the Sherman Companies misstates the consumer's rights pursuant to 15 U.S.C. § 1692c, which

requires that the consumer grant express permission directly to a debt collector to allow the debt

collector to communicate certain information to third parties. *Am. Comp.* ¶ 42.

The privacy notice, however, neither threatens to release protected information in a

manner barred by law, nor does it misinform the consumer as to her rights under the law. Debt

collectors that purchase assets are defined as financial institutions under the GLBA. *See* 15

U.S.C. § 6809(3).[6] As such, they are obligated to make certain disclosures as provided in the

GLBA and its implementing regulations. *See* 16 C.F.R. § 313.3(i)(2)(J)[7] (a collection agency that

---

[6] 15 U.S.C. § 6809(3)(A) defines the term "financial institution" as "any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12." 12 U.S.C. § 1843(k)(5)(B)(iii) provides that the activity of "[a]rranging, effecting, or facilitating financial transactions for the account of third parties" is "financial in nature."

[7] 16 C.F.R. § 313.3(i)(2)(J) states: "A consumer has a continuing relationship with you if the consumer is obligated on an account that you purchase from another financial institution, regardless of whether the account is in default when purchased, unless you do not locate the consumer or attempt to collect any amount from the consumer on the account."

purchases debt forms a customer relationship with a consumer when the agency locates the consumer and tries to obtain payment on the debt); § 313.4(a)(1)[8] (when a customer relationship exists the financial institution must provide privacy notices to the customer); § 313.6 (the privacy notice must describe the financial institution's policies and practices concerning disclosure of non-public personal information to affiliates and non-affiliated third parties). The privacy notice at issue provides the consumer the information that the GLBA requires while making clear that any disclosures Defendants may make will only be made "as permitted by law." *See Am.Comp. Exhib.* A.

### A.    The privacy notice provides only factual information.

FDCPA section 1692c(b) bars a debt collector from communicating in connection with the collection of any debt with certain third parties, absent the prior consent of the consumer given directly to the debt collector and other applicable exceptions not relevant to this discussion. 15 U.S.C. § 1692c(b).[9] The GLBA requires that financial institutions that wish to disclose any consumer's nonpublic personal information may not do so unless the financial institution provides the consumer a notice disclosing the institution's privacy policy and allowing the consumer the opportunity to opt out of such information sharing. 15 U.S.C. §§ 6802-6803.

---

[8] 16 C.F.R. § 313.4(a)(1), titled "Initial notice requirement," states: "You must provide a clear and conspicuous notice that accurately reflects your privacy policies and practices to an individual who becomes your customer, not later than when you establish a customer relationship, except as provided in paragraph (e) of this section."

[9] 15 U.S.C. § 1692c(b), titled "Communication with third parties," states: "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

Disclosures made under a financial institution's GLBA privacy policy must, of course, still comport with the FDCPA.

Plaintiff alleges that disclosing collected information "related to our experiences and transactions with you" violates the FDCPA. *Am. Comp.* ¶¶ 38-39. Such disclosures are specifically permitted under the GLBA and FDCPA. *See* 15 U.S.C. § 6802(e)(6)(A)[10] (permitting disclosures to a consumer reporting agency in accordance with the Fair Credit Reporting Act); 15 U.S.C. § 1692c(b)[11] (same). As such disclosures are expressly permitted by law, it cannot be a false or misleading statement to inform a consumer of this fact. Plaintiff's allegation to the contrary is baseless. *See Am. Comp.* ¶ 39.

Plaintiff misstates the law when she asserts that the possible disclosures described in the "Joint Agreements" section of the privacy notice would violate 15 U.S.C. § 1692c.[12] *See Am. Comp.* ¶ 39. The privacy notice states just the opposite – that collected information may be shared "subject to the confidentiality and security requirements imposed by law." Inclusion of such limiting language clearly demonstrates that Defendants were not threatening to release information in violation of the FDCPA.

