**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | |
| SHERMAN FINANCIAL GROUP LLC; | ) | Magistrate Judge Judith G. Dein |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
|     GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP LP and; | ) | |
| ALEGIS GROUP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI  02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

## I.    INTRODUCTION

Plaintiff, Joyce Henderson, filed this class action lawsuit seeking redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and Mass. G.L., ch. 93A, § 9. ("93A") by Sherman Financial Group ("SFG"), Sherman Acquisition II, LP ("SA2"), Sherman Acquisition II, General Partner ("SA2GP"), Alegis Group, LP ("AGLP") and Alegis Group, LLC ("AGLLC")(collectively, "Defendants").  These violations are based upon Plaintiff's receipt of Defendant's "Privacy Notice" policy which Plaintiff alleged misrepresented Defendants' legal authority and intentions under the FDCPA to disclose information about consumers to third parties.[1]

On October 4, 2005, this Court granted Defendants leave to depose the Plaintiff and file a dispositive motion with respect the issue of whether the Plaintiff had standing to pursue her claims.  The Court also ruled that no other discovery was allowed to be taken without leave of the Court.  To date, almost one year after the Complaint was filed, Plaintiff has not been afforded any discovery in this matter.  Defendants have moved to dismiss the case and have moved to compel arbitration, both of which this Court denied.  Presently before this Court is Defendants' Motion for Summary Judgement, filed on December 5, 2005.  The purported basis for summary judgment include on three grounds, two of which this Court has previously explicitly denied.  Defendants claim that Plaintiff lacks standing, that the Privacy Notice complies with the Gramm Leach Bliley Act ("GLB Act") and therefore cannot violate the FDCPA, and that the lawsuit is subject to an arbitration agreement between the Plaintiff's mother and Sears, neither of whom are parties to this case.  The deposition of the Plaintiff has elucidated material facts which confirm that Plaintiff has standing to pursue these claims and this case is not subject to any arbitration agreement.  The Motion for Summary Judgement should be denied.

---

[1] Plaintiff also alleged the such disclosures would violate 15 U.S.C. § 1692c(b).

## II.     PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, Joyce Henderson is the daughter of Mary Burt.  (Amended Complaint ["Am. Compl."] ¶ 21-22; Deposition of Joyce Henderson[2] ["Dep."] at 9:20-24.).  At some date prior to February 2004, Ms. Burt opened an account with Sears for a credit card.  Thereafter, Ms. Burt became incapacitated and Mrs. Henderson began managing Ms. Burt's affairs.  (Dep. at 13: 15-21; 16: 9-12).  Mrs. Henderson has handled Ms. Burt's financial affairs, including the payment of all of her bills, for the last ten years.  (Dep. at 12: 1-8; 13: 15-21).

Mrs. Henderson was an "authorized user" and was provided a Sears credit card for the account to make purchases for her mother, but the Sears account remained wholly in Ms. Burt's name and her sole responsibility.  (Dep. at 20: 23-24; 21: 1, 5-8).  Mrs. Henderson was required to provide her social security number to Sears in connection with her receipt of the additional card.  (Dep. at 21: 9-17), but was never asked to execute an application for the Sears card or sign any document that was submitted to Sears.  (Dep. at 27: 2-8).  Ms. Burt's obligation on the Sears card was reported on Mrs. Henderson's credit report.  (Dep. at 21: 23).  Furthermore, Mrs. Henderson received collection letters and phone calls from Sears and its debt collector agents directed to her personally seeking collection of Ms. Burt's account from Mrs. Henderson.  (Dep. at 25: 17-14; 26:1-5).  Mrs. Henderson made payments on Ms. Burt's account from her own funds.  (Dep. at 38: 20-24; 39: 1-4).  The sum of those payments equaled between $ 1,000 and $ 1,500.  (Dep. at 39: 2-3).

On or about February 24, 2004, Defendant AGLP sent a collection letter addressed to Mary Burt, care of Joyce Henderson.  (Am. Compl. ¶ 21).  Henderson received the letter.  (Dep. at 22: 13-18).  Henderson read the letter carefully and found it to be very personally threatening to both her and her mother.  (Dep. at 31: 1-7).  Prior to her receipt of the collection letter at issue

---

[2]The Deposition of Joyce Henderson was attached to the Affidavit of Steven S. Broadely, which was filed by Defendants on December 5, 2005.  See Ct. Docket No. 37.

in this case, Henderson had sought her own Sears credit card and was denied because of Ms.

Burt's outstanding obligation with Sears.  (Dep. at 38, at 8-19).[3]

## III.     PLAINTIFF HAS STANDING TO ASSERT THIS CLAIM

Initially, Defendants' challenge Plaintiff's ability to assert this lawsuit.  Defendants

raised the same arguments in a Motion to Dismiss which was denied by this Court on May 16,

2005.  Defendants claim that Plaintiff lacks standing under "general standing rules" because she

has suffered no "injury in fact" and lacks standing under the Fair Debt Collection Practices Act

("FDCPA").  However, the material facts obtained from Plaintiff's deposition confirm that she

has standing to bring the lawsuit for numerous reasons.

### A.     PLAINTIFF HAS SUFFERED AN "INJURY IN FACT"

Plaintiff has indeed suffered an "injury in fact" in this case.  Defendants have interfered

with Plaintiff's statutory rights under the FDCPA.  The infringement of a statutory right is

sufficient to confer standing and standing is permitted under a federal statute permitting citizen

suits.  FEC v. Akins, 524 U.S. 11 (1998).  "Prudential standing is satisfied when the injury

asserted by a plaintiff 'arguably [falls] within the zone of interests to be protected or regulated by

the statute . . . in question.'"  Id.  In this case, there can be no question that plaintiff falls within

the "zone of interests to be protected or regulated by the" FDCPA.  Plaintiff testified that she

was an authorized user of Ms. Burt's Sears account.  (Dep. at 20: 23-24; 21: 1: 5-8).  Ms. Burt's

obligation on the Sears card was reported on Mrs. Henderson's credit report.  (Dep. at 21: 23).

Furthermore, Mrs. Henderson received collection letters and phone calls from Sears and its debt

collector agents directed to her personally seeking collection of Ms. Burt's account from Mrs.

Henderson.  (Dep. at 25: 17-14; 26:1-5).

---

[3]Defendants' final "purported" Undisputed Statement of Fact contained in Defendants' Motion (at 5) is wholly unsupported by anything in the record, contains no citation to anything in the record, and regardless, is not material.  This Court should strike that assertion.

**B.      PLAINTIFF HAS STANDING UNDER THE FDCPA**

The FDCPA defines debt, in pertinent part, to mean "any obligation or alleged obligation of a consumer to pay money."  15 U.S.C. § 1692a(5).  "Although this language is broad, it is plain that the sine qua non of a debt is the existence of an obligation (actual or alleged)."  Arruda v. Sears, 310 F.3d 13, 23 (1st Cir. 2002).  The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.  15 U.S.C. § 1692a.  Additionally, the FDCPA provides a statutorily based private right to action to pursue the present claims which are not limited to debtors.  "The FDCPA not only protects debtors, but also protects "persons who do not owe money but who are nonetheless harassed by a debt collector."  Dolan v. Schreiber & Associates, P.C., 01-10177-MLW, 2002 U.S. Dist. LEXIS 6005, at *6-7 (Mar. 19, 2002).  "Section 1692k states that 'any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person'" Id.  (emphasis in original).  Plaintiff read the privacy notice and found it "threatening to herself and her mother."  (Dep. at 31: 1-7).  Logically, a family member who receives a false and misleading collection letter in the course of handling the financial affairs of a putative debtor has standing to assert violations of the FDCPA on an individual basis.  The relevant case law confirms this to be the rule.

In Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir. 1993), the Sixth Circuit ruled that an executrix, stood in the shoes of her debtor daughter and had the authority to open and read letters addressed to the debtor.  The Sixth Circuit ruled that the executrix had standing to bring an action for a false and misleading representation under § 1692e of the FDCPA because under that section "a debt collection practice need not offend the alleged debtor before there is a violation of the provision."  Id.

In Mantell v. Feingold & Levy, 96-1869, 1997 U.S. Dist. LEXIS 1013 (N.D. Ill. Jan. 30, 1997) the District Court sustained a claim brought by a family member of the debtor under § 1692e, based upon the Defendant's false misrepresentation over the telephone that he was an

4

attorney.  See also Riviera v. MAB Collections, Inc., 682 F. Supp. 174 (W.D.N.Y. 1988)(holding

that an administrix who had received a dunning letter regarding a consumer debt had standing to

sue under the FDCPA); West v. Costen, 558 F.Supp. 564 (W.D. Va. 1983)(holding that

communications about debts with consumers' grandparents, uncle, sister, daughter, and mother

have causes under the FDCPA); Whatley v. Universal Collection Bureau, Inc., 525 F. Supp.

1204 (N.D. Ga.1981).  Here, suit is brought by the purported debtor's, daughter, who handles the

debtor's finances.  (Am. Compl. ¶ 21-22; Dep. at 9:20-24; 12, 1-8; 13, 15-21).

Defendants' citation to Conboy v. AT&T Corp., 241 F.3d 242 (2nd Cir. 2001) does not

provide any support for their claims.  The Conboy decision was based upon the Court's

interpretation of 15 U.S.C. § 1692(e)(11) and the claim that the Plaintiff was not a "consumer"

under the FDCPA.  However, Defendants' fail to point out that the enumerated sections of 15

U.S.C. § 1692e, which Plaintiff has sued under, sections (5) and (10) (Am. Compl. ¶ 34) are not

dependant upon a collector's communication with "consumers."

In addition to regulating the actual communication of information concerning the debt to

a third party, the FDCPA also prohibits a debt collector's false or misleading statement that it

may engage in such communication or has the right to do so.  Specifically, § 1692e provides "

A debt collector may not use any false, deceptive, or misleading representation or means in

connection with the collection of any debt.  This includes a "threat to take any action that cannot

legally be taken or that is not intended to be taken" and "the use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer." §§ 1692e(5) and (10).

It follows that a debt collector's misrepresentation of its legal rights violates the FDCPA.

Juras v. Aman Collection Serv., Inc., 829 F.2d 739, 743-44 (9th Cir. 1987).  Indeed, the FDCPA

was enacted to combat practices including "misrepresentation of a consumer's legal rights."  S.

Rep. No. 95-382, 95th Cong., 1st Sess., at 2-3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695,

1696; <u>Argentieri v. Fisher Landscapes</u>, 15 F. Supp. 2d 55, 61 (D. Mass. 1998); <u>Limpert v. Cambridge Credit Counseling Corp.</u>, 328 F. Supp. 2d 360, 362-63 (E.D.N.Y. 2004).

The Complaint seeks relief under § 1692e for the false and misleading representation under found in Defendants' Privacy Notice which claims that Defendants have the legal authority to share "collected information" which would include with persons other than those expressly allowed by the FDCPA, namely, "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Defendants define "collected information" as "Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you."

