**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
|     GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff respectfully requests that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendants Sherman Financial Group, LLC ("SFG"), Sherman Acquisition II, LP ("SA2LP"), Sherman Acquisition II General Partner, LLC ("SA2GP"), Alegis Group, LP ("AGLP"), and Alegis Group, LLC ("AGLLC").

The class consists of all (a) natural persons with Massachusetts addresses, (b) who were sent a collection letter containing or accompanied by a privacy notice [as described below], (c) on or after February 22, 2004, and (d) before March 14, 2005.

Plaintiff further requests that Joyce Henderson be appointed class representative and that Edelman, Combs, Latturner & Goodwin, LLC be named counsel for the class.

In support of this Motion, plaintiff states as follows:

**NATURE OF THE CASE**

1.     This case concerns the legality of a standard form document (<u>Exhibit A</u>) used by defendants.

2.     Defendants engage in purchasing charged-off consumer debts for a few cents on the dollar and attempting to collect  them.

3.     A company which purchases debts originally owed to another and that are

in default at the time of purchase is a "debt collector" subject to the FDCPA. <u>Schlosser v.</u>
<u>Fairbanks Capital Corp.</u>, 323 F.3d 534 (7th Cir. 2003); <u>Pollice v. Nat'l Tax Funding</u>, 225 F.3d
379 (3rd Cir. 2000);  <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The
legislative history of section 1692a(6) [which defines 'debt collector'] indicates conclusively that
a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default
at the time it was assigned"); <u>Ballard v. Equifax Check Services</u>, 27 F.Supp.2d 1201 (E.D. Cal.
1998);  <u>Kimber v. Federal Financial Corp.</u>, 668 F.Supp. 1480 (M.D.Ala. 1987); <u>Durkin v.</u>
<u>Equifax Check Servs.</u>, 00 C 4832 , 2002 U.S. Dist. LEXIS 20742 (N.D. Ill. Oct. 24, 2002);
<u>Cirkot v. Diversified Systems</u>, 839 F.Supp. 941 (D.Conn. 1993); <u>Ruble v. Madison Capital,  Inc.</u>,
C-1-96-1693, 1998 U.S.Dist. LEXIS 4926 (N.D.Ohio 1998); <u>Holmes v. Telecredit Service</u>
<u>Corp.</u>, 736 F.Supp. 1289, 1292 (D.Del. 1990); <u>Farber v. NP Funding II, LP</u>, 96 CV 4322, 1997
WL 913335 at *3, 1997 U.S.Dist. LEXIS 21245 (E.D.N.Y. Dec. 9, 1997)("those who are
assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the
collection of debts or if they regularly engage in debt collection"); <u>Stepney v. Outsourcing</u>
<u>Solutions, Inc.</u>, 1997 U.S.Dist. LEXIS 18264 (N.D.Ill. 1997); <u>Coppola v. Connecticut Student</u>
<u>Loan Found.</u>, Civ. A. N-87-398(JAC), 1989 WL 47419, 1989 U.S. Dist. LEXIS 3415 (D.Conn.
Mar. 22, 1989); <u>Wagner v. American Nat'l Educ. Corp.</u>, Civ. No. N-81-541 (PCD), 1983
U.S.Dist. LEXIS 10287 (D.Conn. Dec. 30, 1983) ("The statute permits service debt collection
free of the act if, when the debt was acquired, it was not in default"); <u>Commercial Service of</u>
<u>Perry v. Fitzgerald</u>, 856 P.2d 58, 62 (Colo.App. 1993) ("[A] company which takes an assignment
of a debt in default, and is a business the principal purpose of which is to collect debts, may be
subject to the Act, even if the assignment is permanent and without any further rights in the
assignor").

       4.     <u>Exhibit A</u> is a standard form collection letter.  The reverse contains a
notice describing what defendants do with information they obtain about their debtors.  The text
of the reverse, which is the part that gives rise to the violation, is referred to herein as the

"privacy notice."

5.     The "privacy notice" states that SFG and its affiliates, including each

defendant collect:

> Information we receive from your account file at the time we purchase your
> account.  Information you may give us on applications, questionnaires or through
> discussions with you.  Information about your transactions with any of the
> Sherman Companies.  Information we receive from consumer reporting agencies
> and other third party information providers such as public records and databases
> that contain publicly available data about you.  All of the information that we
> collect is sometimes referred to in this notice as 'collected information'.

6.     The "privacy notice" then states:

> **Joint Agreements.**  The Sherman Companies from time to time may enter into
> agreements with other providers of financial products and services.  These
> providers may perform services for us, or they may join with us to offer
> customers and former customers new or different products and services.  We may
> share collected information with these institutions, subject to the confidentiality
> and security requirements imposed by law.

7.     All of this information is integrally related to debt collection.

8.     These statements are inconsistent with the FDCPA.  The FDCPA prohibits

a debt collector from communicating with any third party, with limited exceptions not applicable

here.  15 U.S.C. §1692c(b) provides:

> (b) **Communication with third parties**--Except as provided in section 1692b of
> this title, without the prior consent of the consumer given directly to the debt
> collector, or the express permission of a court of competent jurisdiction, or as
> reasonably necessary to effectuate a postjudgment judicial remedy, a debt
> collector may not communicate, in connection with the collection of any debt,
> with any person other than the consumer, his attorney, a consumer reporting
> agency if otherwise permitted by law, the creditor, the attorney of the creditor, or
> the attorney of the debt collector.

Section 1692b deals with locating debtors whose whereabouts are unknown.

9.     Debt collectors are known to sell lists of persons who have not paid their

debts to issuers of subprime credit cards and mortgage loans, who offer to issue a credit card or

make a mortgage loan if the consumer will put some or all of the unpaid debt on the credit card

or mortgage loan.

10.     Prospective lenders are not among the parties to whom a debt may be

3

disclosed under 15 U.S.C. §1692c.

11.     Defendants' privacy notice then states that the consumer may ask SFG and its affiliates not to share collected information, but that "Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you."  This is a misstatement of the consumer's rights under 15 U.S.C. §1692c, which requires that the consumer grant express permission directly to the debt collector before the debt may be disclosed to anyone other than the consumer, the consumer's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

12.     The inclusion of statements in a debt collection letter that information about the debtor can be disclosed to third parties under circumstances prohibited by the FDCPA is either a false representation or a threat to perform an illegal act, both of which violate §1692e. It is also an implicit threat that the debtor's privacy will be invaded if the debt is not paid, e.g., if the debtor owns a home, defendants will have a mortgage company see if refinancing could be used to pay the debt.

13.     In a case evaluating the exact same "privacy notice," Judge Plunkett ruled that "it was reasonable to conclude that an average person could construe the Privacy Notice language to mean that at third party, other than those permitted under § 1692c(b), is going to receive information about our debts."  Blair v. Sherman Acquisition, 04 C 4718, 2004 U.S. Dist. LEXIS 25106 (N.D. Ill. Dec. 9, 2004)(Exhibit B).  See also Chapman v. Worldwide Asset Mgmt., LLC, 04 C 7625, 2005 U.S. Dist. LEXIS 41528 (N.D. Ill. Apr. 6, 2005)(Exhibit C); Stewart v. Asset Acceptance LLC, No. 04-cv-1213-LJM-VSS, at 8 (S.D. Ind. Nov. 19, 2004)(Exhibit D).

**CLASS CERTIFICATION REQUIREMENTS**

14.     All of the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

4

15.    It is reasonable to infer that the class is so numerous that joinder of all members is impractical, from the following facts:

   a.    This action complains of a standard form used by defendants.

   b.    Defendants are required to provide an accurate notice of their privacy and information practices upon acquisition of an account and annually thereafter by the Gramm-Leach-Bliley Act, 15 U.S.C. §6801 et seq.  (It should be noted that the Gramm-Leach-Bliley Act does not purport to authorize disclosures by debt collectors that violate the FDCPA.) The "privacy notice" is what defendants use for this purpose.

   c.    Consequently, the number of class members is equal to the number of persons in Massachusetts whose debts were owned by defendants.

   d.    Defendants have obtained judgments against over 50 Massachusetts residents alone in the last two years.  (Exhibit E).

   e.    Because the class is defined as every Massachusetts resident who received a form "privacy notice," it follows that the class numbers easily over 1,000 (probably much more).

   f.    A class of 40 satisfies the numerosity requirement, and that is clearly the case here.

16.    Plaintiff will obtain the exact number of class members through discovery, and requests a briefing schedule long enough to obtain such information.

17.    There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The primary question is whether defendants' form document violates the FDCPA.

18.    The only individual issue is the identification of the consumers who received the offending collection letters, a matter capable of ministerial determination from defendants' records.

19.    Plaintiff's claims are typical of those of the class members.  All are based

on the same factual and legal theories.

       20.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.  (<u>Exhibit F</u>)

       21.    A class action is superior for the fair and efficient adjudication of the class members' claims, in that:

       a.    Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.

       b.    Consumers are unlikely to recognize the violation.

       c.    Consumers from whom defendants are seeking to collect delinquent debts probably cannot afford to hire counsel to pursue individual claims.

       d.    Individual actions for $1,000 are, in any event, uneconomical.

       e.    A class action is necessary to determine that defendant's conduct is a violation of law and bring about its cessation.

       22.    In further support of this Motion, plaintiff submits the accompanying memorandum of law.

       WHEREFORE, plaintiff respectfully requests that this Court enter an order determining that this action may proceed as a class action.

/s/ Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
   & GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI  02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

## **RULE 7.1 CERTIFICATION**

I, Jeremy P. Monteiro, hereby certify that I have conferred in good faith with counsel for defendants regarding this motion.  During the conference, defendants' counsel represented to me that defendants oppose the motion.

/s/ Jeremy P. Monteiro
Jeremy P. Monteiro

8

**CERTIFICATE OF SERVICE**

        I, Jeremy P. Monteiro, hereby certify that on July 26, 2006, a copy of the foregoing **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** was filed electronically. Parties were served a copy of the filed document via the below listed methods.

