**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
| GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this Fair

Debt Collection Practices Act ("FDCPA") action may proceed as a class action. This

Memorandum is submitted in support of that Motion.

**I.    NATURE OF THE CASE**

Plaintiff filed this class action under the Fair Debt Collection Practices Act, 15

U.S.C. §1692 et seq. ("FDCPA"). Plaintiff alleges that defendants send consumers standard

form collection letters Exhibit A to Amended Complaint that represent that defendants can or

will disclose the consumers' personal information in manners flatly prohibited by the FDCPA.

Defendants' letter stated that debtor information may be disclosed to other financial institutions.

This use of debtor information is prohibited by the FDCPA, which forbids

disclosure to persons other than "the consumer, his attorney, a consumer reporting agency if

otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt

collector," 15 U.S.C. §1692c(b), in the absence of prior express consent by the debtor.  The

actual disclosure violates §1692c(b), and the statement that defendants would make such

disclosures, or have the right to do so, violates 15 U.S.C. §1692e.  Plaintiff also alleges that

Defendants misrepresented that prior express consent is not necessary, and that Defendants'

disclosures amount to the publication of lists of persons who have allegedly refused to pay debts,

and either still have not paid or were ultimately induced to pay.

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt

collection practices by debt collectors."  15 U.S.C. §1692(e).  It is designed to protect consumers

from unscrupulous collectors, whether or not there is a valid debt.  Mace v. Van Ru Credit Corp.,

109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C.

Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45,

47 (5th Cir. 1992).  The FDCPA broadly prohibits unfair or unconscionable collection methods;

conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading

statements, in connection with the collection of a debt; it also requires debt collectors to give

debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the  --

**universal agreement among scholars, law enforcement officials, and even
debt collectors that the number of persons who willfully refuse to pay just
debts is minuscule [sic].  .  .  .   [T]he vast majority of consumers who obtain
credit fully intend to repay their debts.  When default occurs, it is nearly
always due to an unforeseen event such as unemployment, overextension,
serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes.  Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages.  Bartlett v. Heibl, 128 F.3d 497, 499  (7th Cir.1997); Baker, supra, 677 F.2d at 780-81; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001);  Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers . . . ." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly

comprehends them . . . ."  Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.

1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case.  The

"FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary

judgment for the plaintiff."  Cacace v. Lucas, 775 F. Supp. at 505.  Accord, Turner v. J.V.D.B.

& Associates, Inc., 330 F.3d 991, 995  (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233

F.3d 469, 472 (7th Cir.2000).

## III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court

stated in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist.

1991):

> **In a large and impersonal society, class actions are often the last barricade of
> consumer protection.  . . . To consumerists, the consumer class action is an
> inviting procedural device to cope with frauds causing small damages to
> large groups.  The slight loss to the individual, when aggregated in the coffers
> of the wrongdoer, results in gains which are both handsome and tempting.
> The alternatives to the class action   --  private suits or governmental actions
> --  have been so often found wanting in controlling consumer frauds that not
> even the ardent critics of class actions seriously contend that they are truly
> effective.  The consumer class action, when brought by those who have no
> other avenue of legal redress, provides restitution to the injured, and
> deterrence of the wrongdoer.**  (574 N.E.2d at 764, 766)

Classes have been certified in the following FDCPA cases based upon similar

allegations with respect to "Privacy Notices": Hernandez v. Midland Credit Management, Inc et

al., 04 C 7844, 2006 U.S. Dist. LEXIS 45833 (N.D. Ill. June 27, 2006)(Exhibit A); Chapman v.

Worldwide Asset Management, LLC, 04 C 7625, 2005 U.S. Dist. LEXIS 18881 (N.D. Ill. Aug.

30, 2005)(Exhibit B); Stewart v. Asset Acceptance, LLC, 1:04-cv-1213 (S.D. Ind. July 26,

2005)(<u>Exhibit C</u>).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases.  As a result, numerous FDCPA class actions have been certified.

<u>Pettway v. Harmon Law Offices, P.C.</u>, 03-cv-10932, 2005 U.S. Dist. LEXIS 21341 (D. Mass. Sept. 27, 2005); <u>Browder v. National Financial Systems, Inc.</u>, 05-cv-10464, slip op. (D. Mass. Mar. 17, 2005)(<u>Exhibit D</u>); <u>Shea v. Codilis</u>, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); <u>Roe v. Publishers Clearing House</u>, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999); <u>Vines v. Sands</u>, 188 F.R.D. 302 (N.D. Ill. 1999); <u>Nielsen v. Dickerson</u>, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); <u>Sledge v. Sands</u>,182 F.R.D. 255 (N.D. Ill. 1998); <u>Shaver v. Trauner</u>, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); <u>Davis v. Suran</u>, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July 31, 1998); <u>Francisco v. Doctors & Merchants Credit Service, Inc.</u>, 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill. July 29, 1998);<u>Keele v. Wexler & Wexler</u>, 95 C 3483, 1996 WL 124452,  1996 U.S. Dist. LEXIS 3253 (N.D. Ill. Mar. 18, 1996), <u>aff'd</u>, 149 F.3d 589 (7th Cir. 1998); <u>Wells v. McDonough</u>, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); <u>Miller v. Wexler & Wexler</u>, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); <u>Wilborn v. Dun & Bradstreet</u>, 180 F.R.D. 347 (N.D. Ill. 1998); <u>Arango v. GC Services LP</u>, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); <u>Avila v Van Ru Credit Corp.</u>,94 C 3234, 1995 WL 683775,  1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), <u>aff'd</u>, <u>Avila v. Rubin</u>, <u>supra</u>, 84 F.3d 222; <u>Carr v. Trans</u>

Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA

class certified regarding defendant Trans Union's transmission of misleading collection notices

to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist.

LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill.

1995) (similar);  Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F.

Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide

required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v.

Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action

challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA

class certified regarding transmission of misleading collection demands to consumers), earlier

opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607

(D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.    THE PROPOSED CLASS MEETS
##         THE REQUIREMENTS FOR CERTIFICATION

### A.    Rule 23(a)(1)  --  Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all

members is impracticable."  "When the class is large, numbers alone are dispositive . . . ."

Riordan, 113 F.R.D. at 62.  Where the class numbers at least 40, joinder is generally considered

impracticable.  Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648,

653 (4th Cir. 1967)(18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326,

1333 (7th Cir. 1969)(40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia

Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25

sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50

sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about

70).  It is not necessary that the precise number of class members be known.  "A class action

may proceed upon estimates as to the size of the proposed class." In re Alcoholic Beverages

Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169 (E.D.N.Y.

1986).

    The court may "make common sense assumptions in order to find support for

numerosity." Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983).

"[T]he court may assume sufficient numerousness where reasonable to do so in absence of a

contrary showing by defendant, since discovery is not essential in most cases in order to reach a

class determination . . . Where the exact size of the class is unknown, but it is general knowledge

or common sense that it is large, the court will take judicial notice of this fact and will assume

joinder is impracticable."  2 Newberg on Class Actions (3d ed. 1992), §7.22.A.

    Here, the statistics cited in Plaintiff's Motion for Class Certification make it

reasonable to infer that the number of class members exceeds the minimum necessary.

Swiggett v. Watson, 441 F. Supp. 254, 256 (D.Del. 1977)(in action challenging transfers of title

pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles

issued printed form for such transfer in and of itself sufficient to show that numerosity

requirement was satisfied); Westcott v. Califano, 460 F. Supp. 737, 744 (D.Mass. 1978)(in

action challenging certain welfare policies, existence of policies and 148 families who were

denied benefits to which policies applied sufficient to show numerosity, even though it was

impossible to identify which of 148 families were denied benefits because of policies

complained of); <u>Carr</u>, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant

Trans Union's transmission of misleading collection notices to consumers in which court inferred

numerosity from the use of form letters); <u>Colbert</u>, 1995 U.S. Dist. LEXIS 578 (same); <u>Keele</u>,

1996 U.S. Dist. LEXIS 3253.

      **B.**      **Rule 23(a)(2)  --  Commonality; and**
                          **Rule 23(b)(3) --  Common**
                          <u>**Questions of Law or Fact Predominate**</u>

      Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class

predominate over questions pertaining to individual members.

      These requirements are normally satisfied when there is an essential common

factual link between all class members and the defendant for which the law provides a remedy.

<u>Halverson v. Convenient Food Mart, Inc.</u>, 69 F.R.D. 331 (N.D. Ill. 1974).  Where a question of

law involves "standardized conduct of the defendants toward members of the proposed class, a

common nucleus of operative facts is typically presented, and the commonality requirement . . .

is usually met." <u>Franklin v. City of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>Patrykus v.

Gomilla</u>, 121 F.R.D. 357, 361 (N.D.Ill. 1988).   The authorities hold that cases dealing with the

legality of standardized  conduct are generally appropriate for resolution by means of a class

action because the document or conduct is the focal point of the analysis.  <u>Halverson</u>, 69 F.R.D.

331; <u>Haroco v. American Nat'l Bank</u>, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper

computation of interest); <u>Kleiner v. First Nat'l Bank</u>, 97 F.R.D. 683 (N.D.Ga. 1983) (same);

<u>Heastie</u>, 125 F.R.D. 669  (execution of home improvement financing documents in sequence that

evaded consumers' rescission rights).  This is true even though the nature and amount of

damages may differ among the members of the class.  Id.

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendants sent a form "privacy notice" to the entire class.  The dispositive issue -- indeed, the only issue -- is whether the contents of the document violate the FDCPA.

