**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
| GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

Plaintiff Joyce Henderson ("Plaintiff"), individually and as a representative of the Class of similarly situated persons, by Class counsel, Edelman, Combs, Latturner & Goodwin, LLC and Christopher M. Lefebvre respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on November 1, 2006 and set a Final Approval Hearing for January 30, 2007.

The Court is advised that subsequent to the entry of the preliminary approval order, notice of the settlement of this action was mailed to 4,733 individuals identified as members of the Class. The U.S. Post Office returned 884 of the notices as "undeliverable." The U.S. Post Office forwarded 192 of the letters to new addresses. Four class members submitted requests for exclusion that were received as of January 16, 2007, the Opt-Out deadline as set by

this Court.[1]  (Exhibit A, List of Class Members Requesting Exclusion).  No objections were submitted.

## I.    OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.

Plaintiff brought this class action lawsuit against the Sherman Family of Companies ("Sherman" or "Defendants") and its affiliates.  The class action was based upon a form privacy notice received by the Plaintiff which Plaintiff alleged violated various portions of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and Mass. G.L., ch. 93A, § 9 ("93A").  Specifically, Plaintiff alleged that the privacy notice contained in the collection letters of the Defendants violated the FDCPA and 93A by falsely representing the legal authority which Defendants had to disclose certain information about the Plaintiff.

The parties have reached a class settlement of this action.  As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## II.    THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.    The Preliminary Approval Order.

On November 1, 2006, this Court entered an order granting preliminary approval of the Agreement reached between the parties.  In the Amended Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) and the Court certified the following class: "All persons in Massachusetts who received a debt collection letter containing

---

[1] This number represents the combination of all opt-out requests submitted to Class counsel, counsel for Defendants, and this Court.

or accompanied by the privacy notice sent by Alegis Group, L.P. on behalf of a member of the

Sherman Family of Companies ("Sherman") on or after February 22, 2004 and before March 14,

2005.

The Order further established a procedural framework for the final approval of the

settlement.  The Order required the parties to cause notice to be mailed to the members of the

above defined Class, set deadlines and procedures for requests for exclusion and objections to

the settlement, and set a January 30, 2007 final approval hearing.

**B.     The Sending of Class Notice.**

Subsequent to the entry of the preliminary approval order, notice of the settlement

of this action was mailed to 4,733 individuals identified as members of the Class.  The U.S. Post

Office returned 884 of the notices as "undeliverable."  The U.S. Post Office forwarded 192 of the

letters to new addresses.

**C.     The Value of the Settlement.**

The Court has previously considered the terms of the settlement in entering the

Order, which are as follows:

(1)     Defendants to pay Joyce Henderson $1,000 in statutory damages and in

recognition of her services as class representative;

(2)     For each class member who has not opted-out, Defendants will provide a

credit of 15% to their account balance as of the January 16, 2007.  Defendants estimated the

number of class members who will receive such relief is approximately 4,200 and the combined

face amount of the credits is approximately $1 million (debt collectors typically pay about

$50,000 per $1 million of debt).  Alternatively, for each class member not opting out, who, as of

3

August 23, 2006, had entered into a settlement as to the underlying account, payment plan as to the underlying account, or had a pending payment plan as to the underlying account, Defendants will pay $20.00 to each class member.  Defendants estimate the number of class members who will receive such relief is approximately 600 and the combined cash amount of the credits is approximately $12,000.  Class members will receive a credit or cash payment, but not both.  The total economic value of the settlement is approximately $1,012,000.00.

(3)    Subject to this Court's approval, Defendants will pay Plaintiff's counsel $50,000 for attorneys' fees and costs.  Class counsel is concurrently filing a fee petition seeking an award of $50,000 in attorneys' fees and costs.

### D.    Exclusions Were Minimal and No Objections Were Received

There were only four requests for exclusion sent in by the class members who received the actual notice.  Additionally, no objections to the settlement were received.  The overall low number of exclusions and no objections should be viewed as an endorsement of the settlement by the Class.

## III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

The settlement satisfies all the requirements of Rule 23.

### A.    Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable

From a search of its records, Defendants concluded that there were 4,733 people who met the class definition. Where the class numbers are at least 40, joinder is generally considered impracticable. Mowbray v. Waste Management Holdings, Inc., 189 F.R.D. 184 (D.Mass. 1999) (certified class of 81); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497

(E.D.Pa. 1988) (40-50 sufficient); <u>see also Newberg on Class Actions</u>, 3rd ed. Sec. 3.05, pp. 3-25

("The difficulty in joining as few as 40 class members should raise a presumption that joinder is

impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule

23(a)(1) on that fact alone."). The number of class members in this case plainly satisfies the

numerosity requirement of Rule 23(a)(1).