---

[10] 15 U.S.C. § 6802(e)(6)(A) provides that "[s]ubsections (a) and (b) of this section shall not prohibit the disclosure of nonpublic personal information to a consumer reporting agency in accordance with the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*)."
[11] 15 U.S.C. § 1692c(b) provides, in relevant part, that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than… a consumer reporting agency if otherwise permitted by law."
[12] 15 U.S.C. § 1692c(b), titled "Communications with third parties," provides that "without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

Plaintiff notes that the publication of lists of persons who allegedly refuse to pay debts would violate 15 U.S.C. § 1692d,[13] and that the statement that a collector would do so would violate 15 U.S.C. § 1692e.[14] On this point, the Defendants agree. Nowhere in the collection letter or privacy notice, however, is there a threat to publish such a list. *See Am. Comp. Exhib.* A. The privacy notice makes clear, under the section titled "Sharing Collected Information With Affiliates and Third Parties," that collected information will only be shared "in accordance with applicable law" and "otherwise as permitted by law." No liability can be incurred for Plaintiff's imaginary threats.

**B.    The privacy notice accurately describes the consumer's right to opt out of information sharing.**

Plaintiff claims that the statement in the privacy notice that the consumer may request that the Sherman companies not share collected information between each other misstates the consumer's rights under 15 U.S.C. § 1692c. Section 1692c provides that a debt collector may not communicate in connection with the collection of any debt without the prior consent of the consumer given directly to the debt collector with persons other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c. The privacy notice, however, states that the Sherman Companies "may share collected information with each other about

---

[13] 15 U.S.C. § 1692d(3) provides that a debt collector violates § 1692d by engaging in the following conduct: "The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title."

[14] 15 U.S.C. § 1692e(5) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this Section: …. The threat to take any action that cannot legally be taken or that is not intended to be taken."

customers and former customers in accordance with applicable law." *Am. Comp. Exhib.* A. It does not threaten to communicate in connection with the collection of a debt with parties outside of those permitted under 15 U.S.C. § 1692c(b).[15] The notice provides the opportunity for the consumer to opt out of such information sharing, which financial institutions are required to provide under 15 U.S.C. § 6802(a).[16] Nowhere does the privacy notice imply that Defendants would share information in a manner other than that allowed by law or that the consumer must act to preserve her privacy rights as guaranteed under the FDCPA by contacting AGLP. Therefore, Plaintiff's allegation that the privacy notice misstates the law fails as a matter of law and summary judgment is appropriate.

### C.    Plaintiff's allegation concerning statements in the collection letter lacks support.

Plaintiff asserts that the collection letter includes statements "that information about the debtor can or will be disclosed to third parties" and that this "amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid." *Am. Comp.* ¶ 43. Plaintiff is correct that the FDCPA bars the making of threats to take any action that cannot legally be taken. 15 U.S.C. § 1692e(5).[17] Plaintiff does not indicate, however, where such a statement may be found in the collection letter. A review of the text of the collection letter reveals no such statements.

---

[15] The text of this section is provided in footnote 8, *supra.*

[16] 15 U.S.C. § 6802(a) states "[e]xcept as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title."

[17] 15 U.S.C. § 1692e(5) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this Section: …. The threat to take any action that cannot legally be taken or that is not intended to be taken."

*See Am. Comp. Exhib.* A. As such, this allegation is baseless and Defendants' motion for summary judgment should be granted.

> **D.      Plaintiff's claims under Mass. Gen. Laws ch. 93A, § 9 must be dismissed.**

Plaintiff asserts that any violation of the FDCPA is a *per se* violation of Mass. Gen. Laws Ch. 93A, § 9; *Am. Comp.* ¶ 51. Plaintiff's allegations, however, fail to state a claim under the FDCPA. As Plaintiff has failed to establish any violations of the FDCPA, Plaintiff has also failed to establish violations of Mass. Gen. Laws Ch. 93A, § 9, and Defendants are entitled to summary judgment.

## III.    DISPUTES RELATING TO PLAINTIFF'S MOTHER'S ACCOUNT ARE SUBJECT TO AN ARBITRATION AGREEMENT.

Claims concerning Plaintiff's mother's account must be resolved in arbitration. Therefore, even if Plaintiff is found to have standing to assert claims under the FDCPA, her claims must be addressed through arbitration, rather than in federal court.

The user of the account agreed, pursuant to Section 21 of the Cardholder Agreement, to resolve any dispute, claim or controversy arising out of or relating to the underlying indebtedness that serves as the basis of this litigation. Further, Section 25 of the Cardholder Agreement entitles any purchaser, assignee or transferee to the benefits of the terms of the Cardholder Agreement.

In *Carbajal v. H & R Block Tax Services, Inc.,* 372 F.3d 903 (7th Cir. 2004), the Seventh Circuit held that the enforcement of an arbitration clause in the context of FDCPA litigation is not unconscionable and should be followed. *Id.* at 905-06. The *Carbajal* court reasoned that: "[A]rbitration is just a forum; people may choose freely which forum will resolve their dispute.