The Complaint also seeks relief for a violation 15 U.S.C. §1692c(b). Section 1692c(b) contains a general prohibition against debt collectors communicating with third parties without the prior consent of the consumer:

> (b) Communication with third parties--Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Defendants' Privacy Notice states that the Defendants may disclose this information to persons and entities not on the list authorized by §1692c(b):

> **Joint Agreements.** The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services. We may

6

share collected information with these institutions, subject to the confidentiality and security requirements imposed by law. (Am. Compl. ¶ 37).

The notice states that the consumer may ask SFG and its affiliates not to share collected information, but that "Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you." (Am. Compl. ¶ 38).

The uses listed are prohibited by the FDCPA (absent express prior consent by the debtor), in that they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §1692c(b). Actual disclosures of that nature violate § 1692c(b). (Am. Compl. ¶ 39).

Defendants' assertion that the Plaintiff does not qualify as a "consumer" under the FDCPA and that Defendants never attempted to collect from the Plaintiff are totally false. The facts of this case distinguish the Conboy decision. As stated above, Plaintiff was "allegedly obligated" under the FDCPA from Defendants' perspective. They called her personally and sent her letters on the Sears account seeking to collect money from her personally. (Dep. at 25: 17-14; 26:1-5). Plaintiff also paid at least $1,000 from her own funds toward Ms. Burt's account. (Dep. at 39: 2-3). Finally, Plaintiff provided her social security number to Sears when she received a card for her mother's account. (Dep. at 21: 9-17). Plaintiff is entitled to discovery to determine whether Defendant had this information in its records and whether it was in fact shared, as has been alleged. There can be no question that in Defendants' eyes, Plaintiff was "allegedly obligated to pay" Ms. Burt's debt and therefore has standing under the statute, as a "consumer" as well.

### C.    PLAINTIFF'S RIGHT TO STATUTORY DAMAGES PROVIDES STANDING

Proof of actual damages or actual harm are unnecessary to recover statutory damages

under the FDCPA.  Plaintiff's right to recover statutory damages pursuant to 15 U.S.C. § 1692k confers standing as well.  The decisions support Plaintiff's position.  In <u>Bartlett v. Heibl</u>, 128 F.3d 497, 499 (7th Cir. 1997), the Seventh Circuit ruled that statutory damages are recoverable under the FDCPA, absent a claim of actual damages.  The Court held that a claim for statutory damages is not dependant upon proof that the recipient of the letter was misled but only that the statute was violated.  <u>Id.</u>

In <u>Keele v. Wexler</u>, 149 F.3d 589, 593 (7th Cir. 1998) the Seventh Circuit stated the FDCPA was "blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not."  This reasoning was based upon the policy of the statute to "protect consumers from unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.  <u>Id.</u> at 594.  <u>See also</u> <u>Baker v. G.C. Servs. Corp.</u>, 677 F.2d 775, 781 (9th Cir. 1982).

The decision in <u>Keele</u> has been adopted by at least one District Court within this Circuit. In <u>Silva v. Nat'l Telewire Corp.</u>, 99-219, 2000 U.S. Dist. LEXIS 13986, at *8 (D. N.H. Sept. 22, 2000), the District Court for the District of New Hampshire held that the FDCPA did not require proof of actual damages for an award of statutory damages.

## IV. THE "PRIVACY NOTICE" ASSERTS THAT THE SHERMAN DEFENDANTS HAVE THE RIGHT TO DISCLOSE PERSONAL INFORMATION IN A MANNER PROHIBITED BY THE FDCPA

Defendants next claim that the actual language contained in the privacy notice does not violate the FDCPA.[4]  Defendants' "Privacy Notice" contains language that would lead unsophisticated debtors to believe that the Defendants have the right to divulge personal, nonpublic information when in fact, such distribution of information violates the FDCPA.  Of

---

[4]This argument is not tied in anyway to the Plaintiff's deposition, upon which Defendants were restricted by the Court to file the present Motion.  This Court has already denied Defendant's Motion to Dismiss which raised nearly identical arguments.  This Court should strike this entire section of the Motion.  Plaintiff is entitled to appropriate discovery prior to a motion for summary judgment as to the legality of Defendant's Privacy Notice.

course, Defendants do not have the right to divulge such information under 15 U.S.C. § 1692c(b)

and the claim that they do violates 15 U.S.C. § 1692e(5).

    In a case evaluating the exact same "privacy notice," Judge Plunkett ruled that "it is

reasonable to conclude that an average person could construe the Privacy Notice language to

mean that at third party, other than those permitted under § 1692c(b), is going to receive

information about our debts."  Blair v. Sherman Acquisition, 04 C 4718, 2004 U.S. Dist. LEXIS

25106 (N.D. Ill. Dec. 9, 2004)(Exhibit A).  See also Chapman v. Worldwide Asset Mgmt., LLC,

04 C 7625, 2005 U.S. Dist. LEXIS 18881 (N.D. Ill. Apr. 6, 2005)(Exhibit B); Stewart v. Asset

Acceptance LLC, No. 04-cv-1213-LJM-VSS, at 8 (S.D. Ind. Nov. 19, 2004)(Exhibit C).

    Judge Plunkett held that the complaint stated a claim under 1692c(b):

> Section 1692c(b) of 15 U.S.C. generally prohibits debt collectors from
> communicating with third parties . . . Under Section § 1692c(b), without prior
> consent, a debt collector may not communicate with a third party regarding the
> collection of a debt, except to secure "location information" permitted under strict
> limitations of § 1692b. 15 U.S.C. § 1692c(b). Under the Act, a "communication"
> is defined as "conveying of information regarding a debt directly or indirectly to
> any person through any medium." 15 U.S.C.§ 1692a(2).

> . . . How consumers or audiences are affected by a Privacy Notice is a question of
> fact, which may be explored by testimony and devices such as consumer surveys.
> Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 501 (7th Cir. 1999). A complaint
> alleging that a particular notice is not clear may not be dismissed under Federal
> Rule of Civil Procedure 12(b)(6) because district judges are not the proper models
> for the "unsophisticated consumers" that were contemplated under the statute. Id.
> (noting "unsophisticated readers may require more explanation than do federal
> judges; what seems pellucid to a judge, a legally sophisticated reader, may be
> opaque to someone whose formal education ended after sixth grade"). Further, to
> learn how an unsophisticated reader reacts to a letter, the judge may need to
> receive evidence. Id. at 501. . . .

> . . . Additionally, peering through the eyes of the unsophisticated consumer and
> leaving our judicial and educational expertise aside, it is reasonable to conclude
> that an average person could construe the Privacy Notice language to mean that a
> third party, other than those permitted under § 1692c(b), is going to receive
> information about our debts. Furthermore, Plaintiffs proclaim that they will
> proffer evidence that may lead us to reach a conclusive determination. Applying
> the relevant standard in a Rule 12(b)(6) motion, we must construe all facts in
> favor of Plaintiffs. Plaintiffs allege that, in violation of 15 U.S.C. 1692c(d),
> Defendants shared their information in connection with the collection of a debt
> without the third party's consent. Plaintiffs have inferred that they will be able to

9

show through the evidence that Defendants were acting in connection with a debt collection. Accepting as true all well-pleaded factual allegations of the complaint and drawing all reasonable inferences in Plaintiffs' favor, if it is determined that the communication was in fact in connection of a debt, then Plaintiff's claim is viable. Construing this statute so as to not preclude any clause, sentence or word meaning and broadly interpreting the FDCPA through the eyes of the unsophisticated consumer, we are required to consider Plaintiffs' claim.

Blair, supra, at *7-12.  Accord, Stewart, at 8.

Additionally, Judge Plunkett further concluded that the statement of proposed action

stated a claim under 15 U.S.C. §§ 1692e(5) and (10):

Next, we address § 1692e(5), which is violated when a debt collector threatens to take action that cannot legally be taken, and § 1692e(10), which prohibits debt collectors to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." Jenkins v. Union Corp., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998).  However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted.  Gammon, 27 F.3d at 1257-58.

Plaintiffs say that § 1692e(5) was violated because stating that they would disclose to unauthorized third parties, whether they actually did, is a violation of its own. Even though this does not infer that legal action is imminent, an unsophisticated consumer could reasonably interpret the statement to imply that Defendants could execute the actions noted in the Privacy Notice. Therefore, because it is undetermined whether the actions the Defendants' claim to make are actually authorized or unauthorized, the § 1692e(5) claim must remain.

Similarly, § 1692e(10) prohibits the use of any false representation or deceptive means to collect any debt. As to §  1692e(10), courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. U.S. v. Nat'l Fin. Servs., 98 F. 3d 131,136, 138 (4th Cir. 1996)(stating that phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate § 1692e(10) because it gives the consumer the impression that he would undoubtedly require a lawyer).  We interpret the alleged misleading content again through the eyes of the unsophisticated consumer.  Gammon, 27 F.3d at 1257.

In this case, Plaintiffs indicate that Defendants have violated § 1692e(10) because they misstated the consumer's rights with regard to having to affirmatively notify Sherman Defendants not to share their information. Requiring the consumer to affirmatively state that they do not want their information shared is not accurate, if the communication were in connection with the collection of the debt. Defendants do imply that they will share this information with potentially unauthorized third

10

parties without the consumer's consent. Because whether the communication was made in connection with the collection of a debt has yet to be determined and an actual disclosure <u>would</u> be a violation of the consumer's rights, this statement would violate 15 U.S.C. § 1692e(10). Therefore, as to § 1692(5) and § 1692(10), Plaintiffs present tenable claims and they may not yet be disposed.

<u>Blair</u>, <u>supra</u>, at *17-20.  <u>Accord</u>, <u>Stewart</u> at 8.

Similarly, in <u>Chapman</u>, Judge Hart concluded:

Except as permitted by sections 1692c(b) and 1692b, a debt collector may not communicate with a third party regarding a consumer's debt.  The privacy notice states that defendants will engage in communications other than the type permitted by the aforementioned sections of the FDCPA.  Also, inconsistent with the FDCPA provisions which require that the debt collector obtain actual permission from the customer before disseminating certain information, the privacy policy provides that the customer must affirmatively act to prevent dissemination.  Defendants' privacy policy contains provisions that would violate the FDCPA. [citations] As previously discussed, by seeking to collect on a debt while notifying plaintiff that they may take such actions, defendants violated §1692e. [citations]

Just as was held in the above cases, the statements are misleading and false in the Burt/Henderson Notice because Defendants do not have the right to disclose such nonpublic personal information under the FDCPA.  An unsophisticated debtor is likely to read the notice and think that if Defendants can legally provide nonpublic personal information under the GLB, then no other legal authority exists to regulate such disclosures to others.  Plaintiff has testified that she read the privacy notice and felt personally threatened for herself and her mother by the language contained therein.  (Dep. at 31: 1-7).

## V.    APPENDING THE WORDS "AS PERMITTED BY LAW" TO A STATEMENT OF ACTION THAT MAY NEVER BE TAKEN DOES NOT AVOID A VIOLATION

Defendants claim that by appending the statement "as permitted by law" they eliminate any violation.  However, if a party is not legally entitled to take an action, stating that it may take such action as permitted by law is false and misleading.  In <u>Werts v. Federal Nat'l Mortgage Ass'n</u>, 48 B.R. 980, 985 (E.D.Pa. 1985), the foreclosure notice stated, "WE MAY TAKE POSSESSION OF ALL OR ANY PART OF YOUR PROPERTY AS AND WHEN

11

**PERMITTED BY LAW.**"  Under no circumstances was the lender entitled to take possession of all of plaintiff's property.  Id. at 985.  The court found the statement "as and when **permitted by law**" was misleading because the defendant could **never** take possession of all of plaintiff's property.  Id.  Similarly here, if the FDCPA prohibits disclosure of the Plaintiff and her mother's personal information, the Defendants' claim that they have a right to do so is false and misleading under 15 U.S.C. § 1692e.