Notified via the Court's electronic filing system:

Steven S. Broadley
sbroadley@pbl.com

Served via US Mail and Facsimile:

Michael S. Poncin
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

                    /s/ Jeremy P. Monteiro
                    Jeremy P. Monteiro (pro hac vice)

                    Daniel A. Edelman (pro hac vice)
                    Cathleen M. Combs (pro hac vice)
                    Jeremy P. Monteiro (pro hac vice)
                    EDELMAN, COMBS, LATTURNER
                        & GOODWIN LLC
                    120 S. LaSalle Street, 18th Floor
                    Chicago, Illinois  60603
                    (312) 739-4200
                    (312) 419-0379 (FAX)

                    Christopher M. Lefebvre
                    Law Offices of Claude Lefebvre & Sons
                    P.O. Box 479
                    Pawtucket, RI  02862
                    401-728-6060
                    401-728-6534 (Facsimile)
                    R.I. Bar No. 4019

9

# EXHIBIT A

GREENVILLE, SC 29601

ADDRESS SERVICE REQUESTED

|||||||||||||||||||||||||||
9834922

02-24-2004

#BWNDLZK
#G000 04CY MDV1#
|||||||||||||||||||||||||||||||||||||||||||||
MARY L BURT                         A161
C/O JOYCE HENDERSON                 IX2
2 OLD COACH RD                      SHFW-HS
CANTON MA 02021-1623

**ALEGIS GROUP LP**
1-800-580-4060
(713)784-9966
Hours of Operation
8AM-9PM EST Monday - Thursday
8AM-12PM EST Friday - Saturday

PREVIOUS CREDITOR: Sears
CURRENT CREDITOR: Sherman Acquisition II LP
ACCOUNT NUMBER: Redacted
CURRENT BALANCE: $10,532.47

ALEGIS GROUP LP
PO BOX 741148
HOUSTON TX 77274-1148
|||||||||||||||||||||||||||||||||||||||||||||

---

*IMPORTANT: To receive proper credit, be sure to enclose this portion with your payment in full.*

---

Dear MARY L BURT:

Sherman Acquisition II LP has authorized Alegis Group LP to offer a settlement in lieu of the balance owed on your account number Redacted

This offer is being made for a limited time only. Alegis Group LP can only accept settlement of the above debt if payment is received in our office no later than fifteen (15) days from the date of this letter.

In the event that all terms of this letter are met, Sherman Acquisition II LP agrees that all collection efforts against MARY L BURT for the above named account will cease and said account will be considered satisfied.

*This communication is sent to you by Alegis Group LP, a professional debt collector.*

### Please read the following important notices as they may affect your rights.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency. If you wish to discuss this matter, please call us direct between the hours of 8 AM and 5 PM EST at the toll free number listed on this letter.

SEE REVERSE SIDE FOR IMPORTANT PRIVACY NOTIFICATION

## PRIVACY NOTICE

This privacy notice is being given on behalf of Sherman Financial Group LLC and its family of companies (the "Sherman Companies").

At the Sherman Companies, we are committed to protecting personal information we obtain about you. Please take a moment and read this privacy notice for some important information about your rights. This notice is being provided by the Sherman Companies as required by the Federal Financial Privacy Law, 15 USC 6801-6810. The following financial and non-financial entities are the "Sherman Companies":

| | | |
|---|---|---|
| Sherman Financial Group LLC | Sherman Originator LLC | Sherman Acquisition LP |
| Sherman Capital Markets, LLC | Sherman Holdings LLC | Alegis Group LLC |
| Sherman General Partner SPE LLC | Bailey Holdings, Inc. | Alegis Group LP |
| Resurgent Capital Services, LLC | Sherman Acquisition LLC | Nassau Mortgage, LLC |
| Alegis Group Loan Servicing, LLC | Sherman Acquisition TA, LP | Ascent Card Services, LLC |
| Sherman Investments SPE, LLC | | |

**What the Policy Covers.** This policy covers the collection and disclosure of personal information that we receive through your relationship with any of the Sherman Companies.

**Information We May Collect.** Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the Sherman Companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases that contain publicly available data about you. All of the information that we collect is sometimes referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** We restrict access to collected information about you to those employees who need to know such collected information and certain third party service providers who provide support services to us. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Joint Agreements.** The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us, or they may join with us to offer customers and former customers new or different products and services. We may share collected information with these institutions, subject to the confidentiality and security requirements imposed by law.

## Sharing Collected Information With Affiliates and Third Parties

**Between Sherman Companies.** From time to time, the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

**Other Sharing.** We share collected information about customers and former customers (A) with other companies in order to effect, administer or enforce any transaction between you and the Sherman Companies, (B) with law enforcement officials, to prevent fraud, and (C) otherwise as permitted by law.

# EXHIBIT B

2 of 100 DOCUMENTS

**BLAIR, et al., PLAINTIFFS, v. SHERMAN ACQUISITION, et al., DEFENDANTS.**

**NO.04 C 4718**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 25106*

**December 9, 2004, Decided
December 13, 2004, Docketed**

**DISPOSITION:** Defendants' Motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant debt collectors filed a motion to dismiss plaintiff debtors' action alleging that the debt collectors, a group of companies and three independent companies, violated the Fair Debt Collection Practices Act by communicating with unauthorized third parties concerning the debtors' debt without their consent, harassing the debtors, acting in an abusive manner during the collection process, and making misleading representations.

**OVERVIEW:** The group's privacy notice, which was printed on collection letters sent to the debtors by the debt collectors, stated that the group could collect certain information about the debtors and might share that information with other entities. Because it was unclear whether the letters were for the purpose of debt collection and an average person could reasonably have construed the language to mean that a third party other than those permitted under *15 U S C S § 1692c*(b) was going to receive information about their debts, the claim that the debt collectors had unauthorized communication with third parties could not be dismissed. The claim that the debt collectors violated *15 U S C S § 1692e*(5) and (10) by falsely or misleadingly representing to an unsophisticated consumer that their personal information could and would be shared regardless of their rights and wishes had to remain because it was undetermined whether the actions the debt collectors claimed to make were authorized or unauthorized and an actual disclosure would have been a violation of the debtors' rights. However, the debt collectors had not harassed or threatened the debtors under *15 U S C S § 1692d*(3) and (4).

**OUTCOME:** The court denied the debt collectors' motion to dismiss the claim that they had unauthorized communication with third parties, denied the debt collectors' motion to dismiss the claim that they made misleading misrepresentations, and granted the debt collectors' motion to dismiss the claim that they harassed the consumers or acted in an abusive manner.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] On a *Fed R Civ P 12(b)(6)* motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. The plaintiff need not include a detailed outline of a claim's basis. He must, however, include either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. No claim will be dismissed unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader.

*Banking Law > Consumer Protection > Fair Debt Collection > Communications*
*Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act*
*Torts > Negligence > Standards of Care > Appropriate Standard > Objectivity*
[HN2] The purpose of the Fair Debt Collection Practices Act (FDCPA) is to eliminate abusive debt collection practices by debt collectors. *15 U S C S § 1692*(e) Be-

cause it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose. Whether a communication or other conduct violates the FDCPA is determined by analyzing it from the prospective of an unsophisticated consumer. This standard protects the consumer who is uninformed, naive, or trusting, while at the same time requiring that the unsophisticated consumer possess objective element of reasonableness. Including the objective element in the standard insulates debt collectors from liability for unrealistic or peculiar interpretations of collection letters.

**Banking Law > Consumer Protection > Fair Debt Collection > Communications**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN3] *15 U S C S § 1692c*(b) generally prohibits debt collectors from communicating with third parties.

**Banking Law > Consumer Protection > Fair Debt Collection > General Overview**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN4] See *15 U S C S § 1692c*(b).

**Banking Law > Consumer Protection > Fair Debt Collection > Communications**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN5] Under *15 U S C S § 1692c*(b), without prior consent, a debt collector may not communicate with a third party regarding the collection of a debt, except to secure location information permitted under strict limitations of *15 U S C S § 1692b*. *15 U S C S § 1692c*(b). Under the Fair Debt Collection Practices Act, a "communication" is defined as conveying of information regarding a debt directly or indirectly to any person through any medium. *15 U S C S § 1692a*(2).

**Banking Law > Consumer Protection > Fair Debt Collection > General Overview**
**Governments > Legislation > Interpretation**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN6] A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. All pro-

visions of the statute must be considered and each term must be interpreted equally, so as not to deflect from the meaning of the statute. Specifically, as to *15 U S C S § 1692*, every clause and word must be given force and *15 U S C S § 1692c*(b) should be broadly interpreted to prohibit a debt collector from conveying any information to a third party that concerns a debt (except for the purpose of obtaining location information as permitted under *15 U S C S § 1692b*).

**Banking Law > Consumer Protection > Fair Debt Collection > General Overview**
**Civil Procedure > Judicial Officers > General Overview**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN7] How consumers or audiences are affected by a Privacy Notice is a question of fact, which may be explored by testimony and devices such as consumer surveys. A complaint alleging that a particular notice is not clear may not be dismissed under *Fed. R. Civ. P. 12(b)(6)* because district judges are not the proper models for the "unsophisticated consumers" that were contemplated under the Fair Debt Collection Practices Act. Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade. Further, to learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence.

**Banking Law > Consumer Protection > Fair Debt Collection > General Overview**
**Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses**
**Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims**
[HN8] An affirmative defense is properly asserted only when the plaintiff pleads itself out of court--that is, admits all of the ingredients of an impenetrable defense-- may a complaint that otherwise states a claim be dismissed under *Fed. R. Civ. P. 12(b)(6)*.

**Banking Law > Consumer Protection > Fair Debt Collection > General Overview**
**Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses**
**Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act**
[HN9] The affirmative defense available under the Fair Debt Collection Practices Act is that the debt collector

must show by a preponderance of the evidence that the alleged violation was not purposeful, and there was a genuine error despite the fact that defendants employed reasonable means to avoid violations. *15 U S C S § 1692k*(c).