The only individual issue is the identification of the consumers to whom the privacy notice was sent.  This should be readily determinable from defendants' computer and other files.  Questions readily answerable from defendants' files do not present an obstacle to class certification.  Heastie v. Community Bank, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank");  Wilkinson v. F.B.I., 99 F.R.D. 148, 157 (C.D.Cal. 1983) ("a need for individual proof of damages would not preclude class certification. `The amount of damages is invariably an individual question and does not defeat class treatment.'");  Franklin, 102 F.R.D. at, 949 (similar).

**C.    Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition.  By definition, each of the class members has received the same "privacy notice" as the named Plaintiff.

### D.    Rule 23(a)(4) -- Adequacy of Representation

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class.  That protection involves two factors:  (a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiffs must not have interests antagonistic to those of the class.  Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative and has retained experienced counsel, as is indicated by Exhibit F to the Motion for Class Certification, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff is coincident with the general interests of the class.  Here, both plaintiff and the class members seek money damages as the result of defendants' unlawful collection letters.  Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action.  There is no antagonism between the interests of the named plaintiff and those of the class.

### E.    Rule 23(b)(3)  --  Class Action Is Superior to Other Available Methods of Resolving This Controversy.

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  Eovaldi v. First Nat'l Bank, 57 F.R.D.

545 (N.D. Ill. 1972).  The Court is required to determine the best available method for resolving

the controversy in keeping with judicial integrity, convenience, and economy.  Scholes, 143

F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a

court, in deciding the "best" available method, to consider the ". . . inability of the poor or

uninformed to enforce their rights, and the improbability that large numbers of class members

would possess the initiative to litigate individually."  Haynes v. Logan Furniture Mart, Inc., 503

F.2d 1161, 1165 (7th Cir. 1974).

        In this case there is no better method available for the adjudication of the claims

which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly

unaware that their rights are being violated.  In addition, persons from whom defendant is

attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to

retain counsel to protect their rights on an individual basis.

        The fact that there are large numbers of class members "is no argument at all"

against certification.  Carnegie v. Household Int'l, Inc., 376 F.3d 656 (7th Cir.  2004), slip

opinion at 6.  "The more claimants there are, the more likely a class action is to yield substantial

economies in litigation.  It would hardly be an improvement to have in lieu of this single class

action 17 million suits each seeking damages of $15 to $30. . . . The realistic alternative to a

class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a

fanatic sues for $30.  But a class action has to be unwieldy indeed before it can be pronounced an

inferior alternative  –  no matter how massive the fraud or other wrongdoing that will go

unpunished if class treatment is denied  – to no litigation at all."  Id.

        The special efficacy of the consumer class action has been noted by the courts and

is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. Zanni, 119 F.R.D. 32.

**V.    CONCLUSION**

The proposed classes meet the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

/s/ Jeremy P. Monteiro
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
     & GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
     Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI  02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

13

## CERTIFICATE OF SERVICE

        I, Jeremy P. Monteiro, hereby certify that on July 26, 2006, a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** was filed electronically.  Parties were served a copy of the filed document via the below listed methods.

Notified via the Court's electronic filing system:

Steven S. Broadley
sbroadley@pbl.com

Served via US Mail and Facsimile:

Michael S. Poncin
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

                     /s/ Jeremy P. Monteiro
                     Jeremy P. Monteiro (pro hac vice)

                     Daniel A. Edelman (pro hac vice)
                     Cathleen M. Combs (pro hac vice)
                     Jeremy P. Monteiro (pro hac vice)
                     EDELMAN, COMBS, LATTURNER
                         & GOODWIN LLC
                     120 S. LaSalle Street, 18th Floor
                     Chicago, Illinois  60603
                     (312) 739-4200
                     (312) 419-0379 (FAX)

                     Christopher M. Lefebvre
                     Law Offices of Claude Lefebvre & Sons
                     P.O. Box 479
                     Pawtucket, RI  02862
                     401-728-6060
                     401-728-6534 (Facsimile)
                     R.I. Bar No. 4019

14

# EXHIBIT A

2 of 9 DOCUMENTS

**FRANK HERNANDEZ, JR., Plaintiff, v. MIDLAND CREDIT MANAGEMENT, INC.; MRC RECEIVABLES CORPORATION; AND ENCORE CAPITAL GROUP, INC., FORMERLY KNOWN AS MCM CAPITAL GROUP, INC., Defendants.**

No. 04 C 7844

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 45833*

**June 27, 2006, Decided**
**June 27, 2006, Filed**

**PRIOR HISTORY:** *Hernandez v. Midland Credit Mgmt., 2006 U.S. Dist. LEXIS 10527 (N.D. Ill., Mar. 14, 2006)*

**COUNSEL:** [*1] For Frank N. Hernandez, Jr., Plaintiff: Derek B. Rieman, Cathleen M. Combs, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Midland Credit Management, Inc., MRC Receivables Corporation, Encore Capital Group Inc., Defendants: James William McConkey, Richard Eric Gottlieb, Margaret J. Rhiew, Renee Lynn Zipprich, Dykema Gossett PLLC, Chicago, IL.

**JUDGES:** REBECCA R. PALLMEYER, United States District Judge

**OPINIONBY:** REBECCA R. PALLMEYER

**OPINION:**

### MEMORANDUM OPINION AND ORDER

#### Judge Rebecca R. Pallmeyer

Plaintiff Frank N. Hernandez, Jr. received a dunning letter from Defendant Midland Credit Management, Inc. (hereinafter, "MCM"). Along with an offer to settle Hernandez's outstanding debt at a significant discount, the letter included a **privacy notice** that disclosed the possibility that MCM or its corporate parent, Defendant Encore Capital Group, Inc. (hereinafter, "Encore"), might share nonpublic information about Hernandez (gathered in the course of debt collection) with certain nonaffiliated third parties unless Hernandez took affirmative steps to prevent this.

Hernandez alleges that the disclosure of such information, or the threat of such disclosure, violates the Fair [*2] Debt Collection Practices Act, *15 U.S.C. § 1692 et seq* (hereinafter, "FDCPA") Hernandez moves for the certification of a class of Illinois debtors to whom Defendants sent this **privacy notice** between December 3, 2003 and December 23, 2004 and Wisconsin debtors to whom Defendants sent this **privacy notice** between January 11, 2004 and January 31, 2005. For the reasons explained here, Plaintiff's motion is granted.

### STATEMENT OF FACTS

This court recently set out much of the relevant background in its order denying Plaintiff's motion for judgment on the pleadings, *Hernandez v. Midland Credit Mgmt. Inc., 2006 U.S. Dist. LEXIS 10527, No. 04-7844, 2006 WL 695451, *1-2 (N.D. Ill. Mar. 14, 2006)*, but outlines the facts briefly here.

Roughly fifteen years ago, Illinois resident Hernandez obtained a credit card from Providian National Bank which he used for household purchases as well as car and hotel rentals. (Hernandez Dep. at 47-50.) Hernandez stopped making payments on this card in August 2000, (*id.* at 50,) and Providian, presumably, sold the defaulted debt sometime thereafter, although the exact date of that sale does not appear in the record. Plaintiff's reason [*3] for not paying Providian also does not appear in the record, but MRC Receivables Corp. (hereinafter, "MRC,") eventually acquired the Providian debt and contracted out collection to MCM. n1 (Memorandum in Support of Plaintiff's Motion for **Class Certification** (hereinafter, "Pltf's Mem.,") at Ex. A at 1.)

n1 MRC, a Delaware corporation with its principal place of business in California, (Def. MCM's Answer at 2), was originally named as a Defendant but has been dismissed by stipulation. Defendant MCM is a Kansas corporation with its

2006 U.S. Dist. LEXIS 45833, *

principal place of business in California. (*Id.*)

On November 14, 2004, MCM sent Hernandez a letter offering to settle his debt at a substantial discount n2 (*Id.*) The letter also included a form **privacy notice** generated by MCM's legal department. n3 (*Id.* at 2-3; Defendant Midland Credit Management, Inc.'s Response to Plaintiff's Interrogatories ( hereinafter, "Def. MCM's Resp. to Intrg.,") at 2.) The **privacy notice** states that Defendant Encore (the parent corporation of both [*4] MCM and MRC), n4 on behalf of its affiliates, including MCM, "is delivering this **Privacy Notice** so that you understand what nonpublic personal information we gather about you, how we use or share that nonpublic personal information, and the safeguards we have in place in order to protect that nonpublic personal information." (Pltf's Mem. at Ex. A at 3.) The **privacy notice** explains that:

> In connection with collection on, or servicing, your account, we collect nonpublic personal information about you from the following sources:
>
>> Directly from you, application or other forms (e.g., your name, address, social security number, telephone number and other information obtained from our communications with you);
>>
>> . From your account transactions with us, our affiliates or others including, without limitation, the originating creditor (e.g., account balance, payment history, banking information and customer information);
>>
>> From consumer reporting agencies (e.g., creditworthiness or credit history); and
>>
>> . From other nonaffiliated third parties (e.g., providers of location information and demographic information).

n2 Plaintiff testified that he initially did not want to pay off his debt now that it was in MRC's hands because, in addition to believing that the collection attempt violated the FDCPA, he believed that the statute of limitations had expired in the time since his initial default. (Hernandez Dep. at 61.)

[*5]

n3 The court's memorandum opinion denying Plaintiff's motion for judgment on the pleadings, relying solely on Plaintiffs allegations in the complaint, states that Defendant Encore prepared the **privacy notice**. *Hernandez v. Midland Credit Mgmt.*, 2006 U.S. Dist. LEXIS 10527, No. 04-7844, 2006 WL 695451, *1 (N.D. Ill. Mar. 14, 2006). Defendant MCM's response to Plaintiffs interrogatories makes clear that MCM itself generated this notice.

n4 Defendant Encore is a publicly traded Delaware corporation with its principal place of business in California. (Def. Encore's Answer at 3-4.) Encore also operated under the name MCM Capital Group, Inc. at the time relevant to this action.