**B.      Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common
            Questions Of Law And Fact**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the

class members' claims arise from a common nucleus of operative fact. Complete identity of facts

is not required, because "to require complete identity would unduly confine class actions to the

narrowest circumstances." <u>United States v. Rhode Island Dept. of Employment Sec.</u>, 619 F,

Supp. 509, 513 (D.R.I. 1985); <u>Guckenberger v. Boston University</u>, 957 F. Supp. 306, 325

(D.Mass. 1997); <u>Kreuzfeld A.G. v. Carnehammer</u>, 138 F.R.D. 594, 599 (S.D.Fla. 1991)(the issue

of commonality "turns on whether there exists at least one issue affecting all or a significant

number of proposed class members").

In the present case, the class members' claims arise from the following common

questions:  Did Sherman's privacy notice violate the FDCPA?  Did Sherman's privacy notice

violate Mass. G.L. ch. 93A?  These common questions satisfy Rule 23(a)(2).

**C.      Rule 23(a)(3) - Named Plaintiff' Claims are
            Typical Of the Claims Of The Settlement Class**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same

reasons that the "commonality" requirement of Rule 23(a)(3) is met. "The question is simply

whether a named plaintiff, in presenting his case, will necessarily present the claims of the

5

absent plaintiff." <u>Priest v. Zayre Corp.</u>, 118 F.R.D. 552, 555 (D.Mass. 1988). "The named

plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event,

practice or course of conduct of the defendant as do the injuries which form the basis of the class

claim." <u>Adair v. Sorenson</u>, 134 F.R.D. 13, 17 (D.Mass. 1991).  To be typical within the meaning

of the rule simply requires that the claims of the named plaintiff arise from the same type of

conduct which give rise to the class members' claims. <u>Burstein v. Applied Extrusion</u>

<u>Technologies, Inc.</u>, 153 F.R.D. 488, 491 (D.Mass. 1994).

       In the present case, Plaintiff's claims arise from the same questions of law as

those of class members:  Did Sherman's privacy notice violate the FDCPA?  Did Sherman's

privacy notice violate Mass. G.L. ch. 93A?  Rule 23(a)(3) is plainly satisfied in this case.

> **D.       Rule 23(a)(4) - Plaintiff And His Counsel Will Fairly And**
> **Adequately Protect The Interests Of The Settlement Class**

       The determination that the "representative parties will fairly and adequately protect the

interests of the class" as required by Rule 23(a)(4) involves two considerations: (1) whether the

plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2)

whether the plaintiff has any interests antagonistic to the class.  <u>Adair v. Sorenson</u>, 134 F.R.D.

13, 18 (D.Mass. 1991). <u>Accord</u>, <u>Andrews  v. Bechtel Power Corp.</u>, 780 F.2d 124, 130 (1st Cir.

1985); <u>Wetzel v. Liberty Mutual Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975); <u>In re Alcoholic</u>

<u>Beverages Litigation</u>, 95 F.R.D. 321 (E.D.N.Y. 1982).

       As set forth in the Declaration attached to the Memorandum in Support of

Attorney's Fees and Costs, Plaintiff's counsel are experienced in class action litigation.

(Declaration of Daniel A. Edelman).  In addition, Plaintiff has no interests in conflict with the

class.  Therefore, the named Plaintiff and her counsel satisfy the adequacy of representation

requirement of Rule 23(a)(4).

> ### E.     The Settlement Class May Be Certified Pursuant to Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) where: (1) common

questions of law or fact predominate over individual questions; and where (2) a class action

represents a superior method for the fair and efficient adjudication of the controversy. Both of

these requirements are satisfied in the present case.

> #### 1.     Common Questions Predominate Over Individual Issues

In order for common questions of law or fact to predominate over individual

issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the

individual cases.  Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986).  Courts

"generally focus on the liability issues in deciding whether the predominance requirement is met,

and if the liability issue is common to the Class, common questions are held to predominate.  In

re Alexander Grant & Co. Litigation, 110 F.R.D. 528, 534 (S.D.Fla. 1986); see also Dura-Built

Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 89 (S.D.N.Y. 1981).  In the present case, a

common issue relates to the lawfulness of the privacy notice under the FDCPA and Mass. G.L.,

ch. 93A predominates over individual issues, if any, as required by Rule 23(b)(3).