This is so when the agreement concerns venue within a judicial system [citation omitted], and equally so when the agreement specifies a non-judicial forum." *Id.* at 905-06.

The court went on to reiterate Section 2 of the Federal Arbitration Act, which provides that an agreement to arbitrate shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Thus, arbitration specified in a form contract must be treated just like any other clause of the form. *Id.* at 906. Lastly, the *Carbajal* court stated that the enforcement of an arbitration clause was not incompatible with the FDCPA because federal law does not prevent people from waiving their statutory rights in exchange for other things they value more and any such issue is a question for the arbitrator. *Id.*

A federal district court in Massachusetts recently agreed with the Seventh Circuit in *Hoefs v. CACV of Colorado, LLC,* 365 F.Supp.2d 69 (D. Mass. 2005). The *Hoefs* court held that a debt collection agency could enforce an arbitration clause contained in a credit card agreement between the original creditor and the consumer to compel arbitration of the consumers claims under the FDCPA. *Id.* at 76. The court based its on holding in part on the terms of the Federal Arbitration Act, which states that "a written provision in any contract evidencing a transaction involving an agreement in writing to submit to arbitration an existing controversy arising out of such a contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity pursuant to their terms" *Id.* at 74 (quoting 9 U.S.C. § 2). Further, the *Hoefs* court held that the arbitration clause contained in the agreement between the consumer and original creditor was enforceable by a third party collection agency based on the plain language of the credit card agreement. *Id.* The agreement stated that the arbitration clause applied to the original creditor, its parents, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any other purchaser of your account, and all of their officers, directors, employees, agents, and

assigns or any and all of them; and that any claim or dispute by the consumer or the original

creditor against the other, or against the employees, agents, or assigns of the other, arising from

or relating in any way to the Agreement or any prior Agreement or your account, shall be

resolved by binding arbitration. *Id.*

In the current matter, the arbitration provisions that the *Hoefs* court held required

arbitration are found in the agreement between Sears and the user of the account as pled by

Plaintiff, Mary L. Burt. Section 21 of Burt's 2002 Agreement with Sears provides, in relevant

part:

> Section 21. ARBITRATION. Any and all claims, disputes or
> controversies of any nature whatsoever (whether in contract, tort,
> or otherwise) arising out of, relating to, or in connection with: (a)
> this Agreement; (b) any prior agreement you may have had with
> us, Sears, the Sears Affiliates, or with any of their predecessors,
> successors, and assigns, or with any of the dealers, contractors,
> licensees, agents, employees, officers, directors and representative
> of any of the foregoing entities; (c) the application for the Account,
> this Agreement or any prior agreement; (d) the relationships which
> result from this Agreement, or any prior agreement (including any
> relationship with us, Sears or of the Sears Affiliates); or (e) the
> validity, scope or enforceability of this arbitration section or this
> Agreement or any prior agreement (the immediately preceding
> subsections [a] through [e] shall be referred to in this section,
> collectively, as "claims"), shall be resolved, upon your election or
> our election, by final and binding arbitration before a single
> arbitrator, on an individual basis without resort to any form of class
> action, except that each party retains the right to seek relief from a
> small claims court, on an individual basis without resort to any
> form of class action, for claims within the scope of its jurisdiction.
>
> Arbitration may be elected to any time, regardless of whether a
> lawsuit has been filed or not, unless such a lawsuit has resulted in a
> judgment or the other party would suffer substantial prejudice as a
> result of the delay in demanding arbitration…
>
> All arbitration shall be administered by the National Arbitration
> Forum ("NAF") in accordance with its Code of Procedure in effect
> at the time the claim is filed. As of July, 1999, the Code of

Procedure, rules and forms of the NAF may be obtained by calling 1-800-474-2371, or by visiting NAF's Web site at www.arb-forum.com. All claims may be filed at any NAF office or at P.O. Box 50191, Minneapolis, MN, 55405…

IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT (EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM. IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.

*Aff. of McConnell* ¶ 7.[18]

Further, the Cardholder Agreement clearly states:

Section 25. ASSIGNMENT. You understand that the Account or any interest, balance or amount owed under the Account including any security interest securing such balance or amount may be sold, assigned or transferred by us without notice to you. Any purchaser, assignee or transferee is entitled to the benefits of the Agreement (including any security interest arising under it). You may not sell, transfer or assign any of your rights or obligations under this Agreement.