## VI.    ACTUAL DISCLOSURE IS NOT REQUIRED

Defendants next argue that it is merely hypothetical that Plaintiff's personal information was disclosed.  However, in additional to the disclosure claim, one of other the claims is that a debt collector's misrepresentation of its legal rights to disclose information about the debtor violates the FDCPA.  Juras v. Aman Collection Service, Inc., 829 F.2d 739, 743-44 (9th Cir. 1987); Argentieri v. Fisher Landscapes, 15 F. Supp. 2d 55, 61 (D. Mass. 1998); Limpert v. Cambridge Credit Counseling Corp., 328 F. Supp. 2d 360, 362-63 (E.D.N.Y. 2004).  Whether actual disclosures occurred is a question of fact, which Plaintiff is entitled to explore through discovery.

## VII.   THE GRAMM-LEACH-BLILEY ACT DOES NOT AUTHORIZE DISCLOSURES BY A DEBT COLLECTOR IN VIOLATION OF THE FDCPA

Defendants also claim that 15 U.S.C. § 6802, a provision in the GLB Act, expressly authorizes the threatened disclosures.  The claim that the GLB affects the FDCPA is incorrect.

The GLB Act, 15 U.S.C. § 6802 states:

> . . . This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information. . . .

12

Defendants read the statement that "This subsection . . . shall not prevent a financial institution from providing nonpublic personal financial information" as if it said, "Notwithstanding any other provision of law prohibiting such disclosure, a financial institution may provide nonpublic personal financial information."  Of course, it says nothing of the sort.  The plain language of § 6802 provides that it controls only the operation of  "This subsection," not other federal statutes that may impose more stringent limitations on certain types of entities, such as debt collectors.

Repeal by implication is not favored.  Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004).  "When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other--and repeal by implication is a rare bird indeed.  See, e.g., Branch v. Smith, 538 U.S. 254, 273 (2003); J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc., 534 U.S. 124, 141-44  (2001)(collecting authority).  It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other. " Randolph, 368 F.3d at 730 .

The Defendants make no effort to show either irreconcilable conflict between the FDCPA and GLB Act or any legislative expression that §1692c(b) be replaced.  They instead postulate that by enacting a second statute (the GLB Act) intended to increase protection for individual privacy, Congress actually repealed the existing protection for  individual privacy afforded by the FDCPA.  Defendants' GLB Act argument must accordingly be rejected.[5]

## VIII.   DEFENDANTS HAVE NO RIGHTS TO COMPEL ARBITRATION

Inexplicably, Defendants have again requested that this Court compel arbitration, notwithstanding this Court's order on August 2, 2005 denying such a request.  This Court should summarily strike this portion of Defendants' Motion and deny this request.  Defendants have

---

[5]To the extent that Defendants' reliance upon their purported interpretation of the GLB Act constitutes a basis for their Seventh Affirmative Defense that it was not intentional and the result of a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, a factual issue is raised and Plaintiff is entitled to appropriate discovery.

again misrepresented that Mary L. Burt is the Plaintiff, when she is not. Plaintiff submits a response to this section in the event this Court agrees to consider this request.

Arbitration, ultimately, "arbitration is a matter of contract . . . and a party cannot be required to submit to arbitration any dispute which she has not agreed so to submit." AT&T Techs., Inc. Communications Workers of America, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)(citing United Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347 (1960)). "Before compelling a party to arbitrate, the court must first determine whether there exists a valid agreement to arbitrate and whether the claims asserted fall within the scope of the arbitration agreement." Acher v. Fujitsu Network Communs., Inc., 354 F. Supp. 2d 26, 35-37 (D.C. Mass. 2004).

The issue of whether the parties had a valid agreement to arbitrate is governed by general principles of state contract law. Campbell v. Gen. Dynamics Gov't Sys. Corp., 321 F.Supp.2d 142, 146 (D. Mass. 2004). The party seeking to compel arbitration, in this case the Defendants, have the burden of proving, by a preponderance of the evidence, the existence of a valid and binding agreement to arbitrate Mrs. Henderson's individual claims under the FDCPA and 93A. Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); see also Johnson v. Long John Silver's Rest., Inc., 320 F.Supp.2d 656, 664 (M.D. Tenn. 2004).

Under Massachusetts law, a valid contract requires offer, acceptance, and consideration. Campbell v. General Dynamics Gov't Sys. Corp., 321 F. Supp.2d 142, 147 n.3 (D. Mass. 2004)(citing City of Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 716 N.E.2d 138 (1999)); See also Secretary of Admin. v. Mass. Org. of State Engineers and Scientists, 408 Mass. 837, 839, 563 N.E.2d 1361 (1990)("the question of arbitrability . . . depends on whether the parties expressed an intention to arbitrate.").

Defendants' request for Arbitration should be denied because (1) there is no evidence that the actual Plaintiff in this case, Mrs. Henderson, entered into any agreement which would allow Defendants to submit this matter to arbitration, (2) Defendants have waived their right to bring this matter to arbitration, (3) the terms of the agreement do not give the Defendants in this lawsuit any right to compel arbitration nor do they apply to the Plaintiff, Joyce Henderson, and (4) last, but not least, there is no competent evidence that Mary Burt, who is not a Plaintiff in this case, agreed to such terms.

## IX.    JOYCE HENDERSON DID NOT ENTER INTO ANY AGREEMENT WHICH ALLOWS DEFENDANTS TO COMPEL ARBITRATION IN THIS MATTER

Defendants' proposition that Mrs. Henderson's individual claim under the FDCPA could be barred because her mother allegedly agreed to arbitrate with Sears is without merit.  The Complaint in this case alleges that Defendant SA2 sent a collection letter addressed to the Plaintiff's mother Mary L. Burt, care of the Plaintiff, Joyce Henderson.  (Am. Compl. ¶ 21). Further the Complaint alleges that the Plaintiff, Joyce Henderson, handles her mother's affairs and as a result, Henderson received the collection letter at issue herein and read the collection letter.  (Am. Compl. ¶ 22).

Plaintiff Henderson has an individual claim under the FDCPA and Mass. Gen. Statute 93A based upon her review of Defendants' collection letter alone.  Plaintiff is not attempting to enforce any alleged account agreement between Mary L. Burt and Sears, nor is she claiming rights under the alleged agreement.

The transparency of Defendants' claim that they have a right to compel Henderson to arbitrate this matter, is readily evident throughout the Motion.  Defendants attempt to assert an agreement between Sears and Ms. Burt for the purpose of compelling Burt's daughter, Mrs.

15

Henderson, to arbitrate her claims.  On page 19, Defendants claim the arbitration provision arises from "the agreement between Sears and the user of the account as pled by the plaintiff Mary L. Burt."  Of course, Ms. Burt is not the Plaintiff in this case.  Joyce Henderson is the Plaintiff.  She brings her claims based upon her individual review of the collection letter.  She is not suing on behalf of Ms. Burt and is not attempting to enforce any contract or agreement with Sears.  This much is clear from a review of the Complaint.  Defendants' attempt to mislead this Court by claiming Mary L. Burt is the Plaintiff is improper.  Joyce Henderson has never entered into any credit card agreement with Sears.  Defendants wholly fail to provide any argument or authority suggesting that Henderson is bound by anything her mother allegedly agreed to with Sears.

The plain language in the alleged agreement, makes it clear that this agreement could never apply to Joyce Henderson.  Section 1 of the alleged agreement contains Definitions and states: "(a) the words 'you,' 'your,' 'yours,' and 'accountholder' mean any person named on the credit application or acceptance certification as an accountholder, applicant or co-applicant and any person in whose name an account has been opened."  There is nothing in the record which establishes that Joyce Henderson fits that definition, nor could Defendants ever prove that Henderson fits the definition because Henderson was never "named on the credit application or acceptance certification as an accountholder, applicant or co-applicant" nor has a Sears account ever been opened in Henderson's name.  (Dep. at 27: 2-8; 38, at 8-19).

Finally, to the extend Henderson is determined to be an "authorized user" of the account (which Defendants have not proven), the case law is clear that an agent who signs as another's agent is not personally liable and cannot be obliged to arbitrate.  Sphere Drake Ins. Ltd. v. All American Ins. Co., 256 F. 3d 587, 590 (7th Cir. 2001); Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 54 (1st Cir. 2002).

16

## X.    DEFENDANTS HAVE WAIVED THEIR ARBITRATION RIGHTS

Defendants have waived any arbitration rights based upon their failure to move to compel arbitration until this late date and only after this Court has denied their Motion to Dismiss. Moving this matter to arbitration would result to prejudice to Plaintiff, who has already successfully defended against two attempts to dismiss her claim.  Mandating arbitration at this juncture, now over eleven months into this case, and after this Court has disposed of Defendants' earlier Motions to Dismiss and Compel Arbitration, would effectively allow Defendants a third opportunity in another forum.

On the issue of waiver of arbitration rights, the First Circuit rule is:

> Federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand...  Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration ...) had taken place, ... and whether the other party was affected, misled, or prejudiced by the delay...

Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633, 671 F.2d 38, 44 (1st Cir. 1982)(citing Reid Burton Construction, Inc. v. Carpenters District Council, 614 F.2d 698 (10th Cir. 1980).

In this case, Defendants have certainly invoked the "litigation machinery," prior to this attempt to invoke the alleged arbitration agreement.  This lawsuit was filed on February 22, 2005.  On March 15, 2005, Defendants moved to dismiss Plaintiff's Complaint.  On June 13, 2005, Defendants moved to Compel Arbitration the first time and it was denied on August 2, 2005.

Defendants' multiple attempts to compel arbitration after this Court denied their Motion to Dismiss, is precisely the type of practice which the First Circuit has criticized in ruling that the failure to timely raise arbitration rights results in an implicit waiver of such rights.  Menorah Ins. Co. Ltd. v. INX Reins. Corp., 72 F.3d 218, 221 (1st Cir. 1995); Caribbean Ins. Servs., Inc. v. American Bankers Life Assurance Co., 715 F.2d 17,19 (1st Cir. 1983); Gutor Int'l AG v. Raymond Packer Co., 493 F.2d 938, 945 (1st Cir. 1974).

The theory behind arbitration is that it expedites the proceeding in a cost effective manner.  This rationale mandates that the election of arbitration be exercised at the first opportunity.  The clause does not give Defendants the right to litigate until they lose two major motions and then switch to arbitration.  Litigation is neither quick nor cheap.  This is the theory behind the First Circuit's holding in Jones.

The party seeking arbitration has the burden to show that it is a proper forum.  Waiver defeats arbitration.  Defendants have made no effort to show an absence of waiver by their past aggressive litigation in this Court.  Defendants' failure to raise this issue will result in prejudice to the Plaintiff.  Plaintiff has expended considerable time and resources in responding to Defendants' Motions to Dismiss and Compel Arbitration, after clearing those two hurdles, to be presented with an alleged arbitration agreement which applies only her mother's account.