***Banking Law > Consumer Protection > Fair Debt Collection > Communications***
***Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act***
[HN10] The Fair Debt Collection Practices Act attempts to eliminate abusive debt collection practices by debt collectors by enacting certain provisions, such as a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. *15 U S C S § 1692d.* Violations of this statute include publishing a list of consumers who allegedly refuse to pay debts and the advertisement for sale of any debt to coerce payment of the debt. *15 U S C S § 1692d*(3) and (4). Furthermore, *15 U S C S § 1692* also requires that debt collectors refrain from making false or misleading representations, including threatening to take any action that cannot legally be taken or that is not intended to be taken, and using any false representation or deceptive means to collect or attempt to collect any debt; *15 U S C S § 1692e*(5) and (10).

***Banking Law > Consumer Protection > Fair Debt Collection > General Overview***
***Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act***
[HN11] Statements that clearly indicate that the debt collector will be contacting an employer or third parties who are prohibited from being contacted under the Fair Debt Collection Practices Act (FDCPA) is a threat to a consumer. Also, threatening statements are seen where a debt collector indicates that the consumer may expect horrible life changes as a result of an unpaid debt. You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation is a violation of the FDCPA. Further, a creditor's persistence in continuing to demand payment with increasingly harsh threats of loss of credit and business reputation is harassment and an example of a FDCPA violation. The standard here for evaluating a violation is also that of the "unsophisticated consumer."

***Banking Law > Consumer Protection > Fair Debt Collection > General Overview***
***Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act***
[HN12] *15 U S C S § 1692e*(5) is violated when a debt collector threatens to take action that cannot legally be taken, and § 1692e(10) prohibits debt collectors to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted.

***Banking Law > Consumer Protection > Fair Debt Collection > General Overview***
***Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act***
[HN13] *15 U S C S § 1692e*(10) prohibits the use of any false representation or deceptive means to collect any debt. As to § 1692e(10), courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. Phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate § 1692e(10) because they give the consumer the impression that he would undoubtedly require a lawyer. A court interprets the alleged misleading content again through the eyes of the unsophisticated consumer.

***Banking Law > Consumer Protection > Fair Debt Collection > Liability***
***Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Fair Debt Collection Practices Act***
[HN14] Minimal participation by a debt collector in the collection process may impute liability under the Fair Debt Collection Practices Act (FDCPA) upon that debt collector. The preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation. Furthermore, to assess liability, courts have examined whether the collection agency's function was more of a mailing service or if its duties were more typical to a collection services company. Even in the legislative commentary describing the intent

2004 U.S. Dist. LEXIS 25106, *

of the FDCPA, it is clear that a debt collector may not imply that a third party may take action unless such action is legal.

**COUNSEL:** [*1] For PAUL E. BLAIR, ERIKA WEPNER FKA ERIKA T KUNIK, Plaintiffs: Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, John D. Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For SHERMAN ACQUISITION L.P., SHERMAN FINANCIAL GROUP LLC, SHERMAN ACQUISITION II, LP, SHERMAN ACQUISITION II GENERAL PARTNER LLC, ALEGIS GROUP LP, ALEGIS GROUP, LLC, Defendants: Claudia Ann Halloran, Richard M. Jacobson, James Leo McKnight, Scott Gordon Thomas, Law Offices of Scott G. Thomas, Chicago, IL; Steven Huntley Mora, Lynn Urkov Thorpe, Mora Baugh Waitzman & Unger LLC, Chicago, IL.

For ACCOUNT SOLUTIONS GROUP, L.L.C., CAPITAL MANAGEMENT SERVICES, INC., Defendants: David Matthew Schultz, Todd Philip Stelter, Hinshaw & Culbertson, Chicago, IL.

For VITAL RECOVERY SVC, Defendant: Michael P. Tone, Peter D. Lindau, Kimberly Elizabeth Blair, Ross, Dixon & Bell, L.L.P., Chicago, IL.

**JUDGES:** Paul E. Plunkett, Senior Judge.

**OPINIONBY:** Paul E. Plunkett

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Paul E. Blair and Erika T. Wepner ("Plaintiffs") have filed a Complaint against Sherman Acquisition LP ("SA"), Sherman Acquisition II LP ("SA2"), Sherman Financial Group ("SFG"), Sherman General Partners [*2] SPE, LLC ("SGP"), Sherman Acquisition II General Partner ("SA2GP"), Alegis Group LP ("AGLP"), Alegis Group LLC ("AGLLC") ("Sherman Defendants"), Account Solutions Group LLC ("ASG"), Vital Recovery Services, Inc ("VRS"), Capital Management Services, Inc ("CMS"), or (all defendants as ("Defendants") seeking to recover statutory damages and attorneys' fees and costs that Plaintiffs incurred in connection with this suit. Defendants have filed a Federal Rule of Civil Procedure (Rule)12(b)(6) Motion to Dismiss all of the claims asserted against them. Defendants assert that Plaintiffs have not presented a claim under which relief can be granted. In addition to adopting the arguments of Sherman Defendants, VRS, ASG, and CMS have added that the claim against them should also be dismissed be-

cause they are not the members of the group against which the Complaint is directed. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

### Facts

Plaintiffs are two consumers who had outstanding debts. Plaintiffs allege that between July 19, 2003 and August 8, 2004, they received standard collection form letters from [*3] Defendants. Plaintiffs claim that Defendants are debt collectors. Defendants agree to that label only for purposes of this Motion. According to Plaintiffs, SA, SA2, and SFG are in the business of buying bad debts. (Complaint P 6, 10, 16.) SGP and SA2GP are alleged general partners of SA and SA2, respectively. (Complaint P 8, 18.) AGLP allegedly operates a collection agency and its general partner is AGLLC. (Complaint P 27,29.) In August, AGLP sent a collection letter to Blair, which contained a Sherman Companies Privacy Notice on the reverse side ("Privacy Notice") (Complaint P 48-51.) In October 2003, ASG sent a collection letter to Blair, allegedly on behalf of SA and SFG, which also had a Privacy Notice on the reverse side. (Complaint P39-44.) In September 2003, CMS sent a letter to Blair, allegedly on behalf of SA and SFG which also included a Privacy Notice. (Complaint P53-58.) In June 2004 VRS sent a collection letter to Wepner that was allegedly on behalf of SA, SA2, and SFG that included a Privacy Notice. (Complaint P60-64.)

These Privacy Notices apprise consumers of the specific information that the Sherman Companies may collect about the consumer. (Complaint Ex. A.) The [*4] Sherman Companies are defined as Sherman Financial Group, Sherman Capital Markets, Sherman General Partner, Resurgent Capital Services, Sherman Investments, Sherman Originator, Sherman Holdings, Bailey Holdings, Sherman Acquisition, Alegis Group LLC, Alegis Group LP, Nassau Mortgage, and Ascent Card Services. Id. The Privacy Notices specifically articulate that the Sherman Defendant may use "collected information," defined as information they receive from the account file at the time of purchase; information on applications, questionnaires, or through discussions; information about transactions with the Sherman Companies; information they receive from their consumer reporting agencies and other third party providers; and other public information. Id. The Privacy Notice also informs the consumer that the Sherman Companies "may enter into agreements with other providers of financial products and services, where those providers may perform services for Sherman Companies, or may join with Sherman Companies to provide products and services to current and former customers." Id.

This Complaint is premised on the Fair Debt Collection Practices Act ("FDCPA"), *15 U S C § 1692* [*5] Specifically, Plaintiff alleges that through the Privacy Notice, Defendants violated the *FDCPA § 1692c(b)* for communicating with unauthorized third parties concerning Plaintiffs' debt without the consumers' consent; *§ 1692d(3)* for harassing the consumers; *§ 1692d(4)*for acting in an abusive manner during the collection process; and *§ 1692e* for making misleading representations. Defendants contend that they are not in violation of FDCPA; rather, they are in full compliance of the FDCPA, and affirmatively defend that the Gramm-Leach-Bliley Act ("GLB"), which also regulates sharing personal debt information with third parties, expressly permits their conduct.

### Legal Standard

[HN1] On a *Rule 12(b)(6)* motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex, 199 F 3d 363, 368 (7th Cir. 2000)*. The plaintiff need not include a detailed outline of a claim's basis. He must, however, include "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Carr Carriers, Inc v. Ford Motor Co . 745 F 2d 1101,1106 (7th Cir. 1984)*. [*6] *cert denied, 470 U S . 1054, 84 L. Ed 2d 821, 105 S Ct. 1758 (1985)* No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v King & Spalding, 467 U S 69, 73, 81 L. Ed 2d 59, 104 S Ct 2229 (1984)* Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. *Id*

### Discussion

Defendants have moved to dismiss Plaintiffs' Complaint stating that they were in full compliance of the FDCPA, while Plaintiffs allege that Defendants are in violation of *15 U S C § 1692.* [HN2] The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors *15 U S C § 1692(e)*. Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose. *Ross v. Commercial Fin Servs, Inc., 31 F Supp. 2d 1077, 1079 (N D. Ill. Jan 7, 1999)* (citing *Cirkot v. Diversified Fin Servs , Inc., 839 F Supp 941 (D. Conn 1993))*. Whether a communication or other conduct violates the FDCPA is determined by [*7] analyzing it from the prospective of an "unsophisticated consumer." *Id.* (citing *Gammon v GC Servs Ltd P'ship, 27 F 3d 1254, 1257 (7th Cir. 1994)*. This standard protects the consumer who is "uninformed, naive, or trusting," while at the same time requiring that the unsophis-

ticated consumer possess objective element of reasonableness. *Id.* Including the objective element in the standard insulates debt collectors from liability for "unrealistic or peculiar interpretations of collection letters." *Id*

### Communication with Third Party

[HN3] *Section 1692c(b) of 15 U S C.* generally prohibits debt collectors from communicating with third parties:

> [HN4] Communication with third parties. Except as provided in section 804 without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney [*8] of the creditor, or the attorney of the debt collector

[HN5] Under Section *§ 1692c(b)*, without prior consent, a debt collector may not communicate with a third party regarding the collection of a debt, except to secure "location information" permitted under strict limitations of *§ 1692b. 15 U S C. § 1692c(b).* Under the Act, a "communication" is defined as "conveying of information regarding a debt directly or indirectly to any person through any medium." *15 U S C § 1692a(2).*

Like all cases involving statutory interpretation, it must first be determined if the language of the statute resolves the issue. *Bailey v. Sec Nat'l Serv Corp., 154 F 3d 384, 387 (7th Cir. 1998)*. The Supreme Court has stated that [HN6] "[a] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *U S v. Campos-Serrano, 404 U S 293, 30 L. Ed 2d 457, 92 S. Ct 471 (1971)* (quoting *Washington Mkt Co v Hoffman, 101 U S. 112, 115-16, 25 L. Ed 782 (1879))*. All provisions of the statute must be considered and each term must be interpreted equally, so as not to deflect [*9] from the meaning of the statute. *West v. Nationwide Credit, 998 F. Supp. 642, 644 (W.D N.C. 1998)*. Specifically, as to *15 U S C § 1692*, every clause and word must be given force and *§ 1692c(b)* should be broadly interpreted to prohibit a debt collector from conveying any information to a third party that concerns a debt (except for the purpose of obtaining location information as permitted under *§ 1692b*) *Id. at 645*.