(*Id.*) The notice states, further, that Encore and its affiliates reserve "the right to disclose all the nonpublic personal information" they collect to third parties, including:

> . Financial service providers, such as mortgage bankers or other lenders;
>
> . Non-financial companies, such as direct marketers or retailers.

(*Id.*) Finally, the **privacy notice** included an opt-out provision that advised Hernandez that if he wished [*6] to prevent the disclosure of nonpublic personal information to nonaffiliated third parties, he must make an affirmative request for non-disclosure in writing. (*Id.*) MCM estimates that it sent a **privacy notice** in this form to approximately 56,793 account numbers with Illinois addresses between December 3, 2003 and March 31, 2004. (Def. MCM's Resp. to Intrg. at 6.)

Hernandez was obviously not alone in receiving this notice, but he may well be alone in his sophstication about federal laws applicable to debt collection. Hernandez has worked as a loan administrator, credit analyst, and collections manager for several companies and banks. (Hernandez Dep. at 16-20.) Although these

2006 U S Dist LEXIS 45833, *

entities limited their collection efforts to their own accounts receivable (and were therefore not covered by the FDCPA), Hernandez became familiar enough with the FDCPA's provisions to write a training manual for other creditors offering "a high-level overview" of the Act and to give presentations on it (*Id* at 20-26, 28-29, 34-35.) In October 2004, Hernandez filed suit against Risk Management Association for violation of the FDCPA; that case has since settled n5 (*Id* at 38-40.) Nor is this case [*7] the first action in which Hernandez has been involved in litigation with MCM. MCM sued Hernandez in late 2001 for the collection of a debt. (*Id* at 36, 38.) Hernandez has no recollection of this case other than that it was dismissed when MCM and its lawyers failed to appear on the trial date. (*Id* at 37.)

> n5 In April 2005, Hernandez filed suit against City Financial, alleging a violation of the Fair Credit Reporting Act (Hernandez Dep at 41-42.)

Hernandez alleges that Defendants' threats to disclose non-public, personal information are not idle ones. He notes Defendant Encore's Report on SEC Form 10-K for the fiscal year ending December 31, 2004 (hereinafter, "Rep SEC 10-K"). That Report identifies, as one of Encore's collection strategies, the "transfer to our credit card partner [of] accounts for which [such a transfer] offers the highest opportunity for success. The credit card partner may offer the debtor the opportunity to establish new credit and transfer the balance on a credit card If [*8] the account is transferred we receive an agreed-upon payment." (Rep SEC 10-K at 6.) Plaintiff believes that communications between Defendants and Defendants' credit card partners are prohibited by the FDCPA. (Plaintiff's Reply in Support of Motion for **Class Certification** (hereinafter, "Pltf 's Reply,") at 7.)

**PROCEDURAL HISTORY**

On December 3, 2004, Plaintiff Hernandez filed suit against Defendants MCM and Encore, alleging violations of *§ § 1692c-1692e* of the FDCPA These provisions of the FDCPA, discussed in greater depth below, generally prohibit certain kinds of third-party communications as well as harassing, threatening, or false communications in connection with debt collection *15 U S C § § 1692c-1692e*

In its answer, MCM asserted that (1) the **privacy notice** contains no false or misleading statements; (2) MCM did not commit any actionable violation of the FDCPA; (3) any violation of the FDCPA was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error; and (4) MCM

"may possess certain arbitration rights based on contracts entered into [*9] by" Hernandez (Defendant, Midland Credit Management, Inc 's Answer and Affirmative Defenses to Plaintiffs Complaint (hereinafter, "Def MCM's Answer"), pp 11-12.) Encore makes the same assertions in its answer, adding that Encore

(1) did not engage in any debt collection activities and (2) is not a debt collector (Defendant, Encore Capital Group, Inc 's, Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter, "Def Encore's Answer"), pp. 12-13.)

On March 14, 2004, the court denied Plaintiff's motion for judgment on the pleadings The court declined to hold Defendant Encore liable as a debt collector as defined in the FDCPA as a matter of law and concluded that Defendants Encore and MCM were entitled to develop a factual record to support their defenses. *Hernandez, 2006 U S Dist LEXIS 10527, 2006 WL 695451 at 9* The court now turns to Plaintiffs motion for **class certification**. Specifically, Plaintiff requests certification of a class consisting of "(1) all natural persons with Illinois addresses (b) to whom any of the defendants sent the **'privacy notice,'** (c) on or after December 3, 2003, and (d) on or before December 23, 2004; plus (2) all natural persons (a) with Wisconsin [*10] addresses (b) to whom any of the defendants sent the **'privacy notice,'** (c) on or after January 11, 2004, and [(d)] on or before January 31, 2005." (Unopposed Motion to Enlarge Putative Class Definition (hereinafter, "Class Mot.,") at 2.)

Plaintiff originally proposed a class consisting only of Illinois debtors. (*Id* at 1.) The parties to this litigation, however, were involved in a similar class action regarding exactly the same **privacy notice** filed in the Eastern District of Wisconsin, captioned *Mitchell v Midland*, No. 05-24. (*Id*) The *Mitchell* action settled on November 7, 2005, and as a condition of settlement, Defendants agreed not to oppose an alteration of the class of Illinois debtors Plaintiff initially proposed here to include the putative class of Wisconsin debtors from *Mitchell*. (*Id*) The inclusion of Wisconsin debtors is unopposed (and therefore unbriefed), but raises the same issues in terms the putative class' ability to comply with the requirements of *Rule 23* as a class consisting only of the original Illinois debtors. The court's analysis, therefore focuses on the original putative class with the understanding that if a class consisting only [*11] of the Illinois debtors can be certified, the entire proposed class, inclusive of the Wisconsin debtors, can be certified as well

**DISCUSSION**

The court may certify a class action where doing so would comply with both *Rule 23(a)* and at least one subsection of *Rule 23(b)*. *Amchem Prods, Inc v*

*Windsor, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).* The prerequisites for all class actions are: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy ("the representative parties will fairly and adequately protect the interests of the class"). *FED. R. CIV. P. 23(a).* In addition, Plaintiff must establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *FED. R. CIV. P. 23(b)(3)* [*12].

Plaintiff, the party seeking **class certification,** "assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).* Defendants have raised no objections to the proposed class period, which for the Illinois debtors begins one year prior to Plaintiff filing this suit and extends to twenty days after it and for the Wisconsin debtors begins one year prior to the filing of the complaint in *Mitchell* and extends to twenty days after it. Defendants do, however, argue that Plaintiff has failed to establish numerosity, commonalty/predominance, typicality, adequacy, or superiority n6 The court addresses these arguments in turn.

n6 Defendants also argue that this court should deny Plaintiffs motion for **class certification** because Plaintiffs claims are meritless (Defs.' Mem. at 1.) The Supreme Court specifically cautions courts not to consider the merits of the plaintiff's case in deciding whether the case can be maintained as a class action. *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).* A court may, of course, look past the pleadings in order to determine whether a plaintiffs case meets the technical requirements of *Rule 23,* but a motion for **class certification** is not the appropriate place to resolve substantive issues of liability unless they overlap with issues raised by *Rule 23(a)* and *Rule 23(b). Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir. 2001)* (finding that the district court should have resolved the merits to the extent that it would answer the choice of law question and shed light on the superiority inquiry before certifying the class).

Here Defendants argue that Defendant Encore does not meet the statutory definition of a debt collector and that Defendant MCM generated the **privacy notice** in strict compliance with the requirements of the Gramm-Leach-Bliley Act, *15 U.S.C. § 6801, et seq.* (Defs.' Mem. at 6-8.) These arguments may well be relevant to summary judgment. They do not, however, shed light on whether common issues predominate over individual ones or whether Defendants mailed the same **privacy notice** to so many putative class members as to make joinder impracticable.

[*13]

## I. Numerosity

Plaintiffs theory of the case is that the **privacy notice** itself violates the FDCPA. With respect to Illinois alone, Defendant MCM admits that it sent this notice to more than 56,000 delinquent accounts between December 3, 2003 and March 31, 2004. (Pltf.'s Reply at 7.) Even if the residents at any particular address have several debts in default collectible by Defendant MCM, the number of putative class members would still be quite large.

If the exact size of the class is unknown, "[t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Peterson v. H & R Block Tax Servs., Inc., 174 F.R.D. 78, 81 (N.D. Ill. 1997).* The court finds that Plaintiffs putative class is sufficiently numerous that joinder of each member would be impracticable.

## II. Commonality/Predominance

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of *Rule 23(a)(2)." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).* The commonality bar is, in fact, quite low. *Arenson v. Whitehall Convalescent & Nursing Home, Inc., 164 F.R.D. 659, 663 (N.D. Ill. 1996)* [*14] ("Plaintiffs need only show that there is . . . one question of law or fact common to the class to satisfy the commonality requirement."). The requirement that common issues predominate over individual ones in a class certified under *Rule 23(b)(3),* on the other hand, is more demanding. Because commonality is coextensive with predominance, the court undertakes both inquiries simultaneously.