> #### 2.     A Class Action is Superior to Other Methods of Resolving This Matter

For many of the reasons set forth above, a class action is the superior method to

resolve the claims presented in this action.  In determining the superiority of a class action, the

Court must consider the best available method of resolving the controversy in keeping with the

goal of judicial economy. In reaching this determination, the Court should consider the inability

of the uninformed to bring their claims and the improbability that large numbers of class

members would possess the initiative to litigate individually.  Haynes v. Logan Furniture Mart,

Inc., 503 F.2d 1161, 1165 (7th Cir. 1974). In Phillips Petroleum Company v. Shutts, 472 U.S.

797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class

members' claims are too many or too small to litigate on an individual basis, the Court should

certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class

were not certified, a class action presents a superior method to fairly and efficiently adjudicate

all of the claims of the class in this case, within the meaning of Rule 23(b)(3).  To the extent that

any class member wished to pursue any such individual claim, they were free to opt-out of the

settlement under Rule 23(b)(3).  In the present case, four class members timely elected to

exclude themselves from the settlement and no class members have objected to the settlement.

## IV.    STANDARD FOR GRANTING FINAL APPROVAL TO THE CLASS ACTION SETTLEMENT

In Amchem Productions, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231 (1997),

the United States Supreme Court explained that, before approving a class action settlement, the

District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met.  Id.

at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have

been met, the Court must then determine whether Rule 23(e) has been satisfied by determining

whether the settlement is fair, reasonable, and adequate.  A district court can approve a class

action settlement if it is fair, adequate and reasonable.  Durrett v. Housing Authority of the City

of Providence, 896 F.2d 600, 604 (1st Cir.1990); Duhaime v. John Hancock Mut. Life Ins. Co.,

177 F.R.D. 54, 67 (D.Mass.1997). This requires the Court to consider both the substantive terms of the settlement compared to the likely result of the trial and "the negotiating process by which the settlement was reached."  Id. citing Weinberger v. Kendrick, 698 F.2d 61, 69 (2d Cir.1982).

This fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation.  See M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F.Supp. 819, 822-23 (D.Mass.1987); Duhaime, 177 F.R.D. at 68 (citing Santana v. Collazo, 714 F.2d 1172, 1175 (1st Cir.1983)).  Among these factors are: (1) the plaintiff's likelihood of success on the merits; (2) the amount and nature of discovery or evidence; (3) the actual settlement terms and conditions; (4) the recommendation and experience of counsel; (5) the future expense and likely duration of litigation; (6) the recommendation of neutral parties, if any; (7) the number and nature of objections; and (8) the presence of good faith and the absence of collusion.  See Giusti-Bravo v. U.S. Veterans Admin., 853 F.Supp. 34, 36 (D.P.R.1993). See also Durrett, 896 F.2d at 604.

Plaintiff believed the likelihood of success as to the FDCPA claim was high. However, the recent ruling from Hershenow v. Enter. Rent-A-Car Co. of Boston, 445 Mass. 790 (Mass. 2006), appears to require a consumer prove actual damages to recover under 93A, so the viability of Plaintiff's 93A claim was questionable.  Additionally, no case has been tried on exactly these facts and Defendants had raised defenses to liability.  At the time settlement was reached, the parties were engaged in written discovery and Plaintiff was preparing to take a number of depositions relating to the merits of the case, as well as Defendants' defenses.  Those

depositions would have greatly increased the expense and the duration of the litigation.  Under the circumstances, a compromise of Plaintiff's claims was reasonable.

The actual settlement provides for either a 15% credit or a $20.00 cash payment to each class member who did not exclude themselves.  The total economic value of the settlement is approximately $1,012,000.00.  For those class members receiving a cash payment, the $20.00 amount is based upon the relief afforded by 93A.  These amounts are quite reasonable for a FDCPA/93A case like this one, where actual damages have not been sustained.

The settlement represents an arms-length bargain.  The settlement structure is based, in large part, upon a similar settlement reached by the parties in the case of <u>Foster et al. v. Sherman Acquisition et al.</u>, 04 C 1072 (N.D. Ill.) in 2005.  In reaching the settlement in <u>Foster</u>, the parties initially attempted to settle this action.  They then participated in several settlement conferences which did not yield a settlement.  Subsequently, the parties were able to reach a settlement on their own.  In light of the difficulty the parties had in reaching a settlement, and in light of the amount class counsel is seeking in fees compared to its actual time and expenses, the settlement was not the result of collusion.