*Aff. of McConnell* ¶ 8.

Because the Cardholder Agreement between Burt and Sears contained the above referenced language which is almost identical to the language contained in the Agreement in the *Hoefs* case, Plaintiff should be required to arbitrate her FDCPA claims with Defendants.

---

[18] The McConnell Affidavit was filed with the Court on June 13, 2005, in support of Defendants' Motion to Compel Arbitration. It consists of two parts: Document 28-1 is the actual affidavit of McConnell and encompasses pages 1-6; Document 28-2 is the Sears Cardholder Account Agreement, found on pages 7-14.

## CONCLUSION

Plaintiff lacks standing to assert claims under the FDCPA. Furthermore, the privacy notice and collection letter in question neither threaten to make disclosures barred under the FDCPA nor misstate the consumer's rights under the FDCPA. As neither the collection letter nor the privacy notice violate the FDCPA, no *per se* violation of Mass. Gen. Laws Ch. 93A, § 9 may be established. As Plaintiff's allegations fail to state a claim, Defendants respectfully request that this Court grant their motion for summary judgment. Should it be found that Plaintiff's allegations do state a claim, however, her claims are subject to an arbitration clause and therefore must be pursued in that forum. In such case, this action must be dismissed.

**SHERMAN FINANCIAL GROUP, LLC;**
**SHERMAN ACQUISITION II, LP;**
**SHERMAN ACQUISITION II**
**GENERAL PARTNER, LLC;**
**RESURGENT CAPITAL SERVICES, LP f/k/a**
**ALEGIS GROUP, LP; and**
**ALEGIS GROUP, LLC,**
By their attorneys,

Steven S. Broadley, BBO #542305
Posternak Blankstein & Lund, LLP
Prudential Tower
800 Boylston Street, 33rd Floor
Boston, MA 02199-8004
617-973-6100
sbroadley@pbl.com

Of Counsel:

Michael S. Poncin, Esquire
Moss & Barnett, P.A.
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

## CERTIFICATE OF SERVICE

    I, Steven S. Broadley, Esquire of Posternak, Blankstein & Lund, LLP, hereby certify that on this __5__ day of December, 2005, I caused a copy of the **Memorandum In Support Of Defendants' Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56** to be mailed to:

Jeremy P. Monteiro, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603-3403

Michael S. Poncin, Esquire
Moss & Barnett, P.A.
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI 02860

Steven S. Broadley

IN THE UNITED ST`ATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

JOYCE HENDERSON;                          )
                                          )
            Plaintiff,                    )
                                          )      05-10339
      v.                                  )
                                          )      Judge Joseph L. Tauro
SHERMAN FINANCIAL GROUP LLC;              )
SHERMAN ACQUISITION II, LP;               )      Magistrate Judith G. Dein
SHERMAN ACQUISITION II                    )
      GENERAL PARTNER LLC;                )
ALEGIS GROUP L.P.; and                    )
ALEGIS GROUP LLC;                         )
                                          )
            Defendants.                   )

## AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff brings this action to secure redress against unlawful collection practices engaged in by defendants Sherman Financial Group LLC ("SFG"), Sherman Acquisition II, LP ("SA2"),  Sherman Acquisition II General Partner, LLC ("SA2GP"), Alegis Group L.P. ("AGLP"); and Alegis Group LLC ("AGLLC").  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and state law.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367 and 15 U.S.C. §1692k (FDCPA).  Venue in this District is proper because defendants do business in the District and defendants' collection communications were received in this District.

### PARTIES

3.      Plaintiff Joyce Henderson is an individual who resides in Canton, Massachusetts.

4.      Defendant Sherman Financial Group LLC ("SFG") is a limited liability company organized under Delaware law with offices at 335 Madison Avenue, 19th floor, New York, NY 10017.

1

5.      Defendant SFG states on its Web site that it "is the country's largest purchaser of distressed debt."  During 2002,  SFG purchased $7 billion in bad debts.

6.      Defendant SFG is a "debt collector" as defined in the FDCPA.

7.      Defendant SA2 is a Delaware limited partnership entity.  Its registered agent is Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

8.      Defendant SA2  is in the business of buying bad debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

9.      Defendant SA2  is a "debt collector" as defined in the FDCPA.

10.     Defendant SA2GP is a Delaware limited liability company.  It is the general partner of SA2.  Its registered agent is Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

11.     Defendant SA2 is  part of the Sherman Financial Group ("SFG").

12.     Defendant Alegis Group L.P. ("AGLP") is a limited partnership entity with offices at 15 S. Main St., Suite 600, Greenville, SC 29601.  It does business in Massachusetts.