## XI.    EVEN IF THE AGREEMENT DOES APPLY TO JOYCE HENDERSON, DEFENDANTS HAVE NO RIGHTS UNDER THE ALLEGED AGREEMENT

The plain terms of the arbitration agreement do not allow Defendants to enforce the alleged agreement, even if the Court were to apply the agreement to Mrs. Henderson.  The alleged arbitration provision in Section 21 of the alleged agreement states that "[a]ny and all claims, disputes, or controversies . . . shall be resolved, upon your election or our election by

18

final and binding arbitration . . . .(emphasis added).  Further, Section 1 of the alleged agreement

defines "we," "us," and "our" to mean "Sears National Bank (an affiliate of Sears) or any

subsequent <u>holder</u> of the Account or any balances arising under the Account or any servicer of

your account, authorized by us."  However, the term "holder" is undefined in the agreement and

there is no evidence that any of the Defendants are a "holder" under the terms of the agreement.

> The Uniform Commercial Code defines the term "holder" as:
>
> (A) the person in possession of a negotiable instrument that is payable either to
> bearer or to an identified person that is the person in possession; or (B) the person
> in possession of a document of title if the goods are deliverable either to bearer or
> to the order of the person in possession.

U.C.C. § 1-201(21).  There is nothing in the record which establishes that SA2 is a "holder" of

anything.  With respect to the status of SA2's acquisition of Mary L. Burt's alleged Sears

account, the only evidence in the record is a statement from Stephen McConnell which merely

states that "[o]n November 21, 2003, SNB sold Burt's account which is now owned by Sherman

Acquisition II, LP."  (Affidavit of Stephen McConnell ¶ 10).  The statement that SA2 owns

Burt's account hardly establishes that Defendant SA2 is a "holder" of the account, as defined by

the U.C.C.  In <u>Adams v. Madison Realty & Dev., Inc.</u>, 853 F. 2d 163 (3d Cir. 1988) the Third

Circuit explained "holder" to mean:

> The Code defines a holder as one "who is in possession of . . . an instrument . . .
> drawn, issued  or indorsed to him or to his order."  U.C.C. § 1-201(20).  Mere
> ownership or possession of a note is insufficient to qualify an individual as a
> "holder."  The instrument must be obtained through a process the Code terms
> "negotiation," defined as "the transfer of an instrument in such form that the
> transferee becomes a holder."  U.C.C. § 3-202(1).  If the instrument is payable to
> order -- as is the case with the notes here -- negotiation is accomplished "by
> delivery with any necessary indorsement."  <u>Id.</u>

853 F.2d 163, 166 (3d Cir. 1988).  As that court stated, "mere ownership or possession of a note

is insufficient to qualify as individual as a "holder."  Likewise, Defendants have failed to

establish that they have any right to seek arbitration under the terms of the alleged arbitration

agreement.

## XII.    THERE IS NO COMPETENT EVIDENCE THAT MARY L. BURT ENTERED INTO ANY AGREEMENT WITH SEARS

As this is the identical argument which was previously submitted by Plaintiff in response

to Defendant's previous attempt to compel arbitration in this matter, Plaintiff incorporates

herein, Section 5 of her Response in Opposition to Defendants' Motion to Compel Arbitration

(Ct. Docket No. 29).

## XIII.    CONCLUSION

For all of the reasons stated above, Defendants' Motion for Summary Judgment should

be denied.

Respectfully submitted,

s/Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre &
Sons
P.O. Box 479
Pawtucket, RI  02862
401-728-6060
401-728-6534 (Facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

       I, Jeremy P. Monteiro, hereby certify that on January 4, 2006, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed electronically.  Parties were served a copy of the filed document via the below listed methods.

Notified via the Court's electronic filing system:

Steven S. Broadley
sbroadley@pbl.com

Jennifer L. Finger
jfinger@pbl.com

Served via US Mail and Facsimile:

Michael S. Poncin
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

                                s/Jeremy P. Monteiro
                                Jeremy P. Monteiro (pro hac vice)

                                Daniel A. Edelman (pro hac vice)
                                Cathleen M. Combs (pro hac vice)
                                Jeremy P. Monteiro (pro hac vice)
                                EDELMAN, COMBS, LATTURNER
                                    & GOODWIN LLC
                                120 S. LaSalle Street, 18th Floor
                                Chicago, Illinois  60603
                                (312) 739-4200
                                (312) 419-0379 (FAX)

                                Christopher M. Lefebvre
                                Law Offices of Claude Lefebvre & Sons
                                P.O. Box 479
                                Pawtucket, RI  02862
                                401-728-6060
                                401-728-6534 (Facsimile)
                                R.I. Bar No. 4019

21

# Exhibit A

1 of 1 DOCUMENT

**BLAIR, et al., PLAINTIFFS, v. SHERMAN ACQUISITION, et al., DEFENDANTS.**

**NO.04 C 4718**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 25106*

**December 9, 2004, Decided
December 13, 2004, Docketed**

**DISPOSITION:** Defendants' Motion to dismiss granted in part and denied in part.

**COUNSEL:** [*1] For PAUL E BLAIR, ERIKA WEPNER FKA ERIKA T KUNIK, Plaintiffs: Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, John D Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For SHERMAN ACQUISITION L.P., SHERMAN FINANCIAL GROUP LLC, SHERMAN ACQUISITION II, LP, SHERMAN ACQUISITION II GENERAL PARTNER LLC, ALEGIS GROUP LP, ALEGIS GROUP, LLC, Defendants: Claudia Ann Halloran, Richard M. Jacobson, James Leo McKnight, Scott Gordon Thomas, Law Offices of Scott G. Thomas, Chicago, IL; Steven Huntley Mora, Lynn Urkov Thorpe, Mora Baugh Waitzman & Unger LLC, Chicago, IL.

For ACCOUNT SOLUTIONS GROUP, L.L.C., CAPITAL MANAGEMENT SERVICES, INC., Defendants: David Matthew Schultz, Todd Philip Stelter, Hinshaw & Culbertson, Chicago, IL.

For VITAL RECOVERY SVC, Defendant: Michael P. Tone, Peter D. Lindau, Kimberly Elizabeth Blair, Ross, Dixon & Bell, L.L.P., Chicago, IL.

**JUDGES:** Paul E. Plunkett, Senior Judge.

**OPINIONBY:** Paul E. Plunkett

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Paul E. Blair and Erika T. Wepner ("Plaintiffs") have filed a Complaint against Sherman Acquisition LP ("SA"), Sherman Acquisition II LP ("SA2"), Sherman Financial Group ("SFG"), Sherman General Partners [*2] SPE, LLC ("SGP"), Sherman Acquisition II General Partner ("SA2GP"), Alegis Group LP ("AGLP"), Alegis Group LLC ("AGLLC") ("Sherman Defendants"), Account Solutions Group LLC ("ASG"), Vital Recovery Services, Inc. ("VRS"), Capital Management Services, Inc ("CMS"), or (all defendants as ("Defendants") seeking to recover statutory damages and attorneys' fees and costs that Plaintiffs incurred in connection with this suit. Defendants have filed a Federal Rule of Civil Procedure (Rule)12(b)(6) Motion to Dismiss all of the claims asserted against them. Defendants assert that Plaintiffs have not presented a claim under which relief can be granted. In addition to adopting the arguments of Sherman Defendants, VRS, ASG, and CMS have added that the claim against them should also be dismissed because they are not the members of the group against which the Complaint is directed. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

#### Facts

Plaintiffs are two consumers who had outstanding debts. Plaintiffs allege that between July 19, 2003 and August 8, 2004, they received standard collection form letters from [*3] Defendants. Plaintiffs claim that Defendants are debt collectors. Defendants agree to that label only for purposes of this Motion. According to Plaintiffs, SA, SA2, and SFG are in the business of buying bad debts. (Complaint P 6, 10, 16.) SGP and SA2GP are alleged general partners of SA and SA2, respectively. (Complaint P 8, 18.) AGLP allegedly operates a collection agency and its general partner is AGLLC. (Complaint P 27,29.) In August, AGLP sent a collection letter to Blair, which contained a Sherman Companies Privacy Notice on the reverse side ("Privacy Notice") (Complaint P 48-51.) In October 2003, ASG sent a collection letter to Blair, allegedly on behalf of SA and SFG, which also had a Privacy Notice on the reverse side. (Complaint

P39-44.) In September 2003, CMS sent a letter to Blair, allegedly on behalf of SA and SFG which also included a Privacy Notice. (Complaint P53-58.) In June 2004 VRS sent a collection letter to Wepner that was allegedly on behalf of SA, SA2, and SFG that included a Privacy Notice. (Complaint P60-64.)

These Privacy Notices apprise consumers of the specific information that the Sherman Companies may collect about the consumer. (Complaint Ex. A.) The [*4] Sherman Companies are defined as Sherman Financial Group, Sherman Capital Markets, Sherman General Partner, Resurgent Capital Services, Sherman Investments, Sherman Originator, Sherman Holdings, Bailey Holdings, Sherman Acquisition, Alegis Group LLC, Alegis Group LP, Nassau Mortgage, and Ascent Card Services. *Id* The Privacy Notices specifically articulate that the Sherman Defendant may use "collected information," defined as information they receive from the account file at the time of purchase; information on applications, questionnaires, or through discussions; information about transactions with the Sherman Companies; information they receive from their consumer reporting agencies and other third party providers; and other public information. *Id* The Privacy Notice also informs the consumer that the Sherman Companies "may enter into agreements with other providers of financial products and services, where those providers may perform services for Sherman Companies, or may join with Sherman Companies to provide products and services to current and former customers." *Id*

This Complaint is premised on the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692*. [*5] Specifically, Plaintiff alleges that through the Privacy Notice, Defendants violated the *FDCPA § 1692c(b)* for communicating with unauthorized third parties concerning Plaintiffs' debt without the consumers' consent; *§ 1692d(3)* for harassing the consumers; *§ 1692d(4)* for acting in an abusive manner during the collection process; and *§ 1692e* for making misleading representations. Defendants contend that they are not in violation of FDCPA; rather, they are in full compliance of the FDCPA, and affirmatively defend that the Gramm-Leach-Bliley Act ("GLB"), which also regulates sharing personal debt information with third parties, expressly permits their conduct.