[HN7] How consumers or audiences are affected by a Privacy Notice is a question of fact, which may be explored by testimony and devices such as consumer surveys. *Walker v. Nat'l Recovery, Inc., 200 F 3d 500, 501 (7th Cir 1999)*. A complaint alleging that a particular notice is not clear may not be dismissed under *Federal Rule of Civil Procedure 12(b)(6)* because district courts are not the proper models for the "unsophisticated consumers" that were contemplated under the statute *Id* (noting "unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose [*10] formal education ended after sixth grade"). Further, to learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence *Id at 501.* (citing *Johnson v. Revenue Mgmt Corp., 169 F 3d 1057, 1060 (7th Cir 1999))*

Plaintiffs claim that Defendants' communication with third parties is a direct violation of *§ 1692c(b)*. Defendants move to dismiss this claim, arguing that the letters in question were not a "communication" within the meaning of the Act because they did not indicate that the purpose of the letters was debt collection. Rather, they contend the purpose was for offering services and products to Plaintiffs. Here, the statute clearly reads that in connection with the collection of a debt there may not be communication with unauthorized third parties. Plaintiffs assert that Defendants' job inherently is in connection with debt collection and that Defendants should be considered as communicating in connection of the collection of a debt. This point is apparently unclear to the consumer as evidenced by Plaintiffs' and Defendants' varied perceptions of Defendants' conduct.

Additionally, peering through the eyes of the [*11] unsophisticated consumer and leaving our judicial and educational expertise aside, it is reasonable to conclude that an average person could construe the Privacy Notice language to mean that a third party, other than those permitted under *§ 1692c(b)*, is going to receive information about our debts. Furthermore, Plaintiffs proclaim that they will proffer evidence that may lead us to reach a conclusive determination. Applying the relevant standard in a *Rule 12(b)(6)* motion, we must construe all facts in favor of Plaintiffs. Plaintiffs allege that, in violation of *15 U.S.C. 1692c(d)*, Defendants shared their information in connection with the collection of a debt without the third party's consent. Plaintiffs have inferred that they will be able to show through the evidence that Defendants were acting in connection with a debt collection. Accepting as true all well-pleaded factual allegations of the complaint and drawing all reasonable inferences in Plaintiffs' favor, if it is determined that the communication was in fact in connection of a debt, then Plaintiff's claim is viable. Construing this statute so as to not pre-

clude any clause, sentence or word meaning and [*12] broadly interpreting the FDCPA through the eyes of the unsophisticated consumer, we are required to consider Plaintiffs' claim.

## Gramm-Leach-Bliley Act

Alternatively, Defendants affirmatively defend that aside from being in full compliance with the FDCPA, Defendants are in compliance with the Gramm-Leach-Bliley Act ("GLB"), *15 U.S.C. § 6801*, as well. GLB provides that sharing non-public personal information with third parties is permitted if the required notice is given. However, as in a recent ruling in *Stewart v. Asset Acceptance,* the GLB is irrelevant to this Motion to Dismiss because the Complaint asserts a violation of the FDCPA, not the GLB. [HN8] An affirmative defense is properly asserted "only when the plaintiff pleads itself out of court -- that is, admits all of the ingredients of an impenetrable defense -- may a complaint that otherwise states a claim be dismissed under *Rule 12(b)(6)."* *Stewart v. Asset Acceptance LLC,* No. 04-cv-1213-LJM-VSS (S.D. Ind. Nov. 19, 2004) (quoting *Xechem, Inc v. Bristol-Myers Squibb Co., 372 F 3d 899, 901 (7th Cir 2004))*. [HN9] The affirmative defense available under the FDCPA is that the [*13] debt collector must show "by a preponderance of the evidence" that the alleged violation was not purposeful, and there was a genuine error despite the fact that Defendants employed reasonable means to avoid violations. *15 U.S.C. 1692k(c).* Defendants have not made the requisite showing of this affirmative defense that would dispose of this claim.

## Harassment or Abuse and False Leading or Misleading Representations

Plaintiffs allege that the below-quoted language violates *§ 1692d(3)* and *1692d(4)* because it is abusive and harassing. Additionally, Plaintiffs allege that the language below violates *§ 1692e(5)* and *(10)* of the FDCPA because it falsely or misleadingly represents to an unsophisticated consumer that their personal information can and will be shared regardless of their rights and wishes.

Defendants' Privacy Notice reads:

> JOINT AGREEMENTS. The Sherman Companies from time to time may enter into agreements with other providers of financial products and services. These providers may perform services for us or they may join with us to offer customers and former customer new or different products and services. We may share collected [*14] information with these insti-

tutions, subject to the confidentiality and security requirements imposed by law.

BETWEEN SHERMAN COMPANIES. From time to time the Sherman Companies may share collected information with each other about customers and former customers in accordance with applicable law. You may ask us not to share collected information between the Sherman Companies by writing to us and letting us know at P.O. Box 10438, Greenville, SC 29603. Your request will not affect collected information we are permitted by law to share, such as collected information related to our experiences and transactions with you.

(Compl. Exs. A-D.)

[HN10] FDCPA attempts to eliminate abusive debt collection practices by debt collectors by enacting certain provisions, such as "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *15 U.S.C. § 1692d.* Violations of this statute include publishing a "list of consumers who allegedly refuse to pay debts and the "advertisement for sale of any debt to coerce payment of the debt. *Id.* at *1692d(3)§* and *1692d(4).* [*15] Furthermore, *15 U.S.C. § 1692* also requires that debt collectors refrain from making "false or misleading representations," including threatening "to take any action that cannot legally be taken or that is not intended to be taken," and using "any false representation or deceptive means to collect or attempt to collect any debt"; *id.* at *§ 1692e(5)* and *(10).*

We first address the *§ 1692* d(3) and *§ 1692d(4)*claims, which state:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(3) The publication of a list of consumers who allegedly refuse to pay debts
(4) The advertisement for sale of any debt to coerce payment of the debt.

[HN11] Statements that clearly indicate that the debt collector will be contacting an employer or third parties who are prohibited from being contacted under the

FDCPA is a threat to a consumer. *Rutyna v. Collection Accounts Terminal, Inc., 478 F. Supp. 980, 982 (N.D. Ill. 1979).* Also, threatening [*16] statements are seen where a debt collector indicates that the consumer may expect horrible life changes as a result of an unpaid debt. *Herbert v. Wexler, 1995 U.S. Dist. LEXIS 12888, *7 (N.D. Ill. Aug. 31, 1995)* (noting that "You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation" is a violation of FDCPA). Further, a creditor's persistence in continuing to demand payment with increasingly harsh threats of loss of credit and business reputation is harassment and an example of a FDCPA violation. *Florence v. Nat'l Sys., 1983 U.S. Dist. LEXIS 20344, *8 (D. Ga., 1983).*

The standard here for evaluating a violation is also that of the "unsophisticated consumer." Plaintiffs assert that informing the consumer that his information might be shared with unauthorized third parties is an implicit threat of invasion of privacy. The inclusion of such a statement is not a threat. In fact, Defendants state that all disclosures and sharing will be in a manner "otherwise permitted by law." Here, Defendants have not harassed or clearly threatened [*17] Plaintiffs that they would publish a list of consumers, nor have Defendants threatened any horrible life change or indicated that they will resort to clear illegal actions. Also, Defendants did not repeatedly call Plaintiffs with increased intimidation to pay a debt or threaten to advertise the sale of Plaintiffs' debt. Rather, Defendants have informed Plaintiffs of their rights and have indicated that they will only make disclosures that they believe are permitted by law. Therefore, through the eyes of an unsophisticated consumer, Defendants have not harassed or threatened Plaintiffs as contemplated under *15 U.S.C. § 1692d(3)* and *d(4).*

Next, we address [HN12] *§ 1692e(5),* which is violated when a debt collector threatens to take action that cannot legally be taken, and *§ 1692e(10),* which prohibits debt collectors to use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." First, courts have found that for a collection notice to wrongfully threaten action, it must, for example, falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has [*18] already been made." *Jenkins v. Union Corp., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998).* However, where an unsophisticated consumer reasonably could interpret the statement to imply that the authors of a Privacy Notice could take the action they assert, then they have sufficiently stated a claim upon which relief can be granted. *Gammon, 27 F.3d at 1257-58*

Plaintiffs say that § 1692e(5) was violated because stating that they would disclose to unauthorized third parties, whether they actually did, is a violation of its own. Even though this does not infer that legal action is imminent, an unsophisticated consumer could reasonably interpret the statement to imply that Defendants could execute the actions noted in the Privacy Notice. Therefore, because it is undetermined whether the actions the Defendants' claim to make are actually authorized or unauthorized, the § 1692e(5) claim must remain.

Similarly, [HN13] § 1692e(10) prohibits the use of any false representation or deceptive means to collect any debt. As to § 1692e(10), courts ruled that violations are present where a notice untruthfully indicates an action may be legally taken. U.S. v. Nat'l Fin. Servs., 98 F.3d 131, 136, 138 (4th Cir. 1996) [*19] (stating that phrases like "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will also want to be paid" violate § 1692e(10) because it gives the consumer the impression that he would undoubtedly require a lawyer). We interpret the alleged misleading content again through the eyes of the unsophisticated consumer. Gammon, 27 F.3d at 1257.