Plaintiff argues that the common nucleus of operative facts is that Defendants sent a form **privacy notice** to each member of the class, and the dispositive issue in this litigation is the question of whether that document violates the FDCPA. (Pltf.'s Mem. at 10.) The sole individual issue, in Plaintiffs view, is the determination of class membership, i.e., to whom did

Defendants sent their **privacy notice**. (*Id*) Defendants have a different view of the case. They argue that the commonality requirement has not been met because "the actual liability-determinative conduct is not standardized. . In fact, the core relevant inquiry here is whether each putative class member's information was disclosed to a third party and, if so, whether the disclosure violates the FDCPA " (Defendants' Opposition [*15] to Plaintiff's Motion for **Class Certification** (hereinafter, "Defs' Mem,") at 9.) On Defendants' theory, individual issues predominate, including whether each putative class member found the notice confusing; whether each individual exercised his or her right to opt-out of third-party disclosures set out in the **privacy notice**; and whether Defendants in fact disclosed any putative class member's information (*Id* at 12.)

The court believes Defendants misunderstand the nature of Plaintiff's accusations. The FDCPA prohibits all communications "in connection with the collection of any debt" between a debt collector and "any person other than the [debtor], his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" "without the prior consent of the [debtor] given directly to the debt collector." *15 U.S.C. § 1692c(b).* The Act also prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *15 U.S.C. § 1692e.* Plaintiff contends that if Defendants make [*16] the disclosures set out in their **privacy notice,** Defendants will violate *15 U.S.C. § 1692c(b)* (Pltf.'s Reply at 7.) More importantly, even if they never make such disclosures, Plaintiff argues that merely by threatening to do so, Defendants violate the FDCPA:

Claiming the ability to make disclosures prohibited by *15 U.S.C. § 1692c(b)* is, says Plaintiff, prohibited by *15 U.S.C. § 1692e(5),* which proscribes a "threat to take any action that cannot legally be taken or that is not intended to be taken. . ." (*Id*) Under this theory of the case, neither Plaintiff nor any putative class member would have to establish that the **privacy notice** is confusing. Rather, as Plaintiff suggests, the **privacy notice's** ability to act as an effective threat to induce collection relies on the clarity of the proposed disclosures (*Id* at 8.) Furthermore, even if Plaintiff had espoused a theory that succeeded or failed on a determination of whether the **privacy notice** was confusing, such a question is answered objectively and universally, not subjectively on an individual-by-individual basis. *Bartlett v. Heibl, 128 F.3d 497, 501 (7th Cir. 1997)* [*17] ("[T]he question whether a dunning letter violates the Fair Debt Collection Practices Act does not require evidence that the recipient *was* confused-or even . . . whether he read the letter.")

Nor, on Plaintiff's view, would any putative class member have to establish that Defendants did in fact

disclose his or her personal information to a prohibited third party. So long as the disclosures Defendants reserved the right to make under the **privacy notice** would have violated the FDCPA, Plaintiff contends, the simple act of sending the **privacy notice** to the debtors runs afoul of the statute whether or not those disclosures were ever actually made *15 U.S.C. § 1692e(5).*

Finally, there may be individual issues related to whether Plaintiff or any putative class member actually accepted Defendants' invitation to opt out of the disclosure regime set out in the **privacy notice,** but in the court's view, those issues are also irrelevant. *15 U.S.C. § 1692c(b)* prohibits disclosures to third parties (that are not consumer reporting agencies or lawyers for the debtor, creditor, or debt collector) without prior consent. Disclosure to third parties [*18] is, under the FDCPA, an opt-in system. Thus, failure of Plaintiff or any putative class member to opt per Defendants' **privacy notice** is irrelevant from the perspective of Defendants' FDCPA liability under Plaintiff's theory of the case.

The court agrees with Plaintiff that whether Defendants' **privacy notice** violates the FDCPA is an issue common to all putative class members. Defendants' defenses -- in particular, its claim that any FDCPA-violative portion of the **privacy notice** is a *bona fide* error arising from an attempt to comply with the Gramm-Leach-Bliley Act (hereinafter, "GLB"), *15 U.S.C. § 6801, et seq* -- can also be resolved on a classwide basis. Moreover, because Plaintiff seeks statutory damages only, there are no individual issues related to the actual loss each putative class member might have suffered based on a prohibited actual disclosure of nonpublic information. *Bartlett v. Heibl, 128 F.3d at 499.*

### III. Typicality

Plaintiff's claim is typical "'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same [*19] legal theory'" *Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998)* (quoting *De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)).* Plaintiff argues that the putative class is defined around Plaintiff's typicality. (Pltf.'s Mem. at 11.) Hernandez's claim arises from a form notice he received. Any other Illinois or Wisconsin resident will be a class member only if he or she also received the same form notice in the appropriate class period.

Defendants, however, paint Hernandez as an FDCPA expert who cannot possibly claim to have been confused by Defendants' **privacy notice.** (Defs' Mem. at 10.) The court recognizes that a named plaintiff who might be subject to unique defenses should fail the typicality requirement. *Robles v. Corporate Receivables, Inc., 220 F.R.D. 306, 309 (N.D. Ill. 2004)* ("The presence of defenses peculiar to the named plaintiff class or a

2006 U.S. Dist. LEXIS 45833, *

small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiffs' representative ") (internal quotation marks and citations omitted) As explained above, however, Hernandez's [*20] understanding of the **privacy notice** has no relevance under Plaintiff's theory of Defendants' liability n7 For this reason, the court finds Plaintiff satisfies the typicality requirement in spite of his demonstrated facility with the FDCPA.

> n7 Indeed, it is not clear that a plaintiff's subjective understanding is ever relevant when a plaintiff seeks statutory as opposed to actual damages for a violation of the FDCPA *See, e g*, *Tolentino v Friedman, 46 F 3d 645, 651 (7th Cir 1995)* (awarding statutory damages without proof that the FDCPA plaintiff was misled).

## IV. Adequacy

The typicality requirement tends to merge with the adequacy requirement; both *Rule 23(a)* requirements ask "whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence " *General Tel Co of Southwest v Falcon, 457 US 147, 158 n 13, 102 S Ct 2364, 72 L Ed 2d 740 (1982)* The adequacy requirement, however, "also [*21] raises concerns about the competency of class counsel and conflicts of interest." *Id* Taking the latter inquiry first, Plaintiff provided an extensive resume for the law firm of Edelman, Combs, Latturner & Goodwin, L.L.C. (Pltf.'s Mem at Ex. C.) Defendant has not challenged class counsel's adequacy, and this court finds class counsel adequate under *Rule 23(a)(4)*.

Defendants' attacks on the adequacy of Hernandez to act as the class representative, however, are more explicit Defendants argue that Hernandez has a credibility problem and that he has abdicated his role as class representative to his attorneys. (Defs.' Mem at 10-11.) In support of their first argument, Defendants note that in this lawsuit Hernandez is arguing that Defendants' conspicuous disclosures are unlawful. (*Id* at 11.) Hernandez is involved in a separate suit against City Financial in which, according to Defendants, n8 he is alleging that City Financial's disclosures are not conspicuous enough under the Fair Credit Reporting Act (hereinafter, "FCRA"), *15 U S C § 1681, et seq (Id )*

> n8 Hernandez could not recall what the suit was about at his deposition (Hernandez Dep. at

41 )

[*22]

In the court's view, Hernandez's pursuit of purportedly inconsistent theories in these two cases does not cast a shadow over his credibility *Buzoiu v Risk Mgmt Alternatives, Inc, 2004 U S Dist LEXIS 11842, No 03-3579, 2004 WL 1505061 (E D Pa June 14, 2004)*, the case cited by Defendants in support of their argument, (Defs.' Mem at 10,) is readily distinguishable In *Buzoiu*, the FDCPA plaintiff gave contradictory testimony in two depositions on the question of when and how often she contacted the defendant debt collector *Buzoiu, 2004 U S Dist LEXIS 11842, 2004 WL 1505061 at 2-5.* If she had only contacted the debt collector once prior to a certain date, as she testified originally, there could be no FDCPA violation. *2004 U S Dist LEXIS 11842, [WL] at 2.* If, on the other hand, as she testified later, she contacted the debt collector more than once, both before and after that date, defendants were liable. *Id.* The *Buzoiu* court found plaintiff to be an inadequate class representative because the inconsistencies in her testimony went to the merits of the case and provided defense counsel with ample ammunition to attack her truthfulness on cross-examination. *2004 U S Dist LEXIS 11842, [WL] at 6-7.* Here, should defense counsel raise Hernandez's [*23] position in his City Financial suit, Hernandez can point to the differing disclosure requirements for parties regulated by the FCRA and parties regulated by the FDCPA That his legal theories are, in Defendants' view, inconsistent does not support the conclusion that his testimony concerning the facts is not to be believed.

In support of their second argument, Defendants point to Hernandez's testimony that while he understands why class counsel recommended that he name MCM as a defendant, Hernandez did not know why Encore and (initially) MRC were named as well. n9 (Hernandez Dep at 83.) Hernandez has also met class counsel in person only once and has spoken to them on the telephone only a handful of times, never for longer than a few minutes. (*Id* at 93.) Again, these circumstances do not, in the court's view, detract from Hernandez's ability to serve as a class representative So "long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v GC Servs, L P, 181 F R D 602, 604 (N D Ill 1998)* [*24] Other portions of Hernandez's testimony reveal that he exceeds the low level of sophistication requisite to qualify as an adequate class representative, and although class counsel necessarily is the driving force behind some of the more complicated legal theories, Hernandez has not entirely ceded the litigation to his attorneys. For instance, Hernandez found class counsel, answered

Defendants' interrogatories, and maintains a file related to this litigation. (Hernandez Dep. at 80-82.) Furthermore, Hernandez appears to understand why the **privacy notice** violates the FDCPA and understands why this case should proceed as a class action. (*Id* at 68-71, 92.)