Class Counsel believe that the outcome is favorable to the class members due to the fact that no class member has objected to the settlement and only four people have opted out of the settlement.  The essence of a settlement is a compromise.  Thus, even if "the relief afforded by the proposed settlement is substantially narrow than it would be if the suits were to be successfully litigated," this is no objection to a class settlement, since "the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation."  <u>Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc.</u>, 455

F.2d 101, 109 (7th Cir. 1972). "[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." In re Domestic Air Transportation, 148 F.R.D. at 312.

A settlement compromising conflicting positions in class action litigation serves the public interest. Armstrong v. Board of School Directors, 616 F.2d 305, 313 (7th Cir. 1980). In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is 100% assured and that all claimed damages are properly recoverable. In re Domestic Air Transportation, 148 F.R.D. at 312-13; Armstrong, 616 F.2d at 314-15.

The value of a settlement is to be weighed against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation. Gottlieb v. Wiles, 11 F.3d 1004, 1015 (10th Cir. 1993); DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1177 (8th Cir. 1995) ("virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation").

## VI.    CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as representative of Class of similarly situated persons, by Class counsel, requests this Honorable Court grant final approval of the Agreement and enter the parties' proposed order attached hereto as Exhibit B.

Respectfully submitted,

s/ Jeremy P. Monteiro
Jeremy P. Monteiro

Daniel A. Edelman (pro hace vice)
Cathleen M.Combs (pro hace vice)
Jeremy P. Monteiro (pro hace vice)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800

11

Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher Lefebvre
BBO # 629056
Claude Lefebvre, P.C.
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I, Jeremy P. Monteiro, hereby certify that on January 19, 2007, a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** was filed electronically and notice was electronically sent to the following parties:

Steven S. Broadley
POSTERNAK, BLANKSTEIN & LUND, LLP
sbroadley@pbl.com

Christopher M. Lefebvre
lefeblaw@aol.com

Served via US Mail and Facsimile:

Michael S. Poncin
**Moss & Barnett, P.A.**
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 339-6686 (Fax)

<u>s/ Jeremy P. Monteiro</u>
Jeremy P. Monteiro (pro hac vice)

Daniel A. Edelman (pro hac vice)
Cathleen M. Combs (pro hac vice)
Jeremy P. Monteiro (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
Law Offices of Claude Lefebvre & Sons
P.O. Box 479
Pawtucket, RI 02862
401-728-6060
401-728-6534 (Facsimile)
R.I. Bar No. 4019

13

# EXHIBIT A

**<u>Joyce Henderson v. Sherman Financial Group, LLC,</u>**
**<u>U.S. District Court for the District of Massachusetts,</u>**
**<u>05-10339-JLT</u>**

**<u>OPT OUT LIST</u>**

| <u>Name</u> | <u>Address</u> |
|---|---|
| Sara E. Bulger | 6 80th Street<br>Newburyport, MA 01950 |
| Thomas P. McDonough | 86 Mooreland Road<br>Melrose, MA 02176-3308 |
| Jurgen Drolsbach | P.O Box 704 - Main Street<br>Brookfield, MA 01506 |
| Gina M. Garofalo | 102 Tenney Street<br>Methuen, MA 01844 |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HENDERSON; | ) | |
| | ) | |
| Plaintiff, | ) | 05-10339 |
| | ) | |
| v. | ) | Judge Joseph L. Tauro |
| | ) | Magistrate Judith G. Dein |
| SHERMAN FINANCIAL GROUP LLC; | ) | |
| SHERMAN ACQUISITION II, LP; | ) | |
| SHERMAN ACQUISITION II | ) | |
| GENERAL PARTNER LLC; | ) | |
| ALEGIS GROUP L.P.; and | ) | |
| ALEGIS GROUP LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**FINAL APPROVAL ORDER**

1.    On November 1, 2006, this Court preliminarily approved the Class Settlement

Agreement (" the Agreement") reached between Plaintiff and the Sherman Family of Companies

("Defendants"). Defendants caused notice of the settlement of this action to be mailed to 4,733

individuals identified as members of the settlement class, pursuant to Defendants' records. The

U.S. Post Office returned 884 of the letters as "undeliverable." The U.S. Post Office forwarded

192 of the letters to new addresses. Four class members submitted requests for exclusion that

were received as of January 16, 2007, the Opt-Out deadline as set by this Court. No objections

were submitted.