13.     AGLP  operates a collection agency.

14.     AGLP  is a "debt collector" as defined in the FDCPA.

15.     Defendant Alegis Group LLC ("AGLLC") is a limited liability company chartered under Delaware law.  It is the general partner of AGLP and the acts and liabilities of AGLP are chargeable to it.  It does business in Massachusetts.

16.     SFG  directly or indirectly owns all or a majority of the equity of SA2, SA2GP, AGLP, and AGLLC.

17.     SFG knew of, formulated and approved of the collection practices at issue, including particularly the "privacy notice" alleged to violate the FDCPA.  The "privacy notice" comes from SFG and is made on behalf of SFG and its subsidiaries.  SFG determined and ordered that the notice be sent with the initial collection letter.

2

18.    SFG operates a "single economic enterprise" which includes amongst others, SA2, SA2GP, AGLP, and AGLLC.

19.    The managers and officers of SFG and its affiliates overlap. For example, Frank Filipps is manager of both SFG and SA2GP.    Benjamin W. Navarro is manager of SFG and also president of AGLLC, the collection agency owned by SFG.

20.    The preparation and dissemination of the "privacy notice" at issue was undertaken in concert by defendants.

## FACTS RELATING TO PLAINTIFF

21.    On or about February 24, 2004, defendant AGLP sent a collection letter addressed to the Plaintiff's mother, care of the Plaintiff, attached as Exhibit A.

22.    Plaintiff handles her mother's affairs. As a result, Plaintiff received the collection letter at issue herein and read the collection letter.

23.    Exhibit A sought to collect a debt incurred for personal, family or household purposes.

24.    Exhibit A is a form letter.

25.    Exhibit A states that it is sent on behalf of SFG.

26.    The form of Exhibit A was prescribed by SFG and AGLP. (Exhibit B).

27.    Exhibit A consisted of a collection demand on the front and a notice of the privacy and information disclosure practices of SFG ("privacy notice") on the reverse. The material on the reverse is referred to on the front.

## COUNT I – FDCPA

28.    Plaintiff incorporates paragraphs 1-27.

## PRIVACY PROTECTIONS IN FDCPA

29.    The FDCPA contains a number of provisions that prevent debt collectors from informing third parties that a given individual owes a debt. "[T]he FDCPA generally protects the consumer's privacy by limiting debt collector communications about personal affairs to third parties

3

. . . ." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50103.

30.    First, 15 U.S.C. §1692c(b) contains a general prohibition against debt collectors communicating with third parties:

> **(b) Communication with third parties--Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.**

Section 1692b deals with locating debtors who cannot be found.

31.    Second, 15 U.S.C. §1692d(3) and (4) defines as "harassment" and a violation of the FDCPA "**[t]he publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title**" and the "**advertisement for sale of any debt to coerce payment of the debt.**" Section 1681a(f) is the Fair Credit Reporting Act definition of consumer reporting agency. Section 1681b(3) is a Fair Credit Reporting Act provision dealing with use of consumer reports.

32.    The Federal Trade Commission has interpreted these provisions to bar publication to one or more persons: "Debt collectors may not exchange lists of consumers who allegedly refuse to pay their debts. . . A debt collector may not distribute a list of alleged debtors to its creditor subscribers." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50105.

33.    Finally, 15 U.S.C. §1692f prohibits a debt collector from communicating with consumers in a manner that allows third parties to discern the consumers owe money:

> . . . **(7) Communicating with a consumer regarding a debt by post card.**
>
> **(8)    Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt**

collection business. . .

34.    If the actual communication is prohibited, the debt collector's statement that it may engage in such communication or has the right to do so is prohibited by 15 U.S.C. §1692e, which provides:

> **§ 1692e.**    **False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> > **(5)**    **The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
> >
> > **(10)**    **The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

## FDCPA VIOLATIONS RESULTING FROM DEFENDANTS' PRIVACY NOTICE

35.    The privacy notice states that SFG and its affiliates, including SA and SA2, collect "Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you. All of the information that we collect is sometimes referred to in this notice as 'collected information.'"