### Legal Standard

On a *Rule 12(b)(6)* motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000)*. The plaintiff need not include a detailed outline of a claim's basis. He must, however, include "either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." *Carr Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101,1106 (7th Cir. 1984),* [*6] *cert. denied, 470 U.S. 1054, 84 L. Ed. 2d 821, 105 S. Ct. 1758 (1985)*. No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*. Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. *Id*

### Discussion

Defendants have moved to dismiss Plaintiffs' Complaint stating that they were in full compliance of the FDCPA, while Plaintiffs allege that Defendants are in violation of *15 U.S.C. § 1692*. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors. *15 U.S.C. § 1692(e)*. Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose. *Ross v. Commercial Fin. Servs., Inc., 31 F. Supp. 2d 1077, 1079 (N.D. Ill. Jan. 7, 1999)* (citing *Cirkot v. Diversified Fin. Servs., Inc., 839 F. Supp. 941 (D. Conn. 1993))*. Whether a communication or other conduct violates the FDCPA is determined by [*7] analyzing it from the prospective of an "unsophisticated consumer." *Id* (citing *Gammon v. GC Servs. Ltd P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)*. This standard protects the consumer who is "uninformed, naive, or trusting," while at the same time requiring that the unsophisticated consumer possess objective element of reasonableness. *Id* Including the objective element in the standard insulates debt collectors from liability for "unrealistic or peculiar interpretations of collection letters." *Id*

### Communication with Third Party

*Section 1692c(b) of 15 U.S.C.* generally prohibits debt collectors from communicating with third parties:

> Communication with third parties. Except as provided in section 804 without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney [*8] of the creditor, or the attorney of the debt collector.

Under Section § 1692c(b), without prior consent, a debt collector may not communicate with a third party regarding the collection of a debt, except to secure "location information" permitted under strict limitations of § 1692b. 15 U.S.C. § 1692c(b). Under the Act, a "communication" is defined as "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2)

Like all cases involving statutory interpretation, it must first be determined if the language of the statute resolves the issue. Bailey v. Sec. Nat'l Serv. Corp., 154 F.3d 384, 387 (7th Cir. 1998). The Supreme Court has stated that "[a] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." U.S. v. Campos-Serrano, 404 U.S. 293, 30 L. Ed. 2d 457, 92 S. Ct. 471 (1971) (quoting Washington Mkt. Co. v. Hoffman, 101 U.S. 112, 115-16, 25 L. Ed. 782 (1879)). All provisions of the statute must be considered and each term must be interpreted equally, so as not to deflect [*9] from the meaning of the statute. West v. Nationwide Credit, 998 F. Supp. 642, 644 (W.D.N.C. 1998). Specifically, as to 15 U.S.C. § 1692, every clause and word must be given force and § 1692c(b) should be broadly interpreted to prohibit a debt collector from conveying any information to a third party that concerns a debt (except for the purpose of obtaining location information as permitted under § 1692b). Id. at 645.

How consumers or audiences are affected by a Privacy Notice is a question of fact, which may be explored by testimony and devices such as consumer surveys. Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 501 (7th Cir. 1999). A complaint alleging that a particular notice is not clear may not be dismissed under Federal Rule of Civil Procedure 12(b)(6) because district judges are not the proper models for the "unsophisticated consumers" that were contemplated under the statute. Id (noting "unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose [*10] formal education ended after sixth grade") Further, to learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence. Id. at 501. (citing Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999)).

Plaintiffs claim that Defendants' communication with third parties is a direct violation of § 1692c(b) Defendants move to dismiss this claim, arguing that the letters in question were not a "communication" within the meaning of the Act because they did not indicate that the purpose of the letters was debt collection. Rather, they contend the purpose was for offering services and products to Plaintiffs. Here, the statute clearly reads that in connection with the collection of a debt there may not

be communication with unauthorized third parties. Plaintiffs assert that Defendants' job inherently is in connection with debt collection and that Defendants should be considered as communicating in connection of the collection of a debt. This point is apparently unclear to the consumer as evidenced by Plaintiffs' and Defendants' varied perceptions of Defendants' conduct.

Additionally, peering through the eyes of the [*11] unsophisticated consumer and leaving our judicial and educational expertise aside, it is reasonable to conclude that an average person could construe the Privacy Notice language to mean that a third party, other than those permitted under § 1692c(b), is going to receive information about our debts. Furthermore, Plaintiffs proclaim that they will proffer evidence that may lead us to reach a conclusive determination. Applying the relevant standard in a Rule 12(b)(6) motion, we must construe all facts in favor of Plaintiffs. Plaintiffs allege that, in violation of 15 U.S.C. 1692c(d), Defendants shared their information in connection with the collection of a debt without the third party's consent. Plaintiffs have inferred that they will be able to show through the evidence that Defendants were acting in connection with a debt collection. Accepting as true all well-pleaded factual allegations of the complaint and drawing all reasonable inferences in Plaintiffs' favor, if it is determined that the communication was in fact in connection of a debt, then Plaintiff's claim is viable. Construing this statute so as to not preclude any clause, sentence or word meaning and [*12] broadly interpreting the FDCPA through the eyes of the unsophisticated consumer, we are required to consider Plaintiffs' claim.

### Gramm-Leach-Bliley Act

Alternatively, Defendants affirmatively defend that aside from being in full compliance with the FDCPA, Defendants are in compliance with the Gramm-Leach-Bliley Act ("GLB"), 15 U.S.C. § 6801, as well GLB provides that sharing non-public personal information with third parties is permitted if the required notice is given. However, as the recent ruling in Stewart v. Asset Acceptance, the GLB is irrelevant to this Motion to Dismiss because the Complaint asserts a violation of the FDCPA, not the GLB. An affirmative defense is properly asserted "only when the plaintiff pleads itself out of court -- that is, admits all of the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." Stewart v. Asset Acceptance LLC, No. 04-cv-1213-LJM-VSS (S.D. Ind. Nov. 19, 2004) (quoting Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004)). The affirmative defense available under the FDCPA is that the [*13] debt collector must show "by a preponderance of the evidence" that the alleged violation was not purpose-

ful, and there was a genuine error despite the fact that Defendants employed reasonable means to avoid violations. *15 U.S.C. 1692k(c).* Defendants have not made the requisite showing of this affirmative defense that would dispose of this claim.

## Harassment or Abuse and False Leading or Misleading Representations

Plaintiffs allege that the below-quoted language violates *§ 1692d(3)* and *1692d(4)* because it is abusive and harassing. Additionally, Plaintiffs allege that the language below violates *§ 1692e(5)* and *(10)* of the FDCPA because it falsely or misleadingly represents to an unsophisticated consumer that their personal information can and will be shared regardless of their rights and wishes.

Defendants' Privacy Notice reads:

> JOINT AGREEMENTS. The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us or they may join with us to offer customers and former customer new or different products and services. We may share collected [*14] information with these institutions, subject to the confidentiality and security requirements imposed by law.

> BETWEEN SHERMAN COMPANIES. From time to time the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

(Compl. Exs. A-D.)

FDCPA attempts to eliminate abusive debt collection practices by debt collectors by enacting certain provisions, such as "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *15 U.S.C. § 1692d.* Violations of this statute include publishing a "list of consumers who al-

legedly refuse to pay debts and the "advertisement for sale of any debt to coerce payment of the debt. *Id* at *1692d(3)§* and *1692d(4).* [*15] Furthermore, *15 U.S.C. § 1692* also requires that debt collectors refrain from making "false or misleading representations," including threatening "to take any action that cannot legally be taken or that is not intended to be taken," and using "any false representation or deceptive means to collect or attempt to collect any debt"; *id.* at *§ 1692e(5)* and *(10).*

We first address the *§ 1692 d(3)* and *§ 1692d(4)*claims, which state:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (3) The publication of a list of consumers who allegedly refuse to pay debts.
> (4) The advertisement for sale of any debt to coerce payment of the debt.

Statements that clearly indicate that the debt collector will be contacting an employer or third parties who are prohibited from being contacted under the FDCPA is a threat to a consumer. *Rutyna v. Collection Accounts Terminal, Inc., 478 F. Supp. 980, 982 (N.D. Ill. 1979).* Also, threatening [*16] statements are seen where a debt collector indicates that the consumer may expect horrible life changes as a result of an unpaid debt. *Herbert v. Wexler, 1995 U.S. Dist. LEXIS 12888, *7 (N.D. Ill. Aug. 31, 1995)* (noting that "You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation" is a violation of FDCPA). Further, a creditor's persistence in continuing to demand payment with increasingly harsh threats of loss of credit and business reputation is harassment and an example of a FDCPA violation. *Florence v. Natl Sys., 1983 U.S. Dist LEXIS 20344, *8 (D. Ga., 1983).*

The standard here for evaluating a violation is also that of the "unsophisticated consumer." Plaintiffs assert that informing the consumer that his information might be shared with unauthorized third parties is an implicit threat of invasion of privacy. The inclusion of such a statement is not a threat. In fact, Defendants state that all disclosures and sharing will be in a manner "otherwise permitted by law." Here, Defendants have not harassed or clearly threatened [*17] Plaintiffs that they would publish a list of consumers, nor have Defendants threatened any horrible life change or indicated that they will resort to clear illegal actions. Also, Defendants did not

repeatedly call Plaintiffs with increased intimidation to pay a debt or threaten to advertise the sale of Plaintiffs' debt. Rather, Defendants have informed Plaintiffs of their rights and have indicated that they will only make disclosures that they believe are permitted by law. Therefore, through the eyes of an unsophisticated consumer, Defendants have not harassed or threatened Plaintiffs as contemplated under *15 U.S.C. § 1692e(3)* and *d(4)*.

Next, we address *§ 1692e(5)*, which is violated when a debt collector threatens to take action that cannot legally be taken, and *§ 1692e(10)*, which prohibits debt collectors to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has [*18] already been made." *Jenkins v. Union Corp., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998)*. However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted. *Gammon, 27 F.3d at 1257-58*.

Plaintiffs say that *§ 1692e(5)* was violated because stating that they would disclose to unauthorized third parties, whether they actually did, is a violation of its own. Even though this does not infer that legal action is imminent, an unsophisticated consumer could reasonably interpret the statement to imply that Defendants could execute the actions noted in the Privacy Notice. Therefore, because it is undetermined whether the actions the Defendants' claim to make are actually authorized or unauthorized, the *§ 1692e(5)* claim must remain.

Similarly, *§ 1692e(10)* prohibits the use of any false representation or deceptive means to collect any debt. As to *§ 1692e(10)*, courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. *U.S. v. Nat'l Fin. Servs., 98 F.3d 131, 136, 138 (4th Cir. 1996)* [*19] (stating that phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate *§ 1692e(10)* because it gives the consumer the impression that he would undoubtedly require a lawyer). We interpret the alleged misleading content again through the eyes of the unsophisticated consumer. *Gammon, 27 F.3d at 1257*.

In this case, Plaintiffs indicate that Defendants have violated *§ 1692e(10)* because they misstated the consumer's rights with regard to having to affirmatively notify Sherman Defendants not to share their information. Requiring the consumer to affirmatively state that they do not want their information shared is not accurate, if the communication were in connection with the collection of the debt. Defendants do imply that they will share this information with potentially unauthorized third parties without the consumer's consent. Because whether the communication was made in connection with the collection of a debt has yet to be determined and an actual disclosure *would* be a violation of the consumer's rights, this statement would violate *15 U.S.C. § 1692e(10)* [*20] Therefore, as to *§ 1692e(5)* and *§ 1692e(10)*, Plaintiffs present tenable claims and they may not yet be disposed.