In this case, Plaintiffs indicate that Defendants have violated § 1692e(10) because they misstated the consumer's rights with regard to having to affirmatively notify Sherman Defendants not to share their information. Requiring the consumer to affirmatively state that they do not want their information shared is not accurate, if the communication were in connection with the collection of the debt. Defendants do imply that they will share this information with potentially unauthorized third parties without the consumer's consent. Because whether the communication was made in connection with the collection of a debt has yet to be determined and an actual disclosure *would* be a violation of the consumer's rights, this statement would violate 15 U.S.C. § 1692e(10). [*20] Therefore, as to § 1692e(5) and § 1692e(10), Plaintiffs present tenable claims and they may not yet be disposed.

VRS, ASG, and CMS, have offered added support for their Motion to Dismiss under Rule 12(b)(6). VRS, ASG, and CMS assert that the crux of the Complaint is based on the communication that is offered in the Privacy Notice which is given on behalf of the Sherman Financial Group LLC and its family of companies (Compl. Exs A-D). In the Privacy Notice, the companies that are part of the Sherman Companies are individually listed, and VRS, ASG, and CMS state that because their companies are excluded from this list, they are not proper Defendants. Plaintiffs argue that even though VRS, ASG, and CMS may not have authored the notices, they are "using" the notices, and according to the 15 U.S.C. § 1692e, "[a] debt collector may not use any false,

deceptive, or misleading representation or means in connection with collection of a debt." 15 U.S.C. § 1692e. Plaintiffs allege that by simply allowing the Privacy Notice to be included with their correspondence, ASG, VRS, and CMS have used the Privacy Notice. Further, because the Privacy [*21] Notice has alleged violations of the FDCPA, VRS, ASG, and CMS should be liable for the information contained in the notices. ASG and CMS further contend that they did not communicate to any third parties in connection with the collection of a debt, so according to them, if there were any violations, they could only be sustained as to § 1692e.

The Seventh Circuit has found that [HN14] minimal participation by a debt collector in the collection process may impute liability under the FDCPA upon that debt collector. Peters v. AT&T, 43 F. Supp. 2d 926 (N.D, Ill March 30, 1999) (quoting "the preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation"). White v. Goodman, 41 F. Supp. 2d 794 (N.D. Ill. 1998). Furthermore, to assess liability, courts have examined whether the collection agency's function was more of a mailing service or if its duties were more typical to a collection services company. Id. Even in the legislative commentary describing the intent of the FDCPA, it is clear that a debt collector may not imply that a third party may take action unless such action is legal. 53 Fed. Reg. 50097, 20106 (Dec. 13, 1988). [*22]

Here, VRS, ASG, and CMS did have at least minimal participation in Plaintiffs' debt collection process. VRS, ASG, and CMS included the Privacy Notices in their correspondence and they, therefore, should be responsible for the violation that may be contained therein. Sherman Defendants imply that they may share information and because Sherman Defendants' liability has not yet been determined, we cannot conclusively state at this time whether VRS, ASG and CMS have adopted such illegal implications. Once this step is completed, then the liability surrounding VRS, ASG, and CMS can be properly assessed and determined whether these companies are jointly responsible for the Privacy Notice's effect. Therefore, the above discussion regarding all claims will apply also to VRS, ASG, and CMS.

### Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. As to 15 U.S.C. § 1692d(3) and d(4) Defendants' 12(b)(6) Motion to Dismiss is granted. As to 15 U.S.C. § 1692c(b), § 1692c(5) and § 1692e(10) Sherman Defendants 12(b)(6) Motion to Dismiss is denied.

**ENTER:**

2004 U.S. Dist. LEXIS 25106, *

**SENIOR** [*23] **UNITED STATES DISTRICT JUDGE**

Paul Plunkett

**DATED: DEC 9 2004**

# EXHIBIT C

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 41528**

*2005 U.S. Dist. LEXIS 41528, \**

IRENE CHAPMAN, Plaintiff, v. WORLDWIDE ASSET MANAGEMENT, L.L.C. and WORLDWIDE ASSET PURCHASING, L.L.C., Defendants.

No. 04 C 7625

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2005 U.S. Dist. LEXIS 41528

April 6, 2005, Decided
April 6, 2005, Filed

**SUBSEQUENT HISTORY:** Class certification granted by Chapman v. Worldwide Asset Mgmt., L.L.C., 2005 U.S. Dist. LEXIS 18881 (N.D. Ill., Aug. 30, 2005)

**CORE TERMS:** notice, privacy, collector, disclosure, motion to dismiss, collection, consumer, collect a debt, plead, customer, qualification, collecting, mail, third parties, disclose, opt, legal basis, dissemination, defaulted, telephone, Bliley Act, personal information, nonaffiliated, conformity, nonpublic, deceptive, sentences

**COUNSEL:** [\*1] For Irene Chapman, Plaintiff: Daniel A. Edelman, Cathleen M. Combs, Derek B Rieman, James O. Latturner, John D Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Worldwide Asset Management, LLC and Worldwide Asset Purchasing, LLC., Defendants: David Luther Hartsell, Brian Patrick O'Meara, McGuire Woods LLP, Chicago, IL.

**JUDGES:** Honorable William T. Hart, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** William T. Hart

**OPINION: MEMORANDUM OPINION AND ORDER**

Plaintiff Irene Chapman alleges that a notice she received regarding defendants' privacy policy -- that is defendants' policy regarding sharing information about plaintiff -- was part of an attempt to collect a debt. Plaintiff contends that statements in the privacy policy violate provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiff brings this action as a putative class action. Defendants Worldwide Asset Management, L.L.C. ("WAM") and Worldwide Asset Purchasing, L.L.C. ("WAP") move to dismiss the complaint.

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn [\*2] in the plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1008 (7th Cir. 2002); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir.

2000), cert. denied, 531 U.S. 1073, 121 S. Ct. 765, 148 L. Ed. 2d 666 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendants have at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); [*3] Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to plead specific facts, a plaintiff can plead himself or herself out of court by alleging facts showing there is no viable claim. See Slaney v. Int'l Amateur Ath. Fed'n, 244 F.3d 580, 597 (7th Cir.), cert. denied, 534 U.S. 828, 122 S. Ct. 69, 151 L. Ed. 2d 35 (2001); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998), cert. denied, 525 U.S. 1114, 119 S. Ct. 890, 142 L. Ed. 2d 788 (1999); Jackson, 66 F.3d at 153-54. Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached [*4] to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). Where the document may properly be considered, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir.1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 U.S. Dist. LEXIS 5056, 2003 WL 1720030 *8 (N.D. Ill. March 31, 2003). [*5] A plaintiff is not bound by legal characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Plaintiff alleges that "WAM purchases for collection defaulted consumer receivable accounts" and that "the principal business purpose of WAM is the purchase and collection of consumer debts by the use of the mail and telephone." It is also alleged that WAM "directs, controls and is actively involved in the business affairs of WAP." It is claimed that WAM is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6). It is alleged that WAP's "principal [*6] purpose . . . is the collection of defaulted consumer debts by the use of the mail and telephone." WAP is also claimed to be a debt collector as defined by the FDCPA.

Plaintiff alleges that, during 2003 and 2004, she received a series of collection letters sent by or on behalf of WAM and WAP. The letters pertained to an alleged credit card debt. Along with one or more of the collection letters, plaintiff received a document entitled "Worldwide Asset Management, L.L.C. Privacy Policy and Notice." n1 The notice states that "we collect nonpublic personal information about you including . . . Information we receive from you on applications or other . . . documents; Information about your transactions with us . . . or others; and Information we receive from a consumer reporting agency." It is further stated that "we" may disclose this information to third parties, including financial service providers, retailers, and direct marketers. "We may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law." It is also stated that, in order to

prevent such disclosure, the addressee must complete and mail in a form requesting to opt out.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 A copy of the privacy notice is attached to the Complaint.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*7]**

The title of the privacy notice includes WAM, but not WAP. The opt out form is to be sent to WAM. The first two sentences of the privacy notice state: "Worldwide Asset Management, L.L.C., as master servicing agent for Worldwide Asset Purchasing, L.L.C. and in conformity with the Gramm-Leach-Bliley Act, has adopted a Privacy Policy to protect information that we have about our customers. This notice is to provide you with a description of our privacy policy."

WAP argues that it cannot be held responsible for the privacy policy notice because the title and mailing address for opt outs show that the notice is a document from WAM, not WAP. WAP ignores that the beginning sentences of the notice describe a policy of both WAM and WAP. The notice also states that WAM is acting as an agent for WAP. n2 The privacy notice itself does not conclusively establish that the notice was sent by WAM and that it was solely on behalf of WAM. The language of the notice is such that it could have been sent by or on behalf of either or both defendants. Therefore, on defendants' motion to dismiss, the allegations of the complaint that both defendants are responsible for the notice must presently be taken **[*8]** as true.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In the body of the Complaint, it is alleged that WAM controls and directs WAP, thereby indicating that WAP is an agent of WAM. In her answer brief, plaintiff argues, based on the language of the privacy notice, that WAM is an agent of WAP. In ruling on the motion to dismiss, it is unnecessary to resolve issues regarding principal-agent liability under the FDCPA.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiff's allegation that the privacy policy notice was sent along with a collection letter or other communication attempting to collect a debt must also be taken as true. That allegation is fully consistent with the notice itself which states in capitalized boldface letters: "Federal law requires us to advise you that this is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector."

Defendants also argue that neither defendant is adequately alleged to be a debt collector, particularly WAP, which purchases debts. Plaintiff, however, alleges that both defendants are **[*9]** in the business of collecting debts. WAM is alleged to both purchase and collect debts. There is no allegation that WAP purchases debts. Moreover, since plaintiff pleads no specific facts to the contrary, it is sufficient that plaintiff alleges that they are in the business of collecting debts. Molloy v. Primus Automotive Financial Services, 247 B.R. 804, 821 (C.D. Cal. 2000). Compare Montgomery v. Huntington Bank, 346 F.3d 693, 701 (6th Cir. 2003). Even the conclusorily allegations that both defendants are debt collectors as defined by the FDCPA would have been sufficient absent specific allegations to the contrary. See McCormick v. City of Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000); Jackson, 66 F.3d at 153. But see Montgomery, 346 F.3d at 701 (6th Cir.). Furthermore, an entity that purchases the debts of

others when the debts are already in default may qualify as a debt collector. See Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536-37 (7th Cir. 2003). It has been sufficiently alleged that defendants are debt collectors.