> n9 The attempt to color Plaintiff as inadequately knowledgeable to rein in class counsel is somewhat at odds with Defendants' prior attempt to suggest that he is too knowledgeable to meet the typicality requirement.

Defendants infer that Hernandez bears a grudge against Defendant MCM for its prior suit against him. (Defs.' Mem. at 11.) Regardless o f his feelings [*25] about MCM, Hernandez testified that his purpose in bringing this action was to stop Defendants from violating the FDCPA. (Hernandez Dep. at 63-64.) Hernandez further testified that he would not settle this case for a simple forgiveness of his debt. (*Id* at 62.) The court concludes that Hernandez is an adequate class representative.

## V. Superiority

Plaintiff argues that the class mechanism is particularly appropriate in this instance because unsophisticated consumers may not r ecognize that the **privacy notice** violates the FDCPA (Pltf.'s Mem. at 12.) Individuals are also less likely to bring their own suits, according to Plaintiff, because, in general, persons who have defaulted on their debts are unlikely to have the resources to retain counsel to pursue the alleged FDCPA violation. (*Id.*) Plaintiff notes that the cost of litigation vis-a-vis the size of the expected recovery makes individual lawsuits prohibitively expensive, rendering the class mechanism the sole means of deterring Defendants from continuing to issue the allegedly violative **privacy notice.** (*Id.*) Indeed, Congress specifically contemplated the appropriateness of the class mechanism when it drafted [*26] special damages provisions applicable to FDCPA violations pursued by a class. *15 U.S.C. § 1692k(a),(b).*

Defendants do not contest any of these assertions, but instead argue that the *de minimis* recovery of each putative class member makes the class mechanism inferior to individual litigation. (Defs.' Mem. at 13.) The FDCPA caps statutory damages in individual actions at $ 1,000. *15 U.S.C. § 1692k(a)(2)(A)* The FDCPA caps statutory damages in class actions, on the other hand, at the lesser of $ 500,000 or 1 percent of the debt collector's net worth *15 U.S.C. § 1692k(a)(2)(B).* The parties have stipulated that Defendants' net worth exceeds $

50,000,000, (Dkt. No. 92), so Defendants' reasoning is that the per-plaintiff recovery for the over 56,000 members of the putative class will be less than $ 8.93.

Plaintiff quibbles with this figure, arguing that in class counsel's experience only 10 to 15 percent of class members actually collect from the class fund, pushing the per capita share of the recovery up to somewhere between $ 58 and $ 88. (Pltf.'s Reply at 13.) More fundamental, however, is this court's conclusion [*27] that the *de minimis* nature of a class recovery is not a bar to certification where the other requirements of *Rule 23* have been met. *Nichols v. Northland Groups, Inc., 2006 U.S. Dist. LEXIS 15037, No. 05-2701, 2006 WL 897867, *11 (N.D. Ill. Mar. 31, 2006)* (finding *Jones v. CBE Group, Inc., 215 F.R.D. 558 (D. Minn 2003)* and *Sonmore v. Checkrite Recovery Servs., Inc., 206 F.R.D 257 (D. Minn. 2001)* not controlling and unpersuasive); *see also Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)* (observing in *dicta* that "a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

To the extent that any putative class member thinks he or she would rather foot the cost of litigation alone so as not to have to share his or her $ 1,000 recovery, certification of the putative class under *Rule 23(b)(3)* is tailored to allow the putative class member to do so. *Sarafin v. Sears, Roebuck & Co., 73 F.R.D. 585, 589 (N.D. Ill. 1977)* [*28] The court will direct that *Rule 23(b)(3)* notice to class members explain their right to opt out of the class and pursue individual litigation, and that the notice clearly explain the difference in the size of their recovery should they choose to pursue recovery as part of this class.

## CONCLUSION

The court finds Plaintiff has established that the proposed class satisfies the requirements of *Rule 23* for certification of a *Rule 23(b)(3)* opt out class. Plaintiff's motion for **class certification (8)** is granted.

A class is certified as follows:

> All natural persons with Illinois addresses to whom any Defendants sent the form **privacy notice** at issue in this action on or after December 3, 2003, and on or before December 23, 2004; plus all natural persons with Wisconsin addresses to whom any Defendants sent the form **privacy notice** at issue in this action on or after January 11, 2004, and on or before January 31, 2005

2006 U S  Dist  LEXIS 45833, *

ENTER:

REBECCA R  PALLMEYER

United States District Judge

Dated: June 27, 2006

# EXHIBIT B

2005 U.S. Dist. LEXIS 18881, *

LEXSEE 2005 U.S. DIST. LEXIS 18881

**IRENE CHAPMAN, Plaintiff, v. WORLDWIDE ASSET MANAGEMENT, L.L.C. and WORLDWIDE ASSET PURCHASING, L.L.C., Defendants.**

**No. 04 C 7625**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 18881*

**August 30, 2005, Decided**
**August 30, 2005, Filed**

**PRIOR HISTORY:** *Chapman v. Worldwide Asset Mgmt., L.L.C., 2005 U.S. Dist. LEXIS 41528 (N.D. Ill., Apr. 6, 2005)*

**COUNSEL:** [*1] For Irene Chapman, Plaintiff: Daniel A. Edelman, Cathleen M. Combs, Derek B Rieman, James O. Latturner, John D. Blythin, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Worldwide Asset Management, LLC and, Worldwide Asset Purchasing, LLC., Defendant: David Luther Hartsell, Brian Patrick O'Meara, McGuireWoods LLP, Chicago, IL.

**OPINION:**

### MEMORANDUM OPINION AND ORDER

In this putative class action, named plaintiff Irene Chapman alleges that a notice she received regarding defendants' privacy policy--that is defendants' policy about sharing information about plaintiff--was part of an attempt to collect a debt. Named as defendants are Worldwide Asset Management, L.L.C. and Worldwide Asset Purchasing, L.L.C. Plaintiff contends that statements in the privacy policy violate provisions of the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692 et seq.* Defendants' motion to dismiss the complaint was previously denied. See Chapman v. Worldwide Asset Management, L.L.C., 2005 WL 818880 (N.D. Ill. April 6, 2005) ("Chapman I"). Presently pending is plaintiff's motion for class certification which is opposed by defendants. [*2]

The burden is on plaintiff to demonstrate that all the requirements for class certification are satisfied *Retired Chicago Police Association v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)*, cert. denied, *519 U.S. 932, 136 L. Ed. 2d 222, 117 S. Ct. 305(1996)*; *Dawson v. Allied Interstate, Inc., 2005 U.S. Dist. LEXIS 14595, 2005 WL*

*1692606 *1 (N.D. Ill. July 13, 2005)*; *Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 579-80 (N.D. Ill. 2005).* Federal Rule of Civil Procedure 23(a) requires that the following four prerequisites be satisfied: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Failure to meet any one of these requirements precludes certification of a class. *Retired Chicago Police, 7 F.3d at 596*; *Dawson, 2005 U.S. Dist. LEXIS 14595, 2005 WL 1692606 at *1*; *Jackson v. Nat'l Action Fin. Servs., 227 F.R.D. 284, 286 (N.D. Ill. 2005)* [*3] If the *Rule 23(a)* elements are satisfied, plaintiffs must also satisfy one of the subsections of *Rule 23(b).*

In ruling on class certification, the court has an independent duty to scrutinize the appropriateness of class certification; the court is not limited to arguments made by a party opposing certification. *Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003)*; *In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106, 1134 (7th Cir.)*, cert. denied, *444 U.S. 870, 62 L. Ed. 2d 95, 100 S. Ct. 146 (1979).* See also *Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir.)*, cert. denied, *534 U.S. 951, 151 L. Ed. 2d 263, 122 S. Ct. 348 (2001).* Additionally, in determining whether to grant certification, whether a claim will ultimately be successful is not a consideration. *Payton v. County of Kane, 308 F.3d 673, 677 (7th Cir. 2002)*, cert. denied, *540 U.S. 812, 157 L. Ed. 2d 26, 124 S. Ct. 61 (2003)*; *Rahim v. Sheahan, 2001 U.S. Dist. LEXIS 17214, 2001 WL 1263493 *9-10 (N.D. Ill. Oct. 19, 2001).* However, that does not mean that the merits of claims can be completely ignored. The "boundary between a class determination and the merits may not always be easily discernible. [*4] " *Retired Chicago Police, 7 F.3d at 598-99* (quoting *Eggleston v. Chicago Journeymen*

Case 1:05-cv-10339-JLT    Document 46-2    Filed 07/26/2006    Page 12 of 28

Page 2
2005 U.S. Dist. LEXIS 18881, *

*Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir. 1981)*, cert. denied, *455 U.S. 1017, 72 L. Ed. 2d 134, 102 S. Ct. 1710 (1982))*. In order to resolve questions of typicality or whether common questions predominate, it is sometimes necessary to determine the contours of the applicable law. See *Szabo, 249 F.3d at 676-77*; *Retired Chicago Police, 7 F.3d at 598-99* (quoting *General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982))*; *Jones v. Risk Management Alternatives Inc., 2003 U.S. Dist. LEXIS 12017, 2003 WL 21654365 *2 n.2 (N.D. Ill. July 11, 2003)*; *Peoples v. Sebring Capital Corp., 2002 U.S. Dist. LEXIS 4104, 2002 WL 406979 *2 (N.D. Ill. March 15, 2002)*.

In this case, named plaintiff seeks to certify a *Rule 23(b)(3)* class. Plaintiff's proposed class definition is "(a) all natural persons with Illinois, Indiana, or Wisconsin addresses, (b) to whom WAM and/or WAP sent a notice in the form represented by Exhibit A of the Complaint, (c) on or after November 23, 2003, and (d) on or before December 13, 2004." The first date is one year prior [*5] to the filing of the Complaint and the second date is 20 days after the filing of the Complaint.