2.    On January 30, 2007, the Court held a Fairness Hearing to which class members,

including any with objections, were invited. The Court, being fully advised in the premises,

hereby orders:

      A.    The Court finds that the Class is appropriate under Fed. R. Civ. P. 23;

B.    The Court finds that the provisions for notice to the class satisfy the requirements of Fed. R. Civ. P. 23 and due process;

C.    The Court finds that the settlement is fair and reasonable, and hereby approves the Class Settlement Agreement ("Agreement") submitted by the parties, including the release and:

i    Relief to Plaintiff. Defendants, upon final approval of the Court, will pay $1,000 to Plaintiff Joyce Henderson in statutory damages and in recognition of her services as class representative.

ii.    Relief to Class: For each class member not opting out, Defendants will provide a credit of 15% of their account balance as of the Opt-Out date, as set by the Court. Defendants estimate the number of class members who will receive such relief is approximately 4,200 and the combined face amount of the credits is approximately $1 million. For each class member not opting out, who, as of August 23, 2006, had entered into a settlement as to the underlying account, payment plan as to the underlying account, or had a pending payment plan as to the underlying account, Defendants will pay $20.00 to each class member. Defendants estimate the number of class members who will receive such relief is approximately 600 and the combined cash amount of the credits is approximately $12,000. Class members will receive a credit or cash payment, but not both.

D.    Plaintiff and the members of the Classes grant Defendants the following releases:

i    Plaintiff Joyce Henderson and Mary Burt grant Defendants the following release: Joyce Henderson and Mary Burt, as of the Opt-Out Date, as set by the Court, do hereby release and forever discharge Defendants (Section E of the Settlement Agreement),

2

and their present or former partners, members, principals, insurers, parents, officers, directors, representatives, employees, agents, servants, predecessors, successors, subsidiaries, affiliates, shareholders, heirs, executors, administrators, and assigns including but not limited to those parties listed in Section E of the Settlement Agreement ("Defendants") of and from all causes of action, suits, claims and demands, liabilities, debts, and damages, including any claims for payment of attorneys' fees and costs, for anything that occurred from the beginning of time up through and including the Opt-Out Date, as set by the Court, in law or in equity, known or unknown at this time, of any kind or nature whatsoever, arising out of all of the allegations made, or which could have been made, on behalf themselves and the class members, as defined above, in the Complaint and/or Amended Complaint, described in ¶ A of the Settlement Agreement. Without limiting the foregoing in any way, Joyce Henderson and Mary Burt hereby release and discharge the Defendants (as defined in Section E of the Settlement Agreement) from any and all claims, whether known or unknown, that were or that could have been asserted from the beginning of time through the Opt-Out Date, as set by the Court. Joyce Henderson and Mary Burt do not release any defenses they may have as to the underlying debt, including but not limited to, the crediting of payments and the calculation of interest owed upon the debt. This release is conditioned upon the final approval of the Settlement Agreement by the Court and Defendants meeting there obligations therein;

ii. Class Members who do not exclude themselves , as of the Opt-Out Date, as set by the Court, release and forever discharge the Defendants (Section E of the Settlement Agreement) and their present or former partners, members, principals, insurers, parents, officers, directors, representatives, employees, agents, servants, predecessors, successors,

3

subsidiaries, affiliates, shareholders, heirs, executors, administrators, and assigns including but not limited to those parties and entities listed above in Section E of the Settlement Agreement ("Defendants") of and from all causes of action, suits, claims and demands, liabilities, debts and damages, including any claims for payment of attorney fees and costs, for anything that occurred from the beginning of time up through and including the Opt-Out Date, as set by the Court, in law or in equity, known or unknown at this time, of any kind or nature whatsoever, arising out of the allegations made, or which could have been made, on behalf themselves and the class members, as defined above, in connection with the Complaint and/or Amended Complaint in the action described in paragraph A herein. Without limiting the foregoing in any way, the Class Members hereby release and discharge Defendants (as defined in Section E of the Settlement Agreement) from any and all claims, whether known or unknown, that were or that could have been asserted from the beginning of time through the Opt-Out Date, as set by the Court. The class members do not release any defense they may have as to the underlying debt, including but not limited to, the crediting of payments and the calculation of interest owed upon the debt.

3.      The Court finds the Agreement fair and made in good faith;

4.      The Court dismisses the claims of Plaintiff and the class against Defendants and the released parties with prejudice and without costs (other than what has been provided for in the Agreement);

5.      The Court awards attorney's fees and costs of $50,000, to Class counsel, Edelman, Combs, Latturner & Goodwin, LLC and;

6.      The Court retains jurisdiction over the interpretation, enforcement and implementation of the Settlement Agreement and of this Order.

4

DATE: _____          ENTER: _____

The Honorable Joseph L. Tauro
United States District Court Judge