36.    All of this information is integrally related to debt collection.

37.    The privacy notices then state:

**Joint Agreements.**  The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services. We may share collected information with these institutions, subject to the confidentiality and security requirements imposed by law.

38.    The notice states that the consumer may ask SFG and its affiliates not to share

5

collected information, but that "Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you."

39.    The uses listed are prohibited by the FDCPA, in that they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Actual disclosures of that nature would violate 15 U.S.C. §1692c, and the statement that SFG or its affiliates would make such disclosures, or has the right to do so, violates 15 U.S.C. §1692e.

40.    In addition, several of the listed uses amount to the publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay.    The actual publication of such lists would violate 15 U.S.C. §1692d, and the statement that SFG or its affiliates will do so or has the right to do so violates 15 U.S.C. §1692e.

41.    For example, debt collectors have been known to sell lists of persons who have not paid their debts to issuers of subprime credit cards, who offer to issue a credit card if the consumer will put some or all of the unpaid debt on the credit card. Prospective lenders are not among the parties to whom a debt may be disclosed under 15 U.S.C. §1692c.

42.    The statement that the consumer must request that collected information not be disclosed is a misstatement of the consumer's rights under 15 U.S.C. §1692c, which requires that the consumer grant express permission directly to the debt collector before the debt may be disclosed to anyone other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

43.    Finally, the inclusion of statements in a debt collection letter that information about the debtor can or will be disclosed to third parties amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid.

## CLASS ALLEGATIONS

44.    Plaintiff brings this claim on behalf of a class.  The class consists of (a) all natural persons with Massachusetts addresses (b) who were sent a letter containing or accompanied

6

by the privacy notice, (c) on or after a date one year prior to the filing of this action, and (d) on or before a date 20 days after the filing of this action.

45.    The class members are so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of each class.  Defendants have filed more than 50 lawsuits against Massachusetts residents during the last year, and each person who has an account or debt owed by Sherman receives the privacy notice annually.

46.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether collection letters containing or accompanied by the privacy notice violate the FDCPA.

47.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

48.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

49.    A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.  Many debtors may not realize that their rights are violated.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants for:

a.    Statutory damages;

b.    Attorney's fees, litigation expenses and costs of suit;

c.    Such other or further relief as the Court deems proper.

### COUNT II – MASS. G.L., CH. 93A

50.    Plaintiff incorporates paragraphs 1-49.

## VIOLATIONS ALLEGED

51.    Defendants' violations of the FDCPA are per se violations of Mass. G.L., ch. 93A, § 9.

## CLASS ALLEGATIONS

52.    Plaintiff brings this claim on behalf of a class. The class consists of (a) all natural persons with Massachusetts addresses (b) who were sent a letter containing or accompanied by the privacy notice, (c) on or after a date four years prior to the filing of this action, and (d) on or before a date 20 days after the filing of this action.

53.    The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class. Defendants have filed more than 50 lawsuits against Massachusetts residents during the last year, and each person who has an account or debt owed by Sherman receives the privacy notice annually.

54.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether collection letters containing or accompanied by the privacy notice violate the FDCPA.

55.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

56.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

57.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants for:

8

a.    Damages of at least $25 per letter;

b.    Attorney's fees, litigation expenses and costs of suit;

c.    Such other or further relief as the Court deems proper.

Respectfully submitted,

_____
Daniel A. Edelman (pro hace vice)
Cathleen M. Combs (pro hace vice)
Jeremy P. Monteiro (pro hace vice)
EDELMAN, COMBS,
        LATTURNER & GOODWIN, LLC
120 S. LaSalle St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379


Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
        LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

## JURY DEMAND

Plaintiff demands trial by jury.

_____
Daniel A. Edelman (pro hace vice)

j:\case\sherman-henderson12.848\pleading\amdcmplt.wpd

9

EXHIBIT A

15 S. MAIN ST., SUITE 60
GREENVILLE, SC 29601

ADDRESS SERVICE REQUESTED

‖‖‖‖‖‖‖‖‖‖‖
9834922

`LEGIS GROUP LP
1-800-580-4060
(713)784-9966
Hours of Operation
8AM-9PM EST Monday - Thursday
8AM-12PM EST Friday - Saturday

PREVIOUS CREDITOR: Sears
CURRENT CREDITOR: Sherman Acquisition II LP
ACCOUNT NUMBER: Redacted
CURRENT BALANCE: $10,532.47

02-24-2004

#BWNDLZK
#G000 04CY MDV1#
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
MARY L BURT
C/O JOYCE HENDERSON
2 OLD COACH RD
CANTON MA 02021-1623

4161
IX2
SI*W-HS

ALEGIS GROUP LP
PO BOX 741148
HOUSTON TX 77274-1148
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

............... IMPORTANT: To receive proper credit, be sure to enclose this portion with your payment in full. ...............