VRS, ASG, and CMS, have offered added support for their Motion to Dismiss under *Rule 12(b)(6)*. VRS, ASG, and CMS assert that the crux of the Complaint is based on the communication that is offered in the Privacy Notice which is given on behalf of the Sherman Financial Group LLC and its family of companies (Compl. Exs. A-D). In the Privacy Notice, the companies that are part of the Sherman Companies are individually listed, and VRS, ASG, and CMS state that because their companies are excluded from this list, they are not proper Defendants. Plaintiffs argue that even though VRS, ASG, and CMS may not have authored the notices, they are "using" the notices, and according to the *15 U.S.C. § 1692e*, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with collection of a debt." *15 U.S.C. § 1692e*. Plaintiffs allege that by simply allowing the Privacy Notice to be included with their correspondence, ASG, VRS, and CMS have used the Privacy Notice. Further, because the Privacy [*21] Notice has alleged violations of the FDCPA, VRS, ASG, and CMS should be liable for the information contained in the notices. ASG and CMS further contend that they did not communicate to any third parties in connection with the collection of a debt, so according to them, if there were any violations, they could only be sustained as to *§ 1692e*.

The Seventh Circuit has found that minimal participation by a debt collector in the collection process may impute liability under the FDCPA upon that debt collector. *Peters v. AT&T, 43 F. Supp. 2d 926 (N.D. Ill. March 30, 1999)* (quoting "the preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation") *White v. Goodman, 41 F. Supp. 2d 794 (N.D. Ill. 1998)*. Furthermore, to assess liability, courts have examined whether the collection agency's function was more of a mailing service or if its duties were more typical to a collection services company. *Id.* Even in the legislative commentary describing the intent of the FDCPA, it is clear that a debt collector may not imply that a third party may take action unless such action is legal. *53 Fed. Reg. 50097, 20106 (Dec. 13, 1988)*. [*22]

2004 U.S. Dist. LEXIS 25106, *

Here, VRS, ASG, and CMS did have at least minimal participation in Plaintiffs' debt collection process. VRS, ASG, and CMS included the Privacy Notices in their correspondence and they, therefore, should be responsible for the violation that may be contained therein. Sherman Defendants imply that they may share information and because Sherman Defendants' liability has not yet been determined, we cannot conclusively state at this time whether VRS, ASG and CMS have adopted such illegal implications. Once this step is completed, then the liability surrounding VRS, ASG, anc CMS can be properly assessed and determined whether these companies are jointly responsible for the Privacy Notice's effect. Therefore, the above discussion regarding all claims will apply also to VRS, ASG, and CMS.

**Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. As to *15 U.S.C. § 1692d(3)* and *d(4)* Defendants' *12(b)(6)* Motion to Dismiss is granted. As to *15 U.S.C. § 1692c(b), § 1692e(5)* and *§ 1692e(10)* Sherman Defendants *12(b)(6)* Motion to Dismiss is denied.

**ENTER:**

**SENIOR** [*23]    **UNITED STATES DISTRICT JUDGE**

Paul Plunkett

**DATED: DEC 9 2004**

Exhibit B

1 of 2 DOCUMENTS

**IRENE CHAPMAN, Plaintiff, v. WORLDWIDE ASSET MANAGEMENT, L.L.C. and WORLDWIDE ASSET PURCHASING, L.L.C., Defendants.**

No. 04 C 7625

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 18881*

**August 30, 2005, Decided**
**August 30, 2005, Filed**

**COUNSEL:** [*1] For Irene Chapman, Plaintiff: Daniel A. Edelman, Cathleen M. Combs, Derek B Rieman, James O. Latturner, John D Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Worldwide Asset Management, LLC and, Worldwide Asset Purchasing, LLC, Defendant: David Luther Hartsell, Brian Patrick O'Meara, McGuireWoods LLP, Chicago, IL.

**OPINION:**

### MEMORANDUM OPINION AND ORDER

In this putative class action, named plaintiff Irene Chapman alleges that a notice she received regarding defendants' privacy policy--that is defendants' policy about sharing information about plaintiff--was part of an attempt to collect a debt. Named as defendants are Worldwide Asset Management, L.L.C. and Worldwide Asset Purchasing, L.L.C. Plaintiff contends that statements in the privacy policy violate provisions of the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692 et seq.* Defendants' motion to dismiss the complaint was previously denied. See *Chapman v Worldwide Asset Management, L.L.C., 2005 WL 818880* (N.D. Ill. April 6, 2005) ("Chapman I"). Presently pending is plaintiff's motion for class certification which is opposed by defendants. [*2]

The burden is on plaintiff to demonstrate that all the requirements for class certification are satisfied. *Retired Chicago Police Association v. City of Chicago, 7 F 3d 584, 596 (7th Cir 1993)*, cert. denied, *519 U S 932, 136 L Ed 2d 222, 117 S Ct 305(1996)*; *Dawson v Allied Interstate, Inc., 2005 U S Dist LEXIS 14595, 2005 WL 1692606 *1 (N D Ill July 13, 2005)*; *Oshana v Coca-Cola Bottling Co., 225 F R D 575, 579-80 (N D Ill*

*2005). Federal Rule of Civil Procedure 23(a)* requires that the following four prerequisites be satisfied: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Failure to meet any one of these requirements precludes certification of a class. *Retired Chicago Police, 7 F 3d at 596*; *Dawson, 2005 U.S. Dist LEXIS 14595, 2005 WL 1692606 at *1*; *Jackson v Nat'l Action Fin Servs, 227 F R D 284, 286 (N D Ill 2005)* [*3] If the *Rule 23(a)* elements are satisfied, plaintiffs must also satisfy one of the subsections of *Rule 23(b)*.

In ruling on class certification, the court has an independent duty to scrutinize the appropriateness of class certification; the court is not limited to arguments made by a party opposing certification. *Davis v Hutchins, 321 F 3d 641, 649 (7th Cir. 2003)*; *In re General Motors Corp Engine Interchange Litigation, 594 F 2d 1106, 1134 (7th Cir)*, cert. denied, *444 U.S 870, 62 L Ed 2d 95, 100 S Ct 146 (1979)*. See also *Szabo v Bridgeport Machines, Inc., 249 F 3d 672, 677 (7th Cir)*, cert. denied, *534 U S 951, 151 L Ed 2d 263, 122 S Ct 348 (2001)*. Additionally, in determining whether to grant certification, whether a claim will ultimately be successful is not a consideration. *Payton v County of Kane, 308 F 3d 673, 677 (7th Cir. 2002)*, cert. denied, *540 U S 812, 157 L Ed 2d 26, 124 S Ct 61 (2003)*; *Rahim v Sheahan, 2001 U S Dist LEXIS 17214, 2001 WL 1263493 *9-10 (N D Ill Oct 19, 2001)*. However, that does not mean that the merits of claims can be completely ignored. The "boundary between a class determination and the merits may not always be easily discernible. [*4] " *Retired Chicago Police, 7 F 3d at 598-99* (quoting *Eggleston v Chicago Journeymen Plumbers' Local Un-*

*ion No. 130,657 F 2d 890, 895 (7th Cir. 1981)*, cert. denied, *455 U.S. 1017, 72 L. Ed. 2d 134, 102 S. Ct. 1710 (1982))*. In order to resolve questions of typicality or whether common questions predominate, it is sometimes necessary to determine the contours of the applicable law. See *Szabo, 249 F 3d at 676-77*; *Retired Chicago Police, 7 F 3d at 598-99* (quoting *General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982))*; *Jones v. Risk Management Alternatives, Inc., 2003 U.S. Dist. LEXIS 12017, 2003 WL 21654365 *2 n.2 (N.D. Ill. July 11, 2003)*; *Peoples v. Sebring Capital Corp., 2002 U.S. Dist. LEXIS 4104, 2002 WL 406979 *2 (N.D. Ill. March 15, 2002)*.

In this case, named plaintiff seeks to certify a *Rule 23(b)(3)* class. Plaintiff's proposed class definition: is "(a) all natural persons with Illinois, Indiana, or Wisconsin addresses, (b) to whom WAM and/or WAP sent a notice in the form represented by Exhibit A of the Complaint, (c) on or after November 23, 2003, and (d) on or before December 13, 2004." The first date is one year prior [*5] to the filing of the Complaint and the second date is 20 days after the filing of the Complaint.

*Rule 23(a)(1)* requires that the class be so numerous that joinder of all the members is impracticable. Plaintiff need not demonstrate the exact number of class members as long as that conclusion is apparent from good-faith estimates. *Bowe Bell + Howell Co. v. IMMCO Emples. Ass'n, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 *3 (N.D. Ill. May 11, 2005)*; *Lucas v. GC Servs. L.P., 226 F R.D. 337, 340 (N.D. Ind. 2005)*. The estimates may be supported by "common sense assumptions." *Bell + Howell, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 at *3*; *Lucas, 226 F R.D. at 340*; *Maxwell v. Arrow Financial Services, LLC, 2004 U.S. Dist. LEXIS 5462, 2004 WL 719278 *2 (N.D. Ill. March 31, 2004)*. "Courts have found that it is reasonable to assume the number of potential class members satisfies the numerosity requirement when the defendant allegedly used 'preprinted, standardized debt collection letters in attempting to collect on the [allegedly delinquent] debt.'" *Lucas, 226 F R.D. at 340* (quoting *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pelletieri, 2001 U.S. Dist. LEXIS 20012, 2001 WL 1543516 [*6] *3 (N.D. Ill. Nov. 30, 2001)* (citing *Peters v. AT & T Corp., 179 F R.D. 564, 567-68 (N.D. Ill. 1998)))*; *Maxwell, 2004 U.S. Dist. LEXIS 5462, 2004 WL 719278 at *3* (same). Inferences may also be drawn based on the size of the pertinent entity. *Lucas, 226 F R.D. at 340*; *Ingram v. Corporate Receivables, Inc., 2003 U.S. Dist. LEXIS 14389, 2003 WL 21982152 *2 (N.D. Ill. Aug. 19, 2003)*. Still, a finding of numerosity cannot be based on conclusory allegations that joinder is impracticable or speculation about the size of the class. *Muro v. Target Corp., 2005 U.S. Dist. LEXIS 14409, 2005 WL 1705828 *13 (N.D. Ill. July 15, 2005)* (quoting *Marcial v. Coronet Insurance Co., 880 F 2d 954, 957 (7th Cir. 1989))*; *Bell + Howell, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 at *3*.

Here, plaintiff has not provided a general estimate as to the size of the class. n1 However, named plaintiff received a form collection letter. Plaintiff also provides securities filings supporting that WAM is one of the nation's largest debt buyers and that, along with its affiliates, it generates over $ 100,000,000 in annual revenues. Additionally, plaintiff notes that the mailing to her had indicia that it was part [*7] of a discounted mass mailing that would require at least 200 pieces of mail. The class, though, is limited to three states, so that does not necessarily mean a minimum of 200 class members. In any event, the form letter and the size of defendants' business support that the number of mailings would be more than large enough to satisfy numerosity. Moreover, defendants do not contend that the facts are otherwise or present any contrary evidence. The only reasonable inference is that the number of potential class members is well more than 200 persons. Numerosity is satisfied.

> n1 As of the filing of its motion, plaintiff still had not received discovery relevant to this issue. In her reply, plaintiff does not state whether the discovery had yet been received, limiting its reply to issues raised by defendant in opposition to class certification.