Defendants contend the privacy policy notice cannot **[*10]** constitute a violation of the FDCPA because it is in conformity with the Gramm-Leach-Bliley Act ("GLB"), 15 U.S.C. § 6801 et seq., which generally applies to disclosure of customer information by financial institutions. They also argue that there can be no violation of the FDCPA because it is not alleged that any actual disclosure of plaintiff's information occurred.

It is true that the Complaint does not expressly allege any actual disclosure, though such an allegation would not be inconsistent with the allegations of the complaint. In response to the motion to dismiss, however, plaintiff still does not contend there was any actual disclosure. Instead, plaintiff argues that the threat of a possible disclosure was sufficient to constitute a violation of the FDCPA. Plaintiff relies on 15 U.S.C. §§ 1692e(5) & (10). Those subsections provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (5) The threat to take any action **[*11]** that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Since the privacy policy notice was part of an attempt to collect a debt from plaintiff, representations therein that defendants would take actions prohibited by the FDCPA would themselves constitute a violation of the FDCPA regardless of whether defendants thereafter actually engaged in such conduct. Blair v. Sherman Acquisition, 2004 U.S. Dist. LEXIS 25106, 2004 WL 2870080 *6-7 (N.D. Ill. Dec. 13, 2004); Stewart v. Asset Acceptance LLC, No. 04 CV 1213, 6-8 (S.D. Ind. Nov. 19, 2004).

Except as permitted by sections 1692c(b) and 1692b, a debt collector may not communicate with a third party regarding a consumer's debt. The privacy policy notice states that defendants will engage in communications other than the type permitted by the aforementioned sections of the FDCPA. n3 Also, inconsistent with the FDCPA provisions which require that the debt collector obtain actual permission from the customer before disseminating certain information, the privacy policy provides **[*12]** that the customer must affirmatively act to prevent dissemination. Defendants' privacy policy contains provisions that would violate the FDCPA. Blair, 2004 U.S. Dist. LEXIS 25106, 2004 WL 2870080 at *3-4; Stewart, supra, at 6-8. As previously discussed, by seeking to collect on a debt while notifying plaintiff that they may take such actions, defendants violated § 1692e. Blair, 2004 U.S. Dist. LEXIS 25106, 2004 WL 2870080 at *6-7; Stewart, supra, at 6-8.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Defendants contend there is no violation because they added the qualification that they

would only disclose "as permitted by law." That qualification, however, is only stated to apply to disclosures to "nonaffiliated third parties." Moreover, an unsophisticated consumer is not expected to know there is a law that prevents defendants from performing the disclosures they otherwise indicate they will perform. This qualification does not prevent a violation of § 1692e. See Blair, 2004 U.S. Dist. LEXIS 25106, 2004 WL 2870080 *6-7.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendants contend there can be no violation of the FDCPA **[*13]** because the dissemination of such information and the opt-out requirement are consistent with the GLB. Just because conduct does not violate one statute does not automatically mean that the conduct does not violate other statutes. Defendants point to no reason why the GLB should be considered to have amended the FDCPA so as to delete some of its provisions. The FDCPA pertains specifically to communications related to debt collecting; the GLB does not. There is no basis for holding that the previously discussed provisions of the FDCPA are inapplicable to the privacy policy notice sent by defendants.

Plaintiff has adequately alleged a violation of the FDCPA.

IT IS THEREFORE ORDERED that defendants' motion to dismiss [7] is denied. Within 14 days, defendants shall answer the complaint. Within 30 days, plaintiff shall move for class certification.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: APRIL 6, 2005

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 41528**
View: Full
Date/Time: Wednesday, July 26, 2006 - 4:38 PM EDT

* Signal Legend:
🌐 - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case



About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MELVIN T. STEWART, individually            )
and as next friend of THELMA R. STEWART,   )
                    Plaintiff,             )
                                           )
            v.                             )        1:04-cv-1213-LJM-VSS
                                           )
ASSET ACCEPTANCE LLC,                      )
                    Defendant.             )

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is now before the Court on the Defendant's Motion to Dismiss. Defendant, Asset

Acceptance LLC ("Asset"), contends that plaintiff, Melvin T. Stewart, individually and as next friend

of Thelma R. Stewart ("Stewart"), failed to state a claim upon which relief can be granted in his

complaint. Stewart asserts that Asset violated the Fair Debt Collection Practices Act ("FDCPA")

in the privacy notice attached to a collection letter he received. Asset states that the privacy notice

is in compliance with the Gramm-Leach-Bliley Act, and that there has been no actual violation of

the FDCPA.

For the reasons discussed herein, the Court finds that Plaintiff's complaint is sufficient to

state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to

Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED**

with respect to claims under § 1692c or § 1692d.

## I. FACTS ALLEGED IN COMPLAINT

Stewart alleges that Asset is a debt collector under the FDCPA. (Compl. at ¶ 7). Asset is

in the business of buying bad debts allegedly owed by consumers, including credit card debts, for

a fraction of face value and then enforcing the debts against the consumers. (Compl. at ¶ 6).

On or about December 8, 2003, Asset sent Thelma Stewart a letter that sought to collect an alleged debt incurred for personal, family, or household use. (Compl. at ¶¶ 13, 15). Melvin Stewart, Ms. Stewart's son, received the letter because he handles his mother's affairs under a power of attorney. (Compl. at ¶¶ 4, 14). The letter contained a collection demand with a notice of the privacy and information disclosure practices of Asset on the back. (Compl. at ¶ 17).

The privacy notice states "We collect nonpublic personal information about you" from "applications or other forms," "your transactions with us, prior owners of your account, our affiliates, or others," and "a consumer reporting agency." (Compl. at ¶ 18, Ex. A). The plaintiff alleges that this information is integrally related to debt collection. (Compl. at ¶19). The privacy notice then states that the information may be disclosed to third parties including "financial service providers such as credit grantors, collection agencies and debt buyers" and that Asset "may disclose nonpublic personal information about you to affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl. at ¶ 20, Ex A).

Stewart alleges that many of these disclosures would be prohibited by the FDCPA because they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶ 21). Stewart contends that several of the listed uses of the nonpublic personal information would amount to publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. (Compl. at ¶ 22). Stewart argues that both activities would be a violation of the FDCPA if they were actually to occur, and Stewart alleges that Asset violates 15 U.S.C. §1692e merely in stating that it would engage in these

2

activities or has the right to do so. (Compl. at ¶ 21, 22). Stewart claims that inclusion of such statements in a debt collection letter amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid. (Compl. at ¶ 25).

The privacy notice contains an invitation to "opt-out" of disclosures of personal information and directs Stewart to call or mail a form to Asset "if [the consumer] prefer that we not disclose nonpublic personal information . . . to nonaffiliated third parties . . . ." (Compl. at ¶ 24, Ex. A). Plaintiff concludes that this procedure is a misstatement of consumer's rights and, therefore, a violation of 15 U.S.C. 1692e. The misstatement occurs because under 15 U.S.C. 1692c, the consumer must grant express permission directly to the debt collector before the debt may be disclosed to anyone other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." *Id.*

Stewart brings this suit as a class action on behalf of a class of people with addresses in Indiana, Illinois, or Wisconsin who received the same privacy notice. (Compl. at ¶¶ 26-27).

## II. RULE 12(B)(6) STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal for "failure to state a claim upon which relief may be granted." *United States v. Clark County, Indiana*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000). When considering a motion under this rule, the Court must examine the sufficiency of plaintiff's complaint, not the merits of the lawsuit. *Id.* The Court shall accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Id.* Dismissal under Rule 12(b)(6) is proper only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Chavez v. Ill. State Police*, 251 F.3d 612,

3

648 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Id.* (quoting *Veazey*, 194 F.3d at 854).

Stewart attached six exhibits to his Response to Defendant's Motion to Dismiss that were not attached to the complaint. (Pl.'s Resp., Ex. A, B, C, D, E, F). Where the parties submit material outside of the pleadings, the Court is obligated to either not consider the extraneous submissions in ruling on the motion or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

The Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment, and accordingly, the exhibits attached to Plaintiff's Response and references to the exhibits in the Response are excluded from the Court's consideration.

## III. DISCUSSION

Stewart's complaint is sufficient to invoke the FDCPA, which requires that the challenged action be taken by a "debt collector" in connection with the collection of a "debt." 15 U.S.C. § 1692a. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[1] 15 U.S.C. § 1692a(6). Stewart states that Asset is a "debt

---

[1] The statutory definition of debt collector does enumerate six exceptions to the definition, however Stewart's complaint does not allege that Asset falls within any of these exceptions.

4

collector" as defined above, and that it is engaged in the business of buying bad debts allegedly owed by consumers and enforcing the debts. (Compl. at ¶ 6-7).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Stewart states that the alleged debt was incurred by an individual for personal, family or household use. (Compl. at ¶ 15).

Finally, Stewart states that the letter which contained the privacy notice sought to collect a debt. (Compl. ¶ 15). The letter, attached to the complaint, and therefore part of the pleadings, states in bold print before the signature, "This is an attempt to collect a debt and any information obtained will be used for that purpose." (Compl., Ex. A). Stewart's complaint is sufficient to allege that the challenged action was performed in connection with the collection of a debt; the next question is whether the complaint is sufficient to state a violation of the FDCPA upon which relief could be granted.