*Rule 23(a)(1)* requires that the class be so numerous that joinder of all the members is impracticable. Plaintiff need not demonstrate the exact number of class members as long as that conclusion is apparent from good-faith estimates. *Bowe Bell + Howell Co. v. IMMCO Emples. Ass'n, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 *3 (N.D. Ill. May 11, 2005)*; *Lucas v. GC Servs. L.P., 226 F.R.D. 337, 340 (N.D. Ind. 2005)*. The estimates may be supported by "common sense assumptions." *Bell + Howell, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 at *3*; *Lucas, 226 F.R.D. at 340*; *Maxwell v. Arrow Financial Services, LLC, 2004 U.S. Dist. LEXIS 5462, 2004 WL 719278 *2 (N.D. Ill. March 31, 2004)*. "Courts have found that it is reasonable to assume the number of potential class members satisfies the numerosity requirement when the defendant allegedly used 'preprinted, standardized debt collection letters in attempting to collect on the [allegedly delinquent] debt'" *Lucas, 226 F.R.D. at 340* (quoting *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, 2001 U.S. Dist. LEXIS 20012, 2001 WL 1543516 [*6] *3 (N.D. Ill. Nov. 30, 2001)* (citing *Peters v. AT & T Corp., 179 F.R.D. 564, 567-68 (N.D. Ill. 1998)))*; *Maxwell, 2004 U.S. Dist. LEXIS 5462, 2004 WL 719278 at *3* (same). Inferences may also be drawn based on the size of the pertinent entity. *Lucas, 226 F.R.D. at 340*; *Ingram v. Corporate Receivables, Inc., 2003 U.S. Dist. LEXIS 14389, 2003 WL 21982152 *2 (N.D. Ill. Aug. 19, 2003)* Still, a finding of numerosity cannot be based on conclusory allegations that joinder is impracticable or speculation about the size of the class. *Muro v. Target Corp., 2005 U.S. Dist. LEXIS 14409, 2005 WL 1705828 *13 (N.D. Ill. July 15, 2005)* (quoting *Marcial v. Coronet*

*Insurance Co., 880 F.2d 954, 957 (7th Cir. 1989))*; *Bell + Howell, 2005 U.S. Dist. LEXIS 9502, 2005 WL 1139645 at *3*.

Here, plaintiff has not provided a general estimate as to the size of the class. n1 However, named plaintiff received a form collection letter. Plaintiff also provides securities filings supporting that WAM is one of the nation's largest debt buyers and that, along with its affiliates, it generates over $ 100,000,000 in annual revenues. Additionally, plaintiff notes that the mailing to her had indicia that it was part [*7] of a discounted mass mailing that would require at least 200 pieces of mail. The class, though, is limited to three states, so that does not necessarily mean a minimum of 200 class members. In any event, the form letter and the size of defendants' business support that the number of mailings would be more than large enough to satisfy numerosity. Moreover, defendants do not contend that the facts are otherwise or present any contrary evidence. The only reasonable inference is that the number of potential class members is well more than 200 persons. Numerosity is satisfied.

> n1. As of the filing of its motion, plaintiff still had not received discovery relevant to this issue. In her reply, plaintiff does not state whether the discovery had yet been received, limiting its reply to issues raised by defendant in opposition to class certification.

Here, there are questions common to the class. Common questions will include whether the form letter violates the FDCPA and possibly which defendant was responsible for the [*8] letter and whether each defendant is a debt collector as that term is used in the FDCPA. See *Chapman I, 2005 WL 818880 at *3-4*. Such common questions are likely to predominate. Whether a particular plaintiff received the form letter should be readily ascertainable from defendants' records. Issues as to individual plaintiffs' states of mind should not arise because defendants' conduct is to be judged from an objective unsophisticated consumer viewpoint. See *Durkin v. Equifax Check Services, Inc., 406 F.3d 410, 414 (7th Cir. 2005)*; *Smith v. American Revenue Corp., 2005 WL 1162906 *4 (N.D. Ind. May 16, 2005)*. Also, individual damages issues should not arise because the class would be entitled to statutory damages even absent actual damages. See *Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998)*; *Smith, 2005 WL 1162906 at *4*. Here, common issues are likely to predominate and a class action would be the superior means of adjudication in that the common questions will so predominate and the potential individual recoveries are limited compared to the potential litigation costs. Cf. *Lucas, 226 F.R.D. at 342*; [*9] *Maxwell, 2004 U.S. Dist. LEXIS 5462, 2004 WL 719278 at *6*. *Rule 23 (a)(2)*'s requirement of

2005 U.S. Dist. LEXIS 18881, *

common questions is satisfied and *Rule 23(b)(3)*'s requirements are satisfied.

*Rule 23(a)(3)* requires that the claims of the class representatives be typical of the claims of the class. The typicality requirement primarily focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory'" *De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)* (quoting Herbert Newberg, Class Actions P 1115(b) at 185 (1977)). Accord *Retired Chicago Police, 7 F.3d at 596-97; Rahim, 2001 U.S. Dist. LEXIS 17214, 2001 WL 1263493 at *14*. It is only necessary for the claim of the class representative and the claims of the class at large to have the "same essential characteristics;" there may still be differences. *Retired Chicago Police, 7 F.3d at 597* (quoting *De La Fuente, 713 F.2d at 232*); [*10] *Hardesty v. International Steel Group Inc., 2005 U.S. Dist. LEXIS 35745, 2005 WL 1712257 *2 (N.D. Ind. July 21, 2005); Rahim, 2001 U.S. Dist. LEXIS 17214, 2001 WL 1263493 at *14*. Similar legal theories may control despite factual distinctions. See *Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)*, cert. denied, *506 U.S. 1051, 122 L. Ed. 2d 127, 113 S. Ct. 972 (1993); Hardesty, 2005 U.S. Dist. LEXIS 35745, 2005 WL 1712257 at *2; Clay v. American Tobacco Co., 188 F.R.D. 483, 491-92 (S.D. Ill. 1999)*. "The key to typicality is based on the relationship between the class representative and the class members: are the named plaintiff's interests aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class?" *Rahim, 2001 U.S. Dist. LEXIS 17214, 2001 WL 1263493 at *14; Murry v. America's Mortgage Banc, Inc., 2005 U.S. Dist. LEXIS 11751, 2005 WL 1323364 *8 (N.D. Ill. May 5, 2005)*. See also *All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants, 203 F.R.D. 403, 409 (S.D. Ind. 2001)*.

By definition, all members of the class will be persons who received the form notice. There is no indication that named plaintiff is situated differently than other [*11] members of the class. The typicality requirement is satisfied.

Last, *Rule 23(a)(4)* requires that the named representative adequately represent the interests of the class. Three elements must be satisfied: "(1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a 'sufficient interest in the outcome to ensure vigorous advocacy;' (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed

litigation vigorously." *Lifanda v. Elmhurst Dodge, Inc., 2001 U.S. Dist. LEXIS 9210, 2001 WL 755189 at *3 (N.D. Ill. July 2, 2001)* (quoting *Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 308 (N.D. Ill. 1995)*). Accord *Dawson, 2005 U.S. Dist. LEXIS 14595, 2005 WL 1692606 at *2; Robles v. Corporate Receivables, Inc., 220 F.R.D. 306, 314 (N.D. Ill. 2004)*. Defendants contend *Rule 23(a)(4)* is not satisfied because named plaintiff herself is not adequately aware of the proceeding and class counsel is not competent.

"As long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal [*12] familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v. GC Servs., L.P., 181 F.R.D. 602, 604 (N.D. Ill. 1998)*. Accord *Carbajal v. Capital One, 219 F.R.D. 437, 442 (N.D. Ill. 2004); Lifanda, 2001 U.S. Dist. LEXIS 9210, 2001 WL 755189 at *3*. The class representative should be conscientious and have a basic understanding of the litigation *Carbajal, 219 F.R.D. at 442*.

There is no contention that named plaintiff has a conflict of interest and nothing before the court indicates that any conflict exists. Defendants selectively point to named plaintiff's deposition testimony. At her deposition, however, plaintiff showed an understanding that the lawsuit involved the issue of defendants sharing her and other class members' information with third parties. That is sufficient knowledge of the case. Cf. *Jandek v. Hearst Corp., 1999 WL 966966 *2 (N.D. Ill. Oct. 1, 1999); McFarland v. Bass & Associates, P.C., 1998 U.S. Dist. LEXIS 1002, 1998 WL 42286 *5 (N.D. Ill. Jan. 30, 1998)*. Plaintiff clearly expressed her understanding that she had a responsibility to act for the class [*13] and not just her own self-interest. Defendants point to her testimony regarding an unrelated case in which she was also the named plaintiff. She testified that she was settling that case for the benefit of a class. Defendants contend that is inconsistent with the fact that the case was not certified as a class action and instead settled on an individual basis. As plaintiff points out, however, the settlement was in negotiations at the time of her deposition and it subsequently turned out that there was not a basis for certifying the case as a class action. It is found that plaintiff herself is an adequate representative.

Defendants also contend that the attorneys selected by plaintiff are not adequate representatives. Under a recent amendment to *Rule 23*, this court must appoint class counsel.