Dear MARY L BURT:

Sherman Acquisition II LP has authorized Alegis Group LP to offer a settlement in lieu of the balance owed on your account number Redacted

This offer is being made for a limited time only. Alegis Group LP can only accept settlement of the above debt if payment is received in our office no later than fifteen (15) days from the date of this letter.

In the event that all terms of this letter are met, Sherman Acquisition II LP agrees that all collection efforts against MARY L BURT for the above named account will cease and said account will be considered satisfied.

*This communication is sent to you by Alegis Group LP, a professional debt collector.*

**Please read the following important notices as they may affect your rights.**

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency. If you wish to discuss this matter, please call us direct between the hours of 8 AM and 5 PM EST at the toll free number listed on this letter.

SEE REVERSE SIDE FOR IMPORTANT PRIVACY NOTIFICATION FROM YOUR CREDITOR

PRIVACY NOTICE

This privacy notice is being given on behalf of Sherman Financial Group LLC and its family of companies (the "Sherman Companies").

At the Sherman Companies, we are committed to protecting personal information we obtain about you.  Please take a moment and read this privacy notice for some important information about your rights.  This notice is being provided by the Sherman Companies as required by the Federal Financial Privacy Law, 15 USC 6801-6810. The following financial and non-financial entities are the "Sherman Companies":

Sherman Financial Group LLC
Sherman Capital Markets, LLC
Sherman General Partner SPE LLC
Resurgent Capital Services, LLC
Alegis Group Loan Servicing, LLC
Sherman Investments SPE, LLC

Sherman Originator LLC
Sherman Holdings LLC
Bailey Holdings, Inc.
Sherman Acquisition LLC
Sherman Acquisition TA, LP

Sherman Acquisition LP
Alegis Group LLC
Alegis Group LP
Nassau Mortgage, LLC
Ascent Card Services, LLC

**What the Policy Covers.** This policy covers the collection and disclosure of personal information that we receive through your relationship with any of the Sherman Companies.

**Information We May Collect.** Information we receive from your account file at the time we purchase your account.  Information you may give us on applications, questionnaires or through discussions with you.  Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you.  All of the information that we collect is sometimes referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** We restrict access to collected information about you to those employees who need to know such collected information and certain third party service providers who provide support services to us.  We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Joint Agreements.** The Sherman Companies from time to time may enter into agreements with other providers of financial products and services.  These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services.  We may share collected information with these institutions, subject to the confidentiality and security requirements imposed by law.

## Sharing Collected Information With Affiliates and Third Parties

**Between Sherman Companies.** From time to time, the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law.  You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

**Other Sharing.** We share collected information about customers and former customers (A) with other companies in order to effect, administer or enforce any transaction between you and the Sherman Companies, (B) with law enforcement officials, to prevent fraud, and (C) otherwise as permitted by law.

# APPENDIX B

# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

February 23, 2005

**BY CERTIFIED MAIL**

Sherman Financial Group LLC
335 Madison Avenue, 19th floor
New York, NY 10017


Sherman Acquisition II, LP
c/o registered agent,
Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

Sherman Acquisition II General Partner, LLC
c/o registered agent
Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

Alegis Group L.P.
15 S. Main St., Suite 600
Greenville, SC 29601

Alegis Group LLC
15 S. Main St., Suite 600
Greenville, SC 29601


Re: Claim of Joyce Henderson

Ladies/ Gentlemen:

Enclosed is a complaint filed against the above entities on Feb. 22, 2005.

Ms. Henderson contends that the same matters complained of also violate Mass. G.L., ch. 93A, and hereby gives notices as required by that statute.

Ms. Henderson contends that a reasonable resolution of the 93A claim would be payment of $20 per class member.

". . . Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For

the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. . . ."

Sincerely,

Daniel A. Edelman

cc:    Christopher M. Lefebvre
       LAW OFFICES OF CLAUDE LEFEBVRE & SONS
       Two Dexter Street
       Pawtucket, RI 02860

       client

j:\case\sherman-henderson12.848\pleading\93ademand

2