Here, there are questions common to the class. Common questions will include whether the form letter violates the FDCPA and possibly which defendant was responsible for the [*8] letter and whether each defendant is a debt collector as that term is used in the FDCPA. See *Chapman I, 2005 WL 818880 at *3-4*. Such common questions are likely to predominate. Whether a particular plaintiff received the form letter should be readily ascertainable from defendants' records. Issues as to individual plaintiffs' states of mind should not arise because defendants' conduct is to be judged from an objective unsophisticated consumer viewpoint. See *Durkin v. Equifax Check Services, Inc., 406 F 3d 410, 414 (7th Cir. 2005)*; *Smith v. American Revenue Corp., 2005 WL 1162906 *4 (N.D. Ind. May 16, 2005)*. Also, individual damages issues should not arise because the class would be entitled to statutory damages even absent actual damages. See *Keele v. Wexler, 149 F 3d 589, 593-94 (7th Cir. 1998)*; *Smith, 2005 WL 1162906 at *4*. Here, common issues are likely to predominate and a class action would be the superior means of adjudication in that the common questions will so predominate and the potential individual recoveries are limited compared to the potential litigation costs. Cf. *Lucas, 226 F R.D. at 342*; [*9]

*Maxwell, 2004 US Dist LEXIS 5462, 2004 WL 719278 at \*6.* Rule 23 (a)(2)'s requirement of common questions is satisfied and *Rule 23(b)(3)*'s requirements are satisfied.

*Rule 23(a)(3)* requires that the claims of the class representatives be typical of the claims of the class. The typicality requirement primarily focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De La Fuente v Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)* (quoting Herbert Newberg, Class Actions P 1115(b) at 185 (1977)). Accord *Retired Chicago Police, 7 F.3d at 596-97; Rahim, 2001 US Dist LEXIS 17214, 2001 WL 1263493 at \*14.* It is only necessary for the claim of the class representative and the claims of the class at large to have the "same essential characteristics;" there may still be differences. *Retired Chicago Police, 7 F.3d at 597* (quoting *De La Fuente, 713 F.2d at 232*); [\*10] *Hardesty v International Steel Group Inc., 2005 WL 1712257 \*2* (N.D. Ind July 21, 2005); *Rahim, 2001 US Dist LEXIS 17214, 2001 WL 1263493 at \*14.* Similar legal theories may control despite factual distinctions. See *Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)*, cert. denied, *506 US 1051, 122 L.Ed. 2d 127, 113 S.Ct. 972 (1993); Hardesty, 2005 WL 1712257 at \*2; Clay v American Tobacco Co., 188 F.R.D. 483, 491-92 (S.D. Ill. 1999)*. "The key to typicality is based on the relationship between the class representative and the class members: are the named plaintiff's interests aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class?" *Rahim, 2001 US Dist LEXIS 17214, 2001 WL 1263493 at \*14; Murry v. America's Mortgage Banc, Inc., 2005 US Dist LEXIS 11751, 2005 WL 1323364 \*8 (N.D. Ill. May 5, 2005)*. See also *All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants, 203 F.R.D. 403, 409 (S.D. Ind. 2001)*.

By definition, all members of the class will be persons who received the form notice. There is no indication that named plaintiff is situated differently than other [\*11] members of the class. The typicality requirement is satisfied.

Last, *Rule 23(a)(4)* requires that the named representative adequately represent the interests of the class. Three elements must be satisfied: "(1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a 'sufficient interest in the outcome to ensure vigorous advocacy;' (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigor-

ously." *Lifanda v. Elmhurst Dodge, Inc., 2001 US Dist LEXIS 9210, 2001 WL 755189 at \*3 (N.D. Ill. July 2, 2001)* (quoting *Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 308 (N.D. Ill. 1995))*. Accord *Dawson, 2005 US Dist LEXIS 14595, 2005 WL 1692606 at \*2; Robles v. Corporate Receivables, Inc., 220 F.R.D. 306, 314 (N.D. Ill. 2004)*. Defendants contend *Rule 23(a)(4)* is not satisfied because named plaintiff herself is not adequately aware of the proceeding and class counsel is not competent.

"As long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal [\*12] familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v. GC Servs., L.P., 181 F.R.D. 602, 604 (N.D. Ill. 1998)*. Accord *Carbajal v. Capital One, 219 F.R.D. 437, 442 (N.D. Ill. 2004); Lifanda, 2001 US Dist LEXIS 9210, 2001 WL 755189 at \*3.* The class representative should be conscientious and have a basic understanding of the litigation. *Carbajal, 219 F.R.D. at 442.*

There is no contention that named plaintiff has a conflict of interest and nothing before the court indicates that any conflict exists. Defendants selectively point to named plaintiff's deposition testimony. At her deposition, however, plaintiff showed an understanding that the lawsuit involved the issue of defendants sharing her and other class members' information with third parties. That is sufficient knowledge of the case. Cf. *Jandek v. Hearst Corp., 1999 WL 966966 \*2 (N.D. Ill. Oct. 1, 1999); McFarland v. Bass & Associates, P.C., 1998 US Dist LEXIS 1002, 1998 WL 42286 \*5 (N.D. Ill. Jan. 30, 1998)*. Plaintiff clearly expressed her understanding that she had a responsibility to act for the class [\*13] and not just her own self-interest. Defendants point to her testimony regarding an unrelated case in which she was also the named plaintiff. She testified that she was settling that case for the benefit of a class. Defendants contend that is inconsistent with the fact that the case was not certified as a class action and instead settled on an individual basis. As plaintiff points out, however, the settlement was in negotiations at the time of her deposition and it subsequently turned out that there was not a basis for certifying the case as a class action. It is found that plaintiff herself is an adequate representative.

Defendants also contend that the attorneys selected by plaintiff are not adequate representatives. Under a recent amendment to *Rule 23*, this court must appoint class counsel.

In appointing class counsel, the court

(i) must consider:

2005 U.S. Dist. LEXIS 18881, *

the work counsel has done in identifying or investigating potential claims in the action,

counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

counsel's knowledge of the applicable law, and

the resources counsel will commit to representing the class;

(ii) [*14] may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv) may make further orders in connection with the appointment

*Fed. R. Civ. P. 23(g)(l)(C).*

Plaintiff is represented by Daniel Edelman and other attorneys at Edelman, Combs, Latturner & Goodwin, L.L.C. Edelman and his law firm have substantial experience with FDCPA and other consumer litigation, including class actions. They have the resources to handle the present case. This court has previously found Edelman and his firm to be capable counsel for representing consumers in class actions, including FDCPA cases. See, e.g., *Krause v. GE Capital Mortgage Services, Inc., 1998 U.S. Dist. LEXIS 18863, 1998 WL 831896 *7 (N.D. Ill. Nov. 20, 1998)* (RICO and state consumer fraud claims related to credit fees); *McFarland, 1998 U.S. Dist. LEXIS 1002, 1998 WL 42286 at *5 (Hart, J.)* (FDCPA); *Brown v. LaSalle Northwest Nat'l Bank, 1993 U.S. Dist. LEXIS 11419, 1993 WL 313563 [*15] *5 (N.D. Ill. Aug. 17, 1993)* (Hart, J.) (RICO and state consumer fraud claims related to financing of automobile sales); *Pleasant v. Risk Management Alternatives, Inc., 2003 U.S. Dist. LEXIS 16569, 2003 WL 22175390 *5 (N.D. Ill. Sept. 19, 2003)* (Coar, J.) (FDCPA); *Bigalke v. Creditrust Corp., 2001 U.S. Dist. LEXIS 14591, 2001 WL 1098047 *11-12 (N.D. Ill. Sept. 14, 2001)* (Brown, J.) (FDCPA); *Jandek, 1999 WL 966966 at *2-3 (Gottschall, J.)* (FDCPA). That counsel has been found adequate in other cases is persuasive evidence that they will be found adequate again. *Morris v. Risk Management Alternatives, Inc., 203 F.R.D. 336, 344 (N.D. Ill. 2001)* (quoting *Gomez v. Illinois State Board of Education, 117 F.R.D. 394, 401 (N.D. Ill. 1987)*) There

have already been three contested motions in this case, a motion to dismiss, see *Chapman I, 2005 WL 818880*, a motion to quash, see Memorandum Opinion & Order dated June 15, 2005 (Docket Entry 35), and the present motion for class certification. The pleadings filed on behalf of plaintiff support that Edelman and his firm continue to be capable and well-qualified counsel in FDCPA class actions.

Defendants [*16] point to three cases in which Edelman or his firm has been sanctioned by the court, contending that this shows he is not qualified to represent the class. In *Riddle & Associates, P.C. v. Kelly, 414 F.3d 832 (7th Cir. 2005)*, the Seventh Circuit upheld the imposition of *28 U.S.C. § 1927* sanctions on Edelman's firm after a letter was sent to the law firm Riddle & Associates, P.C., accusing it of violating the FDCPA and Riddle successfully brought a declaratory judgment action for a declaration that there had been no violation. The Seventh Circuit also held that the law firm representing Riddle was entitled to *§ 1927* sanctions based on a counterclaim filed against that firm. In both instances, Edelman was personally involved and it was held that frivolous FDCPA contentions were asserted or defended. In D'Agostino v. Lawrence, No. 04 C 3660 (March 9, 2005) (Docket Entries 20-21), the court imposed *§ 1927* sanctions against Edelman's law firm for bringing a purported class action that contained no potential members because another pending putative class action (Iosello v. Lexington Law Firm) already included all potential members. That ruling [*17] is presently on appeal. In *Iosello v. Lexington Law Firm, 2004 U.S. Dist. LEXIS 24742, No. 03 C 987 (N.D. Ill. Dec. 1, 2004) (Docket Entry 195)*, the magistrate judge has recommended that *§ 1927* sanctions be imposed on Edelman and/or other members of his law firm n2 for continuing to pursue a motion to take the D'Agostino case as related after the D'Agostino case had been dismissed. Objections to the report and recommendation of the magistrate judge are pending before the district judge.

n2 The magistrate judge's report and recommendation does not specify who is to be sanctioned. The sanction motion apparently requests sanctions be imposed on the law firm.

Plaintiff contends the sanctions should not be viewed negatively as regards counsel's qualifications. She contends the sanctions were incurred while providing vigorous representation. Sanctionable conduct should not be equated with vigorous or zealous representation. An attorney's duty to zealously represent a client does not permit sanctionable conduct such as making frivolous [*18] arguments on behalf of the client. See

*Speights v. Frank, 361 F.3d 962, 964 (7th Cir.)*, cert. denied, *160 L. Ed. 2d 168, 125 S. Ct. 119 (2004)*. This court certainly does not condone the sanctionable conduct of pursuing frivolous arguments or litigation nor does it view such conduct as evidence of vigorous representation. Nevertheless, the court does not find that these examples of sanctionable conduct show that counsel cannot adequately represent a class in this case. While counsel may in other cases have gone beyond the bounds of proper representation, their record here supports that they are competent for this case. It is found that plaintiff's counsel are adequately qualified to represent the class. The class will be certified and plaintiff's counsel will be appointed as class counsel.