Stewart does not allege any actual violation of 15 U.S.C. §1692c or §1692d. Asset's privacy notice states that it collects and may disclose certain nonpublic personal information to third parties including "[f]inancial service providers such as credit grantors, collection agencies and debt buyers" as well as "affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl., Ex. A.). Stewart alleges that some of these disclosures would amount to publication of a list of debtors, which is defined as "harassment" and a violation of 15 U.S.C. § 1692d. (Compl. at ¶¶ 10, 20, 22). Similarly, Stewart alleges that disclosure of personal information to some of the third parties listed in Asset's privacy notice would be a violation of 1692c, which prohibits

5

communication "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶¶ 9, 20-21). Although Stewart alleges that "actual publication of such lists would violate 15 U.S.C. §1692d . . . " and "[a]ctual disclosures of this nature would violate 15.U.S.C. §1692c . . . ," Stewart claims no actual disclosures in violation of the FDCPA. To the extent that Stewart's complaint attempted to claim relief under 15 U.S.C. § 1692c or § 1692d, those claims are dismissed.[2]

However, Stewart says that Asset's mere assertion that it has the right to make such disclosures or publish such lists violates 15 U.S.C. §1692e.

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ***
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. Stewart highlights two of the specifically enumerated violations of this section, subsections (5) and (10). Stewart alleges two potential violations of the section: the privacy notice's assertion of the right to make third party disclosures of the consumer's nonpublic personal

---

[2] This includes Stewart's assertions in the complaint that Asset engages in the practice of selling lists of consumers who have not paid their debts to subprime credit card companies who then offer to issue a card to the consumer if they will put some or all of the unpaid debt on the card. While this may constitute a violation of §1692d, Stewart does not allege that his or his mother's names have been sold on any such list, and therefore does not state any violation of the act. Any additional claim regarding violation of §1692d is dismissed.

information and the privacy notice's opt-out procedure.

As mentioned above, Stewart alleges that by saying that it collects and may disclose information to certain affiliated and nonaffiliated third parties, Asset is implicitly threatening to take such action, or publish lists of consumers with debts if the consumer does not pay. Because these actions "would be" violations of the FDCPA, Stewart states that these are threats to take an action that cannot legally be taken under § 1692e(5).

Stewart also points to the "opt-out" procedure described in Asset's privacy notice as a false representation. Asset's notice states that in order to decline information sharing with nonaffiliated third parties, the debtor must call a toll free number or fill out a form at the bottom of the letter and mail it to Asset. The form has a box to check that says "I wish to exercise my rights to opt out of certain third-party information sharing, as described in this privacy notice." The form then asks for the debtor's name, phone number, and address "to change our records to accurately reflect your desire to opt out."

Stewart contends that this procedure is a misrepresentation because it is an inaccurate statement of a consumer's rights under 15 U.S.C. § 1692c:

> (b) Communication with third parties. Except as provided by § 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[3]

Asset's notice asks a consumer to opt-out of disclosure, rather than give prior consent directly

---

[3] The exception in § 1692b refers to communication with a person other than the consumer for the purpose of acquiring information to locate the consumer, and limits the scope of such communications.

7

to the debt collector before any such disclosure could occur. In light of the clear statement on the front of the letter that it "is an attempt to collect a debt and any information obtained will be used for that purpose," and the fact that the opt-out provision asks for information from the consumer under an alleged misstatement of the consumer's rights, Stewart's complaint is sufficient to state a claim upon which relief could be granted under § 1692e(10), prohibiting the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Asset's contention that the privacy notice comports with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 ("GLB"), is irrelevant to its Motion to Dismiss. Stewart's complaint does not allege a violation of 15 U.S.C. § 6801, but alleges that Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Asset's assertions about the GLB are in the nature of an affirmative defense to Stewart's claim. "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Britsol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). When a valid, unmistakable defense is obvious from the face of the complaint so as to render the suit frivolous, the suit can be dismissed before defendant raises the defense in its answer. *See Walker v. Thompson*, 288 F.3d 1005, 1009-1010 (7th Cir. 2002). The FDCPA provides for an affirmative defense. A debt collector is not liable if it shows "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Stewart's complaint does not admit the elements of this defense for Asset. Moreover, it is not "unmistakable" that alleged compliance with the GLB would establish that any FDCPA violation was unintentional error

or that Asset had any procedures in place to avoid such error.

Without getting into the merits of the case, the Court finds that the pleadings are sufficient to state a claim upon which relief could be granted under the FDCPA.

## IV. CONCLUSION

For the reasons discussed herein, the Court finds that plaintiff's, Melvin T. Stewart, individually and as next friend of Thelma R. Stewart, complaint is sufficient to state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED** with respect to claims under § 1692c or §1692d.

IT IS SO ORDERED this 19th day of November, 2004.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Cathleen Maria Combs
EDELMAN, COMBS, LATTURNER LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER LLC
courtecl@aol.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

# EXHIBIT E

1. BALBONI, JEANNE M, 0456SC5010, 10/13/2004, JUDGMENT, JUDGMENT - QUINCY DISTRICT COURT, NORFOLK COUNTY, MASSACHUSTTS
**SHERMAN ACQUISITION** II

2. BOYCE, KATHLEEN E, 0362SC4437, 8/6/2004, JUDGMENT, JUDGMENT - WORCESTER DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

3. BROWN, RUSSELL A (AKA), 0428CV261, 1/27/2005, JUDGMENT, JUDGMENT - NORTH ADAMS DISTRICT COURT, BERKSHIRE COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

4. BROWN, RUSSSLE A, 0428CV261, 1/27/2005, JUDGMENT, JUDGMENT - NORTH ADAMS DISTRICT COURT, BERKSHIRE COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

5. CARDINAL, PATRICIA A, 0417SC258, 10/5/2004, JUDGMENT, JUDGMENT - HOLYOKE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

6. CONLEY, MICHELLE E, 0520SC202, 4/22/2005, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

7. COTTO, JOSE A, 0443SC184, 2/2/2005, JUDGMENT, JUDGMENT - PALMER DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

8. CRUZ, JUAN, 0464SC1104, 8/4/2004, JUDGMENT, JUDGMENT - DUDLEY DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

9. DAIGLE, DORENE A, 0563SC35, 6/21/2005, JUDGMENT, JUDGMENT - GARDNER DISTRICT COURT, WORCESTER COUNTY, MASSACUSETTS
**SHERMAN ACQUISITION** II

10. DAVIS, ELIZABETH A, 2500518SC723, 6/24/2005, JUDGMENT, JUDGMENT - LAWRENCE DISTRICT COURT, ESSEX COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

11. DEJESUS, WANDA L, 0416CU395, 12/8/2004, JUDGMENT, JUDGMENT - FITCHBURG DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION LTD**

12. DETERRA, MICHELLE D, 0433SC180, 2/27/2004, JUDGMENT, SATISFIED, JUDGMENT - NEW BEDFORD DISTRICT COURT, BRISTOL COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD
5/27/2005

13. DOCKERY, TRACY, 0420CV821, 1/27/2005, JUDGMENT, JUDGMENT - SPRINGFIELD SUPERIOR COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

14. DUDLEY, JAIME, 0362SC6069, 11/8/2004, JUDGMENT, JUDGMENT - WORCESTER DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTNSP

15. DUDLEY, JAIME, 200362SC6069, 11/8/2004, JUDGMENT, JUDGMENT - WORCESTER DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LP

16. GAGNE, TAMMY E, 04SC201, 10/22/2004, JUDGMENT, JUDGMENT - MILFORD DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II LP

17. GAYLORD, MARY E, 0427SC1496, 11/18/2004, JUDGMENT, JUDGMENT - PITTSFIELD DISTRICT COURT, BERKSHIRE COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

18. GOODROW, MICHELLE, 0520SC202, 4/22/2005, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

19. GOVINE, VINCENT E, 0443SC135, 1/28/2005, JUDGMENT, JUDGMENT - PALMER DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

20. GULLETT, MARY J, 05SC211, 2/17/2005, JUDGMENT, SATISFIED, JUDGMENT - HINGHAM DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II
5/13/2005

21. HAWLEY, THERESA, 0423CV1581, 9/30/2004, JUDGMENT, JUDGMENT - SPRINGFIELD SUPERIOR COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LP

22. KERN SR, MICHAEL G, 0411SC318, 11/29/2004, JUDGMENT, JUDGMENT - LOWELL DISTRICT COURT, MIDDLESEX COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

23. KERSHAW, HARRY J, 0432SC778, 5/21/2004, JUDGMENT, SATISFIED, JUDGMENT - FALL RIVER DISTRICT COURT, BRISTOL COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II
2/22/2005

24. LEBLANC, FRANCINE M, 0456SC4672, 9/22/2004, JUDGMENT, JUDGMENT - QUINCY DISTRICT COURT, NORFOLK COUNTY, MASSACHUSTTS
**SHERMAN ACQUISITION**

25. LISENO, DENISE A, 0462SC1077, 2/14/2005, JUDGMENT, JUDGMENT - WORCESTER DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTNSHP

26. MALAVE, FELIX, 0515SC842, 5/3/2005, JUDGMENT, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

27. MANSFIELD, SUSAN E, 0456SC5009, 10/13/2004, JUDGMENT, JUDGMENT - QUINCY DISTRICT COURT, NORFOLK COUNTY, MASSACHUSTTS
**SHERMAN ACQUISITION** II

28. MARIANI, CHAD, 200423SC1460, 5/23/2005, JUDGMENT, JUDGMENT - SPRINGFIELD DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II LP

29. MARTIN, CHRIS M, 0520SC203, 4/22/2005, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

30. MCILVIN, RONALD K, 0426SC881, 9/17/2004, JUDGMENT, JUDGMENT - ORLEANS DISTRICT COURT, BARNSTABLE COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

31. MEDEIROS, ELIZABETH M, 0531SC364, 5/26/2005, JUDGMENT, JUDGMENT - TAUNTON DISTRICT COURT, BRISTOL COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

32. MENDONSA, MARKA M, 0427CV410, 10/6/2004, JUDGMENT, JUDGMENT - PITTSFIELD DISTRICT COURT, BERKSHIRE COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

33. NWANKPA, MARY, 0411SC1036, 9/20/2004, JUDGMENT, JUDGMENT - LOWELL DISTRICT COURT, MIDDLESEX COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTNSP

34. PAINTER, VANESSA, 0459SC1573, 10/15/2004, JUDGMENT, JUDGMENT - PLYMOUTH DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PART

35. ROBINSON, RAMONA E, 0423SC410, 12/7/2004, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LP

36. ROSSI, JODY B, 0559SC71, 3/22/2005, JUDGMENT, SATISFIED, JUDGMENT - PLYMOUTH DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II
6/28/2005

37. RUIZ, YASMIN M, 0411SC3101, 3/14/2005, JUDGMENT, JUDGMENT - LOWELL DISTRICT COURT, MIDDLESEX COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II LTD

38. SILVA, OLIVIA, 0533SC440, 3/28/2005, JUDGMENT, JUDGMENT - NEW BEDFORD DISTRICT COURT, BRISTOL COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PART

39. SPILLANE, DANIEL R, 0415SC3301, 12/20/2004, JUDGMENT, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

40. SPILLANE, DANIEL R, 0415SC3301, 12/20/2004, JUDGMENT, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

41. STROM, NICOLE L, 0520SC246, 5/13/2005, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** II

42. SWITTENBURG, CAROLYN, 0423SC409, 12/7/2004, JUDGMENT, JUDGMENT - CHICOPEE DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LP

43. TANGUAY, MARY E, 0444SC188, 8/30/2004, JUDGMENT, JUDGMENT - WESTFIELD DISTRICT COURT, HAMPDEN COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

44. THRASHER JR, DAVID, 0415SC3300, 12/20/2004, JUDGMENT, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

45. THRASHER JR, DAVID, 0415SC3300, 12/20/2004, JUDGMENT, SATISFIED, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTR
**4**/14/2005

46. THRASHER JR, DAVID, 0415SC3300, 12/20/2004, JUDGMENT, JUDGMENT - BROCKTON DISTRICT COURT, PLYMOUTH COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

47. TURNER, JONATHAN R, 0464SC1742, 11/10/2004, JUDGMENT, JUDGMENT - DUDLEY DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION**

48. VINCEQUERE, ERIC, 0462SC1624, 3/4/2005, JUDGMENT, JUDGMENT - WORCESTER DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

49. WEAVER, TRACY, 0531SC363, 5/26/2005, JUDGMENT, JUDGMENT - TAUNTON DISTRICT COURT, BRISTOL COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

50. WILSON, JONATHAN D, 0462CU322, 9/24/2004, JUDGMENT, JUDGMENT - FITCHBURG DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTNSP

51. WILSON, JONATHAN D, 0462CU322, 9/24/2004, JUDGMENT, JUDGMENT - FITCHBURG DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD PTNSP

52. XARRAS, HARRY J, 0416CU394, 12/8/2004, JUDGMENT, JUDGMENT - FITCHBURG DISTRICT COURT, WORCESTER COUNTY, MASSACHUSETTS
**SHERMAN ACQUISITION** LTD

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
| GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746) that the following statements are true:

**1.** Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

**2.** **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer

L.Rptr. 14 (1994); author of <u>Current Trends in Residential Mortgage Litigation</u>, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of <u>Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers</u>, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, <u>Attorney Liability Under the Fair Debt Collection Practices Act</u> (Chicago Bar Ass'n 1996); author of <u>The Fair Debt Collection Practices Act:  Recent Developments</u>, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).   He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois.

       **3.**      **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School.  She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs & Latturner in early 1991.  Decisions in which she was involved prior to joining the firm include:  <u>Johnson v. Heckler</u>, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); <u>Sanders v. Shephard</u>, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); <u>Maller v. Cohen</u>, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); <u>Wright v. Department of Labor</u>, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); <u>Barron v. Ward</u>, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); <u>City of Chicago v. Leviton</u>, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); <u>Jude v. Morrissey</u>, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983).

       **4.**      **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in <u>Federal Practice Manual for Legal Services Attorneys</u> (M. Masinter, Ed., National Legal Aid and Defender Association 1989); <u>Governmental Tort Immunity in Illinois</u>, 55 Ill.B.J. 29 (1966); <u>Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations</u>, 2 Loy.Consumer L.Rep. 64 (1990), and <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme

Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.

      **5.**      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1ˢᵗ Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1ˢᵗ Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803) (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.IL 1996).

      **6.**      **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc , 169 F.3d 1057 (7ᵗʰ Cir.1999); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc , 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc , 753 N.E.2d 572 (Ind. 2001); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc , 1998 WL 299803 (N.D. Ill. 1998).

      **7.**      **Jeremy P. Monteiro** is a graduate of St. John's University (B.A., 1999) and DePaul University College of Law (J.D., magna cum laude, 2003). Associate Editor, DEPAUL LAW REVIEW, 2003. His publications include: A Profile in Courage: The Bipartisan Campaign Reform Act of 2002 and the First Amendment, 52 DEPAUL L. REV. 83 (2002). Some of his reported decisions include: Briggs v. Provident Bank, 349 F. Supp. 2d 1124, 2004 U.S. Dist. LEXIS 25819 (N.D. Ill. 2004); Tremble v. Town & Country Credit Corp., 05 C 2625, 2006

U.S. Dist. LEXIS 1835 (N.D. Ill. Jan. 18, 2006); <u>Asbury v. People's Choice Home Loan</u>, 05 C 5483, 2006 U.S. Dist. LEXIS 6619 (N.D. Ill. Feb. 15, 2006); <u>Hernandez v. Chase Bank USA, N.A.</u>, 05 C 5274, 2006 U.S. Dist. LEXIS 28853 (N.D. Ill. May 2, 2006); <u>Bonner et al. v. Home 123 Corp. et al.</u>, 2:05-cv-146, 2006 U.S. Dist. LEXIS 37922 (N.D. Ind. May 25, 2006); <u>Shellman v. Countrywide Home Loans, Inc.</u>, 1:05-cv-234, 2006 U.S. Dist. LEXIS 35816 (N.D. Ind. June 1, 2006). He joined the firm in 2004.

**8.**    The firm also has 15 legal assistants, as well as other support staff.

**9.**    Since its inception, the firm has recovered more than $500 million for consumers.

**10.**    The types of cases handled by the firm are illustrated by the following:

**11.    Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. Decisions in these cases include: <u>Christakos v. Intercounty Title Co.</u>, 196 F.R.D. 496 (N.D.Ill. 2000); <u>Johnstone v. Bank of America, N.A.</u>, 173 F.Supp.2d 809 (N.D.Ill. 2001); <u>Leon v. Washington Mut. Bank, F.A.</u>, 164 F.Supp.2d 1034 (N.D.Ill. 2001); <u>Williamson v. Advanta Mortg. Corp.</u>, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); <u>McDonald v. Washington Mut. Bank, F.A.</u>, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill. Apr. 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); <u>Greenberg v. Republic Federal S. & L. Ass'n</u>, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

**12.**    The recoveries in the escrow overcharge cases alone are over $250 million. <u>Leff</u> was the seminal case on mortgage escrow overcharges.

**13.**    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

**14.    Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

**a.**    Hidden finance charges resulting from pass-on of discounts on auto

4

purchases.  <u>Walker v. Wallace Auto Sales, Inc.</u>, 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

    **b.**  Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); <u>Slawson v. Currie Motors Lincoln Mercury, Inc.</u>, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); <u>Cirone-Shadow v. Union Nissan, Inc.</u>, 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U S Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); <u>Chandler v. Southwest Jeep-Eagle, Inc.</u>, 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); <u>Shields v. Lefta, Inc.</u>, 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

    **c.**  Spot delivery.  <u>Janikowski v. Lynch Ford, Inc.</u>, 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.</u>, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994);  <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

    **d.**  Force placed insurance.  <u>Bermudez v. First of America Bank Champion, N.A.</u>, 860 F.Supp. 580 (N.D.Ill. 1994); <u>Travis v. Boulevard Bank</u>, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); <u>Moore v. Fidelity Financial Services, Inc.</u>, 884 F. Supp. 288 (N.D.Ill. 1995).

    **e.**  Improper obligation of cosigners. <u>Lee v. Nationwide Cassell</u>, 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.</u>, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

    **f.**  Evasion of FTC holder rule.  <u>Brown v. LaSalle Northwest Nat'l Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N D Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

   **15.**  These cases also had a substantial effect on industry practices.  The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

   **16.**  **Predatory lending practices**:  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001);  <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001);  <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex.

2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

   **17.** **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

   **a.** Phony nonfiling insurance. <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

   **b.** The McCarran Ferguson Act exemption. <u>Autry v. Northwest Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

   **c.** Loan flipping. <u>Emery v. American General</u>, 71 F.3d 1343 (7th Cir. 1995). <u>Emery</u> limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

   **d.** Home improvement financing practices. <u>Fidelity Financial Services, Inc. v. Hicks</u>, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; <u>Heastie v. Community Bank of Greater Peoria</u>, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). <u>Heastie</u> granted certification of a class of over 6,000 in a home improvement fraud case.

   **e.** Arbitration clauses. <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

   **f.** Insurance packing. <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

   **18.** **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), <u>aff'd</u>, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994),

later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137
(N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995);
Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June
9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit
Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit
Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v.
Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of
America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni
Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v.
Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v.
PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876
(Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation
purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan
Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v.
Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security
Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

19.     Lundquist and Highsmith are leading cases; both held that commonly-used
lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal
Reserve Board completely revamped the disclosure requirements applicable to auto leases,
resulting in vastly improved disclosures to consumers.

20.     **Collection practices:** The firm has brought a number of cases under the
Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include:
Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995);
Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir.
1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996)
(class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998
U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997
U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147
F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc.,
1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d
739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996),
aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later
opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist.
LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill.
1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895
F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4,
1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock,
1999 U.S.Dist. LEXIS 3416 (N.D Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc.,
1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc.,
1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc.,
1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358
(N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994);

7

Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

    21.    Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

    22.    **Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

    23.    **Bankruptcy:** Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 99-2291 (1st Cir., October 27, 2000).

    24.    **Landlord-tenant**: The firm has brought a number of class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

    25.    Some of the other reported decisions in our cases include: Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc., 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court, 778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc., 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v. Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

    26.    Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

    Executed at Chicago, Illinois, on July 26, 2006.

                        _____
                        Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

8

120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)