In appointing class counsel, the court

(i) must consider:
the work counsel has done in identifying or investigating potential claims in the action,

counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

counsel's knowledge of the applicable law, and

the resources counsel will commit to representing the class;

(ii) [*14] may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv) may make further orders in connection with the appointment

*Fed R Civ P 23(g)(l)(C)*

Plaintiff is represented by Daniel Edelman and other attorneys at Edelman, Combs, Latturner & Goodwin, L L C  Edelman and his law firm have substantial experience with FDCPA and other consumer litigation, including class actions  They have the resources to handle the present case  This court has previously found Edelman and his firm to be capable counsel for representing consumers in class actions, including FDCPA cases  See, e g , *Krause v  GE Capital Mortgage Services, Inc , 1998 U S  Dist  LEXIS 18863, 1998 WL 831896 *7 (N D  Ill  Nov  20, 1998)* (Hart, J ) (RICO and state consumer fraud claims related to credit fees); *McFarland, 1998 U S  Dist  LEXIS 1002, 1998 WL 42286 at *5 (Hart, J )* (FDCPA); *Brown v  LaSalle Northwest Nat'l Bank, 1993 U S  Dist  LEXIS 11419, 1993 WL 313563 [*15] *5 (N D  Ill  Aug  17, 1993)* (Hart, J ) (RICO and state consumer fraud claims related to financing of automobile sales); *Pleasant v  Risk Management Alternatives, Inc , 2003 U S  Dist  LEXIS 16569, 2003 WL 22175390 *5 (N D  Ill  Sept  19, 2003)* (Coar, J ) (FDCPA); *Bigalke v  Creditrust Corp , 2001 U S  Dist  LEXIS 14591, 2001 WL 1098047 *11-12 (N D  Ill  Sept  14, 2001)* (Brown, J ) (FDCPA); Jandek, 1999 WL 966966 at *2-3 (Gottschall, J ) (FDCPA)  That counsel has been found adequate in other cases is persuasive evidence that they will be found adequate again  *Morris v  Risk Management Alternatives, Inc , 203 F R D  336, 344 (N D  Ill  2001)* (quoting *Gomez v  Illinois State Board of Education, 117 F R D  394, 401 (N D  Ill  1987))*  There have already been three contested motions in this case, a motion to dismiss, see Chapman I, 2005 WL  818880, a motion to quash, see Memorandum Opinion & Order dated June 15, 2005 (Docket Entry 35), and the present motion for class

certification  The pleadings filed on behalf of plaintiff support that Edelman and his firm continue to be capable and well-qualified counsel in FDCPA class actions

Defendants [*16] point to three cases in which Edelman or his firm has been sanctioned by the court, contending that this shows he is not qualified to represent the class  In *Riddle & Associates, P C  v  Kelly, 414 F 3d 832 (7th Cir  2005)*, the Seventh Circuit upheld the imposition of *28 U S C  § 1927* sanctions on Edelman's firm after a letter was sent to the law firm Riddle & Associates, P C , accusing it of violating the FDCPA and Riddle successfully brought a declaratory judgment action for a declaration that there had been no violation  The Seventh Circuit also held that the law firm representing Riddle was entitled to *§ 1927* sanctions based on a counterclaim filed against that firm  In both instances, Edelman was personally involved and it was held that frivolous FDCPA contentions were asserted or defended  In D'Agostino v  Lawrence, No  04 C 3660 (March 9, 2005) (Docket Entries 20-21), the court imposed *§ 1927* sanctions against Edelman's law firm for bringing a purported class action that contained no potential members because another pending putative class action (Iosello v  Lexington Law Firm) already included all potential members  That ruling [*17] is presently on appeal  In *Iosello v  Lexington Law Firm, 2004 U S  Dist  LEXIS 24742, No  03 C 987 (N D  Ill  Dec  1, 2004) (Docket Entry 195)*, the magistrate judge has recommended that *§ 1927* sanctions be imposed on Edelman and/or other members of his law firm n2 for continuing to pursue a motion to take the D'Agostino case as related after the D'Agostino case had been dismissed  Objections to the report and recommendation of the magistrate judge are pending before the district judge

n2  The magistrate judge's report and recommendation does not specify who is to be sanctioned  The sanction motion apparently requests sanctions be imposed on the law firm

Plaintiff contends the sanctions should not be viewed negatively as regards counsel's qualifications  She contends the sanctions were incurred while providing vigorous representation  Sanctionable conduct should not be equated with vigorous or zealous representation  An attorney's duty to zealously represent a client does not permit sanctionable conduct such as making frivolous [*18] arguments on behalf of the client  See *Speights v  Frank, 361 F 3d 962, 964 (7th Cir )*, cert  denied, *543 U S  898, 160 L  Ed  2d 168, 125 S  Ct  119 (2004)*  This court certainly does not condone the sanctionable conduct of pursuing frivolous arguments or litigation nor does it view such conduct as evidence of vigorous representation  Nevertheless, the court does not

2005 U.S. Dist. LEXIS 18881, *

find that these examples of sanctionable conduct show that counsel cannot adequately represent a class in this case. While counsel may in other cases have gone beyond the bounds of proper representation, their record here supports that they are competent for this case. It is found that plaintiff's counsel are adequately qualified to represent the class. The class will be certified and plaintiff's counsel will be appointed as class counsel.

IT IS THEREFORE ORDERED that plaintiff's motion for class certification [26] is granted. Daniel A. Edelman and the law firm of Edelman, Combs, Latturner & Goodwin, L.L.C. are appointed as class counsel. A class is certified consisting of: all natural persons with Illinois, Indiana, or Wisconsin addresses, to whom defendant(s) sent a notice in the form represented by Exhibit A of [*19] the Complaint and who received the notice on or after November 23, 2003 and on or before December 13, 2004. Any persons affiliated with one or more defendant are excluded from the class. The parties shall promptly meet to discuss a form of notice to the class. By September 12, 2005, the parties shall submit a proposed notice to the class.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: AUGUST 30, 2005

EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELVIN T. STEWART, individually and as next friend of THELMA R. STEWART, Plaintiff, | ) ) ) ) | |
| vs. | ) ) | 1:04-cv-1213-LJM-VSS |
| ASSET ACCEPTANCE, LLC, Defendant. | ) ) ) | |

## ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This matter is before the Court on a Motion for Class Certification brought by Plaintiff, Mr.

Melvin T. Stewart ("Melvin"), individually and as next friend of his now-deceased mother, Ms.

Thelma R. Stewart ("Thelma") (collectively, "Plaintiff"), against Defendant, Asset Acceptance, LLC

("Asset"). Plaintiff has moved for class certification pursuant to Rule 23 of the Federal Rules of

Civil Procedure. The issues have been fully briefed by the parties. For the reasons discussed herein,

the Court **GRANTS** Plaintiff's motion.


## I. FACTUAL BACKGROUND

Although generally a court will determine the suitability of class certification on the facts

alleged in the complaint and avoid an inquiry into the merits, the Seventh Circuit has stated: "[A]

judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v.*

*Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). With that principle in mind, this Court

will draw upon the facts alleged in Plaintiff's complaint, the parties' briefs in this matter, and the submitted exhibits.

Plaintiff has brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff's claims are based on a dunning letter that is alleged to be in violation of the FDCPA, specifically § 1692e. *See* November 19, 2004, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. This standard dunning letter was sent by Asset to 58,845 residents in the state of Indiana, including Plaintiff. Def. Br. at 12. Asset sent Thelma her dunning letter on December 8, 2003. *See* Compl. Ex. A. Melvin, who at the time was acting as Thelma's power of attorney, received the letter, opened it, and promptly forwarded it to Thelma's (and now his) attorney. Pl. Reply at 4-5.

The dunning letter contains an allegedly illegal "privacy policy" that states: "We collect nonpublic personal information about you from the following sources: Information we receive about you from you on applications or other forms; Information about your transactions with us, prior owners of your account, our affiliates, or others; and Information we receive from a consumer reporting agency." Compl. Ex. A. The dunning letter also states:

> We may disclose [certain but specified kinds of] nonpublic personal information about you to the following types of third parties[:] Financial service providers such as credit grantors, collection agencies and debt buyers. We may also disclose nonpublic personal information about you to affiliated debt purchasers and nonaffiliated third parties as permitted by law.... If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties, you may opt out of those disclosures [by calling or writing].

*Id.* Plaintiff asserts that many of these uses of information, if actually done, would violate the FDCPA. Pl. Br. at 6-7. In an earlier order, this Court found that Plaintiff's only permissible claim against Asset is the claim that Asset may have violated § 1692e (prohibiting false or misleading

2

representations) by stating that it would make these disclosures or that it had the right to make these disclosures. *See* November 19, 2004, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.

## II. <u>STANDARDS</u>

Class certification is governed by Rule 23. The burden of demonstrating that class certification is proper lies on the party moving for class certification. *See Ret. Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). To show that class certification is justified in this case, Plaintiffs first must satisfy the four requirements of Rule 23(a). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997). The prerequisites of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Once the Court determines that Plaintiff has satisfied these prerequisites, the Court must determine whether one or more of the requirements of Rule 23(b) is met. *See Williams*, 204 F.3d at 760.

Rule 23(b)(1) authorizes a class when individual actions would create a risk of inconsistent adjudications that would create incompatible standards of conduct for the party opposing the class, or adjudications with respect to individual plaintiffs would "substantially impair or impede" the ability of other class member to protect their interests. FED. R. CIV. P. 23(b)(1). Rule 23(b)(2) authorizes a class when "the party opposing the class has acted or refused to act on grounds generally

3

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). Classes certified pursuant to Rules 23(b)(1) or 23(b)(2) are not opt-out classes and notification to class members is not required. FED. R. CIV. P. 23(c)(2)(A). In contrast, Rule 23(b)(3) authorizes a class when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). A class authorized under Rule 23(b)(3) requires personal notification to its potential members, who then have the opportunity to opt out of the class litigation. FED. R. CIV. P. 23(c)(2)(B).