IT IS THEREFORE ORDERED that plaintiff's motion for class certification [26] is granted. Daniel A. Edelman and the law firm of Edelman, Combs, Latturner & Goodwin, L.L.C. are appointed as class counsel. A class is certified consisting of: all natural persons with Illinois, Indiana, or Wisconsin addresses, to whom defendant(s) sent a notice in the form represented by Exhibit A of [*19] the Complaint and who received the notice on or after November 23, 2003 and on or before December 13, 2004. Any persons affiliated with one or more defendant are excluded from the class. The parties shall promptly meet to discuss a form of notice to the class. By September 12, 2005, the parties shall submit a proposed notice to the class.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: AUGUST 30, 2005

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELVIN T. STEWART, individually | ) | |
| and as next friend of THELMA R. STEWART, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04-cv-1213-LJM-VSS |
| | ) | |
| ASSET ACCEPTANCE LLC, | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is now before the Court on the Defendant's Motion to Dismiss. Defendant, Asset

Acceptance LLC ("Asset"), contends that plaintiff, Melvin T. Stewart, individually and as next friend

of Thelma R. Stewart ("Stewart"), failed to state a claim upon which relief can be granted in his

complaint. Stewart asserts that Asset violated the Fair Debt Collection Practices Act ("FDCPA")

in the privacy notice attached to a collection letter he received. Asset states that the privacy notice

is in compliance with the Gramm-Leach-Bliley Act, and that there has been no actual violation of

the FDCPA.

For the reasons discussed herein, the Court finds that Plaintiff's complaint is sufficient to

state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to

Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED**

with respect to claims under § 1692c or § 1692d.

## I. FACTS ALLEGED IN COMPLAINT

Stewart alleges that Asset is a debt collector under the FDCPA. (Compl. at ¶ 7). Asset is

in the business of buying bad debts allegedly owed by consumers, including credit card debts, for

a fraction of face value and then enforcing the debts against the consumers. (Compl. at ¶ 6).

On or about December 8, 2003, Asset sent Thelma Stewart a letter that sought to collect an alleged debt incurred for personal, family, or household use. (Compl. at ¶¶ 13, 15). Melvin Stewart, Ms. Stewart's son, received the letter because he handles his mother's affairs under a power of attorney. (Compl. at ¶¶ 4, 14). The letter contained a collection demand with a notice of the privacy and information disclosure practices of Asset on the back. (Compl. at ¶ 17).

The privacy notice states "We collect nonpublic personal information about you" from "applications or other forms," "your transactions with us, prior owners of your account, our affiliates, or others," and "a consumer reporting agency." (Compl. at ¶ 18, Ex. A). The plaintiff alleges that this information is integrally related to debt collection. (Compl. at ¶19). The privacy notice then states that the information may be disclosed to third parties including "financial service providers such as credit grantors, collection agencies and debt buyers" and that Asset "may disclose nonpublic personal information about you to affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl. at ¶ 20, Ex A).

Stewart alleges that many of these disclosures would be prohibited by the FDCPA because they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶ 21). Stewart contends that several of the listed uses of the nonpublic personal information would amount to publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. (Compl. at ¶ 22). Stewart argues that both activities would be a violation of the FDCPA if they were actually to occur, and Stewart alleges that Asset violates 15 U.S.C. §1692e merely in stating that it would engage in these

2

activities or has the right to do so. (Compl. at ¶ 21, 22). Stewart claims that inclusion of such statements in a debt collection letter amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid. (Compl. at ¶ 25).

The privacy notice contains an invitation to "opt-out" of disclosures of personal information and directs Stewart to call or mail a form to Asset "if [the consumer] prefer that we not disclose nonpublic personal information . . . to nonaffiliated third parties . . . ." (Compl. at ¶ 24, Ex. A). Plaintiff concludes that this procedure is a misstatement of consumer's rights and, therefore, a violation of 15 U.S.C. 1692e. The misstatement occurs because under 15 U.S.C. 1692c, the consumer must grant express permission directly to the debt collector before the debt may be disclosed to anyone other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." *Id*

Stewart brings this suit as a class action on behalf of a class of people with addresses in Indiana, Illinois, or Wisconsin who received the same privacy notice. (Compl. at ¶¶ 26-27).

## II. **RULE 12(B)(6) STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal for "failure to state a claim upon which relief may be granted." *United States v. Clark County, Indiana*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000). When considering a motion under this rule, the Court must examine the sufficiency of plaintiff's complaint, not the merits of the lawsuit. *Id.* The Court shall accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Id.* Dismissal under Rule 12(b)(6) is proper only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Chavez v. Ill. State Police*, 251 F.3d 612,

3

648 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Id.* (quoting *Veazey*, 194 F.3d at 854).

Stewart attached six exhibits to his Response to Defendant's Motion to Dismiss that were not attached to the complaint. (Pl.'s Resp., Ex. A, B, C, D, E, F). Where the parties submit material outside of the pleadings, the Court is obligated to either not consider the extraneous submissions in ruling on the motion or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

The Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment, and accordingly, the exhibits attached to Plaintiff's Response and references to the exhibits in the Response are excluded from the Court's consideration.

## III. DISCUSSION

Stewart's complaint is sufficient to invoke the FDCPA, which requires that the challenged action be taken by a "debt collector" in connection with the collection of a "debt." 15 U.S.C. § 1692a. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[1] 15 U.S.C. § 1692a(6). Stewart states that Asset is a "debt

---

[1] The statutory definition of debt collector does enumerate six exceptions to the definition, however Stewart's complaint does not allege that Asset falls within any of these exceptions.

4

collector" as defined above, and that it is engaged in the business of buying bad debts allegedly owed by consumers and enforcing the debts. (Compl. at ¶ 6-7).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Stewart states that the alleged debt was incurred by an individual for personal, family or household use. (Compl. at ¶ 15).

Finally, Stewart states that the letter which contained the privacy notice sought to collect a debt. (Compl. ¶ 15). The letter, attached to the complaint, and therefore part of the pleadings, states in bold print before the signature, "This is an attempt to collect a debt and any information obtained will be used for that purpose." (Compl., Ex. A). Stewart's complaint is sufficient to allege that the challenged action was performed in connection with the collection of a debt; the next question is whether the complaint is sufficient to state a violation of the FDCPA upon which relief could be granted.

Stewart does not allege any actual violation of 15 U.S.C. §1692c or §1692d. Asset's privacy notice states that it collects and may disclose certain nonpublic personal information to third parties including "[f]inancial service providers such as credit grantors, collection agencies and debt buyers" as well as "affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl., Ex. A.). Stewart alleges that some of these disclosures would amount to publication of a list of debtors, which is defined as "harassment" and a violation of 15 U.S.C. § 1692d. (Compl. at ¶¶ 10, 20, 22). Similarly, Stewart alleges that disclosure of personal information to some of the third parties listed in Asset's privacy notice would be a violation of 1692c, which prohibits

5

communication "in connection with the collection of any debt, with any person other than the

consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the

attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶¶ 9, 20-21).    Although

Stewart alleges that"actual publication of such lists would violate 15 U.S.C. §1692d . . . " and

"[a]ctual disclosures of this nature would violate 15 U.S.C. §1692c . . . ," Stewart claims no actual

disclosures in violation of the FDCPA.    To the extent that Stewart's complaint attempted to claim

relief under 15 U.S.C. § 1692c or § 1692d, those claims are dismissed.[2]

However, Stewart says that Asset's mere assertion that it has the right to make such

disclosures or publish such lists violates 15 U.S.C. §1692e.

> A debt collector may not use false, deceptive, or misleading representation or means
> in connection with the collection of any debt.    Without limiting the general
> application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended
> to be taken.
>
> ***
>
> (10) The use of any false representation or deceptive means to collect or attempt to
> collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.    Stewart highlights two of the specifically enumerated violations of this section,

subsections (5) and (10).    Stewart alleges two potential violations of the section: the privacy notice's

assertion of the right to make third party disclosures of the consumer's nonpublic personal

---

[2] This includes Stewart's assertions in the complaint that Asset engages in the practice of selling lists of consumers who have not paid their debts to subprime credit card companies who then offer to issue a card to the consumer if they will put some or all of the unpaid debt on the card.    While this may constitute a violation of §1692d, Stewart does not allege that his or his mother's names have been sold on any such list, and therefore does not state any violation of the act.    Any additional claim regarding violation of §1692d is dismissed.

information and the privacy notice's opt-out procedure.

As mentioned above, Stewart alleges that by saying that it collects and may disclose information to certain affiliated and nonaffiliated third parties, Asset is implicitly threatening to take such action, or publish lists of consumers with debts if the consumer does not pay. Because these actions "would be" violations of the FDCPA, Stewart states that these are threats to take an action that cannot legally be taken under § 1692e(5).

Stewart also points to the "opt-out" procedure described in Asset's privacy notice as a false representation. Asset's notice states that in order to decline information sharing with nonaffiliated third parties, the debtor must call a toll free number or fill out a form at the bottom of the letter and mail it to Asset. The form has a box to check that says "I wish to exercise my rights to opt out of certain third-party information sharing, as described in this privacy notice." The form then asks for the debtor's name, phone number, and address "to change our records to accurately reflect your desire to opt out."

Stewart contends that this procedure is a misrepresentation because it is an inaccurate statement of a consumer's rights under 15 U.S.C. § 1692c:

> (b) Communication with third parties. Except as provided by § 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[3]

Asset's notice asks a consumer to opt-out of disclosure, rather than give prior consent directly

---

[3] The exception in § 1692b refers to communication with a person other than the consumer for the purpose of acquiring information to locate the consumer, and limits the scope of such communications.

7

to the debt collector before any such disclosure could occur. In light of the clear statement on the front of the letter that it "is an attempt to collect a debt and any information obtained will be used for that purpose," and the fact that the opt-out provision asks for information from the consumer under an alleged misstatement of the consumer's rights, Stewart's complaint is sufficient to state a claim upon which relief could be granted under § 1692e(10), prohibiting the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Asset's contention that the privacy notice comports with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 ("GLB"), is irrelevant to its Motion to Dismiss. Stewart's complaint does not allege a violation of 15 U.S.C. § 6801, but alleges that Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Asset's assertions about the GLB are in the nature of an affirmative defense to Stewart's claim. "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Britsol-Myers Squibb Co*, 372 F.3d 899, 901 (7th Cir. 2004). When a valid, unmistakable defense is obvious from the face of the complaint so as to render the suit frivolous, the suit can be dismissed before defendant raises the defense in its answer. *See Walker v. Thompson*, 288 F.3d 1005, 1009-1010 (7th Cir. 2002). The FDCPA provides for an affirmative defense. A debt collector is not liable if it shows "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Stewart's complaint does not admit the elements of this defense for Asset. Moreover, it is not "unmistakable" that alleged compliance with the GLB would establish that any FDCPA violation was unintentional error

8

or that Asset had any procedures in place to avoid such error.

Without getting into the merits of the case, the Court finds that the pleadings are sufficient to state a claim upon which relief could be granted under the FDCPA.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, the Court finds that plaintiff's, Melvin T. Stewart, individually and as next friend of Thelma R. Stewart, complaint is sufficient to state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED** with respect to claims under § 1692c or §1692d.

IT IS SO ORDERED this 19th day of November, 2004.


_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronically distributed to:

Cathleen Maria Combs
EDELMAN, COMBS, LATTURNER LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER LLC
courtecl@aol.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com