## III. DISCUSSION

### A. RULE 23(a)

Taking each element in turn, the Court finds that Plaintiff meets all four requirements of Rule 23(a) for class certification.

### 1. Numerosity

Asset does not dispute that Plaintiff's proposed class meets the numerosity requirement of Rule 23(a)(1); that is, "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The parties estimate the class at 58,845 persons. The numerosity requirement clearly is met.

4

### 2. **Commonality and Typicality**

Asset does not concede that the Plaintiff and the putative class members share common questions of law or fact, as required by Rule 23(a)(2). A "common nucleus of operative fact" generally will satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff challenges Asset's use of standardized language in letters sent by Asset to the entire putative class. Plaintiff alleges that this standardized language violates § 1692e of the FDCPA. These allegations of standardized conduct show that the putative class members' claims present common issues of law and fact, satisfying the commonality requirement.

The typicality requirement of Rule 23(a)(3) is closely related to the issue of commonality. *Rosario*, 963 F.2d at 1018. The Plaintiff brings its claims pursuant to § 1692e of the FDCPA. Plaintiff's claims arise from an allegedly illegal course of conduct Asset took towards the entire putative class, and Plaintiff's claims are based upon the same legal theory as those of the putative class members. Hence, Plaintiff's claims are typical of the putative class, and the typicality requirement of Rule 23(a) is satisfied. *See id*; *De La Fuente v. Stokley-Van Camp, Inc*, 713 F.2d 225, 232 (7th Cir. 1983).

Asset disputes that Plaintiff has met the commonality and typicality requirements. Asset argues that Melvin has no right to sue because the dunning letter was addressed to Thelma and not him. While the Seventh Circuit has not explicitly ruled on this issue, the vast weight of authority is against Asset. *See Wright v. Fin. Serv. of Norwalk, Inc*, 22 F.3d 647, 649-50 (6th Cir. 1994) (en banc); *Flowers v. Accelerated Bureau of Collections*, No. 96 C 4003, 1997 U.S. Dist. LEXIS 3354, at *20-23 (N.D. Ill. Mar. 19, 1997); *Mantell v. Feingold & Levy*, No. 96 C 1869, 1997 U.S. Dist. LEXIS 1013, at *7 (N.D. Ill. Jan. 30, 1997); *Dolan v. Schreiber & Assoc., P.C.*, No. 01-10177, 2002

5

U.S. Dist. LEXIS 6005, at *6-8 (D. Mass. Mar. 19, 2002); *Sibersky v. Borah Goldstein, Altschuler & Schwartz, P.C.*, No. 99 cv 3227, 2000 U.S. Dist. LEXIS 14043, at *14-16 (S.D.N.Y. Sept. 28, 2000); *Riviera v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988); *West v. Cohen*, 558 F. Supp. 564, 577 (W.D. Va. 1983). In the principal case, *Wright v. Finance Service of Norwalk, Inc.*, the Sixth Circuit interpreted 15 U.S.C. § 1692k in light of an alleged § 1692e violation. *Wright*, 22 F.3d at 649-50. The Sixth Circuit stated that § 1692k grants standing under the FDCPA to any "person" affected by the allegedly illegal practice; this language includes any person who receives and opens an illegal collection letter although he or she is not the addressed debtor. *See id.* This Court is persuaded by the reasoning of this authority, and finds that Melvin, who received Thelma's allegedly illegal dunning letter while acting as her power of attorney, has standing to sue for violations of § 1692e of the FDCPA. Hence, the operative facts on which Plaintiff's claims are based are common to the putative class, and Plaintiff's legal theory is typical of the putative class's.

Asset also argues that Plaintiff has failed to demonstrate the substantive requirements of the FDCPA. Def. Br. at 6-7. However, nothing about such attack on Plaintiff's facts and theories leads this Court to believe they are atypical defenses. *Cf. J.H. Cohen & Co. v. Am. Appraisal Assoc. Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("an arguable defense *peculiar* to the named plaintiff . . . may destroy the required typicality.") (emphasis added). Plaintiff and the putative class members present common issues of law and fact and typical claims and theories.

### 3. **Adequacy of Representation**

Critical to the requirement of adequacy of representation is the ability of the named plaintiff's counsel to adequately represent the class. *See Sec. of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th

6

Cir. 1986); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Plaintiff's counsel's credentials include having argued some of the leading cases in FDCPA law and class action procedure. *See* Pl. Ex. E. at 6.

Asset attacks this element of Rule 23(a) on the same grounds that Asset attacked Plaintiff's commonality and typicality requirements, to wit, that Melvin is not a member of the defined class and therefore Melvin cannot adequately represent the class. As noted above, however, Asset's arguments are unsuccessful. As for Melvin, he has displayed adequate competence in his knowledge of this matter and in his relationship with counsel. *See* Pl. Ex. B at 70, 77-79; *Sebo v. Reubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999).

Based on Plaintiff's evidence, this Court is confident Plaintiff's counsel will adequately and fairly represent Plaintiff and the putative class. Because Plaintiff satisfies each requirement of Rule 23(a), the Court will examine whether class certification is proper under Rule 23(b).

## B.  RULE 23(b)

A district court has three options to consider for certifying a class under Rule 23(b). *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581-82 (7th Cir. 2000) (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999)). However, the Plaintiff seeks certification of their claims pursuant only to Rule 23(b)(3). A class should be certified under Rule 23(b)(3) if common questions of law or fact predominate over individual questions and class treatment is a superior method for adjudicating the controversy. FED. R. CIV. P. 23(b)(3). As discussed, the putative plaintiffs present common questions of law and fact; these common questions dominate over any individual questions. The putative plaintiffs' legal theories rest upon one federal

7

law—15 U.S.C. § 1692e—and it is difficult to imagine a more appropriate way to litigate 58,845 identical claims. The only question for certification is one of distribution of damages.

Asset argues that, because the FDCPA limits recovery in class actions to a total of $500,000, the individual recovery amount—assuming a maximum class and maximum damages—will be limited to between $8.50 and $35.00, which Asset argues as *de minimus* in light of the $1,000 individual return each putative class member could get if each brought suit individually. This Court disagrees. Under Rule 23(b)(3), each individual class member can opt out of the class without destroying the class and preserve his or her individual claims. Hence, any concerns that individuals could not recover their individual maximum amount are put to rest by the plain language of the Rule. FED. R. CIV. P. 23(c)(2)(B). Plaintiff's motion satisfies Rule 23(b)(3).

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's motion is **GRANTED**. The Court has found that the named plaintiffs satisfy the criteria of Federal Rules of Civil Procedure 23(a) and 23(b)(3) to proceed with a class action against Defendants on behalf of the following class:

    (a)    all natural persons with Indiana addresses,

    (b)     to whom Asset sent a notice in the form represented by Plaintiff's Complaint Exhibit A,

    (c)    on or after July 21, 2003 (one year prior to the filing of this action), and

    (d)    on or before August 9, 2004 (20 days after the filing of this action).

8

Plaintiff is hereby ordered to provide a plan and draft for notification of the class members,

pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), on or before August 26, 2005.

IT IS SO ORDERED this 26th day of July, 2005.


LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronically distributed to:

John D. Blythin
EDELMAN COMBS LATTURNER & GOODWIN LLC
jblythin@edcombs.com

Cathleen Maria Combs
EDELMAN COMBS LATTURNER & GOODWIN LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN COMBS LATTURNER & GOODWIN LLC
courtecl@aol.com

James O. Latturner
EDELMAN COMBS LATTURNER & GOODWIN LLC
jlatturner@edcombs.com

Derek Bryant Rieman
EDELMAN COMBS LATTURNER & GOODWIN LLC
drieman@edcombs.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Jennifer Wigington Weller
HINSHAW & CULBERTSON
jweller@hinshawlaw.com

9

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | 1:05cv10464 |
| Plaintiff, | ) | |
| | ) | Judge Saris |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER GRANTING
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This matter coming before the Court on Plaintiff Timothy M. Browder's Motion for

Class Certification, the parties being represented by counsel, the Court hearing argument on the

motion, IT IS HEREBY ORDERED:

1.    Plaintiff's Motion for Class Certification is granted. The class is defined as

follows:

> (i) all natural persons with Massachusetts addresses, (ii) to whom
> National Financial Systems, Inc. sent a letter stating "Any
> indebtedness of $600.00 or more may be reported to the IRS as
> taxable income pursuant to Internal Revenue Code 6050(p) and
> related federal law," (iii) on or after March 10, 2004, (iv) and prior
> to March 30, 2005.

2.    The Court finds that Plaintiff has met the requirements of Rule 23(a)(1) and that

the class is sufficiently numerous as to make joinder of all members of the class impracticable.

3.    The Court finds that Plaintiff has met the requirements of Rule 23(a)(2) and that

there are questions of law and fact common to all the members of the class.

4.    The Court finds that Plaintiff has met the requirements of Rule 23(a)(3) and that

1

Plaintiff's claims are typical of the claims of the class.

5.      The Court finds that Plaintiff has met the requirements of Rule 23(a)(4). The Court finds that Plaintiff will fairly and adequately protect the interests of the class. The Court appoints Edelman, Combs, Latturner & Goodwin, LLC and the Offices of Claude Lefebvre & Sons as class counsel, finding that they are experienced counsel and well-qualified to prosecute the litigation on behalf of the class.

6.      The Court finds that Plaintiff has met the requirements of Rule 23(b)(3). The Court finds that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

ENTER:

Honorable Patti B. Saris

*( for the reasons stated at hearing )*

Date: 3/17/06

2